UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No..: 1:12-CV-01082 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| Lynx Systems, Inc., | ) | **(Jury Demand Endorsed Hereon)** |
| | ) | |
| Defendant. | ) | |

**Lynx Systems, Inc.'s Answer,
Affirmative Defenses and Counterclaim**

Now comes Lynx Systems, Inc. ("Lynx"), by and through counsel, for its answer to MRI Software, LLC's ("MRI") Complaint, states as follows:

1.     Answering Paragraph 1 of MRI's Complaint, Lynx avers said paragraph is rhetorical and does not require an answer by Lynx. Further answering said Paragraph, Lynx admits MRI purports to set forth the claims set forth therein, denies any violation of law, and otherwise denies any remaining allegations contained therein.

2.     Answering Paragraph 2 of MRI's Complaint, Lynx avers said paragraph is rhetorical and does not require an answer by this Lynx. Further answering said Paragraph, Lynx denies any illegal business practices and otherwise denies any remaining allegations contained therein.

3.     Answering Paragraph 3 of MRI's Complaint, Lynx admits that among the services that it offers to its clients is the service of supplying support to companies that license MRI software. Lynx has other lines of business unrelated to

MRI software and unrelated to support. Lynx has an ongoing business relationship with MRI Software during which it developed knowledge and expertise regarding the support and maintenance of MRI software which serves, in part, as the basis for its MRI related work. Lynx developed customized applications for the MRI software which it owns and further developed its ability to offer support, training, advice and service to MRI software customers. Further answering said Paragraph, Lynx denies the remaining allegations contained therein.

4.      Answering Paragraph 4 of MRI's Complaint, Lynx believes it can competently service and provide support and maintenance to MRI software customers without MRI updates. Lynx denies any infringement or misappropriation of MRI's assets and asserts they are able to provide software support without said actions. Further answering said Paragraph, Lynx denies any remaining allegations contained therein.

5.      Answering Paragraph 5 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

6.      Answering Paragraph 6 of MRI's Complaint, Lynx admits MRI's principal place of business as recited therein. Further answering said Paragraph, Lynx is without sufficient information or belief to form an opinion as to the truth of the remaining allegations contained therein and therefore denies the same.

7.      Answering Paragraph 7 of MRI's Complaint, Lynx admits the allegations contained therein.

8.     Answering Paragraph 8 of MRI's Complaint, Lynx admits this Honorable Court has subject matter jurisdiction over some, but not all, of the claims recited therein. Further answering said Paragraph, Lynx admits MRI purports to set forth the claims recited therein, but denies any violation of law and otherwise denies any remaining allegations contained therein.

9.     Answering Paragraph 9 of MRI's Complaint, Lynx admits this Honorable Court has supplemental subject matter jurisdiction over MRI's pendent state law claims. Further answering said Paragraph, Lynx denies any violation of law and otherwise denies any remaining allegations contained therein.

10.    Answering Paragraphs 10, 11, 12, 13 and 14 of MRI's Complaint, Lynx denies that venue is proper before this Honorable Court and denies that this Honorable Court has personal jurisdiction over Lynx Systems, Inc., a Canadian corporation. Lynx does not regularly do business in the State of Ohio and has not maintained systemic and continuous contact with Ohio and Ohio residents. While in 2006 to 2008 Lynx had some Ohio staff, the events giving rise to this litigation concern the period of subsequent to 2008. Further answering said Paragraphs, Lynx denies that a substantial part of the events giving rise to this litigation occurred in this district and denies that a substantial part of the property that is the subject matter of this action was and is situated in this district. To the contrary, the conduct of Lynx has occurred almost exclusively outside this jurisdiction and this district, occurring in Canada. While Lynx has had dialog with MRI Software personnel located in this district and Don Robinson had visited MRI once every six

months or so during the Agreement's term, Lynx asserts said contacts are insufficient to establish personal jurisdiction over Lynx. Lynx had no clients in Ohio and no staff in Ohio during the last three years. Lynx denies causing tortious injury to MRI in Ohio or outside Ohio while engaging in persistent conduct in the state or by deriving substantial revenue from goods and services rendered in the state. Further answering said Paragraphs, Lynx acknowledges that it has previously employed former staff members were previously MRI employees, but it has not done so during the last three years. Further answering said Paragraphs, Lynx denies any remaining allegations contained therein.

11.    Answering Paragraphs 15, 16, 17 and 18 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

12.    Answering Paragraph 19 of MRI's Complaint, Lynx admits IRES operated, at least in part, from the same location from which Management Reports, Inc., had previously operated, at least in part. Further answering said Paragraph, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

13.    Answering Paragraph 20 and 21 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

14.    Answering Paragraph 22 of MRI's Complaint, Lynx admits that MRI sells to the real estate property management industry. Further answering said

Paragraph, Lynx is without sufficient information or belief to form an opinion as to the truth of the remaining allegations contained therein and therefore denies the same.

15. Answering Paragraph 23 of MRI's Complaint, Lynx admits MRI offers software for the residential and commercial real estate market and that MRI's software is an effort to provide services to property managers. Further answering said Paragraph, Lynx avers said paragraph is rhetorical and does not require an answer by this Lynx and otherwise denies any remaining allegations contained therein.

16. Answering Paragraph 24 of MRI's Complaint, Lynx admits MRI sells certain additional software. Further answering said Paragraph, Lynx is without sufficient information or belief to form an opinion as to the truth of the remaining allegations contained therein and therefore denies the same.

17. Answering Paragraphs 25, 26 and 27 of MRI's Complaint, Lynx admits that MRI purports to own valid and enforceable copyrights to the MRI software as recited therein and that the attachments labeled Exhibit 1 purport to be U.S. Copyright office registrations for MRI software. Further answering said Paragraph, Lynx otherwise denies the allegations contained therein.

18. Answering Paragraphs 28, 29, 30, 31 and 32 of MRI's Complaint, Lynx admits MRI purports to own a trademark registration covering the letters "MRI" for certain goods and services as recited therein and that Exhibit 2 purports to be a true and accurate copy of the registrations certificate for said trademark, as set

forth therein. Further answering said Paragraphs, Lynx otherwise denies the allegations contained therein.

19.     Answering Paragraph 33 of MRI's Complaint, Lynx avers that the allegations contained therein constitute a legal conclusion to which no response is required and therefore denies the same.

