UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI SOFTWARE LLC, | ) | Case No. 1:12-cv-01082-CAB |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| LYNX SYSTEMS, INC., | ) | **PLAINTIFF'S MOTION TO COMPEL** |
| | ) | **DISCOVERY** |
| Defendant. | ) | |

Plaintiff, MRI Software LLC ("MRI"), submits this Memorandum in Support of its Motion to Compel Discovery.  MRI respectfully requests an order compelling Defendant, Lynx Systems, Inc. ("Lynx"), to produce documents responsive to MRI's Document Requests Nos. 7, 10, 11 and 12 by a date certain, and to make at least two of its employees, Howard Mednick and Garen Hagopian, available for deposition two weeks thereafter.  MRI additionally requests that Lynx be ordered to pay MRI's fees incurred in bringing this Motion.

### I. INTRODUCTION

Lynx's ongoing effort in this case to defer, delay and avoid the consequences of being caught violating MRI's proprietary rights is manifest in its continuing refusal to provide discovery to which MRI is unequivocally entitled.  As set forth more fully below, MRI has had requests outstanding for over six months for highly probative documents and things, including evidence that goes to the heart of Lynx's liability in this matter.  The discovery sought by MRI herein is necessary to resolution of this action under any circumstances, whether that be by trial on the merits or any alternative method.  Accordingly, MRI respectfully requests that Lynx be compelled to provide the requested discovery and to reimburse MRI for the expense of bringing this Motion.

{01815886.DOC;3 }

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 37 provides that a party may move for an order compelling a complete response to a discovery request where the opposing party has failed to respond. Fed. R. Civ. P. 37(a)(1); *see also Nilavar v. Mercy Health Sys.*, 210 F.R.D. 597, 610 (S.D. Ohio 2002) (granting motion to compel discovery). Rule 37(a)(3)(B) provides, in pertinent part, that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." This motion may be made if "a party fails to respond that inspection will be permitted – or fails to permit inspection" of documents.

Rule 26(b) provides that a party may obtain discovery regarding any matter that may be relevant to the subject matter involved in the pending action, without regard to whether the information will itself be admissible, provided the information sought is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); *see also Garth v. United Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D. Ohio 1993) (recognizing breadth of discoverable information); *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376, 378 (S.D.N.Y. 1996) (noting that "[A]ll that must be shown is that the discovery requested possibly might be relevant"). Indeed, the phrase "relevant to the subject matter involved in the action" has been construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

The party opposing discovery bears the burden of showing that information or materials withheld from discovery are protected by an asserted privilege or the work-product doctrine. *Bigeas v. Quickway Carriers, Inc*, 573 F.3d 365, 382 (6th Cir. 2009). Furthermore, evidentiary privileges are strictly construed in federal court. *See Trammel v. United States*, 445 U.S. 40, 50-

51 (1980); *Herbert v. Lando*, 441 U.S. 153, 175 (1979); *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972).

### III. ANALYSIS

MRI's good faith efforts to resolve the disputes raised herein are set forth in the Declaration of Georgia Yanchar in Compliance with Local Rule 37.1, which has been filed as Document Number 44. Referenced exhibits are attached to the foregoing declaration, and the relevant facts regarding these disputes are repeated below.

**A. Lynx Should be Compelled to Produce All Documents Responsive to Production Request No. 7**

Request No. 7 was served on June 20, 2012, and seeks:

> All agreements between Lynx and any Lynx MRI Customer concerning Lynx's provision of MRI Related Services, including without limitation all statements of work or descriptions of MRI Related Services to be provided by Lynx.

In its August 3 response, Lynx said it would "produce the documents requested as attorney's eyes only document production once said documents are identified." *See* Exh. A, 8/22/12 Lynx Responses to MRI's First Set of Requests for Production. On August 22, MRI sent a letter asking when to expect the responsive documents. *See* Exh. B, 8/22/12 Letter Yanchar to Movius. With reference to Request No. 7 and other discovery requests, on September 13, Lynx wrote:

> These requests required Lynx to review all of their paper files and all of their electronic files to cull out the information your [sic] are seeking. *While the civil rules may ultimately require that level of effort, we are not in a position to produce those documents to you at this time.* We are attempting to identify an efficient mechanism for the production of these records and we will update you accordingly with respect to that outcome.

