UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MRI SOFTWARE, LLC, | ) CASE NO.: 1:12-CV-01082 |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) **DEFENDANT LYNX SYSTEMS, INC.'S BRIEF IN OPPOSITION TO MRI SOFTWARE, LLC'S MOTION TO SHOW CAUSE** |
| LYNX SYSTEMS, INC., | |
| Defendant. | |

Now comes Defendant, Lynx Systems, Inc. (hereinafter "Lynx"), and hereby files its opposition to MRI Software, LLC's (hereinafter "MRI") Motion to Show Cause (hereinafter "Motion to Show Cause") why Lynx should not be held in contempt for violation of the November 9, 2012, Stipulated Injunction Order (the "Stipulated Injunction").

While MRI makes reference to a clear and convincing evidence standard, its Motion to Show Cause falls well short of producing evidence that could satisfy that standard in support of its Motion and Lynx is not otherwise in violation of the Stipulated Injunction. Despite the sheer volume of its filing—more than 125 pages long—MRI does not name even a single customer to which Lynx allegedly provided any services prohibited under the Stipulated Injunction. Thus, it appears that MRI's real goal is to wield the Stipulated Injunction as yet another sword in its ongoing quest to eviscerate Lynx's business. Such behavior is both inequitable and anticompetitive, and misuses this Honorable Court's Stipulated Injunction Order in an inappropriate and abusive fashion. Lynx therefore asks the Court to deny MRI's motion and order MRI to cease and desist from such behaviors.

{4195487:2}

**MEMORANDUM IN OPPOSITION**

**I.       INTRODUCTION**

Lynx is a Canadian technology consulting firm for the real estate industry and MRI sells software to the real estate industry. For more than a decade, Lynx helped MRI gain a foothold in Canada by promoting MRI's software and customizing it to meet the particular needs of the Canadian market. Now that Lynx has established a market for MRI's software in Canada, MRI's ownership has triggered shock-and-awe litigation to push its former partner, Lynx, completely out of the very market that Lynx helped to create. Lynx, however, has done nothing wrong, and certainly nothing to warrant MRI's over-the-top litigation tactics, which include extensive motion practice over matters ranging from the picayune details of a routine extension of time (*see* ECF # 13, Motion to Clarify, *denied by* ECF # 20) to the serious—but utterly unsubstantiated—allegations of contempt in MRI's current filing.

MRI initiated this case on May 1, 2012, by filing a 280-paragraph, 55-page complaint, plus 163 pages of exhibits. (ECF # 1.) MRI also filed a motion for preliminary injunction that included an over-length 31-page memorandum in support and 423 pages of exhibits, including 4 declarations, without leave to exceed the standard 15-page limit. (ECF # 6.) After the Court granted MRI five additional pages, but not the 16 extra pages it sought (*see* 5/23/12 Marginal Order), MRI essentially re-filed the same 31-page injunction brief, sans parentheticals, using a smaller font and margins to meet the Court's page limit. (ECF # 18.) Shortly thereafter, MRI admitted during a status conference to manipulating the layout of its brief and agreed to file yet another revised version after the parties completed some initial, narrow discovery. (*See* 6/11/12 Minutes.) That, in turn, prompted MRI to negotiate an initial stipulation to preserve the *status quo* (ECF # 31, Stipulation), followed by the Stipulated Injunction, which was crafted to protect *both* MRI's *and* Lynx's interests during the course of this case, rather than go through the costly,

{4195487:2}                                                     2

time-consuming and uncertain exercise of having MRI draft and file its third preliminary injunction brief, with Lynx's opposition, MRI's reply and an evidentiary hearing to follow.

