UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI SOFTWARE, LLC, | ) | Case No. 1:12-cv-01082-CAB |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S REPLY MEMORANDUM** |
| LYNX SYSTEMS, INC., | ) | **IN SUPPORT OF MOTION TO** |
| | ) | **COMPEL DISCOVERY** |
| Defendant. | ) | |

Plaintiff, MRI Software, LLC ("MRI") respectfully submits this Reply Memorandum in Support of Its Motion to Compel Discovery from Defendant, Lynx Systems, Inc. ("Lynx"). Lynx's Brief in Opposition to Plaintiff's Motion to Compel (herein, the "Opposition") provides no substantial justification for Lynx's refusal to provide the requested discovery. Accordingly, MRI respectfully requests that Lynx be ordered to provide all of the requested discovery by a date certain, and that Lynx reimburse MRI for its fees incurred in bringing this Motion.

**I. Lynx Should Be Ordered to Produce *All* Documents and Things Responsive to Request Nos. 7 and 10 by a Date Certain, Not Just a Selected Subset of the Responsive Documents.**

Offering no justification for its failure to date to produce documents responsive to Request No. 7, Lynx's Opposition offers to produce "the requested professional services orders and agreements" by March 8, 2013. MRI appreciates Lynx's commitment to finally produce responsive documents by a date certain, but remains concerned that Lynx's production will not include all responsive documents. As stated in MRI's January 11 deficiency letter, (Doc. 44-8) Request No. 7 requires Lynx to not only produce its formal agreements and PSOs, but also to make reasonable efforts to collect all other responsive documents reflecting informal agreements to provide MRI related services. For example, offers to provide services, and acceptance of such

{01894432.DOC;4 }

offers, reflected in emails between Lynx and its customers are responsive to this request. Accordingly, MRI respectfully requests that the Court enter an Order requiring Lynx to conduct a search for, and produce, all documents responsive to Request No. 7 by March 8, or another date certain.

With respect to Request No. 10 also, Lynx provides no justification for its failure to produce the responsive documents and files to date. Lynx offers to produce "source code for all customizations for the 'MRI Report Library,' the 'Lynx-Products MRI' libraries and the 'Multi-Report Tool' as those terms are used in the Stipulated Injunction (Docket #36) to MRI by March 8, 2013." Oppn. at 1. The foregoing statement falls far short of a commitment to produce all documents and files responsive to Request No. 10.

The terms "MRI Software," "Customization," and "Enhancement" were defined in MRI's Requests for Production, and they are also defined in the Stipulated Injunction Order (Doc. 36). *See* Exh. A and B, MRI's First Set of Interrogatories to Defendant at p. 3; and Exhibit B, MRI's First Set of Requests for Product at p. 1 (incorporating the Definitions set forth in MRI's First Set of Interrogatories.). Generally, "Customizations" are effected without changes to source code (such as, but not necessarily, by using the MRI Application Toolkit), and Enhancements are effected through changes to the source code (whether by MRI, Lynx or anyone else).

Lynx has denied having access to any source code for the MRI Software, and denied *creating* any Enhancements, but has admitted that various clients have provided Enhancements to Lynx ,which Lynx has loaded onto the clients' computers. *See* Exh. C, Lynx's Response to MRI's First Set of Requests for Admission, Request No. 6 and 7. Thus, Lynx's pronouncement that "[n]o changes were made to MRI source code [presumably/implicitly meaning by *Lynx*] and, *as such*, there are no responsive documents related to enhancements," Opposition at 3 (emphasis

added), is both a *non sequitur* and utterly unpersuasive. Notably, Lynx has failed to indicate that it has conducted a reasonable search for any Enhancements in Lynx's possession. Lynx has also failed to produce (or commit to producing) documents or electronic files reflecting Lynx's "access to . . . Enhancements," as Request No. 10 requires.

Further, in the recitals of the Stipulated Injunction, and elsewhere, Lynx admitted that the "MRI Report Library," the "Lynx-Products MRI" and the "Multi-Report Tool" are all "Customizations." *See* Order, 11th paragraph of recitals. Because "Customizations," by definition, are created *without* use of the source code, Lynx's commitment in its Opposition to "produce source code for all customizations" for those products is ambiguous.

