UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No. 1:12-cv-01082 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| Lynx Systems, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum in Opposition to MRI
Software's Motion for Leave to File Amended Complaint**

Lynx Systems, Inc. submits this memorandum in opposition to MRI Software, LLC's motion for leave to amend (ECF # 76), by which MRI asks the Court's permission to materially escalate this case by adding Don Robinson as a defendant and significantly expanding the scope of its claims against Lynx.

### BACKGROUND

From the start, MRI has pursued an aggressive, no-holds-barred litigation strategy against Lynx. Having fought Lynx tooth-and-nail on almost every issue imaginable for more than a year, MRI now wants to make it personal. Apparently not satisfied to wage its claims against Lynx alone, MRI has asked the Court for permission to add Don Robinson, Lynx's president, as an additional defendant so it can try to hold him personally liable and to expand the scope of its claims against Lynx. The Court should deny MRI's latest attempt at escalation.

In seeking to hold Don Robinson personally liable, MRI ignores that Lynx is a Canadian company, Don Robinson is a Canadian citizen, and his actions as an

{4329062:4}

officer and director of Lynx occurred almost exclusively in Canada. But those facts are critical; they mean Don Robinson's personal liability must be decided under the heightened protections afforded by Canadian law. *See Banyan Licensing, L.C. v. OrthoSupport Int'l, Inc.,* 296 F. Supp. 2d 885, 890 (N.D. Ohio 2003) (holding that Canadian law controls personal liability of officer and director of Canadian corporation for company's infringement in United States). MRI's proposed claims against Don Robinson are futile under that standard and leave should be denied.

Leave also should be denied because MRI unreasonably delayed bringing its motion and it has not established good cause to extend the case deadlines. MRI claims it just learned the facts establishing Mr. Robinson's alleged personal liability. Not so. All of the facts on which MRI relies have been known to it for months, if not years. For example, while MRI claims that it just recently learned that Lynx may have limited financial ability to satisfy a judgment of the magnitude MRI seeks, that issue was discussed last summer with both MRI's counsel and the Court during multiple status conferences. Thus, at most, MRI recently re-confirmed what it already knew. That does not justify the drastic measure of adding Don Robinson more than year into this case, especially since MRI acknowledges that its tactic is motivated at least in part by the parties' settlement discussions.

MRI's proposed amendment also would significantly expand its claims against Lynx—although its motion is silent on that issue. Those changes include:

- Alleging that Lynx has infringed MRI's copyright for Version 4.4 of the MRI Software (Proposed Amendment ¶ 38-39)

- Expanding its infringement allegations to include works Lynx developed without using the MRI Application Tool Kit (*Id.* at ¶ 112)

- Expanding its allegation that Lynx improperly accessed the "myMRI Portal" to include both the portal "or one or more other protected computers" (*Id.* at ¶¶ 157, 191-192, 200, 219, 227-228)

- Expanding the scope of trade secret information that Lynx allegedly has misappropriated (*Id.* at ¶¶ 219-220, 222-224)

Thus, granting leave would require extension of the current case deadlines beyond the parties' currently-pending request for a two-month extension (ECF # 75).

Finally, Lynx notes that some of MRI's proposed changes materially conflict with its show cause motion. For example, MRI in its show cause motion asserts that Lynx continues to refer to, offer and sell the "Lynx Products" on its website in violation of § 2(k) of the Stipulated Injunction. (*See* MRI Show Cause Br., ECF # 40-1, at 3-4.) But paragraphs 111 and 119 of MRI's proposed amended complaint would concede that Lynx stopped advertising and selling them nearly a year ago:

> 111.   ~~98. The~~Until on or around July 27, 2012, the Lynx website also ~~advertises~~advertised Lynx's "Products," including the "MRI Report Library" and the "Product List-MRI."
>
> \*   \*   \*
>
> 146.   ~~132.~~Some of the customizations developed by Lynx during the life of the 2002 Agreement~~, which Lynx continues to advertise and sell,~~ contain the MRI Trademark. *See* Exh. 6.

(MRI Redline of Proposed Complaint, ECF # 78-3, ¶¶ 111, 146.) MRI does not acknowledge these changes or attempt any reconciliation of the apparent conflicts with its still-pending show cause motion, and its motion for leave should be denied.

