IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI SOFTWARE LLC, | ) | CASE NO.:  1:12-cv-01082 |
| Plaintiff, | ) | |
| vs. | ) | JUDGE:  Christopher A. Boyko |
| LYNX SYSTEMS, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff, MRI Software LLC ("MRI"), respectfully submits this reply in support of its Motion for Leave to File an Amended Complaint (herein "Motion for Leave").  In arguing that MRI's proposed amendment is "futile," the Memorandum in Opposition to the Motion for Leave ("Opposition") filed by Defendant, Lynx Systems, Inc. ("Lynx") conveniently ignores the factual allegations of MRI's Proposed Amended Complaint, and relies upon case law that is wholly inapposite to the procedural posture and facts here.  MRI's proposed Amended Complaint properly pleads claims against Mr. Robinson (under both U.S. and Canadian law); it is not futile.

Moreover, though characteristically casting aspersions on MRI, Lynx's Opposition utterly fails to show MRI's motion was brought in bad faith or with dilatory motive, or that any prejudice would result from granting leave as requested herein.  Accordingly, MRI respectfully requests that it be granted leave to file its proposed First Amended Complaint.

**I.  MRI's Proposed Amendment Is Not Futile.**

Lynx's Opposition asserts MRI's Amended Complaint fails to state a claim against Mr. Robinson under U.S. law, yet fails to show any of the 17 counts pled against Mr. Robinson would not withstand a Rule 12(b)(6) motion to dismiss.  As such, MRI's proposed amendment is not futile.  *State v. Fidelity & Deposit Co. of Maryland*, No. 1:10cv1367, 2012 WL 601917, at * 2 (N.D. Ohio Feb. 22, 2012) (J. Boyko).

### A. MRI's Amended Complaint Properly Pleads Numerous Claims Against Mr. Robinson Under U.S. Law.

The Amended Complaint properly pleads that as a result of Mr. Robinson's *active participation in and material contribution* to the acts alleged, he is personally liable for Copyright Infringement and the other torts alleged under U.S. law.

In arguing MRI's proposed Amended Complaint fails to state a claim for copyright infringement against Mr. Robinson under U.S. law, Lynx misstates the law as to the extraterritorial applicability of the Copyright Act. Relying on *Subafilms, Ltd. v. MGM-Pathe Comms. Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994), Lynx erroneously asserts MRI's proposed amendment "must show (i) that Don Robinson personally copied MRI's copyrighted works, and (ii) that he did so while in the United States." In fact, *Subafilms* stands for the proposition that "if all the copying occurred outside the U.S., the Copyright Act would not apply." *General Motors Co. v. Arriortua*, 948 F.Supp 684, 691 (E.D. Mich. 1996) (citing *Subafilms*, 24 F.3d 1088).[1] "However, as long as some occurred in the U.S., the Copyright Act applies." *Id*. Moreover, when an initial act of infringement occurs within the United States, additional recovery based upon the subsequent and continued infringement abroad is not barred. *Stolle Machinery Co., Inc. v. RAM Precision Indus.*, No. 3:10-cv-155, 2011 WL 6293323, *13 (S.D. Ohio Dec. 15, 2011).

Moreover, many of MRI's claims, including at least MRI's Computer Fraud and Abuse Act Claim (Count II), and MRI's Lanham Act Claim (Counts XI and XII), apply extraterritorially. *See U.S. v. Ivanov*, 175 F.Supp.2d 367, 370 (D. Conn. 2001) (finding jurisdiction because effects of Russian hacker's actions occurred in the U.S. and Congress intended CFAA to apply extraterritorially): *General Motors*, 948 F. Supp. at 690 (rejecting

---

[1] The holding in *Subafilms* has also been criticized by at least one court in this Circuit. *See Curb v. MCA Records, Inc.*, 898 F.Supp. 586, 593-96 (M.D. Tenn. 1995) (finding authorization of extraterritorial distribution may violate U.S. Copyright law).

{02034099.DOC;1 } 2

defendants' claim that Lanham Act does not reach extraterritorial acts, reasoning "Congress has the power to regulate even entirely foreign commerce where it has a substantial effect on commerce between the states or between the U.S. and foreign countries.").

