IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MRI SOFTWARE LLC, | ) CASE NO.:  1:12 cv 1082 |
| Plaintiff, | ) |
| | ) JUDGE:  Christopher A. Boyko |
| vs. | ) |
| | ) |
| LYNX SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER

Plaintiff, MRI Software LLC ("MRI"), by and through its undersigned counsel, respectfully submits this Opposition to the Motion to Compel Source Code filed by Defendant, Lynx Systems, Inc. ("Lynx") (herein "Lynx's Motion to Compel").  In addition, MRI hereby respectfully cross-moves the Court for entry of the "Addendum to Stipulated Protective Order Regarding Source Code" (herein "Source Code Addendum") attached hereto as Exhibit A, and submits this memorandum in support thereof.

This issue is before the Court for one reason:  Lynx's refusal to compromise.  As MRI clearly communicated to Lynx before Lynx filed its Motion to Compel, MRI stands ready, willing and able to produce source code to Lynx subject to reasonable protections routinely afforded by courts for materials of such sensitivity.  However, Lynx insists that MRI must hand over its most valuable trade secret -- its "complete source code"-- subject to the existing Stipulated Protective Order, without *any* additional protections.  Ignoring MRI's concerns, Lynx summarily rejected the Source Code Addendum proposed by MRI, despite Lynx's earlier agreement to consider it.  As discussed below, the Source Code Addendum contains reasonable limitations on access to and use of source code that are fully consistent with those routinely imposed by courts.  Indeed, the restrictions proposed by MRI are consistent with the *default*

{02164090.DOC;6 }

protective orders adopted by several districts courts where high-tech litigation requiring access to source code is most common. Lynx's position presents a striking departure from near-universal practice, finds no support in case law, and is, in fact, contrary to Federal Rule of Civil Procedure 26(c). As such, Lynx's Motion to Compel should be denied insofar as it requests MRI to produce source code without any protections beyond the existing Stipulated Protective Order.

In addition, it is evident that Lynx's quest for MRI's source code is truly nothing more than a harassing fishing expedition. In arguing as to why it needs unfettered access to MRI's source code, Lynx obfuscates the applicable legal standards as to copyright infringement. Nonetheless, appreciating the broad scope of discovery afforded by Rule 26, and mindful of its obligation to work in good faith to resolve discovery disputes without the Court's involvement, MRI agreed to compromise with Lynx in making its source code available subject to appropriate protections. But MRI's agreement to produce its source code notwithstanding its objections does not entitle Lynx to unfettered access. To the extent Lynx truly needs access to MRI's source code to defend against MRI's claims (which, as explained below, is dubious), Lynx's access should be subject to the reasonable and appropriate protections set forth in the Source Code Addendum. Accordingly, MRI respectfully requests that the Court enter the Source Code Addendum.

**I.     Legal Standard.**

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The rule particularly allows for an order:

 (B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted; [and]

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

*Id.* The Court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *See Jagex Ltd. v. Impulse Software*, 273 F.R.D. 357, 358 (D. Mass. 2011).

II. **Lynx Again Failed to Confer with MRI in Good Faith Before Bringing This Dispute to the Court's Attention.**

Federal Rule of Civil Procedure 37(a)(1) states:

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Local Civil Rule 37.1(a) further mandates:

Discovery disputes shall be referred to a Judicial Officer only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes.

This Court's August 20, 2013 Order noted Lynx's failure to comply with Local Rule 37.1 before filing its previous motion to compel, and admonished the parties to fully comply with all the requirements of Local Rule 37.1 if future disagreements over discovery occur. Dkt. # 88, at p. 7 and footnote 1. Despite the Court's admonition, Lynx has once again moved the Court to compel discovery without making sincere, good faith efforts to resolve the instant dispute.