20.     Answering Paragraph 34 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

21.     Answering Paragraph 35 of MRI's Complaint, Lynx admits that MRI has certain agreements with clients. Further answering said Paragraph, Lynx is without sufficient information or belief to form an opinion as to the truth of the remaining allegations contained therein and therefore denies the same.

22.     Answering Paragraph 36 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to whether the referenced documents are "typical" of MRI's client documents or so-called "Master Agreement" between MRI and its clients and therefore denies the same. Further answering said Paragraph, Lynx denies the exemplar of the foregoing documents is attached as Exhibit 3, as the Master Agreement was filed under seal. Lynx otherwise denies the remaining allegations contained therein.

23.     Answering Paragraphs 37, 38, 39, 40, 41, 42 and 43 of MRI's Complaint, Lynx avers said documents speak for themselves. Further answering said Paragraphs, Lynx otherwise denies the allegations contained therein.

24.     Answering Paragraph 44 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

25.     Answering Paragraph 45 of MRI's Complaint, Lynx admits customizations can be created in at least the recited fashion. Further answering said Paragraph, Lynx otherwise denies the allegations contained therein.

26.     Answering Paragraphs 46, 47 and 48 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

27.     Answering Paragraph 49 of MRI's Complaint, Lynx admits MRI has provided certain updates from time to time. Further answering said Paragraph, Lynx otherwise denies the allegations contained therein.

28.     Answering Paragraphs 50 and 51 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

29.     Answering Paragraphs 52, 53, 54, 55 and 56 of MRI's Complaint, Lynx avers that the Master Agreement speaks for itself. Further answering said Paragraphs, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

30.     Answering Paragraphs 57, 58, 59, 60, 61, 62, 63, 64 and 65 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

31.     Answering Paragraph 66 of MRI's Complaint, Lynx admits MRI holds yearly international user conferences which may provide an opportunity for interaction between MRI personnel and clients. Further answering said Paragraph, Lynx is without sufficient information or belief to form an opinion as to the truth of the remaining allegations contained therein and therefore denies the same.

32.     Answering Paragraphs 67, 68, 69 and 70 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

33.     Answering Paragraph 71 of MRI's Complaint, Lynx denies the allegations contained therein.

34.     Answering Paragraphs 72 and 73 of MRI's Complaint, Lynx admits the parties entered into the 2002 Agreement, which agreement speaks for itself. Lynx further avers that the 2002 Agreement was modified by the parties and that the 2002 Agreement as attached to the Complaint and defined by MRI in its Complaint does not set forth the entire agreement between the parties. Further answering, Lynx otherwise denies the allegations contained therein.

35.     Answering Paragraph 74 of MRI's Complaint, Lynx avers that the 2002 Agreement was modified by the parties and that the 2002 Agreement as attached to the Complaint and defined by MRI in its Complaint does not set forth the entire agreement between the parties. Further answering, Lynx otherwise denies the allegations contained therein.

36.    Answering Paragraphs 75, 76, 77, 78, 79 and 80 of MRI's Complaint, Lynx avers that the 2002 Agreement was modified by the parties and that the 2002 Agreement as attached to the Complaint and defined by MRI in its Complaint does not set forth the entire agreement between the parties. Without limiting the foregoing, Lynx avers that parties modified the territorial restrictions set forth in the 2002 Agreement. Further answering, Lynx otherwise denies the allegations contained therein.

37.    Answering Paragraph 81 of MRI's Complaint, Lynx avers that the 2002 Agreement was modified by the parties and that the 2002 Agreement as attached to the Complaint and defined by MRI in its Complaint does not set forth the entire agreement between the parties. Further answering, Lynx otherwise denies the allegations contained therein.

38.    Answering Paragraph 82 of MRI's Complaint, Lynx admits that MRI provided certain software to Lynx during the 2002 Agreement and after the date on which MRI alleges the 2002 Agreement terminated. Further answering, Lynx otherwise denies the allegations contained therein.

39.    Answering Paragraph 83 of MRI's Complaint, Lynx admits that certain discussions occurred between Lynx and MRI in or about 2006 and 2007 and that Mr. Robinson attended a meeting with MRI and otherwise denies the allegations contained therein.

40.    Answering Paragraph 84 of MRI's Complaint, Lynx denies the allegations contained therein.

41.     Answering Paragraphs 85 and 86 of MRI's Complaint, Lynx avers the 2002 Agreement speaks for itself. Lynx further avers that the 2002 Agreement was modified by the parties and that the 2002 Agreement as attached to the Complaint and defined by MRI in its Complaint does not set forth the entire agreement between the parties. Further answering, Lynx otherwise denies the allegations contained therein.

42.     Answering Paragraph 87 of MRI's Complaint, Lynx avers that, following MRI's alleged termination of the 2002 Agreement, the relationship between MRI and Lynx continued. For example, MRI and Lynx continued to jointly promote and sell MRI software and Lynx's customization products, MRI continued to hold out Lynx as its partner, and Lynx continued to provide maintenance and support of MRI software with MRI's knowledge and consent, and MRI consented to Lynx's continued possession and use of certain MRI software products. Further answering said Paragraph, Lynx denies any violation of law and otherwise denies the allegations contained therein.

43.     Answering Paragraphs 88, 89, 90, 91, 92, 93, 94, 95 and 96 of MRI's Complaint, Lynx avers the Lynx website speaks for itself. Further answering said Paragraphs, Lynx otherwise denies the allegations contained therein.

44.     Answering Paragraph 97 of MRI's Complaint, Lynx denies the allegations contained therein.

45. Answering Paragraph 98 of MRI's Complaint, Lynx avers that the Lynx website speaks for itself. Further answering said Paragraph, Lynx otherwise denies the allegations contained therein.

46. Answering Paragraph 99 of MRI's Complaint, Lynx admits that certain reports identified on its website were generated using MRI software and Tool Kit, but avers none of those reports have been sold subsequent to alleged termination of the 2002 Agreement, and otherwise the allegations contained therein.

47. Answering Paragraph 100 of MRI's Complaint, Lynx denies the allegations contained therein.

48. Answering Paragraphs 101 and 102 of MRI's Complaint, Lynx avers that the Lynx website speaks for itself. Further answering said Paragraph, Lynx otherwise denies the allegations contained therein.