Exh. C, 9/13/12 Letter, McLandrich to Yanchar (emphasis added). Thus, Lynx acknowledged that the Civil Rules required Lynx to expend the effort to collect the responsive documents, but failed to provide a date certain by when they would be produced.

At the September 25 deposition of Lynx's President, Don Robinson, MRI learned that at least one form of Lynx's statements of work for clients are called "PSOs," which stands for Professional Services Order.  Exh. D, Robinson Dep. Tr., p. 32.  Mr. Robinson testified that Lynx maintains its PSOs on a server, and a record is kept of all of them.  *Id*., pp. 44-45.  Mr. Robinson also testified that in some cases, Lynx also has a professional services agreement, and that those documents are kept in a client file going back to 2002.  *Id*. at pp. 44-45.  These documents are clearly responsive to Request No. 7, and based on Mr. Robinson's testimony, appear to be readily identifiable.

The next day, MRI asked Lynx to expedite its production of a small subset of the responsive PSOs, which were relevant to the parties' then-ongoing negotiations of a Consent Judgment.  *See* Exh. E, 9/26/12 Email Yanchar to McLandrich.  On November 28, having failed to receive any PSOs or other documents responsive to Request No. 7, MRI sent another follow up letter.  Exh. F, 11/28/12 Letter Yanchar to McLandrich.  MRI informed Lynx that in the absence of a firm commitment to produce the responsive documents by a date certain, MRI intended to move the Court to compel their production.  *Id.*  On December 6, Lynx sent a small group of PSO's (67 pages), apparently in response to MRI's September 26 request.  *See* Exh. G, 12/6/12 Email McLandrich to Yanchar (without attachment).

On December 19, Lynx supplemented some of its discovery responses, but failed to provide any additional documents responsive to Request No. 7.  Yanchar Decl., ¶ 9.  On January 11, MRI sent another letter requesting the responsive documents, and asking Lynx to confirm it had made reasonable efforts to collect, not just the PSOs but also all other responsive documents reflecting formal or informal agreements to provide MRI related services.  *See* Exh. H, 1/11/13 Letter Yanchar to McLandrich.  In hopes of avoiding bringing this issue to the Court's attention, MRI followed up again by email on January 24.  Exh. I, 1/24/13 Email, Yanchar to McLandrich.  Other than the 67 pages produced by Lynx on December 6, Lynx has produced no documents

responsive to Request No. 7, and provided no commitment as to a time by which Lynx will provide such documents.  Yanchar Decl., ¶ 12.

Agreements and descriptions of work setting forth Lynx's promises to provide MRI Related Services are likely to be highly probative as to many, if not all, of MRI's 17 claims against Lynx.  Knowing what Lynx has promised its customers it can do using MRI Software is strong evidence of the work Lynx has actually performed using MRI Software.  The documents are likely to show the manner and extent of Lynx's copyright infringement, and other misconduct   Further, the documents are not only relevant to liability, but also are highly probative of MRI's damages.  They are also critical to framing the appropriate scope of permanent injunctive relief in the case.  *Discovery of the responsive documents is thus an absolute prerequisite to this case being resolved*.

In sum, Lynx has already acknowledge the "civil rules may ultimately require th[e] level of effort" to collect the documents responsive to Request No. 7, but Lynx has simply refused to do the work to collect them.  *This request has now been pending for over half a year.*  The time is past due for Lynx to do the work.  Accordingly, MRI respectfully requests that Lynx be compelled to make a reasonable effort to search its servers for all documents responsive to Request No. 7, and to produce the foregoing documents by a date certain.

### B. Lynx Should be Compelled to Produce All Documents Responsive to Production Request No. 10.

MRI's Request No. 10, also served on *June 20, 2012* seeks:

> All documents and things (specifically including but not limited to electronic files on Lynx's network, servers, memory devices or other computer hardware) manifesting or reflecting Lynx's possession or storage of or access to any MRI Software, including specifically all Customizations and Enhancements.