Now, however, MRI appears intent on leveraging the Stipulated Injunction in an anticompetitive nature by asking the Court to construe it as granting far greater relief than MRI could obtain on the merits of its claims. Even more troubling, MRI does so without even a shred of actual evidence and without identifying by name even a single customer to which Lynx allegedly provided prohibited services. Instead, it relies exclusively on its own speculation of what Lynx may or could have done based on a handful of Lynx's statements that are both truthful and compliant with the Stipulated Injunction. The Court should not credit MRI's abusive and unsupported tactics, by which it wields the Stipulated Injunction and the specter of a contempt finding in an attempt to force this case to a premature and unwarranted conclusion.

That MRI leads its brief with a procedural quibble over the scope of Lynx's compliance certification speaks volumes telling. While MRI represents that it tried to resolve that issue without the Court's involvement, that simply is not so. In truth, Lynx offered to broaden its Notice of Compliance to address the exact concerns raised by MRI. There was a three week window between the date of the Stipulated Injunction and the date of certification, during which Lynx destroyed copies of the MRI Software as required by Section 1 of the Stipulated Injunction. (*See* ECF # 37, Confirmation of Compliance.) That was the *only* affirmative conduct required under the Stipulated Injunction; the remaining terms are prospective and thus not capable of being certified in the manner that MRI apparently desires. Nonetheless, Lynx offered to re-certify its compliance with the Stipulated Injunction, and it remains willing to do so now. Thus, to the extent the Court interprets the Stipulated Injunction as requiring a prospective certification, Lynx will do so as it has been, and remains, in full compliance with all of the terms of that order.

Beyond that, MRI's Motion lays bare its desire to use the Stipulated Injunction as a sword to punish Lynx and to achieve its goals of eviscerating its business, rather than simply protecting MRI from copyright infringement or other unlawful behavior. As will be shown by Lynx below, each of MRI's allegations is without merit and MRI's Motion to Show Cause should be denied by this Honorable Court.

II.  **LAW AND ARGUMENT**

    A.  <u>**Legal Standard**</u>

Before the Court may issue an order compelling Lynx to appear before it to show cause as to why it should not be held in contempt of the Stipulated Injunction, MRI must establish "by clear and convincing evidence" that Lynx "violated a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts[.]" *Rolex Watch U.S.A. Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). Under this requirement, courts are to strictly construe "'court decrees to mean rather precisely what they say,' and ambiguities must be resolved in favor of persons charged with contempt." *Grace v. Center for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996) (quoting *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.)). MRI cannot meet this exacting standard, so its motion should be denied.

    B.  <u>**Lynx Has Not Advertised or Distributed the "Lynx Products"
in Violation of Sections 2(b) or 2(k) of the Stipulated Injunction**</u>

MRI first alleges that Lynx has violated sections 2(b) and 2(k) of the Stipulated Injunction by "continuing to advertise and distribute" what MRI calls the "Lynx Products." (MRI Br. at 3.) In making that allegation, however, MRI misquotes the Stipulated Injunction, and it otherwise does not identify any evidence of a violation of the actual the Stipulated Injunction as it was entered by the Court. The record therefore does not include clear and convincing evidence that Lynx has violated sections 2(b) or 2(k) of the Stipulated Injunction.

MRI does not rely on the actual language of the Stipulated Injunction to support its allegation. Instead, it selectively quotes—and *misquotes*—that order, stating as follows:

> Paragraphs 2(b) and 2(k) of the Order thus prohibit Lynx from "copying or distributing any copy" of the listed "Lynx Products," and from "making any reference to them," or from "offering or advertising" them on any Lynx website.

(MRI Br. at 3.) The Stipulated Injunction does not enjoin anything with respect to the "Lynx Products," as that term is not defined or used anywhere in the order. That is significant, because the Stipulated Injunction also does not enjoin Lynx from "making any reference to *them*," as MRI claims; rather, it enjoins Lynx from "making any reference to the 'MRI Report Library,' 'Lynx-Products MRI,' [or] 'Multi-Report Tool[.]" (Stipulated Order § 2(k).) MRI does not identify any post-injunction reference by Lynx to the "MRI Report Library," "Lynx-Products MRI" or the "Multi-Report Tool," so it has not presented clear and convincing evidence that Lynx has violated Section 2(k) of the Stipulated Order.