In addition, the record is very clear that, in addition to the "MRI Report Library," the "Lynx-Products MRI" and the "Multi-Report Tool," Lynx has created, and possesses the files for, dozens, if not hundreds, of *additional* Customizations. At his deposition, Lynx's President, Donald Robinson, testified that the "MRI Report Library" is just a "sample of various things that we have done over the last ten years." Exh. D, Robinson Tr., p. 40, ll. 23-25. MRI's Interrogatory No. 4 asked Lynx to identify all Lynx MRI Customers and describe the MRI Related Services provided to each such customer. Lynx's written responses incorporate spreadsheets containing columns entitled "Lynx Custom," "Lynx Report," "Lynx App" and "Other." *See* Exh. F, Lynx's Responses to MRI's Interrogatory Nos. 4 and 5.[1] Mr. Robinson testified that everything listed in the "Custom," "Lynx Report" and "Lynx App" columns reflects Customizations of the MRI Software.[2] Exh. D, Robinson Tr. pp. 37-38, p. 41, ll. 10-24. Mr. Robinson described the "Other" column as describing MRI related services that did not fit in the

---

[1] Concurrently herewith, MRI has filed a motion for leave to file the foregoing responses under seal.
[2] The word "Customization" was expressly defined at the beginning of the deposition to be consistent with the definition in MRI's discovery requests, and Mr. Robinson agreed: "I like those definitions, that makes it simpler." Robinson Tr., pp. 14 - 15.

{01894432.DOC;4 }
3

previous columns, such as upgrades and conversions. *Id*. at p. 42, ll. 6-23. In several instances, Lynx's provision of "Updates" (one type of Enhancement) is referenced in the "Other" column. *See* Exh. F, Lynx's Response to Interrogatory No. 4; *see also* Exh. D, Robinson Tr., pp. 45-49 (describing process by which Lynx provided one such Enhancement to a client). All in all, there are *dozens* of entries in each of the foregoing columns.[3]

As just one example of the types of Customizations created by Lynx, Mr. Robinson testified regarding work performed for a client, Avid Exchange. Exh. D, Robinson Tr., pp. 25-33;[4] *see also*, pp. 57-58 (describing an additional Customization created for another client). At least some of the PSOs describing Lynx's building of Customizations for Avid Exchange were included in the 67 pages of PSOs Lynx has produced to date. *See* Exh. E, Lynx PSOs.[5] These documents describe numerous Customizations created by Lynx for AvidExchange, and other clients. *See id*.

In addition, Mr. Robinson testified that copies of Customizations created by Lynx for customers are kept on Lynx's servers, and may be reused by Lynx at a later date. Exh. D, Robinson Tr.*,* pp. 59, ll. 11-22, p. 36, ll 7-16. Mr. Robinson testified that it owns all of its servers, and they are all located in the Toronto area. *Id*., p. 34. Thus, it is clear that responsive files are in Lynx's possession, custody and control.

In sum, as to Request No. 10, there is no dispute that 1) all the responsive files are highly relevant to MRI's claims; 2) numerous responsive files, in addition to those Lynx has agreed to produce, exist; and 3) the responsive files are in Lynx's possession, custody or control. MRI therefore respectfully requests that Lynx be ordered to conduct a search for and produce *all*

---

[3] In addition to Lynx's July 20 Interrogatory Responses, Lynx served supplemental responses, identifying yet additional Customizations on September 13 and December 19.
[4] Mr. Robinson used the word "Customization" to describe Lynx's work for Avid Exchange. Exh. D. Robinson Tr., pp. p. 30, 1-4.
[5] Concurrently, herewith, MRI has filed a motion for leave to file the foregoing documents under seal.
{01894432.DOC;4 }

documents in its possession, custody or control that are responsive to Request No. 10, including without limitation, all Customization files and all files "reflecting Lynx's . . . access to any MRI Software." [6]

## II. Lynx Should Be Ordered to Produce Documents Responsive to Request Nos. 11 and 12, Because These Requests Narrowly Seek Non-Privileged, Relevant Documents.

Lynx failed to raise any objection based on privilege or work product until nearly *four months* after Lynx was served with Request Nos. 11 and 12. *See* Doc. 44, Yanchar Decl. at 26, 32. When Lynx belatedly raised a privilege objection on December 19, it failed to provide any substantiation for it. *Id.* By failing to timely object or substantiate its objection, Lynx waived any privilege or immunity.