## LAW AND ARGUMENT

Because Lynx does not consent to the proposed amendment, MRI only may amend its complaint with the Court's leave. Fed. R. Civ. P. 15(a)(2). While leave is

to be given "freely … when justice so requires," it should be denied if a proposed amendment is "brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). The Court should deny MRI's motion because its proposed amendments are futile and because MRI unduly delayed bringing its motion and has not otherwise shown good cause for extending the case deadlines.

**I.     The Court Should Deny MRI's Motion for Leave to Add Don Robinson Because Its Proposed Amendments Would be Futile**

A proposed amendment is futile and leave should be denied "if the amendment could not withstand a 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Mich., Revenue Div.,* 987 F.2d 376, 382-83 (6th Cir. 1993)). A proposed amendment therefore "must allege facts that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" *Hensley Manuf. v. Propride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009)). The right to relief must be determined without reference to matters outside the scope of the proposed pleading. *See State ex rel. Murray v. Fidelity and Deposit Co. of Maryland,* 2012 WL 601917, *2 (N.D. Ohio Feb. 22, 2012) (Boyko, J.) (consideration of matters outside of proposed pleading "takes the Court beyond the bounds of inquiry required by a motion to amend"). MRI's motion for leave should be denied because its proposed

amended complaint fails to plead facts that state a claim against Don Robinson under controlling Canadian law or, alternatively, United States law.

### A. MRI Fails to State A Claim Under Controlling Canadian Law

The Court should deny MRI's motion for leave because substantive Canadian law controls whether Don Robinson can be held personally liable for Lynx's conduct and MRI's proposed amended complaint does not plead facts that, if taken as true, would make Don Robinson personally liable for Lynx's conduct under Canadian law.

#### 1. MRI's Proposed Amendments Are Subject to Canadian Law

Because MRI seeks leave to plead claims against a Canadian citizen for the alleged conduct of a company formed and existing under Canadian law, the sufficiency of its proposed amendment must be determined under Canadian law.

The Restatement (Second) of Conflicts of Laws (1969) (the "Restatement") sets forth the relevant choice-of-law analysis. *See Bickel v. Korean Air Lines Co.,* 83 F.3d 127, 130 (6th Cir. 1996) (federal question); *Charash v. Oberlin College,* 14 F.3d 291, 296 (6th Cir. 1994) (citing *Morgan v. Biro Mfg. Co.,* 15 Ohio St.3d 339, 342 (1984)) (Ohio state law claims). For tort claims, "the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties" applies. *See* Restatement § 145(1). Determining which jurisdiction has the most significant relationship in the tort context depends on (i) where the injury occurred, (ii) where the conduct causing the injury occurred, (iii) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (iv) where the relationship, if any, between the parties is centered. *Id.* at §

145(2). Under these factors, Canadian law controls whether Don Robinson can be held personally liable for the alleged acts of Lynx.

The facts of this case parallel *Banyan Licensing, L.C. v. OrthoSupport Int'l, Inc.,* 296 F. Supp. 2d 885 (N.D. Ohio 2003), in which Judge Carr held that Canadian law controls whether an officer and director of a closely-held Canadian corporation can be held personally liable for acts of infringement by the Canadian company in the United States. *Id.* at 890. Evaluating the Restatement § 145(2) factors, Judge Carr concluded that Canadian law applied in *Banyan* because the alleged injury occurred in multiple jurisdictions, the allegedly-infringing acts occurred in Canada, the defendant's principal place of business was in Canada and the parties' contacts occurred outside Ohio. *Id.* at 890. This Court should apply the same analysis and reach the same conclusion based on the similar facts of this case.

Because MRI alleges that it has suffered intangible injuries in multiple jurisdictions, including in the United States (*e.g.,* Count I, U.S. Copyright Infringement) and in Canada (*e.g.,* Count V, Violation of Canadian Copyright Act), the first Section 145(2) factor, the place where the injury occurred, is of "minimal importance." *Banyan,* 296 F. Supp. 2d at 890. *See* Restatement § 145 cmt. e (place where injury occurred "will not play an important role" where "injury has occurred in two or more states"). That is particularly true considering the intangible nature of MRI's alleged injuries. *See* Restatement § 145 cmt. f ("[T]he place of injury does not play so important a role for choice-of-law purposes in the case of false

advertising and the misappropriation of trade values as in the case of other kinds of torts."). The first factor therefore is neutral. *See Banyan,* 296 F. Supp. 2d at 890.