MRI's Amended Complaint clearly alleges that acts of copyright infringement and other torts occurred within the United States. The Amended Complaint alleges that Defendants have actively solicited to provide, and have provided, services to MRI Software users in the United States, in violation of U.S. law. *See* Amended Complaint at *e.g.,* ¶¶ 132, 135. In arguing the Amended Complaint fails to state a claim under U.S. law, Lynx's Opposition ignores, *inter alia*, the following allegations:

- Following the termination of the 2002 Agreement, Defendants set out on a plan to compete with MRI for the business of MRI Software users. *Id*. at ¶ 100. For example, Lynx sent numerous false and defamatory emails to MRI Software users in the United States, which are replete with unauthorized uses of the MRI trademark. *Id*. at ¶ 132-33, 136-37

- The foregoing emails show a pattern of Defendants regularly soliciting to provide MRI related services outside of Canada (in the United States) without MRI's permission. Defendants' solicitation of customers in the United States violates the continuing affirmative obligations under Section 2 of the 2002 Agreement not to provide MRI-related services outside of Canada. See Exh. 4 at ¶¶ 2.2.5 and 2.3. Id. at ¶ 135.

- Robinson and Lorie Spale (a Lynx employee) trespassed and stole confidential information of MRI at the 2011 MRI International Users Group Conference, hosted at a hotel (which, as Lynx knows, was in Las Vegas, Nevada). *Id*. at ¶¶ 164-75.

The Amended Complaint sets forth numerous factual allegations showing that, in providing the services Defendants offer in the United States and elsewhere, such as the provision of customizations and enhancements, Defendants violate MRI's rights in the Copyrighted Works

and induce MRI's clients to breach their agreements with MRI by exceeding the scope of their licenses. *Id*. at ¶ 138-63. In addition, the Amended Complaint pleads numerous other claims against Mr. Robinson under U.S. federal statutes and Ohio state law, including *e.g.,* claims based on his trespass and misappropriation of confidential information at the 2011 International Users Group Conference (*id*. at ¶¶ 164-75 and Counts VI and VII), and his insertion of his signature on numerous false, defamatory and infringing solicitations sent to MRI Customers in the United States (*id*. at ¶¶ 121-141). *See generally*, Amended Complaint at ¶¶ 189-208, 218-309. The Amended Complaint alleges "Defendant<u>s</u>" -- Lynx *and* Mr. Robinson -- have participated in the foregoing acts. *Id.* Thus, the Amended Complaint states claims for infringement of the U.S. Copyright Act, and other U.S. statutes, by Mr. Robinson based on his *active participation* in misconduct in the United States.

In addition, the Amended Complaint also properly pleads that Mr. Robinson is jointly and severally liable with Lynx for Copyright Infringement, that he is liable vicariously, and that he is liable as a result of his inducing and contributing to infringement, breach of contract and the other torts alleged. *Compare* MRI's Opening Memorandum at pp. 3-4 (setting forth the legal elements of the foregoing theories of liability) to Amended Complaint at *id*. at ¶¶ 187, 196, 208, 216, 225, 230, 238, 249, 262, 273, 283, 291, 301, and 305 ("Robinson directs and conducts the activities of Lynx as the President and sole officer of Lynx and has actively participated and materially contributed to the foregoing activities, and is therefore directly, contributorily and vicariously liable for the actions of Lynx. Defendants are jointly and severally liable to MRI for the damages incurred."). Lynx's Opposition does not show MRI's factual allegations as to these theories of liability are deficient in any manner.

In sum, the Amended Complaint pleads that as a result of Mr. Robinson's *active participation and material contribution* to the acts alleged, he is personally liable for Copyright Infringement and the other torts alleged. Lynx's Opposition does not show any of MRI's claims

under U.S. law against Mr. Robinson would fail to survive a Rule 12(b)(6) motion. As such, MRI's proposed amendment is not futile.

### B. Lynx's Reliance Upon *Banyan* Is Misplaced.

Relying heavily upon *Banyan Licensing, L.C., v. Orthosupport Int'l., Inc.*, 296 F.Supp.2d 885 (N.D. Ohio 2003), Lynx would lead this Court to believe that, by virtue of his status as a Canadian citizen and officer of a Canadian company, Mr. Robinson is shielded from liability resulting from his active participation in violations of numerous U.S. statutes and Ohio laws. In fact, Mr. Robinson is not shielded from liability resulting from his own actions, and Lynx's reliance upon *Banyan* is entirely misplaced.