Though Lynx submitted a "Local Rule 37.1 Declaration of David T. Movius, Esq.," the foregoing declaration does not show good faith. Instead, the record shows that during the parties' July 1, 2013 call, MRI explained that its source code was not relevant to the issues in the case, and relayed MRI's grave concerns as to the risk of irreparable harm associated with its

production.  Mindful, however, of its obligation to work in good faith to resolve discovery disputes without the Court's involvement, MRI agreed to compromise as to its objection on the basis of relevance, *provided* Lynx would agree to suitable additional protections.  Doc. # 100, 9/23/13 Yanchar Decl. at ¶ 8; Doc. # 95, Movius Decl. at ¶ 8.  As Mr. Movius' declaration admits, Lynx agreed to "consider a proposal by MRI for further protections."  Movius Decl., ¶ 8. Thereafter, MRI emailed Lynx its proposed Source Code Addendum. *See* Doc. 95-6 (identical to Exh. A hereto).   MRI did not draft the Source Code Addendum in a vacuum.  MRI modeled the Source Code Addendum on source code protective orders entered in cases where discovery of source code has been sought, to ensure that the protections MRI proposed to Lynx were both reasonable and consistent with precedent.

For one month after receiving MRI's Source Code Addendum, Lynx provided no response whatsoever.  Movius Decl. ¶ 12.  When Lynx finally responded on August 23, 2013, it argued:

> When we negotiated the existing protective order, it was entirely foreseeable, if not inevitable, that discovery in this case would require production of source code between the parties, and Lynx relied upon the negotiated protections in producing its own code to MRI.  MRI therefore has not established that any modification to the existing stipulated protective order is warranted.

*See* Doc. # 95-7 (Exh. G to Movius Decl.)

The foregoing message greatly surprised MRI.  Contrary to Mr. Movius' August 23 email, it was not "entirely foreseeable, if not inevitable" that the case would require production of source code. At the time the existing protective order was negotiated, Lynx had never raised the possibility of needing MRI's source code.  Lynx did not mention such a need in the parties' planning pursuant to Rule 26(f), in Lynx's initial disclosures, or in any document request served before the existing protective order was entered.  Indeed, Lynx didn't request MRI's source code until nearly *a year* after this case was filed.  *See* Doc. # 100, 9/23/13 Yanchar Decl., ¶¶ 2-4, 8-9, 12.  Moreover, as explained below, in view of the ample *direct* evidence of Lynx's unlicensed use and wholesale copying of the MRI Software, MRI's source code is not needed to prove copyright infringement.

Mr. Movius' August 23 assertion that Lynx "relied upon the negotiated protections in producing its own code" is also specious. Lynx resisted providing its Customization files for nearly a year after MRI requested them, and finally did so only *after* MRI filed a motion to compel. *See id*. at ¶¶ 3, 10-11. The files Lynx produced are of the file types ".mdb "and ".izc." Lynx's discovery responses show the vast majority of its Customization files were created with the MRI Software, and that these files have been previously sold and distributed to Lynx's customers. By contrast, Lynx's request for MRI's "complete source code" is far more extensive than such Customization files. Thus, what Lynx has produced to MRI is not commensurate to what Lynx seeks from MRI.

Moreover, the Stipulated Protective Order expressly contemplates modification "by the Court on its own motion or on motion of a party or any other person with standing concerning the subject matter." Doc. # 29, at ¶ 17. In addition, the Stipulated Protective Order states: "Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or use in discovery or at trial." *Id*. at ¶ 14. In view of Stipulated Protective Order's express provisions for modification, Lynx's argument that MRI is somehow estopped from seeking entry of the Source Code Addendum is demonstrably incorrect and should be rejected.

The most surprising aspect of Mr. Movius's August 23 email, however, was Lynx's reversal on its earlier commitment to "consider a proposal by MRI for further protections." *Compare* Doc. # 95, Movius Decl. ¶ 8 to *id*. at ¶ 12-13. Contrary to his commitment during the parties' July 1 call, Mr. Movius' August 23 email made clear Lynx would not consider *any* proposal. During a subsequent call, MRI reiterated its concerns as to production of its source code, and invited Lynx to identify the particular aspects of the Source Code Order Lynx found objectionable. However, Mr. Movius merely confirmed the position set forth in his August 23 email that Lynx would not agree to *any* additional protections for MRI's source code beyond those set forth in the existing protective order, and made clear that Lynx did not plan to provide

any comments on the Source Code Order. *See* Doc. # 100, Yanchar Decl., ¶ 22. Without any further communication with MRI on the subject of source code, Lynx filed its Motion to Compel. *Id*. at ¶ 23.