49. Answering Paragraph 103 of MRI's Complaint, Lynx admits certain fact sheets and interfaces were generated using MRI software. Further answering said Paragraph, Lynx otherwise denies the allegations contained therein.

50. Answering Paragraphs 104 and 105 of MRI's Complaint, Lynx denies any sale of said products subsequent to the alleged termination of the 2002 Agreement. Further answering said Paragraphs, Lynx denies the remaining allegations contained therein.

51. Answering Paragraphs 106 and 107 of MRI's Complaint, Lynx denies the allegations contained therein.

52.     Answering Paragraphs 108, 109, 110, 111, 112, 113, 114, 115, 116 and 117 of MRI's Complaint, Lynx avers said emails speak for themselves. Further answering said Paragraphs, Lynx denies that said emails include any false, disparaging, misleading or otherwise improper statements and Lynx otherwise denies the allegations contained in said Paragraphs.

53.     Answering Paragraph 118 of MRI's Complaint, Lynx admits that certain emails were sent to in Canada, the United States and Bermuda and otherwise denies the remaining allegations contained therein.

54.     Answering Paragraph 119 of MRI's Complaint, Lynx admits said email includes the letters MRI, but denies using the MRI trademark. Further answering said Paragraph, Lynx denies any remaining allegations contained therein.

55.     Answering Paragraphs 120, 121, 122 and 123 of MRI's Complaint, Lynx denies the allegations contained therein.

56.     Answering Paragraph 124 of MRI's Complaint, Lynx avers said emails speak for themselves. Further answering said Paragraph, Lynx denies having committed the alleged violation as set forth therein and denies any violation of law and otherwise denies any remaining allegations contained therein.

57.     Answering Paragraph 125 of MRI's Complaint, Lynx avers the attached agreement speaks for itself. Further answering said Paragraph, Lynx denies any violation of law. Further answering said Paragraph, Lynx admits that, although it has not been approved by MRI as a "Client User" nor has it entered into a Third Party Data Access Agreement, it denies that it had or has any obligation be

so approved or to enter into any such agreement with MRI. Further answering said Paragraph, Lynx denies any remaining allegations contained therein.

58.     Answering Paragraphs 126, 127, 128, 129, 130 and 131 of MRI's Complaint, Lynx denies the allegations contained therein.

59.     Answering Paragraph 132 of MRI's Complaint, Lynx admits that certain customizations it developed include the letters "MRI," avers that its website speaks for itself, and otherwise Lynx denies the remaining allegations contained therein.

60.     Answering Paragraphs 133 and 134 of MRI's Complaint, Lynx denies the allegations contained therein.

61.     Answering Paragraph 135 of MRI's Complaint, Lynx admits the allegations contained therein. Further answering said Paragraph, Lynx denies improperly accessing the myMRI Client Portal.

62.     Answering Paragraphs 136, 137, 138, 139, 140, 141, 142, 143 and 144 of MRI's Complaint, Lynx denies the allegations contained therein.

63.     Answering Paragraph 145 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

64.     Answering Paragraphs 146, 147, 148, 149 and 150 of MRI's Complaint, Lynx denies the allegations contained therein.

65.     Answering Paragraph 151 of MRI's Complaint, Lynx admits it has attended International User Group conferences. Further answering said Paragraph, Lynx denies the remaining allegations contained therein.

66.     Answering Paragraphs 152, 153, 154, 155, 156, 157, 158, 159, 160 and 161 of MRI's Complaint, Lynx denies the allegations contained therein. Further answering said Paragraphs, Lynx admits Mr. Robinson was present at a hotel during the 2011 International MRI User Group Conference, but denies entering into any restricted activities or areas and denies any unlawful or improper conduct.

67.     Answering Paragraph 162 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

68.     Answering Paragraphs 163, 164 and 165 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

69.     Answering Paragraphs 166, 167, 168, 169, 170, 171, 172 and 173 of MRI's Complaint, Lynx denies the allegations contained therein.

70.     Answering Paragraph 174 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

71.     Answering Paragraphs 175, 176, 177, 178, 179, 180, 181 and 182 of MRI's Complaint, Lynx denies the allegations contained therein.

72.     Answering Paragraph 183 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

73.     Answering Paragraphs 184 and 185 of MRI's Complaint, Lynx denies the allegations contained therein.

74.     Answering Paragraph 186 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

75.     Answering Paragraph 187 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the remaining allegations contained therein and therefore denies the same.

76.     Answering Paragraphs 188, 189 and 190 of MRI's Complaint, Lynx denies the allegations contained therein.

77.     Answering Paragraph 191 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

78.     Answering Paragraphs 192 and 193 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

79.     Answering Paragraph 194 of MRI's Complaint, Lynx avers that the allegations contained therein constitute a legal conclusion to which no response is required and therefore denies the same.

80.    Answering Paragraphs 195, 196 and 197 of MRI's Complaint, Lynx denies the allegations contained therein.

81.    Answering Paragraph 198 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

82.    Answering Paragraphs 199, 200, 201 and 202 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

83.    Answering Paragraphs 203 and 204 of MRI's Complaint, Lynx denies the allegations contained therein.

84.    Answering Paragraph 205 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

85.    Answering Paragraph 206 of MRI's Complaint, Lynx admits the portal can be accessed using passwords. Further answering said Paragraph, Lynx otherwise is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

86.    Answering Paragraphs 207 and 208 of MRI's Complaint, Lynx denies the allegations contained therein.

87.    Answering Paragraph 209 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

88.     Answering Paragraph 210 of MRI's Complaint, Lynx avers that the 2002 Agreement was modified by the parties and that the 2002 Agreement as attached to the Complaint and defined by MRI in its Complaint does not set forth the entire agreement between the parties. Further answering, Lynx otherwise denies the allegations contained therein.

89.     Answering Paragraph 211 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

90.     Answering Paragraphs 212, 213, 214 and 215 of MRI's Complaint, Lynx denies the allegations contained therein.

91.     Answering Paragraph 216 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

92.     Answering Paragraphs 217, 218, 219 and 220 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same.

93.     Answering Paragraphs 221, 222, 223, 224, 225 and 226 of MRI's Complaint, Lynx denies the allegations contained therein.