In its August 3 response, Lynx indicated it would produce the responsive MRI Software, Customizations, and Enhancements in its possession, custody or control.  Exh. A, 8/3/12 Lynx Responses to MRI's First Set of Requests for Production.  On August 22, MRI inquired as to when to expect the responsive documents, and the manner (file format) in which Lynx intended

{01815886.DOC;3 }

5

to produce them.  Exh. B, 8/22/12 Letter Yanchar to Movius.  As discussed above, on September 13, Lynx wrote back, acknowledging that the Civil Rules required Lynx to do the work to collect the responsive files, but failing to provide a date certain when the files would be provided.  Exh. C, 9/13/12 Letter McLandrich to Yanchar.  17.  On November 28, having still failed to receive any documents or files responsive to Request No. 10, MRI sent another follow up letter.  Exh. F, 11/28/12 Letter Yanchar to McLandrich.  MRI informed Lynx that in the absence of a firm commitment to produce the responsive documents by a date certain, MRI intended to move the Court to compel their production.  *Id.*

On December 19, Lynx served a supplemental response to Document Request No. 10 stating "Lynx does not have documents beyond those previously produced reflecting possession of MRI software and is currently not in possession of MRI software beyond that of the hosted customers pursuant to the software destruction component of the Stipulated Injunction Order."  *See* Exh. J, 12/18/12 Supplemental Response to MRI's First Set of Requests for Production.[1]

On January 15, MRI wrote to Lynx concerned Lynx had destroyed more than "MRI Software" as defined in the November 9 Injunction Order, including all or some of the infringing Customization and Enhancement files at issue in this case. *See* Exh K, 1/15/13 Letter Yanchar to McLandrich.  MRI requested that Lynx provide a description of the actions taken in alleged compliance with paragraph 1 of the Injunction, including specifically, a detailed description of what Lynx destroyed and an identification of the people involved.  *Id.*  On January 31, Lynx's counsel wrote:

> With respect to destruction of files, *I have confirmed with the client that the customizations and Enhancements created by Lynx Systems have not been destroyed.*  What has been destroyed were the MRI software and enhancements obtained by Lynx from MRI, excluding those representing the hosted clients.  My understanding of what was destroyed is the items listed in response to Interrogatories 3 and 4.[2]

---

[1] This document is dated December 18, but was emailed to undersigned counsel on December 19.
[2] MRI also served an interrogatory asking Lynx to "[d]escribe in detail all steps taken by Lynx to comply with the Preliminary Injunction Order."  Lynx's January 16 response provides even less information than Lynx's January 31 letter.  MRI also notes that quoted passage from Lynx's January 31 is internally inconsistent in describing what

{01815886.DOC;3 }

Exh. L, 1/31/13 McLandrich to Yanchar (emphasis added). Lynx's January 31 letter make clear that, contrary to Lynx's December 19 supplemental responses, Lynx *is in possession* of responsive files. However, despite MRI's repeated requests, Lynx still failed to provide any commitment to produce them.

The responsive Customization and Enhancement files are indisputably relevant to MRI's copyright infringement, computer fraud and other claims. Indeed, by definition, the responsive files all constitute MRI Software, or modification thereto.[3] Moreover, Lynx has admitted in its responses to MRI's interrogatories that all, if not most, of the Customization files it has created on behalf of MRI Software users were created with the MRI Toolkit, which is a part of the MRI Software.[4] Thus, discovery of the requested files is central to MRI's copyright infringement and other claims. It is likely to show the extent of Lynx's misconduct, as well as the ways in which Lynx has misappropriated the MRI Software. Moreover, Production Request No. 10 has been pending *since June*. Lynx has provided no explanation as to why it is burdensome for Lynx to copy the requested files from its servers and produce them. In short, there is no excuse for Lynx's continued failure to either produce the responsive files, or make them available for MRI's inspection. Accordingly, MRI respectfully requests that Lynx be compelled to do so by a date certain.

### C. Lynx Should be Compelled to Produce All Documents Responsive to Production Request Nos. 11-12.

MRI's Requests Nos. 11 and 12 seek:

---

Lynx did and did not destroy. The files responsive to Request No. 10 may be informative of that issue, and thus are relevant not only to MRI's claims, but also to Lynx's compliance with the November 9, 2012 Stipulated Injunction Order. In any event, it is clear that Lynx remains in possession of files responsive to MRI's Request No. 10 and that those files should be produced to MRI.

[3] MRI's Production Requests contain the following definitions:

> Customization. The term "Customization" means any modification to the MRI Software, or any reports or interfaces within the MRI Software, which are not effected through source code changes, including without limitation, any modifications made using the MRI Application Tool Kit.
>
> Enhancement. The term "Enhancement" means new releases, upgrades, updates, patches, hot fixes and other modifications to the MRI Software, which are effected through source code changes.