MRI's allegation also fails because the Stipulated Injunction does not broadly enjoin Lynx from "offering or advertising" those specific products or other Customizations. On the contrary, the Stipulated Injunction enjoins Lynx from "offering or advertising *for resale* any Customizations" (Stipulated Injunction § 2(k); emphasis added) and from "copying or distributing any copy … of any of the Customizations described" in the exhibits to the Stipulated Injunction (*id.* § 2(b)). While Lynx lists certain products on its website, it does not advertise or offer them for resale. Rather, Lynx merely identifies those products as examples of the work Lynx has performed for clients in the past, stating: "Below are some of the customizations *that we have previously developed for MRI users*." (*See* PageID # 1196; emphasis added.) That is neither an offer for resale nor advertisement for resale, and Lynx has not otherwise offered or advertised those products for resale. It therefore is not surprising that MRI does not identify a single instance where Lynx copied or distributed any of those products, either. MRI thus has not

come forward with clear and convincing evidence that Lynx has violated either Section 2(b) or 2(k) of the Stipulated Injunction and its motion should be denied on that basis.

      **C.    Lynx Has Not Accessed the MRI Software or Provided Any Prohibited Services in Violation of Section 2 of the Stipulated Injunction**

MRI next claims that Lynx has violated various provisions of Section 2 of the Stipulated Injunction by providing prohibited services to certain MRI customers. In support, MRI offers a lengthy narrative of the parties' negotiations and other facts that ultimately have no relevance to whether Lynx has violated the proscriptions contained within the four corners of the Stipulated Injunction. Lynx therefore will not respond point-by-point to MRI's narrative recitation. It will, however, respond directly and in detail to MRI's three specific allegations, which are that Lynx violated the Stipulated Injunction by: (1) offering to provide services prohibited under that section; (2) accessing user systems using an online tool known as WebEx; and (3) building and implementing reports with third party tools that access the MRI Software.

          1.    Lynx's Communications Did Not Violate the Stipulated Injunction

MRI first argues that a December 18, 2012, blog post evidences multiple violations by Lynx. Not so. In that post, entitled "Document Management for MRI & Yardi users," Lynx truthfully stated that it has provided services including "support, training, customizations, assessments, installation of updates, integration of 3rd party software, monitoring, hosting [and] conversions" for users of *both* MRI *and* Yardi (an MRI competitor) systems and that those services continue to be a "major focus" for it. (*See* PageID # 1239.) Lynx did not, however, say that it has provided those services to any "Master Agreement Signatory" as required for there to be a violation. The blog post therefore does not admit any violation of the Stipulated Injunction.

Because the Stipulated Injunction in relevant part restricts only services to a "Master Agreement Signatory," MRI's allegation that "Lynx has been put on written notice that 1070 of

MRI's customers, equaling 82% of all MRI Software licensees, are Master Agreement Signatories" warrants particular attention. MRI has not put Lynx on "written notice" of who those alleged signatories are as required by Section 3(b) of the Stipulated Injunction. Rather, MRI merely has supplied lists of customers to Lynx's counsel, but not Lynx itself, which it has marked as "Attorneys' Eyes Only." (Stipulated Injunction § 3(b).) Lynx itself therefore has no way of knowing whether a particular customer is a Master Agreement Signatory. That is more than a formality, as Lynx must have actual notice of what is prohibited before it can be held in contempt. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.").