Lynx's belated assertion that the requested documents are privileged relies entirely upon Ohio state law. Lynx's reliance thereon is misplaced. Because this Court's jurisdiction is based on federal statutes, federal law, not state law, clearly controls the applicability of privileges in this dispute. *See* F.R.E. 501; *Urseth v. City of Dayton*, 110 F.R.D. 245, 252-53 (S.D. Ohio 1986); *see also* Doc. 1, Complaint at ¶ 8 (asserting jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338).

Federal law does not recognize the privilege Lynx attempts to assert. Lynx's claim of privilege relies upon *In re Klemann*, 132 Ohio St. 187 (1936), an 85-year-old decision from the Supreme Court of Ohio, interpreting Ohio state law. Lynx cites *Klemann* for the proposition that "communications contained in an insurer's claim file are protected by the attorney-client privilege." Oppn. at 2. As an initial matter, the holding in *Klemann* was not nearly so broad as

---

[6] In addition to being clearly responsive to Request No. 10, any records of access to MRI Software after the November 9, 2012 Stipulated Injunction Order are also highly relevant to MRI's co-pending Motion for Order to Show Cause (Doc. 40), particularly as to Lynx's violation of paragraph 2(c) of the Order. Likewise with respect to Request No. 7, the PSOs attached as Exhibit E exemplify the detail with which Lynx describes its services. Thus, Lynx's recent PSOs are also likely to be relevant to MRI's Motion to Show Cause.

{01894432.DOC;4 }

5

Lynx's Opposition states.  In *Klemann*, the court held that an *insurer* could not be held in contempt for failing to produce a report generated by its insured.  *Klemann*, 132 Ohio St. 193-194.  The court's reasoning appears to have been that when the report, which was created by the insured, was transmitted by the insurer to its counsel, the report became subject to privilege.  *Id.*[7]

In addition to applying an inapplicable body of law, *Klemann* is clearly distinguishable, because here, MRI seeks discovery from the insured, Lynx, *not* its insurer.  Moreover, the theory of privilege relied upon in *Klemann* -- that the insurer is an intermediate agent in transmitting a communication pertaining to liability from the insured to attorneys -- has been expressly rejected by courts applying federal law.  In *Linde Thomason v. Resolution Trust Corp.*, 5.3d 1508, 1514-15 (D.D.C. 1993), the court "firmly reject[ed] any sweeping general notion that there is an attorney-client privilege in insured-insurer communications," holding that "a statement betraying neither interest in, nor pursuit of, legal counsel bears only the most attenuated nexus to the attorney-client relationship and thus does not come within the ambit of the privilege." *Id.*; *see also  In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS),1993 WL 561125, *7 (S.D.N.Y. Dec. 23, 1993) (quoting *Linde*, 5 F.3d  at 1515); *see also Aiena v. Olsen*, 194 F.R.D. 134, 136 (S.D.N.Y. 2000).

In short, under federal law, communications between Lynx and its insurer (Request No. 10), and documents that reflect a duty to defend or indemnify or limitations on such obligations (Request No 11), are discoverable, so long as they do not betray pursuit of legal advice.  Lynx has not even attempted to show that any such responsive documents in its possession betray pursuit of legal advice.  As such, Lynx's sweeping claim of privilege should be rejected.

Lynx's final argument, that the requests are not relevant because there is no claim for bad

---

[7] The court also absolved the *insured* of contempt, but not based on a finding of privilege. Rather, the insured (Mr. Eyck) was absolved based on the fact that the sole copy of the requested report was no longer in his possession, custody or control. *Id*. at 188, 194.

{01894432.DOC;4 }

faith, and no cognizable claim for pre-judgment interest, is also unpersuasive for several reasons. First, Lynx's relied upon authority, *Kraus v. Maurer*, 138 Ohio App. 3d 163 (Cuy. Cty. June 19, 2000), applies Ohio state law, whereas federal law governs the dispute here. Secondly, in *Kraus*, the plaintiff sought the defendant's "entire claim file" as a short cut for obtaining a single fact (the defendant's address) to perfect service of its complaint. MRI's Requests Nos. 11-12 are not nearly so broad, but are instead narrowly tailored to obtain facts that support MRI's claims, and test Lynx's defenses.