The second factor, where the conduct occurred, weighs heavily in favor of applying Canadian law. "When the injury occurred in two or more states …, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law." Restatement § 145 cmt. e. *See also* Restatement § 145 cmt. f ("[T]he principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values."). Here, nearly all of the allegedly-tortious conduct originated from Canada, so this factor weighs heavily in favor of applying Canadian law. *See Banyan,* 296 F. Supp. 2d at 890.

The third factor, the domicile, residence, nationality, place of incorporation and place of business of the parties, also weighs in favor of applying Canadian law. Because MRI seeks to hold Don Robinson personally liable, his interests are more important than MRI's. *See* Restatement § 145 cmt. e ("When the interest affected is a personal one[,] domicile, residence and nationality are of greater importance than if the interest is a business or financial one, such as in the case of unfair competition, interference with contractual relations or trade disparagement."). Mr. Robinson's status as a Canadian citizen therefore takes precedence over MRI's status as a Delaware corporation that operates in both Ohio and Canada. The third factor therefore favors applying Canadian law. *See Banyan,* 296 F. Supp. 2d at 890.

Finally, the fourth factor, the place where the relationship, if any, between the parties is centered, weighs in favor of applying Canadian law. The relationship between Lynx and Don Robinson exists exclusively in Canada, and the relationship between MRI and Lynx arose out of Lynx's development of the market for the MRI Software in Canada. In contrast, Don Robinson has no personal relationship with MRI because all of their interactions were in his capacity of an officer and employee of Lynx. Thus, whether Don Robinson can be personally liable to MRI necessarily arises out of his officer/director relationship with Lynx, which is exclusively Canadian. *See* Restatement § 309 (local law of state of incorporation ordinarily controls officer' or director's liability to corporation's creditors). This factor therefore weighs strongly in favor of applying Canadian law, and the Court should apply Canadian law to determine whether MRI's proposed amended complaint adequately states a claim against Don Robinson for personal liability.

2. <u>MRI Fails to State a Claim Under Canadian Law</u>

Under Canadian law, a corporate officer rarely will be liable personally for the actions of a corporation "in the absence of findings of fraud, deceit, dishonesty or want of authority." *Banyan,* 296 F. Supp. 2d at 890 (citing *ScotiaMcLeod Inc. v. Peoples Jewellers Ltd.,* 25 O.R.3d 481 at ¶ 25 (C.A. 1995). Thus, personal liability will not attach "unless [a] plaintiff can establish that the officer established a separate identity or interest from that of the corporation." *Id.* MRI has not pled facts that could show Don Robinson established a separate identity or interest from Lynx, so MRI's proposed amendments should be denied leave.

As noted by Judge Carr in *Banyan*, the Canadian Federal Court of Appeals' decision in *Mentmore Mfr. Co. v. National Merchandise Mfr. Co.,* 89 D.L.R. (3d) 195 (Fed. C.A. 1978) (copy attached), is the leading opinion on whether an officer or director of a Canadian corporation can be held personally liable for acts of infringement by the corporation. *See Banyan*, 296 F. Supp. 2d at 890-892. Under *Mentmore*, "expressly direct[ing], order[ing], authorize[ing], aid[ing] and abet[ing]" a corporation to perform infringing acts is not enough to make an officer or director personally liable. *Mentmore*, 89 D.L.R. (3d) at 202. Instead, "there must be circumstances from which it is reasonable to conclude that the purpose of the director or officer was not the direction of the manufacturing or selling activity of the company in the ordinary course of his relationship to it but the deliberate, willful and knowing pursuit of a course of conduct that was likely to constitute infringement or reflected an indifference to the risk of it." *Id.* at 204-205.

The heightened protection afforded officers and directors under Canadian law applies equally to closely-held companies. As the *Mentmore* court explained:

> This is a principle that should apply … not only to the large corporation but also to the small, closely held corporation as well. There is no reason why the small, one-man or two-man corporation should not have the benefit of the same approach to personal liability merely because there is generally and necessarily a greater degree of direct and personal involvement in the management on the part of its shareholders and directors. … [T]he fact [that the defendant] imparted the practical, business, financial and administrative policies and directives which ultimately resulted in the assembly of some goods [that were] infringing, was not by itself sufficient to give rise to personal liability.