In *Banyan*, the plaintiff patentee prevailed in a patent infringement action against a Canadian corporation. Following the finding of infringement, the defendant corporation declared bankruptcy. *Thereafter*, plaintiff sought leave to file an Amended Complaint to add the corporation's sole shareholder, Dr. Frydman, a Canadian citizen, as a defendant. The Court *granted* the motion to amend. *Id*. at 886.

*After* being added as a defendant in the case, Frydman moved to dismiss for lack of personal jurisdiction, and the Court denied that motion. *Id*. at 887. Thereafter, Frydman moved for summary judgment on the same basis. From the opinion, it appears the plaintiff *did not assert* contributory infringement or inducement of infringement against Frydman under the United States Patent Act (35 U.S.C. § 271(c)), and instead relied solely on a theory of alter ego liability. The Court relied upon *Bates v. Cook, Inc*., 615 F.Supp. 662 (M.D. Fla. 1984), a Florida case that involved *state law* claims of trade secret misappropriation, to determine that it should apply Restatement (Second) of Conflicts of Laws § 145 to determine what alter ego law to apply. Reviewing *all the facts of record in the case*, and applying the Restatement factors, the Court determined Canadian law as to piercing of the corporate veil applied. The Court then determined, *again based on its review of the facts of record in the case,* that Frydman did not maintain an interest separate from the defendant corporation and did not act willfully. Having

determined the corporate veil could not be pierced under Canadian law, the Court thus granted Frydman's motion for summary judgment of lack of personal jurisdiction.

*Banyan* simply does not support Lynx's argument that MRI's proposed amendment is futile. To the contrary, in *Banyan* the Court *granted* plaintiff's motion to amend its complaint to *add* Frydman as a defendant in the action. Notwithstanding Frydman's status as a Canadian citizen and officer of the defendant Canadian corporation, the Court did *not* find such an amendment futile. Nor did the Court find the amendment untimely, even though the motion to amend was filed *after* the determination of infringement. *Banyan*, thus, fully supports allowing MRI to amend its complaint to add Robinson as a defendant here.

Moreover, here, there is no need to apply the Restatement (Second) of Conflicts of Law, as the Court did in *Banyan*. Unlike in *Banyan*, and contrary to the assertions of Lynx's Opposition brief, Mr. Robinson's liability does not "necessarily arise[] out of his officer/director relationship with Lynx," (Oppn. At p. 8), and certainly not solely from that relationship; rather, Mr. Robinson is liable for his *active involvement* in the torts alleged. As discussed above, MRI has stated claims against Mr. Robinson for direct (and indirect) violations of numerous U.S. and Ohio state statutes. In view of Robinson's active role, his status as an officer of a Canadian corporation does not shield him from liability for his personal conduct.

Finally, as Lynx's Opposition acknowledges, a proposed amendment is futile only if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Fidelity,* 2012 WL 601917, at * 2. If the analysis suggested by the party opposing the amendment requires consideration of matters outside the pleadings, the amendment is *not* futile. *See id.* Lynx's "futility" argument should be rejected, because it requires consideration of numerous matters outside the pleadings, such as where the relationship between MRI and Robinson was centered, where the injury occurred, and where the conduct occurred. In *Banyan*, the Court made such determinations based on a fully developed record, *not* on the pleadings. Thus, for this reason also, *Banyan* does not support Lynx's argument that MRI's amendment is futile.

In sum, *Banyan* fully supports granting MRI the leave it seeks. Lynx's reliance on *Banyan* to argue that MRI's proposed amendment would be futile is erroneous.

**C. United States, not Canada, Has the Most Significant Relationship to This Case, the Parties Chose U.S. Law to Govern Disputes Between Them, and Mr. Robinson Has Had Extensive Contacts With this Forum.**

While the Court need not decide which forum has the "most significant relationship" in deciding MRI's Motion to Amend, the facts pled show United States, not Canada, is that forum. It is simply not true, as Lynx's Opposition asserts, that Robinson's actions "occurred almost exclusively in Canada," (Oppn. at 2) and "nearly all of the allegedly-tortious conduct originated from Canada. (id. at 7)." In arguing Canadian law should apply, and that this Court "May Not Have Jurisdiction Over Don Robinson" (id. at 13), Lynx's opposition wholly ignores the facts recited above showing Defendants' extensive pattern of conduct with the United States, as well as the following additional allegations of the Amended Complaint:

- Defendants regularly do business in the State of Ohio, and have maintained systematic and continuous contact with Ohio and Ohio residents in this judicial district. For example, during the relevant time period, numerous customer service representatives of Lynx have lived and worked from their homes in this district, and provided services to customers of Lynx from this district. Indeed, most, if not all, of these representatives were former employees of MRI, who were hired by Lynx and chosen by Robinson because of their knowledge of the MRI Software and MRI's business. Robinson has received substantial revenue from services rendered in this state. (Complaint at ¶ 24).
- In addition, during the relevant time period, Robinson has regularly travelled to the Cleveland area to meet with customer service representatives of Lynx and to conduct business in this district. Mr. Robinson travelled to this district for the purpose of investigating commercial office space in this district from which to further conduct Defendants' business. (Id. at ¶25)

- MRI has operated from the Cleveland area since 1971, and runs most of its operations, including product development, from its Cleveland headquarters. Amended Complaint, ¶ 34.
- In the 2002 Agreement (the breach of which is alleged in Count VIII of the Amended Complaint), ***Lynx and MRI chose U.S. (California) law to govern any disputes between them***.  See Doc. 1-3 at ¶ 15.2 (incorporated by reference at ¶ 84 of the Amended Complaint.)
- Beginning in 2006 and during 2007, Defendants attempted to negotiate a new agreement with MRI to govern their respective rights and responsibilities.  On December 19, 2006, Robinson attended a meeting with MRI (also then doing business as IRES) in or around Cleveland, Ohio for the purposes of discussing terms for a new agreement.  *Id*. at ¶ 96.

In addition to the factual allegations of the Amended Complaint, Lynx's interrogatory responses show that since the 2002 Agreement between Lynx and MRI was terminated in 2008, Lynx has had an ever expanding presence in the United States, with *more than half* of its current revenue being derived from services for customers in the United States.

In sum, the parties' relationship has always been centered around the Cleveland area, where MRI is based, and where the injury from Defendants' conduct is felt.  Over the course of years, Mr. Robinson built his business around providing support to customers of MRI, a Cleveland-based business.  Moreover, the parties expressly agreed that U.S. -- not Canadian -- law would govern disputes between them.  Lynx misleads the Court in ignoring Mr. Robinson's extensive contacts with this forum and actions within the United States.

### D. The Amended Complaint Properly Pleads Claims Under Canadian Law.

To the extent that any of Defendants' acts of copyright infringement might have occurred wholly within Canada, MRI's proposed Amended Complaint also states a claim for violation of the Canadian Copyright Act.  *See* Amended Complaint at ¶¶ 209-217.  Lynx has never disputed

that this Court has jurisdiction to determine Lynx's infringement of the Canadian Copyright Act; nor could Lynx so argue. *See generally, London Film Prods. Ltd. v. Intercontinental Comms.*, 580 F. Supp. 47 (S.D.N.Y. 1984) (finding jurisdiction to determine whether defendant infringed plaintiff's British copyright based on conduct in South America, and that plaintiff stated a valid cause of action under the British copyright laws).

In addition, even if the Court were to determine that the so-called "heightened" protections of Canadian laws of corporations apply, as Lynx's Opposition argues, MRI's Amended Complaint contains allegations that plead a claim for piercing the corporate veil under such laws, including willful conduct by Mr. Robinson that violates MRI's rights. *See* Amended Complaint at ¶ 2, 6, 100, 124, 126, 128, 137, 174-75, 183, 187, 196, 202, 208, 213, 214, 216, 224, 225, 228, 230, 238, 249-250, 255, 262, 272, 273, 278, 282, 291 and 301. By contrast, in *Banyan*, the Court expressly found that Frydman never exceeded the interests of his company, and that he acted in good faith by attempting to change his product to avoid plaintiff's patent. *Banyan*, 296 F. Supp. 2d at 892.

In sum, to the extent Canadian law applies, Lynx's Opposition does not show any of MRI's claims against Mr. Robinson would fail to survive a Rule 12(b)(6) motion. As such, MRI's proposed amendment is not futile.

## II. MRI Has Acted in Good Faith, and No Undue Prejudice Or Delay Will Arise By Virtue of Allowance of MRI's Requested Amendment.