In sum, to secure MRI's commitment to produce source code notwithstanding its objections, Lynx committed to considering additional protections. Then, one month after receiving the Source Code Addendum, Lynx inexplicably reversed its position by refusing to consider *any* additional protections. Without further discussion, Lynx then moved the Court. *See generally,* 9/23/13 Yanchar Decl. Lynx violated Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37.1 by failing to make sincere, good faith efforts to resolve the instant dispute.

### III. The Protections Afforded by MRI's Source Code Protective Order Are Both Reasonable and Consistent With Those Routinely Afforded By Courts.

Numerous courts have consistently recognized that additional safeguards are necessary to prevent unauthorized dissemination or misuse of a producing party's highly valuable, confidential source code. Given the importance and sensitivity of source code, in a number of district courts where high-tech litigation is common, model protective orders providing strict rules for access to and use of source code have been endorsed. Several examples of such model orders are attached hereto. *See e.g.,* at Exh. B (D. Del. "Default Standard for Access to Source Code); Exh. C (E.D. Texas Default Protective Order at ¶¶ 10-11); Exh. D (N.D. Cal. Patent Local Rule 2-2 Interim Model Protective Order, ¶ 9).

Other courts, where a default order for protection of source code has not yet been adopted, have uniformly afforded source code strict additional protections on request of the producing party. Examples of several such orders are attached hereto. *See e.g.*, Exh. E, *In Re Maxim Integrated Products*, *Inc. Patent Litigation,* MDL No. 2354, Supplemental Protective Order (Doc. No. 522); Exh. F*, Best Medical International, Inc. v. Accuray*, Inc. et al., No. 2:10-cv-01043-TFM, Stipulated Protective Order (Doc. No. 61) (June 1, 2011); Exh. G, *Carnegie Mellon University v. Marvell Technology Group, Ltd.* et al., No. 2:09-cv-00290-NBF, Third Amended Protective Order (Doc. No. 112-1) (April 26, 2010); Exh. H., *Arrivalstar S.A. et al. v.*

*Shipmatrix, Inc.,* et al., No. 2:07-cv-00415-JFC, Stipulated Protective Order (Doc. No. 59) (December 4, 2007). These courts have reasoned that creators of software have vital concerns about the confidentiality of their products' source code, and that loss of the confidentiality of the source code would result in irreparable injury. *See e.g.*, *Leader Techs. v. Facebook, Inc.*, Civ. No. 08-862, 2009 WL 3021168, *2 (D. Del. 2009); Exh. I, *Prism Techs., Inc. v. Adobe Systems, Inc., et al,* Case No. 8:10cv220 (D. Neb. 2011), 11/14/11 Memorandum and Order, at p. 2. Indeed, at least one court has required *expert testimony* from the party seeking discovery, before determining production of source code was actually necessary. *See Leader Techs.*, 2009 WL 3021168, at *3.

The additional protections set forth in the Source Code Addendum are entirely consistent with the protections uniformly provided for by courts. As all of the foregoing attached orders show, such protections routinely include, *inter alia*:

1. The option to make the source available for inspection on a "stand-alone" computer that is not linked to any network. *Compare* Source Code Addendum at ¶ 20(e) *to e.g.*, Exh. B, Delaware Default Order at ¶ 1; Ex. D, N.D. Cal. Default Order at ¶ 9(c).

2. Advanced notice of the individuals receiving access to the source code. *Compare* Source Code Addendum at ¶ 20(e)(1) *to e.g.*, Exh. B, Delaware Default Order at ¶ 4; Exh. D, N.D. Cal. Default Order at ¶ 9(b).