94.     Answering Paragraph 227 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

95.    Answering Paragraphs 228, 229 and 230 of MRI's Complaint, Lynx is without sufficient information or belief to form an opinion as to the truth of the allegations contained therein and therefore denies the same. Further answering said Paragraphs, Lynx denies any unlawful conduct.

96.    Answering Paragraphs 231, 232, 233, 234, 235, 236 and 237 of MRI's Complaint, Lynx denies the allegations contained therein.

97.    Answering Paragraph 238 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

98.    Answering Paragraphs 239, 240, 241, 242, 243, 244, 245, 246 and 247 of MRI's Complaint, Lynx denies the allegations contained therein.

99.    Answering Paragraph 248 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

100.    Answering Paragraphs 249, 250, 251, 252, 253, 254 and 255 of MRI's Complaint, Lynx denies the allegations contained therein.

101.    Answering Paragraph 256 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in paragraphs 1 through 122 of its answer as if fully rewritten herein.

102.    Answering Paragraph 257 of MRI's Complaint, Lynx admits the allegations contained therein.

103.    Answering Paragraphs 258, 259, 260, 261, 262 and 263 of MRI's Complaint, Lynx denies the allegations contained therein.

104.    Answering Paragraph 264 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

105.    Answering Paragraphs 265, 266, 267, 268, 269, 270, 271, 272 and 273 of MRI's Complaint, Lynx denies the allegations contained therein.

106.    Answering Paragraph 274 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

107.    Answering Paragraphs 275 and 276 of MRI's Complaint, Lynx denies the allegations contained therein.

108.    Answering Paragraph 277 of MRI's Complaint, Lynx realleges and reavers all the admissions, averments and denials contained in response to the preceding paragraphs of MRI's Complaint as if fully rewritten herein.

109.    Answering Paragraphs 278, 279 and 280 of MRI's Complaint, Lynx denies the allegations contained therein and controverts the prayer contained subsequent to Paragraph 280 of MRI's Complaint.

110.    Further answering, Lynx denies all allegations set forth in MRI's Complaint that are not otherwise expressly admitted herein.

## Affirmative Defenses

111.   The Court lacks subject matter jurisdiction over MRI's claims brought under Canadian law.

112.   The Court lacks personal jurisdiction over Lynx.

113.   The Due Process Clause to the United States Constitution and other laws prohibit applying U.S. federal and state laws to Lynx's conduct in Canada.

114.   MRI failed to provide sufficient process and sufficient service of process.

115.   MRI fails to state a claim upon which relief can be granted.

116.   MRI's claims are barred by the doctrines of laches, equitable estoppel, promissory estoppel, waiver, consent, or acquiescence.

117.   MRI's claims are barred by the doctrine of unclean hands.

118.   MRI's damages, if any, were caused or contributed to by its own action or inaction or by the action or inaction of third-persons over whom Lynx has no ownership or control.

119.   MRI's claims are barred, in whole or in party, by its failure to mitigate its damages, if any.

120.   MRI's demand for punitive damages is barred by the Due Process Clause of the Fifth Amendment to the United States Constitution and similar provisions of any applicable state constitution.

121.   MRI's claims are barred, in whole or in part, because MRI has misused its copyrights by, among other things, requiring customers to sign agreements that

purport to substantially restrict their ability to contract with third parties for service and support and by filing and maintaining this objectively baseless lawsuit, in bad faith, to obtain an unfair commercial advantage when it knew or should have known that it has no viable claim of copyright infringement against Lynx.

122.    MRI's claims are barred, in whole or in part, because MRI has misused its trademarks by, among other things, filing and maintaining this objectively baseless lawsuit, in bad faith, to obtain an unfair commercial advantage when it knew or should have known that it has no viable claim of trademark infringement against Lynx.

123.    MRI's claims are barred, in whole or in part, because the alleged statements and conduct by Lynx are privileged, absolutely or qualifiedly, and protected by the First Amendment to the United States Constitution and similar provisions of any applicable state constitution or Canadian law.

124.    MRI's claims are barred, in whole or in part, because the alleged statements by Lynx are true, opinion, or both.

125.    MRI's claims are barred, in whole or in part, because the conduct of which MRI complains is permitted by express license, implied license, or both.

126.    MRI's claims are barred, in whole or in part, by the fair use doctrine.

127.    MRI's claims are barred, in whole or in part, because Lynx's conduct is privileged and justified as Lynx acted in fair competition with MRI.

128.    MRI's claims are barred, in whole or in part, by the applicable statutes of limitation, statutes of repose, or both.

129. MRI's alleged copyrightable works are not copyrightable due to the idea/expression dichotomy.

130. MRI's copyright infringement and related claims are barred by the doctrine of copyright exhaustion.

131. Lynx reserves the right to assert additional affirmative defenses that subsequently may become known to it through discovery or otherwise.

## Lynx's Counterclaim

In accordance with Federal Rule of Civil Procedure 13, Lynx Systems, Inc., hereby pleads its counterclaim against MRI Software, LLC, as follows:

## Parties

1. Lynx Systems, Inc. ("Lynx") is a Canadian corporation.

2. MRI Software, LLC, alleges that it is an Ohio limited liability corporation. For ease of reading, this counterclaim refers to MRI Software, LLC and all of its predecessors as "MRI."

## Jurisdiction

3. To the extent one or more of the claims asserted in MRI's complaint are within this Court's subject matter jurisdiction, this counterclaim also is within that subject matter jurisdiction.

4. The Court has personal jurisdiction over MRI because it alleges that it is incorporated and headquartered in Ohio and it regularly does business in Ohio.

## Facts

## I. Lynx Provides Exceptional Service To The Real Estate Industry

5. Founded in 1997, Lynx is a technology consulting firm for the real estate industry.

6. A key part of Lynx's services is helping clients with computer software applications for managing real estate.

7. Lynx consults with its clients to aid them in selecting the best property management software products for their particular needs and circumstances.

8.     There are several competing software providers in the market which Lynx's clients can choose among, including MRI, Yardi Systems, Inc., Oracle Corporation (owns J.D. Edwards software), SAP, RealPage (also owns Spectre Computer Services Ltd. And other products) Constellation Software Inc., Angus Software, and Altus Corporation (owns Argus Software).

9.     After a client selects its software system, Lynx may work with that client to correctly install the software, migrate and convert existing data into the new system, train users, customize the system, and generate useful reports from the system.