[4] Because Lynx designated these portions of its Interrogatory Responses CONFIDENTIAL under the Protective Order, they are not attached hereto.

{01815886.DOC;3 }

> All correspondence between Lynx, or any one acting on Lynx's behalf, and anyone acting on behalf of any insurer of Lynx, including without limitation, any documents constituting or referring to any reservation of rights, or that concern or reference potential insurance coverage for any of the claims that MRI has asserted against Lynx.
>
> All documents that refer to, reflect or discuss any obligation to defend or indemnify Lynx for any claim by MRI, or any limitations or any such obligations.

Throughout the litigation, including at every conference with the Court,[5] Lynx has entreated MRI to explore a negotiated resolution of its claims. During this time, the parties negotiated a Stipulated Injunction Order resolving MRI's Motion for Preliminary Injunction. Yet, the parties have made little progress in negotiating a monetary settlement amount. The action, or inaction, of Lynx's insurer, appears to be a primary impediment to resolution.

Pursuant to its initial disclosure obligations under Federal Rule of Civil Procedure 26, in July 2012, Lynx produced agreements between Berkley Insurance Company and Lynx System, Inc., which Lynx identified as providing indemnity in this matter for some or all of MRI's claims. Yanchar Decl., ¶ 23. MRI's review of those documents revealed that Lynx holds applicable professional services, commercial general and electronic media liability policies. *Id*., ¶ 24.

Only July 31, MRI made a monetary demand for settlement, which, at Lynx's request, MRI subsequently backed up with detailed underlying data, assumptions and calculations. *Id*., ¶ 25.

On August 22, MRI served Production Request No. 11 and 12, reproduced above. On the basis of non-relevance, Lynx refused to provide the responsive documents. *See* Exh. M, Lynx's 9/24/12 Objections and Responses to MRI's Second Set of Requests for Production.

On September 5, Lynx made a counteroffer of settlement, which was not supported by any data or calculations, but rather was apparently reflective of Lynx's insurer's position that

---

[5] Conferences with the Court were held on June 20, July 12, August 9 and September 18, 2012.

{01815886.DOC;3 }

only Lynx's professional services liability policy, and not Lynx's commercial general liability or electronic media liability policies, are implicated by MRI's claims.  Yanchar Decl., ¶ 27.

On September 27, MRI's counsel sent a letter to Lynx's counsel, requesting that Lynx produce the documents responsive to Request Nos. 11 and 12.  *See* Exh. N, 9/27/12 Letter from G. Yanchar to J. McLandrich.  The September 27 letter set forth MRI's analysis showing that, in addition to Lynx's professional services liability policy, Lynx's commercial general liability and electronic media liability policies were also implicated by MRI's claims, and the general basis for MRI's view.  *See id.*

For approximately the next two months, MRI continued to request from Lynx, and await, a renewed offer of settlement, which Lynx's counsel repeatedly promised would be forthcoming and was reportedly delayed by the ongoing analysis purportedly being conducted by Lynx's insurer.  Yanchar Decl., ¶ 29.  On November 20,  Lynx's counsel indicated that Lynx's insurer had finally completed its coverage analysis, and maintained its position that only Lynx's professional services liability policy is implicated by MRI's claims.  *Id.*, ¶ 30.  Lynx provided no explanation for the insurer's apparent rejection of the coverage position set forth in MRI's September 27 letter.  *Id.*

On November 28, counsel for MRI sent a follow up letter again requesting that Lynx produce the documents responsive to Request Nos. 11 and 12, and cure other discovery deficiencies.  *See* Exh. F, 11/28/12 Letter from G. Yanchar to J. McLandrich.  On December 19, Lynx served supplemental discovery responses, wherein Lynx stood by its objections to MRI's Requests for Production 11 and 12 on the basis of relevance.  Additionally, Lynx belatedly asserted that "[t]hese are privileged documents."  *See* Exh. 0, Lynx's 12/18/12 Supplemental Responses to MRI's Second Set of Document Requests.  Lynx provided no privilege log, nor any factual basis whatsoever to support its claim of privilege.  *Id.*  On the same date, Lynx finally provided a renewed settlement offer.  However, the offer, like Lynx's original September 5 offer, appears to be also be reflective of Lynx's insurer's position.  Yanchar Decl., ¶ 33.