That also is significant because MRI itself appears unclear on which customers are "Master Agreement Signatories." David Post, MRI's Chief Executive Officer, represented in paragraph 10 of his declaration in support of MRI's preliminary injunction motion the existence of some 4500 MRI installations in 41 countries, including approximately 3400 installations in the United States alone. (Post Declaration, ECF # 6-3, ¶ 10.) Yet in its present motion, MRI states that "1070 of MRI's customers, equaling 82% of all MRI Software licensees, are Master Agreement Signatories." (MRI Br. at 5.) That does not add up, because if 1070 customers equals 82% of MRI's licensees, that means MRI only has 1305 licensees in total. Somewhere there is a disconnect in MRI's math. Lynx therefore requests that the Court deny MRI's motion since none of its licensees meet the express definition of a "Master Agreement Signatory." Otherwise, to the extent the Court is inclined to enforce the Stipulated Injunction at all with respect to those licensees, it should compel MRI to identify each and every alleged Master Agreement Signatory

*to Lynx* without an "Attorneys' Eyes Only" designation and allow Lynx to file a supplemental opposition brief to the extent necessitated by MRI finally providing that information.

Beyond its failure to actually identify the alleged Master Agreement Signatories, MRI's allegations regarding the services listed in Lynx's blog post are nothing more than speculation as to how Lynx *could* or *may* have violated the Stipulated Injunction. That mere speculation is not evidence of a violation, let alone clear and convincing evidence as required for MRI to meet its burden. Instead, MRI had to identify at least (i) the licensee to whom Lynx provided the services at issue, (ii) what services Lynx *actually* provided to those licensees, (iii) how Lynx provided those services (*e.g.,* did it actually access or modify the MRI Software?), and (iv) evidence that it notified Lynx that each licensee in question is a "Master Agreement Signatory." MRI does not identify even a single Master Agreement Signatory by name, much less provide clear and convincing evidence of an actual violation. MRI's arguments regarding Lynx's blog post therefore fail to establish a violation of any provision of the Stipulated Injunction.

Finally, Lynx's January 25, 2013, letter does not constitute a violation of the Stipulated Injunction. In it, Lynx correctly states that it cannot provide certain services without MRI's approval, but MRI can authorize Lynx to perform many, if not all, of those services. While the Stipulated Injunction precludes Lynx from providing a number of services, the restrictions apply *only if the customer is a Master Agreement Signatory*. (*See, e.g.,* Stipulated Injunction §§ 2(c)-(e), (g).) Again, MRI has not identified any Master Agreement Signatories to Lynx, so Lynx has no way of knowing whether a given licensee is a Master Agreement Signatory. Lynx therefore had to inform every licensee with whom it does business that they need to check with MRI before Lynx provides certain services. That solely is the result of MRI's own actions, so it should not be heard to complain that Lynx told MRI's customers to check with MRI in advance.

MRI's cry of harm rings hollow since it steadfastly has refused to grant permission to any of its licensees who have asked for it, which is its prerogative. However, its prerogative to say "no" does not somehow mean that its customers do not have the privilege of asking. It also does not mean that Lynx cannot suggest that customers should seek MRI's permission, as there is nothing prohibiting that in the Stipulated Injunction. Lynx therefore was completely within its rights to inform customers that, if they are a "Master Agreement Signatory" and want to receive services from Lynx, they should need seek MRI's agreement. If MRI were to agree, the Stipulated Injunction would not apply, as the customer would not be as a "Master Agreement Signatory," either by waiver or renegotiation of the applicable agreement provisions.

MRI's position is particularly problematic given that Lynx has lawfully and legitimately sold Customizations to a number of MRI licensees that require support from time to time. Lynx finds it hard to imagine that MRI actually is taking the position that the Stipulated Injunction prohibits Lynx from providing those services even if MRI were to grant permission. It further is hard to imagine that MRI is actually asking this Court to, or suggesting that this Court would, enforce the Stipulated Injunction against Lynx for providing such services if authorized by MRI by arguing that the Stipulated Injunction precludes it from providing them under any and every circumstance, notwithstanding MRI's consent. Instead, it appears that MRI, in its anticompetitive nature, does not want to be bothered with having to deny its customer's legitimate requests and instead wants to silence Lynx and its own customers from ever asking for authorization to provide even the most routine of services. Such a position seems absurd, to say the least, and certainly is not consistent with the letter or the spirit of the Stipulated Injunction.