Third, even if the Court finds *Kraus* applicable here, it should be noted that Lynx's bad faith *is* in issue in the litigation. Doc. 1, Complaint, at *e.g.*, ¶¶ 2, 5, 87, 110, 112, 114, 123, 160-61, 169, 195, 204, 207, 226, 231, 247, 252 (alleging bad faith conduct by Lynx). In addition, as Lynx's Opposition acknowledges, MRI *has* made a request for prejudgment interest. Oppn. at 12. It is far from settled that MRI cannot recover pre-judgment interest on its copyright claim, or on one of its many other claims against Lynx. *See Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989) (holding prejudgment interest was an available remedy in case alleging copyright infringement, unfair competition, and breach of contract). Because claims for bad faith and pre-judgment are in issue here, *Kraus* fully supports allowing the discovery sought by MRI.

The balance of the cases cited in the large block quote on pages 2-3 of Lynx's Opposition generally relate to pre-judgment discovery regarding a defendant's financial condition. These cases are inapposite to the facts here because MRI's requests are not for the sole purpose of determining defendant's financial condition. Indeed, as to that topic, Lynx already produced its financial statements months ago[8].

---

[8] Lynx's financial statements were provided to counsel for MRI at Mr. Robinson's September 25, 2012 deposition.
{01894432.DOC;4 }

Rather, MRI's requests seek communications and documents that may lead to the discovery of facts regarding the underlying events giving rise to MRI's claims against Lynx. For example, if Lynx communicated facts to its insurers regarding its conduct, certainly those facts are highly likely to be relevant to MRI's claims. Likewise, if Lynx's insurer wrote a memorandum, either finding or denying coverage, based on its factual investigation, surely those facts are also relevant and discoverable.

Moreover, it is Lynx, not MRI, who has made Lynx's insurance policies a focal point of the parties' efforts to resolve this action. For example, in the October 25, 2012 Joint Status Report and Motion To Revise Deadlines As To Preliminary Injunction Motion (Doc. 34), the parties stated: "Further analysis of insurance coverage issues is required by one of Lynx's insurers to determine the settlement value of the case from the insurer's perspective. Lynx's counsel has indicated that that analysis is ongoing." On the foregoing basis, the parties turned their efforts away from trying to reach a Consent Judgment to resolve the entire case, as the Court had requested, and instead turned their efforts to negotiating a Stipulated Injunction Order, to resolve MRI's Motion for Preliminary Injunction. For several months, Lynx's counsel delayed making any settlement offer because of the ongoing analysis purportedly being conducted by Lynx's insurer. Yanchar Decl., ¶¶ 29, 33. These facts are undisputed.

The months-long duration of Lynx's insurer's investigation strongly suggests the insurer has considered *significant evidence* regarding Lynx's conduct. That evidence (which may include admissions against Lynx's interests) are likely to be highly relevant to all of MRI's claims, as well as Lynx's defenses. Unless some cognizable privilege protects the documents containing those facts (which Lynx has utterly failed to show), the documents are discoverable.

In sum, MRI's Requests Nos. 11 and 12 are narrowly tailored to lead to the discovery of

admissible evidence, and Lynx has failed to show that the requested documents are privileged. To the extent any cognizable privilege or immunity applies, at a minimum, Lynx should be compelled to provide a privilege log substantiating its claims. Accordingly, MRI respectfully requests that Lynx be ordered to produce all non-privileged, non-work-product documents responsive to Request Nos. 11 and 12, and that Lynx provide a privilege log substantiating its claim of privilege or immunity for any withheld responsive documents by a date certain.

### III. Lynx Should Be Ordered to Make Messrs. Hagopian and Mednick Available for Deposition In Either Cleveland or Toronto.