*Id.* at 202-203. To hold otherwise, the court cautioned, "would render the offices of director or principal officer unduly hazardous if the degree of direction normally

required in the management of a corporation's manufacturing and selling activity could by itself make the director or officer personally liable for infringement by his company." *Id.* at 202. Applying *Mentmore,* Judge Carr held in *Banyan* that the plaintiff failed to prove that the defendant's sole officer and employee maintained an interest separate from his company because there was "nothing in the record to establish that [his] conduct ever diverted from the scope of his office as president of [the company]." *Banyan,* 296 F. Supp. 2d at 192. The same is true in this case.

MRI's proposed amendment does not establish that Don Robinson has maintained an interest separate from Lynx or that he ever diverted from his duties as an officer and director of Lynx. MRI does not allege that Don Robinson engaged in fraud or personally-dishonest conduct or that he lacked authority. Nor does MRI allege that, as an officer and director of Lynx, Don Robinson acted "deliberately, willfully and knowingly" in a way that he knew or should have known would violate MRI's rights. On the contrary, MRI's proposed amendment acknowledges that Don Robinson's alleged ability to supervise, exercise control over and profit from the conduct of Lynx exists as a result of his status as an officer and director of Lynx. (*See, e.g.,* Proposed Amendment ¶ 5 ("Robinson is, and always has been, the President of Lynx. Robinson oversees all departments of Lynx, and all employees ultimately report to his. Robinson is the only officer of Lynx"), ¶ 14 ("Robinson has been the sole attendee at Lynx's annual meetings"). That is not sufficient to state a claim against Don Robinson under Canadian law. *See Mentmore,* 89 D.L.R. (3d) at

202-205. MRI's proposed amendment therefore would be futile under controlling Canadian law and MRI's motion for leave to amend should be denied.

### 3. MRI Also Fails to State A Claim Under United States Law

While Canadian law controls whether Don Robinson may be personally liable for Lynx's alleged conduct, MRI's proposed amended complaint alternatively fails to state a claim for personal liability under United States law.

MRI first argues that Don Robinson has joint and several liability because he "personally participated" in Lynx's alleged infringement.[1] To adequately plead such a claim, MRI's proposed amendment must show (i) that Don Robinson personally copied MRI's copyrighted works, and (ii) that he did so while in the United States. *See Subafilms, Ltd., v. MGM-Path Comm. Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994) ("[T]he copyright laws do not apply extraterritorially[.]"); *Allarcom Pay Television, Ltd. v General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (infringement must be "completed entirely within the United States[.]"); *Mertik Maxitrol GMBH & Co. KG v. Honeywell Technologies Sarl,* 2011 WL 1454067, *3 (E.D. Mich. April 13, 2011) (plaintiff must show infringement occurred in United States). MRI's proposed amendment does not include any allegations that Don Robinson personally engaged in acts of infringement or that he did so while he was in the United States. It therefore fails to state a claim against Don Robinson for joint and several liability.

MRI also argues that Don Robinson is personally liable for Lynx's alleged infringement irrespective of whether he personally participated in it. "The

---

[1] While MRI addresses only its copyright infringement claim, the result is the same under all of its claims.

{4329062:4}    11

Copyright Act does not expressly render anyone liable for infringement committed by another." *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 434 (1984). Instead, secondary liability doctrines "emerged from common law principles." *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Vicarious copyright infringement occurs when one profits from the direct infringement by another "while declining to exercise a right to stop or limit it," and contributory infringement occurs when one "intentionally" induces or encourages direct infringement by another. *Grokster,* 545 U.S. at 930. Secondary infringement liability therefore "does not exist in the absence of direct infringement[.]" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001).

MRI's proposed amendment does not establish secondary liability for Lynx's alleged direct infringement. Lynx is a Canadian company and MRI's amendment pleads that Don Robinson's ability to profit from, control or contribute to Lynx's alleged direct infringement results from his status as an officer and director. (*See, e.g.,* Proposed Amendment ¶¶ 5, 14.) Therefore, if the Court were to apply U.S. secondary infringement law, Canadian law still would control Don Robinson's potential for liability based on his involvement as an officer and director of Lynx. *See* Restatement § 309 (local law of state of incorporation determines "existence and extend of director's or officer's liability to the corporation [and] its creditors" unless other state has more significant relationship); *Banyan,* 296 F. Supp. 2d at 890-92 (Canada has most significant relationship for determining liability of Canadian officer and director for infringement by Canadian company). As discussed above,

MRI's proposed amendment does not plead facts that could establish personal liability for Lynx's direct infringement under Canadian law. The Court therefore should deny MRI's motion for the additional reason that its claims would be futile even if the Court were to apply U.S. secondary infringement law.