In opposing to MRI's Motion to Amend, Lynx grumbles that MRI's complaint "expands the scope" of the claims against Lynx. However, the seventeen claims plead in MRI's Amended Complaint are the very same seventeen claims plead in MRI's original Complaint. In addition to adding Mr. Robinson as a defendant, the Amended Complaint merely reflects that through discovery, MRI learned of additional conduct by Lynx providing additional grounds for those

claims, and that Lynx agreed to make certain changes to its website.[2] There is no provision of the Federal Rules prohibiting MRI from conforming its pleading to the facts as they are discovered, and doing so certainly does not provide a basis for denying leave to amend. *See Joe Powell & Assoc., Inc. v. Int'l Telephone & Telegraph Co.*, 23 B.R. 329, 333 (E.D. Tenn. 1982) (noting that discovery may reveal a need to amend).

Lynx's further complaint -- that MRI's proposed amendment would require an extension of the case deadlines "to allow Don Robinson the opportunity to take discovery in his defense and to take discovery on MRI's expanded claims" -- is entirely non-specific and unsupported. Lynx fails to provide any example whatsoever of any additional discovery that could possibly be required as a result of MRI's proposed amendment. Mr. Robinson has already been actively engaged in the case since its inception, including by verifying Lynx's interrogatory responses and by serving as Lynx's 30(b)(6) representative. Even assuming such an extension would be necessary, Lynx fails to explain how that would possibly cause Lynx prejudice. (MRI notes Lynx still has not noticed a single deposition in the case or filed a single substantive motion.)

Lynx's only remaining argument against MRI's proposed amendment is that MRI could have moved to amend sooner. However, "delay, by itself, does not justify denial of leave to amend." *Fidelity*, 2012 WL 601917, at * 2 (quoting *Morse v. McWhorter*, 290 F.3d 800 (6th Cir. 2002)). Contrary to Lynx's Opposition, which attempts to paint MRI as pursuing "an aggressive, no-hold-barred litigation strategy," and wanting to "make it personal" (Oppn. at 1), MRI refrained from naming Mr. Robinson until it was sure it had strong reasons to personally involve him. As explained in MRI's opening memorandum, MRI did not learn of the full extent of Mr. Robinson active involvement in the torts alleged until recently. Moreover, MRI has sincerely

---

[2] Contrary to Lynx's Opposition at p. 3, none of MRI's proposed changes conflict with MRI's Motion to Show Cause Why Lynx Should Not be Held in Contempt of the Injunction Order. MRI certainly does not "concede" that Lynx stopped advertising and selling Customizations in violation of the Injunction Order. Rather, Lynx merely changed the headings on its website, in an effort to circumvent the Injunction Order. *See* Doc. 40 at p. 3 and Doc. 49 at pp. 3-5.

made every effort throughout the litigation to negotiate issues with Lynx, including resolution of MRI's Motion for Preliminary Injunction and negotiation of a settlement of the case as a whole. However, in recent months, it has become apparent Lynx has not acted in good faith, has refused to cooperate in discovery, and refused to seriously engage in settlement discussions. Most troubling, Lynx has blatantly disregarded numerous unambiguous provisions of the Injunction Order, and Mr. Robinson's April 15, 2013 Declaration revealed that he, personally, is largely behind Lynx's contempt. Further, as explained in MRI's opening memorandum, Lynx mis-designated Mr. Robinson's Declaration as ATTORNEYS EYES ONLY, and refused, for over a month, to correct that mis-designation. Having finally gained access to the evidence showing Mr. Robinson's personal involvement, it is not bad faith for MRI to pursue its claims against all those who have committed torts against it, including Mr. Robinson.

### III. Conclusion

MRI's proposed amendment is not futile, will not cause prejudice, and is not untimely. Accordingly, MRI respectfully requests that it be granted leave to file its First Amended Complaint.

June 17, 2013

Respectfully submitted,
By: */s/ Georgia Yanchar*
Daniel McMullen (Ohio Bar No. 0034380)
Georgia Yanchar (Ohio Bar No. 0071458)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
E-mail:dmcmullen@calfee.com
gyanchar@calfee.com

Attorneys for Plaintiff MRI Software LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2013 a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and parties may access this filing through the Court's System.

                                                    */s/ Georgia E. Yanchar*
                                                   One of the Attorneys for Plaintiff