3. Controls on making printouts or copies of the source code, and the use thereof. *Compare* Source Code Addendum at ¶¶ 20(e)(2), 20(e)(4), 20(f) *to e.g.*, Exh. B, Delaware Default Order at ¶ 5; Exh. D, N.D. Cal. Default Order at ¶ 9(c)-(e).

In sum, the Source Code Addendum provides no more than the reasonable types of controls uniformly afforded by Courts for source code. Entry of such an order requiring that a "trade secret . . . be revealed only in a specified way" is expressly provided for in Federal Rule of Civil Procedure 26(c)(1)(g). In arguing MRI's source code is entitled to no additional protections, Lynx's Motion to Compel ignores Rule 26. Accordingly, MRI respectfully requests

that this Court follow the lead of other courts around the country that have routinely afforded source code protections such as those sought by MRI.

IV. **Production of MRI's Source Code in the Absence of the Source Code Addendum Presents an Undue Burden and a Grave Risk of Irreparable Harm.**

As set out in the attached Declaration of Patrick Ghilani, MRI's source code is its most vital trade secret. If MRI's source code were to be obtained by a third party, it could be used to duplicate MRI's product offerings, find and take advantage of security vulnerabilities in MRI's products (resulting in data theft, service level breaches, or compromised functionality), or reveal important aspects of MRI's offerings that could be leveraged by its competitors. Any one of these possibilities could have serious, irreparable and possibly devastating repercussions to MRI's ability to do business. Exh. J, 9/23/13 Ghilani Decl. at ¶ 5. Because of these dangers, MRI employs a team to manage its source code to maintain its integrity and to control access. *Id*. at ¶ 6. MRI also employs a source control management system that allows MRI to closely restrict and monitor access so that only approved users providing valid credentials can even view its source code. *Id*. To further protect its source code, when MRI makes copies of its executable code available to its clients, it does so only pursuant to written license agreements wherein clients expressly agree not to, *inter alia,* "decipher, decompile, disassemble, reverse assemble, modify, translate, reverse engineer or otherwise attempt to derive source code. . . for competitive purposes or otherwise." *See*, Doc. # 15, Sealed Document - Exhibit 3 to Complaint, Master Agreement, at ¶ 6.2. Safe handling of MRI's source code is also a requirement of certain protocols and standards, to which MRI must continued to adhere to preserve the ability to conduct its business in the United States and abroad. Exh. J., 9/23/13 Ghilani Decl. at ¶ 9-11.

The provisions of the existing Protective Order in this case are not adequate to protect MRI from the risk that its source code will be revealed. While the existing Stipulated Protective Order restricts access to ATTORNEYS EYES ONLY documents to outside counsel and approved experts, it contains no express restrictions on the manner in which such documents are stored, whether such documents can be stored on networked computers, whether such documents

can be copied or printed wholesale, the number of copies that can be made, or how such documents are transmitted between outside counsel and/or experts. The existing Protective Order would not, for example, prohibit Lynx's outside counsel from copying MRI's complete source code onto a hard drive, and shipping it via regular U.S. Mail to Lynx's approved expert, so long as Lynx's counsel unilaterally deemed such measures "reasonable and appropriate." *See* Doc. # 29, Stipulated Protective Order, at ¶ 9-10. As another example, the existing Protective Order does not expressly forbid Lynx's counsel from making unlimited, unnumbered copies of MRI's complete source code, or from retaining such copies for an indefinite period of time, in its files. *Id*. As another example, the existing Protective Order would allow Lynx's counsel to freely print source code without any limit and without disclosing to MRI what portions of its code have been printed.

Lynx's refusal to consider any modifications to the existing Protective Order drastically increases the risk of inadvertent disclosure, eliminates MRI's ability to monitor its source code, and abolishes MRI's ability to challenge Lynx's handling of the source code and to track the specific code that has been printed. Considered altogether, such a lack of reasonable controls on access to and use of MRI's source code exposes MRI's hard-earned investment in its software to undue and unnecessary risk. Accordingly, to the extent the Motion to Compel would oblige MRI to produce its source code with no additional protections beyond the Stipulated Protective Order, it should be denied.