10.    After the client's new system is up and running, Lynx may provide ongoing support to that client. Lynx's typical services include making customizations, generating standard and custom reports, troubleshooting, providing additional training and hotline support, and solving problems with the system.

11.    Lynx's overall support services are so effective that a number of MRI software users choose to pay for Lynx's support services even in cases where MRI support is provided by MRI, such that the client could have obtained support from MRI for no additional cost.

12.    As a result of the years of hard work by Lynx, it has gained an expertise in understanding and servicing property management software, with a reputation to match.

13.     Lynx also has gained a deep understanding of the specific software needs of Canadian property managers, which differs from the U.S. market due to different property laws, customs, and practices.

14.     Over the years, Lynx has earned a strong reputation for quality, service, expertise, responsiveness, creativity, integrity, reliability, and value.

## II.     The Lynx-MRI Relationship

15.     In 2000, MRI and Lynx entered into a written agreement under which Lynx would provide MRI-related services in Canada and the U.S. (the "2000 Agreement").

16.     During negotiations of the 2000 Agreement, MRI had proposed a provision that would give MRI ownership of any derivations, modifications, improvements, alternations, or enhancements to the MRI software by Lynx.

17.     Lynx specifically rejected that provision, and MRI agreed to remove it from the 2000 Agreement that Lynx and MRI signed.

## III.     Lynx Establishes A Canadian Market For MRI's Software

18.     Prior to 2002, MRI had tried to independently sell its MRI property management software in Canada.

19.     However, MRI lacked knowledge of the Canadian real estate industry, and it was unwilling to make the financial investment necessary to gain that familiarity and to demonstrate a commitment to the Canadian market.

20.     Consequently, MRI's Canadian sales efforts failed and, by 2002, it had made very few Canadian sales.

21.     In 2002, MRI and Lynx discussed MRI's poor sales in Canada. Although Lynx had previously provided MRI with some sales assistance in Canada, MRI decided to take advantage of Lynx's knowledge of the Canadian market, its established relationships with Canadian property managers, and its reputation for providing high quality computer consulting services by making Lynx an authorized reseller of MRI software in Canada under a "MRI Product Sub-Licensor and Service Provider Agreement," which the parties signed in 2002 (the "2002 Agreement").

22.     Upon becoming a reseller, Lynx discovered that the MRI software was failing in the Canadian market because, among other reasons, it lacked features and functionality that the Canadian market and Canadian laws demanded and that competing software products offered.

23.     When Lynx suggested that MRI add the necessary functionality to its software, MRI told Lynx that MRI was not interested in making the investments necessary to do so.

24.     MRI assured Lynx, however, that – consistent with their prior agreements – if Lynx invested its own resources to customize the MRI software for the Canadian market, then Lynx would own those customizations.

25.     MRI assured Lynx that it could recoup its investments in designing and building the customizations by selling them and by providing other MRI-related consulting services through a long-term partnership with MRI.

26.     Relying on MRI's pledge that Lynx would own the customizations and that it would have a long-term business relationship with MRI, Lynx made substantial financial investments to build the necessary customizations.

27.     MRI knew, or should have known, that it would take Lynx years of selling those customizations and servicing MRI software to recoup Lynx's investment.

28.     With Lynx as its Canadian sales partner, MRI's Canadian sales grew significantly, with Lynx making substantial Canadian sales of MRI software.

29.     To provide MRI-related services and to be an effective MRI partner, MRI understood and agreed that Lynx would use MRI software, including MRI's "Application Toolkit" and its "Report Design Tool," to modify, customize, and enhance MRI software for Lynx clients and to build customized Lynx applications as add-ons to the MRI software.

30.     Thus, to enable Lynx to do its MRI-related work, MRI provided Lynx with MRI software and updates from 2000 until at least 2009.

**IV.     MRI Tries To Purchase Lynx's Customizations**

31.     From as early as 2003, Lynx has sold its customizations with MRI's full knowledge and approval.

32.     During that period, MRI included Lynx's customizations as line items in numerous proposals to prospects and clients, with Lynx receiving the full revenue on its customizations. MRI materially benefited from Lynx selling its

customizations along with the MRI software because it improved the marketability of the MRI software.

33. Thus, for years, MRI acknowledged Lynx's rightful ownership of its customizations.

34. Around 2007, MRI's U.S. sales team learned about a popular customization that Lynx had built for the Canadian market for condominium management (the "Condo Module").

35. MRI's U.S. management expressed interest in working with Lynx to market this and other customizations in the U.S.

36. MRI and Lynx then began to negotiate the terms of a business arrangement that would include Lynx's sale of the Condo Module in the U.S.

37. During those negotiations, MRI again acknowledged Lynx's exclusive ownership of the Condo Module. MRI agreed that Lynx would invoice customers directly for the Condo Module and that Lynx would receive 100% of the revenues from the sale of the Condo Module and other Lynx products.

38. MRI volunteered to draft an agreement reducing their oral discussions and agreements to writing, which the parties contemplated as an addendum to the 2002 Agreement.

39. In December 2007, MRI provided Lynx with a written term sheet.

40. Lynx rejected MRI's term sheet, however, because it did not match the parties' discussions and prior agreements, and it disproportionately favored MRI. Importantly, it appeared that MRI's term sheet, if signed, would require Lynx to

transfer ownership of the Lynx customizations to MRI and give MRI ownership of future customizations by Lynx, which were contrary to the agreed upon terms and their existing agreements.

41.    Despite Lynx's rejection of MRI's term sheet, Lynx and MRI continued to work together as partners promoting and selling MRI software.

42.    Lynx and MRI also continued to have discussions of a new or revised business agreement to govern their dealings going forward.

## VI.    MRI Purports To Cancel Its 2002 Agreement With Lynx

43.    In a March 30, 2009, letter from MRI's in-house attorney, MRI purported to have terminated the 2002 Agreement on November 9, 2008. Based on the 2002 Agreement's 180-day transition period, MRI's attorney contended that Lynx's rights under the 2002 Agreement would terminate on May 9, 2009.

44.    Despite that lawyer's letter, the MRI-Lynx partnership did not terminate on May 9, 2009.

45.    Rather, the relationship between MRI and Lynx continued. For example, MRI and Lynx continued to jointly promote and sell MRI software and Lynx's customization products, and Lynx continued to provide maintenance and support of MRI software with MRI's knowledge and consent, and MRI consented to Lynx's continued possession and use of certain MRI software products.