On January 11, MRI again wrote to Lynx providing requested legal authority for production of the requested documents.  *See* Exh. H, 1/11/13 Letter Yanchar to McLandrich.  On January 24, Lynx's counsel responded:  "I would be willing to recommend to the client to agree to produce the reservation of rights letters, if MRI was willing to mediate this case."  Exh. I, 1/24/13 Email McLandrich to Yanchar.  However, the next morning, Lynx issued a mass communication to the real estate market, which became a central topic of  MRI's February 5 Motion to Show Cause Why Lynx Should Not Be Held in Contempt.  Doc. 40.  As set forth therein, Lynx's actions since the November 9, 2012 Injunction Order have not been conducive to mediation or any other negotiated resolution.  Moreover, it is wholly improper for Lynx to make MRI's agreement to mediate a precondition to Lynx's production of documents, which, as discussed below, are clearly relevant and non-privileged.

As an initial matter, even assuming, *arguendo*, that any cognizable privilege existed as correspondence between Lynx and its insurers, any such privileged was waived by Lynx's failure to assert privilege in its original response to Production Request Nos. 11 and 12.  *See* Exh. A, Lynx's 8/3/12 Response to MRI's First Set of Requests for Production.

Moreover, the requested documents clearly are *not* privileged.  Federal courts have never recognized an insured-insurer privilege as such.  *See Linde Thomson v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993).  Rather, it is well settled that the determination of whether the attorney-client privilege attaches to an insured-insurer communication turns on the nature and purpose of the communication.  "[A] statement betraying neither interest in, nor pursuit of, legal counsel . . . does not come within the ambit of the privilege."  *Id*. at 1515; *see also  In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS),1993 WL 561125, *7 (S.D.N.Y. Dec. 23, 1993) (quoting *Linde*, 5 F.3d  at 1515); *see also Aiena v. Olsen*, 194 F.R.D. 134, 136 (S.D.N.Y. 2000).

Communications from Lynx to its insurers for the purpose of seeking coverage or indemnity do not fall within the scope of attorney client privilege.  As in *Linde*, in the communications responsive to MRI's document requests, what is being sought by Lynx is

insurance, not legal advice.  Nor would such communications reflect attorney work product.  *See Linde*, 5 F.3d at 1516 ("Courts . . . have frequently declined to find insured-insurer communications within the penumbra of the work-product doctrine.").  Further, to the extent any work product were arguably reflected in such a communication, it would be waived upon sharing with Lynx's insurers, because the insurers and Lynx are clearly adverse as to coverage issues.

Likewise, communications from Lynx's insurers to Lynx constituting any reservation of rights, or reflecting or discussing any obligation to defend or indemnify, would not be for the purpose of providing legal advice but rather for the purpose of conveying a coverage position.  Because Lynx and its insurers have adverse positions as to coverage, no common interest protects such communications.  Thus, there is no reasonable expectation of privacy as to such communications, and no privilege or immunity protects them.

In the unlikely event any communications have been made between Lynx and its insurers for the purpose of seeking or providing legal advice, under circumstances where a reasonable expectation of privacy does in fact, exist, Lynx must, at a minimum, provide a privilege log substantiating its privilege or work product claim.  Lynx's belated December 19 conclusory assertion that "these are privileged documents" is clearly insufficient.  *See* Exh. K; Fed. R. Civ. P. 26(b)(5); *Pfizer,* 1993 WL 561125 at * 2 (mere conclusory assertions do not satisfy burden to establish the facts that demonstrate the existence of the attorney-client privilege or work product).

As to relevance, there can be no question that Production Request Nos. 11 and 12 fall within the very broad scope of discovery permitted by Rule 26(b)(1).  If Lynx made or transmitted, *e.g.*, any statements of fact to its insurers about the events that occurred during the period of time relevant to this dispute, those statements are likely to be relevant to MRI's claims.

Moreover, as discussed above, months passed during which MRI awaited Lynx's offer of settlement.  During this time, Lynx reported the delay was due to the ongoing analysis purportedly being conducted by its insurer.  On November 20,  Lynx indicated that its insurer

had finally completed its coverage analysis, and maintained its position that only Lynx's professional services liability policy is implicated by MRI's claims. MRI received no explanation of the insurer's apparent rejection of MRI's conclusion that Lynx's commercial general liability and electronic media liability policies are also implicated by MRI's claims, for the reasons set forth in MRI's September 27 letter. Moreover, Lynx's December 19 offer of settlement appears to be reflective of the insurer's unsupported position. Lynx's insurer's delays and positions have impeded the resolution of this case. To determine whether such positions and delay have been justified, and fully assess the value of claims, MRI is entitled to discover the non-privileged communications that have transpired over the past several months regarding insurance coverage.