Simply put, nothing in the Stipulated Injunction prevents Lynx from corresponding with the market concerning these matters, so MRI's motion should be denied on this basis.

2. <u>Offering to Use WebEx Does Not Violate the Stipulated Injunction</u>

MRI also argues that Lynx has violated Section 2(c) of the Stipulated Injunction by offering to provide "excellent training and hotline support services through on-line Webex sessions." MRI therefore must establish that Lynx has been "accessing, attempting to access or knowingly facilitating any access to any instance of the MRI Software residing on any Computer owned or controlled by any Master Agreement Signatory" through clear and convincing evidence showing (i) the licensee to whom Lynx provided the services at issue using Webex, (ii) that Lynx *actually* accessed that licensee's copy of the MRI Software using Webex to provide those services; (iii) that the services Lynx provided using Webex are prohibited under the Stipulated Injunction and (iv) that the licensee at issue is a "Master Agreement Signatory." MRI's motion, however, does not identify a single licensee that is a Master Agreement Signatory for whom Lynx actually accessed the MRI Software using Webex to provide prohibited services.

Beyond MRI's failure to provide any supporting evidence, its allegations regarding use of the Webex tool itself miss the mark. While WebEx allows access to and viewing of remote computers, that does not mean Lynx has used it to violate the Stipulated Injunction. As Webex explains, using its software to remotely view a computer desktop is "like letting people look over your shoulder." (*See* Exh. A.) Merely viewing what is on a user's screen is not prohibited, and certainly is not the same as having the MRI Software on Lynx's own computer as MRI claims. Moreover, that a user *could* also allow Lynx to exercise control over that computer via Webex does not change the analysis or the conclusion because the capabilities of Webex are not evidence of how Lynx uses, Lynx has not used Webex to take control of a user's computer, and MRI has not provided any evidence on that issue beyond its own unsupported speculation.

Faced with these shortcomings, MRI relies on *Robert R. Jones Associates, Inc. v. Nino Homes,* 858 F.2d 274 (6th Cir. 1988), to argue that "reviewing" or having the "opportunity to review" constitutes "access" for purposes of the Stipulated Injunction. In that case, however, the language by the Sixth Circuit on which MRI relies merely affirmed that copyright infringement can be proved circumstantially by showing (i) that the defendant had access to the copyrighted work and (ii) that the defendant's work is substantially similar to the copyrighted work. *See id.* at 277. That is completely inapposite to the present issue, as MRI's motion is not directed to proving copyright infringement using circumstantial evidence and the Stipulated Injunction does not prohibit Lynx personnel from seeing what is on a licensee's computer screen, regardless of whether it is literally or virtually standing over the user's shoulder. Moreover, *Robert R. Jones Associates* is directed to infringement of an architectural work, which the Sixth Circuit acknowledged "are subject to certain qualifications peculiar to this form of work." *Id.* at 278 (quoting 1 NIMMER ON COPYRIGHT § 2.08[D][2][a], at 2-105). This case, however, concerns computer software, not an architectural work, and MRI does not cite a single case where any court in any jurisdiction has held that merely viewing the screen of a computer running copyrighted software constitutes an infringement of the software itself.

MRI therefore has failed to establish by clear and convincing evidence that Lynx *actually* used Webex to "access" the MRI Software of a Master Agreement Signatory, let alone in a manner covered by the Stipulated Injunction, and its motion on this basis should be denied.

> 3. Directly Accessing a Customer's Data Without Using
> the MRI Software Does Not Violate the Stipulated Injunction

Finally, MRI argues that it is "extremely unlikely" that Lynx could perform other services, such as building customizations and converting customer data, without accessing the MRI Software. (MRI Br. at 10-11.) Whether or not that is true—which it is not for the reasons

discussed below—MRI once again has completely failed to provide any evidence that Lynx *actually* has accessed the MRI Software to provide prohibited services to even a single Master Agreement Signatory. The Court therefore should deny MRI's motion on this basis as unsupported by clear and convincing evidence.