In its Opposition, Lynx disputes none of the facts regarding MRI's service of notices of deposition for Howard Mednick and Garen Hagopian, its subsequent efforts to communicate with Lynx counsel to confirm times for those depositions, and the absence of any objection by Lynx to the notices of deposition. *See* Opening Memorandum at 12; Doc. 44, Yanchar Decl. at 37-40. Lynx previously produced its President, Mr. Robinson for deposition in Cleveland. At no point since the deposition notices in issue here were served -- *almost three months ago* -- did counsel for Lynx object in any way or even suggest that MRI would need to make other arrangements to secure their attendance at deposition. *See Precision Flow Technology's Inc. v. CVD Equipment Corp.*, 198 FRD 33, 39 ("on no occasion did [employer] ever object to the notices or advise [the opposing party] that it should serve subpoenas to obtain the attendance of the employees at the depositions," and accordingly the court entered sanctions against the employer for the failure of its employees to appear). Only when presented with the instant Motion did Lynx's counsel adopt the position that Lynx would not produce Messrs. Hagopian and Mednick for deposition. The absence of any objection by Lynx naturally and reasonably led MRI to understand that Messrs. Hagopian and Mednick would be produced for deposition at a mutually agreed upon time. Given Lynx's months-long silence and the approaching close of discovery, it would be prejudicial to

{01894432.DOC;4 }

MRI's rights and interests for Lynx to be permitted to refuse to do so now.  *See Seven Seas Cruises v. Ships Leisure SAM,* 2010 WL 5187680 (SD FLA 2010) at *2.  Accordingly, MRI respectfully requests that the Court overrule Lynx's belated objection and Order Lynx to make Messrs. Hagopian and Mednick available for deposition in Cleveland, or if Lynx prefers, Toronto. [9]

In addition to being too late, Lynx's objection should also be overruled on the merits, as it has no basis in law.  Noting that "[b]oth Mr. Mednick and Mr. Hagopian are citizens of Canada," Lynx declares that "[t]hey are not subject to the personal jurisdiction of the Court."  Opposition at 5.  Lynx pronounces that "a notice of deposition is insufficient to require them to appear for deposition," purportedly because  "the individuals are beyond the subpoena power of the Court." *Id.*  Without contesting Lynx's pronouncements about this Court's subpoena power and the scope of its personal jurisdiction, suffice it to say that such arguments are utterly beside the point.  MRI's right to depose these individuals rests on neither subpoenas nor the Court's jurisdiction over them as individuals; rather, MRI is clearly entitled to depose them as managing agents of a party defendant.

It is well recognized that a simple "deposition notice, unaccompanied by a subpoena, is ordinarily sufficient to compel the appearance of a corporate opponent's officers, directors, and managing agents at a deposition."  *EEOC v. Honda of America Mfg., Inc*. 2007 WL 682088 *1 (SD Ohio 2007).  The burden to demonstrate that the deponent is a "managing agent of the corporate opponent ... . . .  has been described as 'modest' and may require nothing more than a showing that it is a 'close question' as to whether the needed relationship exists." *Id.* at  *2

---

[9] In view of the costs, MRI finds it surprising that Lynx would prefer for its Cleveland-based counsel to travel to Toronto to defend these depositions, rather than its witnesses traveling here, particularly based on Mr. Robinson's willingness to travel to Cleveland for his deposition.   Before filing its Opposition, Lynx never objected to MRI's noticing of the depositions in Cleveland.  If Lynx had simply made a request to conduct the depositions in Toronto, MRI would likely have accommodated it.

{01894432.DOC;4 }

(citation omitted). The test is a functional one and the determination is made on a case by case basis; the widely recognized "factors include: (1) whether the corporation has invested the person with discretion to exercise his judgment, (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to interests of the adverse party." *In Re Honda American Motor Co., Inc. Dealership Relations Litigation,* 168 F.R.D. 53, 540 (D.Md. 1996) (string citation omitted). "Other factors include ... how helpful the individual will be in fact-finding on the matter at issue, in comparison to others associated with the corporation." *Rundquist v. Vapiano SE,* 277 F.R.D. 205, 208 (D.D.C. 2011) (citing *Founding Church of Scientology of Washington D.C. v. Webster*, 802 F. 2d 1448, 1452 (D.C. Cir. 1986)).

Here, there is no doubt that Messrs. Hagopian and Mednick are managing agents of Lynx. Mr. Robinson testified that Mr. Hagopian is the person most knowledgeable regarding the manner in which Lynx assists MRI software users with implementation of Enhancements. *See* Exh. D, Robinson Tr., pp. 43, 63-64. Lynx's access to, and use of Enhancements, is relevant to many of MRI's claims, including, among others, MRI's claims for violation of the Copyright Act, the DMCA, and the Computer Fraud and Abuse Act. Because Lynx denies improperly accessing Enhancements, Mr. Hagopian's testimony is also highly relevant to Lynx's defense of those claims. *See* Exh. C., Lynx's Response to Requests for Admission 6 and 7.