### B. The Court May Not Have Jurisdiction Over Don Robinson

Lynx further notes that MRI also must establish personal jurisdiction under Ohio's long-arm state and federal due process. *See Goldstein v. Christiansen,* 70 Ohio St.3d 232, 238 fn.1 (1994). MRI's proposed amendment therefore may be futile for want of personal jurisdiction over Don Robinson, and may be subject to a Rule 12(b)(2) motion to dismiss by Don Robinson if the Court grants leave.

### III. Leave Should be Denied Because MRI Has Not Shown Good Cause to Extend the Case Schedule and it Unduly Delayed Bringing its Motion

Finally, the Court should deny MRI's motion because it unduly delayed bringing it and it has not shown good cause to modify the case schedule under Federal Rule of Civil Procedure 16 to accommodate its new and expanded claims.

MRI must show "good cause" under Federal Rule of Civil Procedure 16(b) because granting leave would require significant extension of the case deadlines. *See Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003) (affirming denial of leave to amend where plaintiff failed to show good cause under Fed. R. Civ. P. 16). Although the Court did not enter a full Rule 16 scheduling order, it ordered deadlines for fact and expert discovery and dispositive motions (which the parties recently asked the Court to extend to accommodate their already-pending discovery requests). Allowing MRI's proposed amendment would require even further

{4329062:4} 13

extension of those deadlines to allow Don Robinson the opportunity to take discovery in his defense and Lynx to take discovery on MRI's expanded claims. Moreover, Don Robinson may assert counterclaims against MRI, and Lynx will have the opportunity amend its counterclaim as a matter of right, *see* Fed. R. Civ. P. 13, either or both of which almost certainly would require additional discovery by MRI. The Court therefore should deny MRI's motion because it has not shown "good cause" as required by Federal Rule of Civil Procedure 16 to greatly expand the scope of this case at this late hour beyond the Court's currently-ordered case deadlines.

The Court also should deny MRI's motion because it unduly delayed brining it. *See Colvin,* 605 F.3d at 294. MRI claims it could not have moved sooner because it only recently learned the extent of Mr. Robinson's alleged involvement. Not so. MRI admits that "it has known of certain facts supporting vicarious liability" since September 2012 (MRI Br. at 7), and it has known of both Don Robinson's status with Lynx and Lynx's financial condition since at least last summer when those issues were discussed with the Court during several status conferences. Moreover, Don Robinson's declaration does not establish anything "new" because (i) it was made as a Rule 30(b)(6) designee, (ii) it addresses whether Lynx violated the Stipulated Injunction, not whether he personally engaged in conduct that would be actionable under any of MRI's claims, and (iii) all of Lynx's conduct addressed in his declaration is perfectly legal and proper under the Stipulated Injunction.

In truth, it appears that MRI decided to bring its motion at this late hour hoping to increase its settlement leverage. As MRI explains in its supporting brief:

> [I]n two subsequent discussions over the past few weeks, Lynx's counsel (John McLandrich) has repeatedly emphasized Lynx's insurer's refusal to contribute toward settlement any amount near what would be acceptable to MRI. Thus, both the grounds and need to add Mr. Robinson as a defendant have only recently become clear.

(MRI Br. at 7.) That is exactly the type of bad faith tactic that warrants denial of a motion for leave. *See Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1113 (N.D. Cal. 2002). The Court therefore should deny MRI's motion for leave because it unreasonably delayed bringing its motion, it has not demonstrated good cause, and attempting to increase its settlement leverage by asserting claims for personal liability is not a proper motive for seeking leave.

## CONCLUSION

For the foregoing reasons, Lynx Systems, Inc. respectfully asks the Court to deny MRI Software, LLC's motion for leave to amend its complaint.

Respectfully submitted,

Dated: June 7, 2013

/s/ David T. Movius
David T. Movius (OH 0070132)
*dmovius@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

John T. McLandrich (OH 0021494)
*jmclandrich@mrrlaw.com*
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 │ f 440.248.8861

*Attorneys for Lynx Systems, Inc.*

### Certificate of Service

I hereby certify that, on June 7, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

      /s/ David T. Movius
*Attorney for Lynx Systems, Inc.*