**V.     The Source Code Addendum Will Not "Cripple" Lynx's Ability to Prepare Its Defense.**

The only justification Lynx offers for its wholesale rejection of the Source Code Addendum is that the restrictions MRI proposes would purportedly "cripple Lynx's ability to perform the detailed version-to-version and line-by-line analyses required by MRI's copyright claims." Lynx's Motion to Compel at p. 3. Lynx argues such analysis is "necessary to the issue of ownership because the registrations for at least ten versions of its software were made more than five years after their first publications and thus do not constitute *prima facie* evidence of

ownership." *Id*. at pp. 3-4.  In so arguing, Lynx misconstrues both law and fact.  The cited provision of the Copyright Act, 17 U.S.C. § 410(c) states:

> (c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

Lynx's argument is misleading, because it ignores that, as to all versions of the MRI Software that have been released by MRI since 2006 (before the 2002 Agreement, and thus, Lynx's license, expired), the registration *was* made within five years of the release date.  *See* Doc. # 1-1 (Copyright Registrations, Exhibit 1 to Complaint.)  This includes the registrations for the two latest versions of the MRI Software Lynx admitted to having in its possession (versions MRI 4.0 with SP3 and MRI 4.0 with SP4).  *See* Yanchar Decl,, ¶ 4.  Moreover, 17 U.S.C. 410(c) expressly provides that, even if five years passed between publication and registration, the Court may still find the certificates constitute *prima facie* evidence of validity, and indeed, most courts do so find, absent compelling evidence undermining their validity.  *See e.g., CJ Products LLC v. Snuggly Plushez LLC*, 809 F.Supp.2d 127, 133-34 (E.D.N.Y. 2011).  Thus, at least all of MRI's registrations from 2006 to present are entitled to a presumption of validity.  As such, the MRI source code is not necessary to the issue of ownership.

In trying to justify a need for MRI's source code, Lynx further asserts that "because 20 of MRI's 21 registration certificates are for 'derivative works' that cover only the incremental changes from the immediately-prior version, a version-to-version comparison of MRI's source code is necessary to determine what each registration covers (and thus, what MRI owns)."  This is nonsense.  As a initial matter, the statute Lynx cites, "17 U.S.C. § 490(9) [*sic* 409(9)]," says no such thing.  Nonetheless, Lynx's argument might possibly have some merit in a case where, for example, the plaintiff's copyrighted song was based upon a third party's preexisting song, and there was a dispute as to what contribution was made by the plaintiff versus the third party. However, this is no such case.  There is no assertion MRI does not own *all* versions of the MRI

Software.  Thus, there is no need to compare each version of the MRI Software to determine what MRI does and does not own.

As to the issue of copying, Lynx obfuscates MRI's true legal burden given the facts of this case. *Kohus v. Mariol,* 328 F.3d 848, 853 (6th Cir .2003), cited by Lynx in its Motion to Compel, makes clear that the test for proving an *inference* of copying ("access" and "substantial similarity") is *only* necessary where there is no *direct* evidence of copying.  Here, there is abundant direct evidence of copying.  The evidence of Lynx's various categories of copyright infringements is summarized in MRI's response to Lynx's Interrogatory No. 8, which was previously submitted to the Court under seal as Doc. # 85.  For example, Lynx admitted in its interrogatory responses that it used the MRI Software after the expiration of the 2002 Agreement on numerous occasions, and Lynx's professional services orders (PSOs) show that Lynx has made innumerable wholesale copies of the MRI Software without a license.  Lynx also admitted most of its Customizations were created using the Toolkit within the MRI Software, just as MRI's Director of Consulting Services, Eric Smith, was able to conclude in his declaration before this case was even filed.  *See* Doc. # 6-9, April 20, 2012 Declaration of Eric Smith.