46.    Similarly, Lynx continued to independently sell its customizations with MRI's knowledge and consent.

47.     Well after May 9, 2009, MRI continued to hold Lynx out as MRI's "Partner" both to Lynx and to actual and potential customers of MRI software.

48.     For example, in a September 2009 MRI written proposal to Calloway Real Estate Investment Trust, MRI specifically described Lynx as MRI's "Implementation Partner for Canada."

49.     Furthermore, on May 8, 2009, MRI e-mailed a license "refresh" to Lynx that extended Lynx's access to and right to use the MRI software beyond the May 9, 2009, date on which MRI alleges that Lynx's rights to use the MRI software expired.

50.     Lynx also continued using the "MRI" name to promote MRI software and its own services on its website with MRI's knowledge and consent. In August 2009, for example, MRI sent Lynx the "latest" MRI logo for display on its website.

51.     Thus, the MRI-Lynx relationship and partnership continued long beyond the purported May 9, 2009, termination.

52.     The parties' conduct, written and oral statements and agreements, established business practices, course of dealing, course of performance, and trade usage formed independent agreements (or revisions, extensions, or revivals of prior agreements) that legally and equitably extended Lynx's rights to use MRI's software, including the MRI toolkit and report design tool, beyond May 9, 2009.

## VII.    **MRI Files Suit**

53.     In 2010, Vista Equity Partners (a private equity firm) bought MRI.

54.     After that purchase, MRI did not terminate its relationship with Lynx, and Lynx continued to provide MRI-related services in accordance with the parties'

prior and existing arrangements and agreements with MRI's knowledge and consent.

55.    After Vista's 2010 purchase, Lynx contacted MRI on numerous occasions regarding Lynx's MRI-related activities. In response, MRI did not indicate any objection to Lynx's business, including the specific conduct by Lynx about which MRI now complains, which was known to MRI at that time.

56.    MRI's knowledge of and consent to Lynx's MRI-related activities demonstrated that its new ownership was satisfied with MRI's existing relationship with Lynx.

57.    On May 2, 2012, without any prior indication that MRI believed Lynx had done anything improper since May 2009, MRI filed this lawsuit. Not once, in the three years prior to filing its lawsuit, did MRI object (informally or otherwise) to the conduct by Lynx that MRI now alleges as wrongful. As examples, after May 2009, MRI never objected to Lynx using the MRI name on its website, to Lynx selling Lynx customizations, or to Lynx providing support services for MRI software. To the contrary, MRI had full knowledge of Lynx's activities and consented.

58.    Upon information and belief, MRI began actively preparing to file this lawsuit against Lynx in or before December 2011.

59.    Despite a decade-long relationship and MRI's months-long preparation for litigation, MRI never sent a letter or e-mail to Lynx, and it never picked up the phone prior to filing its lawsuit to complain about Lynx's business practices.

60.    MRI's complaint contains 17 separate counts and comprises 280 numbered paragraphs and 55 pages.

61.    On the same day it filed its complaint, MRI filed a motion for preliminary injunction and an over-length 31-page memorandum in support, which the Court has since stricken.

62.    All told, MRI's May 2 filings constitute over 600 pages of documents.

63.    Many or all of MRI's allegations and claims are factually and legally baseless.

64.    As one example, MRI claims that Lynx violated the Digital Millennium Copyright Act (the "DMCA") by allegedly "misappropriating" passwords to enter the "myMRI Client Portal" without authorization. (*See* Compl. ¶ 143, 187-190.) This claim is baseless as a matter of fact and law. Factually, Lynx has not misappropriated any passwords or accessed the myMRI Client Portal without permission. Legally, even if MRI's untrue factual allegations were presumed true, the law is clear that such activities are not a violation of the DMCA.

65.    As another example, MRI claims that Lynx violated the Computer Fraud and Abuse Act ("CFAA") by "intentionally accessing the myMRI Client Portal, without authorization." (*See* Compl. ¶ 176.) Like its DMCA claim, this claim is baseless as a matter of fact and law. Again, factually, Lynx has not accessed the myMRI portal without permission. Legally, even if MRI's untrue allegation were true, MRI failed to state a claim under the CFAA. MRI has not alleged the types of "damages" and "losses" required to trigger the CFAA because it has not alleged any

destruction, corruption, deletion, or damage to its computer systems or the data stored on them.

66.    On the same day MRI filed its lawsuit, May 2, MRI's CEO, David Post, sent e-mails to a number of Lynx's clients defaming Lynx and falsely accusing it of wrongdoing (the "Post E-Mail"). A true copy of the body of the Post E-Mail is attached as Exhibit A.

67.    Among the various false and defamatory statements about Lynx, the Post E-Mail states that:

    a.    Lynx "improperly . . . induce[s] MRI Software users not to renew -- and in some cases to violate -- their agreements with MRI, in favor of Lynx."

    b.    Lynx is "misappropriating MRI's assets."

    c.    Lynx is "infringing MRI's copyrights."

    d.    Lynx does not practice "fair play and ethical behavior."

    e.    Lynx has an "illegal business model."

    f.    Lynx "has engaged in an improper effort to undermine [MRI's] business."

68.    By falsely stating that MRI customers using Lynx's services may be violating their MRI agreements, by falsely accusing Lynx of unlawful acts, and by encouraging Lynx's clients needing "assistance" to contact MRI by e-mail or phone, the Post E-Mail is an obvious and improper effort to thwart competition in the market for consulting, service and support relating to MRI software and to scare Lynx's clients into moving their software support business from Lynx to MRI.

69.     The Post E-Mail achieved its intended effect as Lynx's support services for MRI software has almost entirely ceased since the Post E-Mail.

70.     Given the volume of MRI's filings, the approximately $170,000 in legal fees it has purportedly spent to initiate this suit, its months of preparation for this suit, and its choosing not to contact Lynx before filing this suit to attempt to resolve the matter without litigation, it is clear that MRI's intent is to use shock-and-awe litigation to force Lynx to expend enormous legal fees, to distract Lynx from its consulting work, and to try and justify sending notices to Lynx's clients tarnishing Lynx and scaring those clients into moving their business from Lynx to MRI.