In sum, Lynx has failed to provide any legal authority for its objections to Production Requests Nos. 11 and 12. Nor are Lynx's objections well-founded. The insurer's apparent delays and reported positions have impeded the resolution of this case. To determine whether this dilatoriness has been justified, MRI is entitled to discover the non-privileged communications that have transpired over the past several months regarding insurance coverage and what efforts have been taken to analyze the insurance coverage issues.

**D. Lynx Should be Compelled to Make Its Witnesses Available for Deposition.**

On December 13, 2012, MRI served notices of deposition for Howard Mednick and Garen Hagopian. MRI received no response to the notices. MRI sent a follow up letter on January 11, and a follow up email on January 24, which also await Lynx's response. Exh. H, 1/15/13 Yanchar to McLandrich; Exh. I, 1/24/13 Yanchar to McLandrich. Lynx has still not provided any commitment to make the foregoing witnesses available for deposition, nor any response whatsoever as to the foregoing requests. Yanchar Decl., ¶ 40.

Mr. Robinson testified that Mr. Hagopian is the person most knowledgeable regarding the manner in which Lynx assists MRI Software users with implementation of Enhancements. Exh. D, Robinson Dep. Tr., p. 43, 63-64. Lynx's response to MRI's Interrogatory No. 5 identifies

Mr. Mednick as having responsibility for development of Customizations of the MRI Software on behalf of Lynx-MRI customers.  The documents responsive to Production Request Nos. 7 and 10 are relevant to the foregoing issues.  Accordingly, MRI expects the testimony of Messrs. Hagopian and Mednick regarding to the responsive documents to be highly probative of several of MRI's claims, including its claims for copyright infringement and computer fraud.  As discussed above, discovery as to these subjects is needed to show the extent of Lynx's misconduct, as well as the ways in which Lynx has misappropriated the MRI Software.  Thus, this discovery is critical to evaluating MRI's damages and framing the appropriate scope of permanent injunction relief in the case.

Accordingly, MRI respectfully requests an order compelling Lynx to make Messrs. Hagopian and Mednick available for deposition two weeks following Lynx's production of the documents responsive to Requests for Production 7, 10, 11 and 12.

### E. Lynx Should Be Ordered to Pay MRI's Expenses Incurred in Bringing this Motion.

As discussed above, without excuse, Lynx has simply refused to provide discovery in response to Production Requests 7, 10, 11 and 12, and has refused to make its witnesses available for deposition.  Lynx's discovery misconduct has forced MRI to seek the Court's intervention and to file this Motion.  The Federal Rules of Civil Procedure contemplate reimbursement of the movant's fees in these circumstances:

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – *the court must*, after affording an opportunity to be heard, *require the party* or deponent *whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees* [unless] the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  Because Lynx's failure to produce documents and make its witnesses available is not substantially justified, and because MRI repeatedly attempted in good faith to obtain the disclosure without Court action, Lynx should be required to pay MRI's fees incurred in bringing this Motion.  Indeed, in these circumstances, the award of expenses appears to be mandatory. *Id.; Foxley Cattle Co. v. Grain Dealers Mutual In. Co.*, 142 F.R.D. 677, 679 (S.D. Iowa 1992).

## IV.     CONCLUSION

For the reasons above, MRI respectfully requests that the Court enter an order compelling Lynx to comply with Federal Rule of Civil Procedure 34 and produce documents responsive to MRI's Requests Nos. 7, 10, 11 and 12, and that Lynx make Messrs. Hagopian and Mednick available for deposition two weeks thereafter.  MRI additionally requests that Lynx be ordered to pay MRI's fees in bringing this Motion, and for all further relief as the Court deems just and proper.

Respectfully submitted,

DATED:  February 7, 2013

Signature  /s/ Georgia Yanchar
Daniel McMullen (0034380)
Georgia Yanchar (0071458)
CALFEE, HALTER & GRISWOLD, LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH  44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
dmcmullen@calfee.com
gyanchar@calfee.com

Counsel for MRI Software, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2013, a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and parties may access this filing through the Court's System.

>*/s/ Georgia E. Yanchar*
>One of the Attorneys for Plaintiff