But notwithstanding MRI's evidentiary failures, the services Lynx advertised would not constitute a violation if performed by Lynx for a Master Agreement Signatory or any other MRI licensee. The Stipulated Injunction prohibits Lynx from accessing the "MRI Software," the definition of which *excludes* "commercially-available third-party software." (Stipulated Injunction § 3(a).) Thus, MRI agreed that Lynx could directly access a user's data without using the MRI Software to create custom reports and conversions so long as that data is stored in commercially-available third-party database software, such as a Microsoft SQL Server. But now, MRI takes the exact opposite position, arguing that it would be "very unlikely" that Lynx could do what the Stipulated Injunction expressly allows. MRI's opinion, however, is not evidence, let alone clear and convincing evidence, of a violation. Moreover, what MRI says would be "very unlikely" is actually a common practice that was found to be noninfringing by the Seventh Circuit Court in *Assessment Technologies of WI, LLC v. Wiredata*, 350 F.3d 640 (7th Cir. 2003).

Writing for a unanimous panel, Judge Richard Posner in *Assessment Technologies* flatly rejected "the attempt of a copyright owner to use copyright law to block access to data that are neither copyrightable nor copyrighted, but were not created or obtained by the copyright owner," finding that "[i]t would be appalling if such an attempt could succeed." *Id.* at 641-42. The plaintiff in *Assessment Technologies*—like MRI here—argued that the defendant infringed its copyrights by extracting a client's data from the Microsoft database without using the plaintiff's copyrighted software. *See id.* at 642-643. Having concluding that the plaintiff's software itself

was copyrighted, Judge Posner turned to the case-dispositive questions of "how are the data to be extracted from the database without infringing the copyright[, and] how can the data be separated from the tables and fields to which they are allocated" by the plaintiff? *Id.* at 643-44. That can occur two ways: the data can be extracted using the plaintiff's software or it can be extracted directly from the database itself. *Id.* The latter is the same method now at issue in this case.

Reversing the district court's judgment of infringement, the Seventh Circuit held that extracting data directly from a commercially-available Microsoft database does not implicate copyrights because it "does not involve copying [the plaintiff's software] or creating … a derivative work[.]" *Assessment Technologies,* 350 F.3d at 644. Nor does it implicate contractual restrictions, at least not without implicating copyright misuse, as well. As Judge Poser explained:

> [O]ur plaintiff did not cerate the database that it is seeking to sequester from [the defendant]; or to be more precise, it created only an empty database, a bin that the tax assessors filled with the data. It created the compartments in the bin and the instructions for sorting the data to those compartments, but those were its only innovations and their protection by copyright law is complete. To try by contract or otherwise to prevent the [licensees] from revealing *their own* data, especially when, as we have seen, the complete data are unavailable anywhere else, might constitute copyright misuse.

*Id.* at 646-47. Or, to put it another way, "for a copyright owner to use an infringement suit to obtain property protection, here in data, that copyright clearly does not confer, hoping to force a settlement or even achieve an outright victory of an opponent that may lack the resources or the legal sophistication to resist effectively, is an abuse of process." *Id.* at 647.

MRI's position in this case is unsustainable, if not an outright abuse of process, for the same reason that the Seventh Circuit reversed the district court's judgment of infringement in *Assessment Technologies*. Like in that case, the services Lynx has offered (but which MRI offers no evidence that Lynx actually provided) involve retrieving a client's own data directly from its third-party commercially-available database using third-party commercially-available tools such

as Microsoft SQL Server Reporting Services and Microsoft SharePoint. (*See* PageID # 1252.) That does not require any access to or use of the MRI Software. Thus, just as in *Assessment Technologies,* Lynx is not creating a copy of any of MRI's copyrighted software or a derivative work, but instead is merely accessing the *client's* own data—data to which MRI has no legitimate right to control—via the *client's* own database software to use that data *for the client's own purposes*. In other words, MRI wants this Court to find that its copyrights, coupled with the Stipulated Injunction, act as a virtual "lock box" that prevents its customers from having anyone other than MRI access their own data. Just as the Seventh Circuit held in *Assessment Technologies,* "[i]t would be appalling if such an attempt could succeed." 350 F.3d at 642.