Mr. Mednick is responsible for development of Customizations of the MRI Software on behalf of Lynx-MRI customers. *See* Exh. F, Lynx Response to MRI Interrogatory No. 5. When questioned regarding how Lynx transfers data into and out the MRI Software on behalf of Avid Exchange, Mr. Robinson could not answer, and when asked, "Who is the person overseeing

this?" identified Mr. Mednick. Exh. D. Robinson Tr., pp. 26-27.[10] This response is substantiated by Lynx's related PSOs, all of which identify Mr. Mednick as the person responsible for this work. *See*, Exh. E at *e.g.*, p. 1, 7, 11, 55.

In light of their respective roles and responsibilities, Messrs. Hagopian and Mednick clearly have been invested by Lynx with the discretion to exercise their judgment, are depended upon to carry out Lynx's directions and can certainly be expected to identify with the interests of Lynx rather than those of MRI. *In Re Honda American*, 168 F.R.D. at 540. In addition, because of their roles within Lynx, both are expected to be extremely helpful in fact-finding on several matters at issue, including Lynx's creation and distribution of Customizations and Enhancements, and Lynx's access to the MRI Software and the MRI Client Portal. *Rundquist*, 277 F.R.D. at 208. Thus, their status as managing agents does not merely meet the modest burden of being "at least a close question," *Boss Mfg. Co. v. Hugo Boss AG.,* 1999 WL 20828 *4, it is manifest. As such, MRI's deposition notices are sufficient to compel the depositions of Messrs. Hagopian and Mednick.[11]

Finally, as a practical matter, sustaining Lynx's objection would result only in a needless waste of resources. There is no question that, ultimately, MRI would be entitled to depose these

---

[10] Due to an apparent hearing/transcription error by the court reporter, the transcript reads "Howard *Honickman*," but insofar as no such person has been identified by Lynx as an employee, and in view of Lynx's PSOs, MRI submits, on information and belief, that it should properly read, "Howard *Mednick*."

[11] The cases Lynx cites in support of its contention that the foregoing individuals "are not subject to the personal jurisdiction of the Court," (Oppn. at 5) are simply inapposite. Neither *Estate of Ungar v. Palestinian Authority*, 412 F. Supp. 2d 328 (S.D.N.Y. 2006), nor *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* 262 F.R.D. 293 (S.D.N.Y. 2009) has any bearing whatsoever on compelling managing agents of a corporate party to a lawsuit who have been noticed for deposition under Fed. R. Civ. P. 30 to appear and testify. Rather, both of those cases involve issuance of subpoenas on individuals in foreign countries. In *Aristocrat*, the subpoenas served under Fed. R. Civ. P. 45 were to compel witnesses to appear at trial, "[t]he individuals in question already [having] been deposed in this case." 262 F.R.D. at 305. Conversely, in *Estate of Yaron Ungar*, the court authorized the issuance of a subpoena under 28 U.S.C. § 1783 for the chairman of an Egyptian telecommunications company only in his individual capacity, noting -- unlike here -- that the court lacked personal jurisdiction over the corporate entity. 412 F. Supp. at 330-31. Thus, these cases, which are neither binding on this Court nor apposite to the facts here, do not support Lynx's objection.

individuals. Both the United States and Canada are signatories to the Hague Evidence Convention. *See* 28 U.S.C. § 1781 (2005). Fed. R. Civ. P. 28(b) permits depositions in a foreign country pursuant to that Convention, and courts have made clear that, under Rule 28(b), a commission or letter rogatory should be denied *only* if there is "good cause" to do so. *See*, *e.g.*, *In re Bankers Trust Company v. Bethlehem Steel Corp.,* 752 F.2d 874, 890 (3d Cir. 1984) (citing Rule 28's requirement that a commission or letter rogatory "*shall*" be issued on application); *Evanston Ins. Co. v. OEA, Inc.*, 2006 WL 1652315 (E.D. Cal. June 13, 2006) ("this court will apply the rule that letters of rogatory shall issue unless good cause is shown otherwise"). Here, because Messrs. Hagopian's and Mednick's depositions are highly relevant to most of MRI's claims, and important to testing Lynx's defenses, no reasonable basis exists to deny MRI the opportunity to depose them. The additional burden, cost and delay of pursuing these individuals through the Hague Evidence Convention would be prejudicial to MRI, completely unnecessary and contrary to well-established law for deposing such individuals pursuant to notices issued under Federal Rule of Civil Procedure 30. *Supra.*

For all of the foregoing reasons, MRI respectfully requests that Lynx be ordered to produce Messrs. Hagopian and Mednick for deposition. As indicated above, insofar as Lynx would insist/prefer that their depositions be taken in Toronto rather than Cleveland, MRI is prepared to accommodate such request.