No review of MRI's source code is needed to conclude that Lynx's use of the MRI Software, and making of copies for unauthorized purposes, after the termination of its license constitutes copyright infringement. *See e.g., SAS Institute, Inc. v. S&H Computer Systems, Inc.*, 605 F.Supp. 816, 828-29 (M.D. Tenn. 1985) ("use of [plaintiffs software] on an unauthorized computer, the making of innumerable copies for unauthorized purposes, and any use whatsoever of [plaintiffs software] following the lawful termination of the license agreement by [defendant] constitute copyright infringement"); *CoStar Realty Information, Inc. v. Field*, 737 F. Supp. 2d 496, 507 (D. Md. 2010) (display from browser creates a copy in cache or RAM which, absent authorization, can infringe copyright in displayed work).

In sum, Lynx's assertion that the Source Code Addendum would somehow hamper Lynx's defense is wholly unfounded.  In the face of the abundant direct evidence of copying presented here, there is no need for the type of "side-by-side" comparison of source code Lynx

argues it is entitled to. *See Kohus*, 328 F.3d 853.[1] Indeed, Lynx offers no description of precisely what comparison would need to be made to establish Lynx's infringement that somehow necessitates production of MRI's complete source code. .

Finally, to the extent Lynx truly needs to perform the sort of analyses it argues it needs, there are ways to allow this while mitigating the risk of irreparable harm and undue burden to MRI. As one possible example, the District of Delaware Default Standard for Access to Source Code provides:

> The stand-alone computer shall include software utilities which will allow counsel and experts to view, search and analyze the source code. At a minimum, these utilities must provide the ability to (a) view, search, and line-number any source file, (b) search for a given pattern of text through a number of files, (c) compare two files and display their differences, and (d) compute the MD5 checksum of a file.

*See* Exh. B, District of Delaware Order, at ¶ 7. If Lynx had engaged in a discussion regarding the Source Code Addendum, MRI may have been willing to consider addition of such a provision. However, Lynx refused to engage in such a dialogue before moving the Court. MRI respectfully submits that Lynx should not be rewarded (and perhaps should be sanctioned) for its continued refusal to act reasonably to seek to resolve discovery disputes before seeking the Court's intervention.

## VI. Conclusion.

Lynx's request for MRI's complete source code is overly broad and unduly burdensome, and presents a grave risk of irreparable harm to MRI. Lynx's Motion to Compel should be denied to the extent that it would oblige MRI to produce source code without any additional protections beyond the existing Stipulated Protective Order. The Source Code Addendum is

---

[1] The other cases cited by Lynx are similarly distinguishable from the case at bar. In *R.C. Olmstead, Inc. v. CU Interface,* 606 F.3d 262 (6th Cir. 2010), the plaintiff alleged defendant's software, *which was written by defendant without use of plaintiff's software*, was substantially similar to plaintiff's copyrighted software. Likewise, in *General Universal Systems, Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004), the accused software ("MEPAW") was written by the defendant, and the court expressly found that the plaintiff failed to present any *direct* evidence of copying. Unlike the foregoing cases, here, Lynx admits it used the MRI Software after the 2002 Agreement expired, and admits that it used the Toolkit within the MRI Software to create its Customizations. Lynx's PSOs further evidence Lynx routinely copying instances of the MRI Software wholesale on behalf of MRI's customers. As such, *R.C. Olmstead* and G*eneral Universal Systems*, are inapposite.

fully consistent with the protections routinely afforded by courts for source code, and will not impede Lynx's ability to prepare its defense.  MRI respectfully requests that the Source Code Addendum be entered.  MRI also respectfully requests that appropriate sanctions be imposed for Lynx's repeated failure to comply with Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37.1.

September 23, 2013

Respectfully submitted,

By: /s/ *Georgia Yanchar*
Daniel McMullen (Ohio Bar No. 0034380)
Georgia Yanchar (Ohio Bar No. 0071458)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
E-mail:dmcmullen@calfee.com
gyanchar@calfee.com

Attorneys for Plaintiff MRI Software LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2013, a copy of the foregoing Opposition to Motion to Compel was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

> */s/ Georgia E. Yanchar*
> One of the Attorneys for Plaintiff