71.     Several different Lynx clients and a former MRI staffer have reported that MRI's David Post boasted that he would "shut Lynx down."

72.     MRI's obvious goal is to use litigation as a club to put Lynx out of business to take all of Lynx's MRI-related consulting work.

73.     In a further attempt to improperly restrain competition in the sale of products and services that are not within the scope of the privileges granted under copyright law, MRI has systemically required some or all of its customers to agree to not contract with any entity other than MRI to obtain support or other service relating to MRI software without MRI's express authorization and agreement by the third party to onerous terms and conditions that benefit only MRI.

74.     MRI admits that a representative example of the "typical" agreement MRI is requiring customers to sign has been filed by MRI under seal as Exhibit 3 to its Complaint.

75.     The terms of MRI's agreements are intended to dissuade its customers from doing business with third parties like Lynx who provide service and support for MRI software for reasons other than protection of MRI's legitimate business interests.

76.     MRI's new agreements have had a direct, negative effect in the market for third party service and support of MRI software products.

77.     A number of MRI's customers have complained to Lynx and other third parties regarding the terms and conditions that MRI is imposing on its customers. Lynx is threatened with significant and irreparable harm, including harm to its business and reputation, as a result of MRI's conduct.

## Count One
### *Defamation*

78.     Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

79.     The statements made by MRI and David Post in the Post E-Mail are defamatory because they tend to harm the reputation of Lynx as to lower its estimation in the community and to deter others from associating or dealing with it.

80.     The defamatory statements in the Post E-Mail are false.

81.     MRI and Mr. Post published the Post E-Mail by sending it by e-mail, and perhaps by other means, to users of MRI software, specifically including those MRI users that also use Lynx's consulting services.

82.     The Post E-Mail has caused Lynx reputational harm and has deterred clients from doing business with Lynx.

83. MRI and Mr. Post made the false and defamatory statements in bad faith and with knowledge of their falsity, with reckless disregard as to their truth or falsity, or with negligence as to their truth or falsity.

84. MRI and Mr. Post made the false and defamatory statements with specific intent to damage Lynx's reputation and business and to enrich MRI by taking business away from Lynx.

85. As a direct and proximate result of MRI's defamation, Lynx has suffered damages in an amount to be determined at trial.

86. As a direct and proximate result of MRI's defamation, Lynx has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by the Court.

## Count Two
*Commercial Disparagement*

87. Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

88. By making false and defamatory statements about Lynx, its services, its software products, and its business practices, MRI has unlawfully disparaged Lynx's goods and services in violation of Ohio's Deceptive Trade Practices Act, R.C. 4165.01-.04, and common law.

89. As a direct and proximate result of MRI's commercial disparagement, Lynx has suffered damages in an amount to be determined at trial.

90.     As a direct and proximate result of MRI's commercial disparagement, Lynx has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by the Court.

### Count Three
*False Advertising*

91.     Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

92.     By making false and defamatory statements about Lynx, its services, its software products, and its business practices, MRI has falsely advertised under the Lanham Act, 15 U.S.C. § 1125(a)(1).

2.     MRI's false advertising has damaged Lynx and is likely to continue damaging Lynx in an amount to be determined at trial.

3.     As a direct and proximate result of MRI's false advertising, Lynx has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by the Court.

### Count Four
*Tortious Interference with Contracts and Business Relationships*

93.     Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

94.     Lynx has existing contracts and business relationships with its clients who use MRI software, and it has prospective contracts and business relationships with other property managers that use MRI software, which Lynx targets with its advertising, marketing, and promotional efforts.

95. MRI has knowledge of Lynx's actual and prospective contracts and business relationships with users of MRI software, which MRI admits in the Post E-Mail by stating, "We are cognizant of the fact that some of our clients may currently use Lynx to supplement their normal business operations."

96. By making false and defamatory statements about Lynx, its services, its software products, and its business practices, MRI has tortiously interfered by preventing clients from further contracting with Lynx, causing clients to discontinue their work with Lynx, or causing clients to terminate their business relationships with Lynx.

97. As a direct and proximate result of MRI's tortious interferences, Lynx has suffered damages in an amount to be determined at trial.

**Count Five**
*Abuse of Process*

98. Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

99. Lynx primarily contends that MRI has no probable cause for filing this lawsuit. However, in the event the Court decides that MRI's claims are supported by probable cause, Lynx pleads this counterclaim for abuse of process in the alternative under Rule 8(d).

100. MRI has filed and maintained this action with the ulterior motive of destroying Lynx's business and taking Lynx's clients.

101. Among other things, MRI has abused process by publishing the Post E-Mail, which is not a proper act in the normal course of litigation, on the day it filed

the lawsuit to use the litigation to coerce Lynx's actual and prospective clients into doing business with MRI instead of Lynx.

102.    As a direct and proximate result of MRI's abuse of process, Lynx has suffered damages in an amount to be determined at trial.

**Count Six**
*Unfair Competition*

103.    Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

104.    MRI has unfairly competed against Lynx, in violation of Ohio common law, by filing and maintaining baseless litigation against Lynx with the malicious intent of embarrassing Lynx, destroying its business, and taking Lynx's MRI-related consulting work for itself.

105.    MRI has further unfairly competed against Lynx by, among other things, sending the false and defamatory Post E-Mail to Lynx clients.

106.    As a direct and proximate result of MRI's unfair competition, Lynx has suffered damages in an amount to be determined at trial.

**Count Seven**
*Breach of the 2002 Agreement*

107.    Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

108.    Lynx fulfilled all of its obligations under the 2002 Agreement.

109. Paragraph 9 of the 2002 Agreement recited a non-solicitation provision that prohibited MRI from soliciting for employment or employ any Lynx employee during the term of the agreement or for 180 days after termination.

110. MRI materially breached Paragraph 9 of the 2002 Agreement by soliciting and then hiring Lynx employee David Love in 2006.

111. As a direct and proximate result of MRI's breach, Lynx has suffered damages in an amount to be determined at trial. Those damages include, without limitation, the loss of Mr. Love's computer skills and his knowledge of, and experience with, various property management software products (including MRI's and Lynx's products), lost sales resulting from the loss of Mr. Love, and the costs to train Mr. Love's replacement.