For these reasons, Lynx's services do not violate the Stipulated Injunction or MRI's copyrights, and MRI has failed to present clear and convincing evidence that Lynx has accessed the MRI Software to provide services on behalf of a Master Agreement Signatory in violation of the Stipulated Injunction. The Court therefore should deny MRI's motion on this basis.

### D. Lynx Has Not Made Any False Statements in Violation of Sections 2(l) and 2(m) of the Stipulated Injunction

Finally, Lynx has not made any false statements in violation of Section 2(l) or 2(m) of the Stipulated Injunction. Section 2(l) precludes Lynx from "making reference to MRI as an 'affiliate' … or otherwise marketing, promoting or advertising itself as having any affiliation with MRI." (Stipulated Injunction § 2(l).) MRI does not identify any statement where Lynx identifies itself as an "affiliate" of MRI or implies that some sort of affiliation exists between them. MRI therefore has not established any a of Section 2(l) of the Stipulated Injunction.

MRI likewise has not established a violation of Section 2(m), which precludes Lynx from "knowingly making any false statement regarding MRI, the MRI Software or MRI's services." (Stipulated Injunction § 2(m).) MRI's motion, however, does not identify any false statements

made by Lynx about MRI. Nor does MRI identify anyone who was actually confused or misled by any of Lynx's communications. Rather, MRI's complaints are that Lynx's advertisements advertise the provision of allegedly-prohibited services. But as previously demonstrated, Lynx's advertisements and communications do not advertise the provision of prohibited services and are not confusing or misleading.

In contrast, MRI has made numerous false and misleading statements regarding the terms of the Stipulated Injunction. For example, MRI on January 23, 2013, made its own communication with respect to the Stipulated Injunction which includes numerous misleading statements that go far beyond anything that MRI alleges that Lynx has said. (*See* MRI's January 23, 2013, publication, attached as Exhibit B.) MRI's communications mischaracterize the Stipulated Injunction by stating only the items Lynx is prohibited from acknowledging the services that Lynx may perform. As such, it is false and misleading and meant to discourage customers from doing business with Lynx. As a result, Lynx issued its January 25 statement to provide the other half of the story. MRI therefore has no one to blame but itself for any complaint it may have regarding that letter and MRI has not established any violation of Sections 2(l) or 2(m) of the Stipulated Injunction by clear and convincing evidence.

### III. CONCLUSION

The Court should deny MRI's Motion to Show Cause because it falls well short of any clear and convincing evidence of a violation of the Stipulated Injunction by Lynx. Moreover, Lynx is prepared re-certify its compliance with the Stipulated Injunction to the extent the Court deems necessary. Lynx correspondingly moves this Honorable Court to deny MRI's motion because MRI has not properly identified the alleged Master Agreement Signatories and has not provided any evidence of any actual violation of the Stipulated Injunction.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/John T. McLandrich*
JOHN T. MCLANDRICH (0021494)
TAMI Z. HANNON (0079812)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email: jmclandrich@mrrlaw.com
thannon@mrrlaw.com

Counsel for Defendant Lynx Systems, Inc.

## CERTIFICATE OF SERVICE

  I hereby certify that on February 22, 2013, a copy of the foregoing Defendant Lynx Systems, Inc.'s Brief in Opposition to MRI Software, LLC's Motion to Show Cause was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

              *s/John T. McLandrich*
              JOHN T. MCLANDRICH (0021494)
              TAMI Z. HANNON (0079812)

              Counsel for Defendant Lynx Systems, Inc.

BERKL-120121/Lynx BIO to MRI Mt to Show Cause