### IV. MRI is Entitled to Its Fees and Expenses Incurred in Obtaining the Foregoing Discovery.

Lynx does not dispute that absent "substantial justification," MRI is entitled to its reasonable attorneys' fees incurred in making this Motion. F.R.C.P. 37(a)(5)(a). Lynx offers no justification whatsoever for its failure to produce the documents responsive to Requests Nos. 7 and 10. MRI's Declaration in Compliance with Rule 37.1, shows MRI sent numerous letters

{01894432.DOC;4 }

13

attempting to obtain this discovery, which simply went unanswered. Doc. 44, Yanchar Decl. ¶¶ 1-21. Lynx's belated agreement, in its Opposition, to produce some (but not all) of the requested documents by a date certain does not exculpate Lynx of its obligation to reimburse MRI's fees.[12]

As to Request Nos. 11 and 12, while Lynx opposed MRI's motion, Lynx's refusal to provide the requested discovery is not substantially justified under the applicable federal law of privilege. Moreover, MRI provided Lynx's counsel copies of the cases showing MRI's entitlement to this discovery on January 11, weeks before MRI filed the present Motion. *Id.*, ¶ 34. The cases provided to Lynx's counsel were also cited in MRI's Opening Memorandum. Lynx's Opposition does attempt to distinguish, nor even mention, that applicable law, choosing instead to simply ignore it, and rely on state law that, pursuant to Federal Rule of Evidence 501, clearly does not apply. Under these circumstances, it cannot be said that Lynx's refusal to provide the requested discovery is "substantially justified."

Finally, as to the depositions of Messrs. Hagopian and Mednick, Lynx failed to raise any objection whatsoever until nearly three months after the notices were served, objecting for the first time in its Opposition. Lynx's Opposition cites inapplicable law, ignores the controlling authorities, and fails to provide any justification for refusing to make these witnesses, who admittedly possess highly relevant evidence, available for deposition.

In short, Lynx failed to offer a substantial justification for its refusals to provide any of the discovery requested herein. Accordingly, MRI respectfully requests that it be awarded it attorneys fees incurred in bringing the present Motion.

V. **Conclusion.**

For the reasons set forth in MRI's opening Memorandum and above, MRI respectfully

---

[12] MRI additionally notes that though the date promised by Lynx for its production (March 8) is one day after the date of the instant filing, MRI has yet to receive a single promised document.

{01894432.DOC;4 }

14

requests that Lynx be ordered, by a date certain, to:

1) conduct a search for and produce all documents in its possession, custody or control that are responsive to Request No. 7;

2) conduct a search for and produce all documents and things in its possession, custody or control that are responsive to Request No. 10, including without limitation, all Customization files, Enhancement files and records and materials "reflecting Lynx's . . . access to any MRI Software";

3) produce all non-privileged, non-work-product documents responsive to Request Nos. 11 and 12, and provide a privilege log substantiating its claim of privilege or immunity for any withheld responsive documents;

4) make Garen Hagopian and Howard Mednick available for deposition two weeks after the foregoing date;  and

5) reimburse MRI's legal fees incurred in making this Motion

If the Court orders Lynx to reimburse MRI for its legal fees, MRI respectfully requests an opportunity to present, by declaration or otherwise, evidence of the amount of its fees.

Respectfully submitted,

DATED:  March 7, 2013

Signature  /s/ Georgia Yanchar
Daniel McMullen (0034380)
Georgia Yanchar (0071458)
CALFEE, HALTER & GRISWOLD, LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH  44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
dmcmullen@calfee.com
gyanchar@calfee.com

Counsel for MRI Software, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2013, a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and parties may access this filing through the Court's System.

*/s/ Georgia E. Yanchar*
One of the Attorneys for Plaintiff