### **Count Eight**
*Inducement of Breach of Vicky Nodzak Contract*

112. Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

113. Vicky Nodzak had worked for Lynx from 2007 to 2009.

114. Ms. Nodzak entered into a non-disclosure agreement with Lynx that prohibited her from disclosing confidential information about Lynx and its business operations to others (the "NDA").

115. The NDA is a valid and enforceable contract between Lynx and Ms. Nodzak.

116. Upon information and belief, at all relevant times, MRI had knowledge of the NDA.

117.    Lynx fulfilled all of its obligations under the NDA.

118.    MRI has actively induced Ms. Nodzak to breach the NDA by, for example, encouraging her to describe confidential information about Lynx and its business operations to MRI and to then recite at least some of that information in Ms. Nodzak's declaration, which MRI filed in this lawsuit in support of its preliminary injunction motion.

119.    Ms. Nodzak has materially breached the NDA by disclosing information to MRI and in her declaration that is restricted by the NDA.

120.    MRI acted with the intent to interfere with the NDA to obtain an unfair competitive advantage over Lynx, to damage Lynx, to enrich itself, and to further this bad faith litigation against Lynx.

121.    MRI acted with knowledge that its encouragement and other conduct was certain or substantially certain to cause Ms. Nodzak to breach the NDA.

122.    As a direct and proximate result of MRI's active inducement, Lynx has suffered damages in an amount to be determined at trial.

## Count Nine
*Declaratory Relief*
*(Copyright Misuse)*

123.    Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

124.    MRI claims to hold copyrights the software and related products that it offers for sale in interstate commerce.

125.  By requiring customers to sign agreements that purport to substantially restrict their ability to contract with third parties for service and support and by filing and maintaining this objectively baseless lawsuit, in bad faith,, MRI is attempting to obtain an unfair commercial advantage and unlawfully attempting to secure rights that are not within the scope of the privileges granted under copyright law.

126.  MRI's conduct accordingly constitutes an unlawful attempt to extend the scope of its exclusive rights under the copyright laws. MRI's conduct further violates the public policy underlying the copyright laws.

127.  There is a substantial controversy as a result of MRI's copyright misuse and its claim that Lynx (and MRI's customers) have infringed MRI's copyrights. Both Lynx and MRI's customers have been harmed, and are threatened with additional and irreparable harm, as a result of MRI's conduct.

128.  In accordance with the Declaratory Judgment Act, 28 U.S.C. 2201, Lynx requests that the Court declare that MRI's copyrights are unenforceable due to MRI's copyright misuse.

<u>**Count Ten**</u>
*Declaratory Relief*
*(Lynx's Ownership of Customizations)*

129.  Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

130.  MRI incorrectly contends that Lynx does not own the customizations to the MRI software that Lynx itself created.

131.    As a matter of law, Lynx is the author and rightful owner of all of the customizations that it created and neither the 2002 Agreement nor any other agreement provides otherwise.

132.    There is a substantial controversy between MRI and Lynx, which have adverse legal interests, regarding the ownership of Lynx's customizations of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

133.    In accordance with the Declaratory Judgment Act, 28 U.S.C. 2201, Lynx requests that the Court declare Lynx the rightful and exclusive owner of all customizations that it created.

**Count Eleven**
*Declaratory Relief*
*(Promissory Estoppel)*

134.    Lynx incorporates by reference all allegations in all other paragraphs of this counterclaim as if fully rewritten herein.

135.    Lynx pleads this declaratory claim in the alternative under Federal Rule of Civil Procedure 8(d)(2) in the event the Court denies Lynx the declaratory relief requested in Claim Ten.

136.    MRI promised Lynx that it would own all customizations to the MRI software that Lynx created.

137.    Lynx relied on MRI's promise to its detriment by investing significant dollars and man-hours in designing, building, and marketing customizations.

138.    Injustice can be avoided only by enforcing MRI's promises and declaring Lynx the true owner of all customizations that it created.

139. Lynx's reliance on MRI's promises was reasonable and foreseeable, especially because MRI knew, or should have known, that Lynx would only invest in making the customizations if it would own those customizations and be able to recoup its investments with unrestricted future sales.

140. There is a substantial controversy between MRI and Lynx, which have adverse legal interests, regarding the ownership of Lynx's customizations of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

141. In accordance with the Declaratory Judgment Act, 28 U.S.C. 2201, Lynx requests that the Court declare Lynx the rightful and exclusive owner of all customizations that it created.

## **Prayer for Relief**

**WHEREFORE**, having fully answered MRI's Complaint and pleaded its counterclaim, Lynx prays for judgment against MRI as follows:

(A)   Dismissal of MRI's complaint and all claims pled against Lynx.

(B)   Compensatory damages in an amount to be determined at trial.

(C)   An accounting and disgorgement of MRI's ill-gotten profits.

(D)   Punitive damages.

(E)   Attorneys' fees.

(F)   Pre-judgment and post-judgment interest.

(G)   Costs of the action.

(H)   Preliminary and permanent injunctive relief, barring MRI from committing any of the wrongful acts cited in this Counterclaim.

(I)     A declaration that MRI's copyrights are unenforceable against or with respect to Lynx due to MRI's copyright misuse.

(J)     A declaration that Lynx is the rightful and exclusive owner of all customizations that it has created.

(K)     A declaration that the Post E-Mail is false and defamatory, and an order that MRI:

    (i)     Retract the Post E-Mail; and

    (ii)    Provide written notice to each recipient of the Post E-Mail advising that person that the Court has ordered MRI to retract the Post E-Mail, that the Post E-Mail is false, that Lynx has done nothing wrong, and that the recipient should ignore the Post E-Mail and all of its content.

(L)     Such other and further relief as allowed at law or in equity that the Court deems appropriate and to which Lynx is entitled.

Respectfully submitted,

Dated: June 15, 2012

    /s/ David T. Movius
David T. Movius (OH 0070132)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474
dmovius@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

and

John T. McLandrich (OH 0021494)
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 │ f 440.248.8861
jmclandrich@mrrlaw.com

*Counsel for Lynx Systems, Inc.*

### Jury Demand

Lynx Systems, Inc., hereby demands a jury trial on all issues triable thereby.

/s/ David T. Movius
*Counsel for Lynx Systems, Inc.*

### Certificate Of Service

I hereby certify that on June 15, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

/s/ David T. Movius
*Counsel for Lynx Systems, Inc.*
