UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MRI Software, LLC,                               )       Case No. 1:12-cv-01082
                                                )
                    Plaintiff,                  )       Judge Christopher A. Boyko
                                                )
        vs.                                     )
                                                )
Lynx Systems, Inc. et al.,                      )
                                                )
                    Defendants.                 )

**Donald Robinson's Motion to
Dismiss and Notice of Limited Appearance**

Donald Robinson hereby moves the Court to dismiss MRI Software, LLC's claims against him under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) because MRI fails to state a plausible claim against him upon which relief can be granted.

In bringing this motion, Don Robinson and his undersigned counsel make a special appearance for the limited purpose of objecting to personal jurisdiction and for moving to dismiss MRI's claims against him on that ground and on additional Rule 12(b)(6) grounds, which may be joined under Federal Rule of Civil Procedure 12(g)(1). This special appearance is not intended to be, and shall not be construed as, a general appearance or a waiver of any of Don Robinson's defenses, including, but not limited to, lack of capacity to be sued or lack of personal jurisdiction.

The Court should grant this motion and dismiss MRI's claims against Don Robinson under Rule 12(b)(2) because the Court lacks personal jurisdiction over him. Don Robinson is a Canadian resident and citizen whose limited contacts to this

forum result from his service as an employee, officer and director of Lynx. Under Canadian law, which applies based on well-established conflict of law principles, Don Robinson cannot be held personally liable for Lynx's actions, including those he performed on Lynx's behalf, unless he established a separate identity or interest from that of Lynx as a corporation. That is dispositive because MRI admits that all of Don Robinson's alleged acts were within the scope of his duties to Lynx. Don Robinson's alleged conduct therefore cannot be attributed to him personally and MRI otherwise cannot show that exercising personal jurisdiction over him would be proper under Ohio's long-arm statute and comport with due process.

The Court also should grant this motion and dismiss MRI's claims against Don Robinson under Rule 12(b)(6) because MRI has not stated a claim against him upon which relief can be granted. MRI's claims against Don Robinson fail in full because he cannot be held not personally liable under controlling Canadian law. MRI's contract, copyright and trademark claims also fail for the additional reason that MRI did not bring them against Don Robinson within one year as required by the 2002 agreement between MRI and Lynx. MRI's breach of contract claim also fails to state a claim against Don Robinson for the additional reason that he is not a party to the allegedly-breached agreement.

For these reasons, as set forth in more detail in memorandum in support being filed herewith, the Court should grant Don Robinson's motion and dismiss MRI's claims against him under Federal Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) because MRI has failed to state a plausible claim against him.

Respectfully submitted,

Dated: October 8, 2013

/s/ David T. Movius
David T. Movius (0070132)
 *dmovius@mcdonaldhopkins.com*
McDonald Hopkins LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

John T. McLandrich (OH 0021494)
 *jmclandrich@mrrlaw.com*
Mazanec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 │ f 440.248.8861

*Attorneys for Donald
Robinson, by Special Appearance*

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No. 1:12-cv-01082 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| Lynx Systems, Inc. et al., | ) | |
| | ) | |
| Defendant. | ) | |

### **Memorandum in Support of Donald Robinson's Motion to Dismiss**

From the moment it filed this case, MRI Software, LLC has pursued an aggressive, take-no-prisoners litigation strategy. Having battled Lynx systems, Inc. tooth and nail for more than a year, MRI has now opened up a new front by suing Don Robinson, Lynx's President, in his personal capacity on the same claims it has—until now—been litigating solely against Lynx. MRI knew all of the facts that it now alleges against Don Robinson when it first filed its complaint against Lynx. The only thing that changed between then and now is MRI's hope that it can erode Lynx's resolve by making this case personally painful for Don Robinson.

The Court should not tolerate MRI's sharp litigation tactics. Don Robinson is a Canadian citizen and his only connection to this case results from his status as an employee, officer and director of Lynx. In contrast, MRI is a sophisticated, private equity-backed industry giant that has already spent hundreds of thousands of dollars to bankroll its fight against Lynx. But that largess does not mean MRI can hail Don Robinson into this forum from his Canadian domicile and put his modest personal assets in jeopardy. Under controlling Canadian law, the acts of a corporate

{4525361;}

officer are not personally actionable unless the officer "established a separate identity or interest from that of the corporation." *Banyan Licensing, L.C. v. OrthoSupport Int'l, Inc.,* 296 F. Supp. 2d 885, 890 (N.D. Ohio 2003). MRI readily admits that all of Don Robinson's alleged conduct was within the scope of his duties to Lynx. (Am. Compl. ¶ 13.) Don Robinson therefore did not establish a separate identity from Lynx. His actions on Lynx's behalf thus cannot be attributed to him individually for purpose of establishing personal jurisdiction over him.

But even if Canadian law did not bar MRI from attributing Don Robinson's acts on Lynx's behalf to him individually, personal jurisdiction still would not exist. While MRI pays lip service to Ohio's long-arm statute, its cursory allegations are not sufficient to establish a legitimate basis for the Court to satisfy the exercise personal jurisdiction under that statute. MRI also cannot establish that exercising either specific or general personal jurisdiction over Don Robinson would comport with due process. The Court therefore should grant Don Robinson's motion and dismiss MRI's claims against him for lack of personal jurisdiction.

The Court also should dismiss MRI's claims against Don Robinson because they do not state a claim against him upon which relief can be granted. Because MRI admits that all of Don Robinson's conduct was within the scope of his duties to Lynx, applicable Canadian law precludes MRI from holding him personally liable irrespective of whether personal jurisdiction exists. MRI's contract, copyright and trademark claims also fail to state actionable claims against Don Robinson because the agreement giving rise to those claims required MRI to bring them within one

year, which MRI did not do. Lastly, MRI fails to state a claim against Don Robinson for breach of contract because he is not a party to the contract at issue.

For each of these independently-sufficient reasons, and as discussed in more detail below, the Court should grant Don Robinson's motion and dismiss MRI's complaint against him for lack of personal jurisdiction and because MRI has failed to state a claim against him upon which relief can be granted.

## Background

This case is a business dispute between MRI, a company that makes software used by businesses to manage real estate, and Lynx, a Canadian software consultancy that MRI partnered with more than a decade ago to develop a Canadian market for its software. (*See* Am. Compl. ¶¶ 8, 27-26, 86.) The agreements covering their relationship included the August 2002 "MRI Product Sub-Licensor and Service Provider Agreement" (the "2002 Agreement"). (*Id.* ¶ 84.) Under the 2002 Agreement, MRI granted Lynx the right: (i) to distribute, promote, and market MRI's software to actual and potential customers; (ii) to sublicense customers to use MRI's software; (iii) to service MRI's software for customers; (iv) to use MRI's software; (v) to create Customizations using the Customization Tool Kit; and (vi) to use MRI's trademarks to promote, advertise, sell, and service MRI's software. (2002 Agreement §§ 2.1, 2.2.2, 12.2.)

According to the factual allegations contained in MRI's Amended Complaint, which Mr. Robinson disputes, but presumes to be true for purposes of this motion only, the 2002 Agreement terminated or expired effective August 1, 2008. (Am. Compl. ¶ 94.) MRI alleges that, due to the termination or expiration of the 2002

Agreement, effective as of August 1, 2008, Lynx was required to stop servicing and using MRI's software, and to stop using MRI's trademarks, but that Lynx continued to do all of those things. (*Id.* ¶¶ 94, 144.) According to MRI, by continuing to do what was previously permitted by the 2002 Agreement after termination, Lynx breached the 2002 Agreement and infringed MRI's claimed copyright and trademark rights. (*Id.* ¶ 110.)

MRI filed this action against Lynx on May 1, 2012—almost four years after the date MRI alleges that Lynx's alleged breaches and infringements began. (ECF # 1.) For more than a year, MRI prosecuted its claims solely against Lynx. That, however, changed on August 22, 2013, when MRI filed its amended complaint and named Don Robinson, Lynx's President, as an additional defendant under all 17 claims it originally asserted exclusively against Lynx. (*See* ECF # 89.)

The Court should dismiss MRI's complaint against Don Robinson because personal jurisdiction does not exist over him in his personal capacity. Don Robinson is a Canadian citizen who resides in Toronto, Ontario, and Lynx is a Canadian corporation. (Am. Compl. ¶¶ 8, 9.) While MRI suggests that Don Robinson has participated in and contributed to Lynx's allegedly-improper actions, it admits that any such conduct by him was *exclusively* "within the scope of [his] agency, service [and] employment" with Lynx. (*Id.* ¶ 13.) That conduct includes:

- serving as the President of Lynx, which includes overseeing the operations of all departments and personnel (*Id.* ¶ 5);

- hiring and meeting with Lynx's personnel (*Id.* ¶¶ 24-25);

- signing the 2002 Agreement in his capacity as the President of Lynx (*Id.* ¶ 85; 2002 Agreement at 20, ECF PageID# 124);

- meeting with MRI to discuss a potential new agreement between Lynx and MRI (Am. Compl. ¶ 96); and

- communicating with customers about the services Lynx offers using a Lynx-provided email account (*Id.* ¶¶ 122-133 & Exh. 7).

Because this conduct, and all other conduct MRI alleges, was within the scope of Don Robinson's duties to Lynx, it cannot be attributed to him personally. MRI therefore has not pled any independently-actionable conduct by Don Robinson and it otherwise has not demonstrated that the exercise of personal jurisdiction under these circumstances would comport with Due Process. MRI likewise has failed to state a claim against Don Robinson because he is not personally liable under Canadian law, MRI waited more than one year to bring its contract, copyright and trademark claims, and Don Robinson is not a party to the 2002 Agreement.

## Law And Argument

The Court should grant Don Robinson's motion and dismiss all of MRI's claims against him because MRI cannot establish that the Court has personal jurisdiction over him and because MRI has not stated a claim against him for which relief can be granted.

## I.   MRI Cannot Establish Personal Jurisdiction

"Deciding whether jurisdiction exists is not an idle or perfunctory inquiry; due process demands that parties have sufficient contacts with the forum state so that it is fair to subject them to jurisdiction." *Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir. 2012). As plaintiff, MRI has the burden of establishing that this Court has personal jurisdiction over Don Robinson as a non-resident defendant. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). To carry that

burden, MRI must "set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Ohio's long-arm statute does not reach to the limits of the Due Process Clause of the United States Constitution. *See Conn,* 667 F.3d at 712 (citing *Goldstein v. Christiansen,* 70 Ohio St. 3d 232 (1994)). Personal jurisdiction over a non-resident defendant in Ohio therefore does not exist unless a plaintiff can establish (1) that the non-resident defendant is amenable to suit under Ohio's long-arm statute, and (2) allowing the non-resident defendant to be sued in Ohio would not contravene due process. *See id.* at 712; *CompuServe*, 89 F.3d at 1262.

MRI cannot establish either of the elements for personal jurisdiction. Under controlling Canadian law, the conduct upon which MRI relies to assert personal jurisdiction over Don Robinson is attributable only to Lynx. MRI also cannot otherwise establish that Don Robinson is amenable to suit under Ohio's long-arm statute and that allowing him to be sued in Ohio would not contravene due process. The Court therefore should grant Don Robinson's motion and dismiss MRI's claims against him for lack of personal jurisdiction.

### A.   The Court Lacks Jurisdiction Over Don Robinson Because His Alleged Ohio Contacts Were as an Officer and Director of Lynx

MRI alleges that Don Robinson is directly liable because he actively participated in and contributed to Lynx's alleged conduct and because he and Lynx are alter egos. (Am. Compl. ¶¶ 16-19.) MRI, however, admits that *all* of Don Robinson's relevant acts—including his alleged participation and contribution—were "within the scope of [his] agency, service [and] employment" with Lynx. (*Id.* ¶

13.) That binding judicial admission is dispositive. Under Canadian law, which must be applied to this issue, Don Robinson and Lynx are not alter egos and he cannot be held personal liability for acts that were within the scope of his duties to Lynx. MRI therefore has not pled any independently-actionable conduct by Don Robinson that could support an exercise of personal jurisdiction over him.

### 1. Canadian Law Governs Don Robinson's Potential for Personal Liability as an Officer and Director Of Lynx

Whether the Court has personal jurisdiction over Don Robinson, a Canadian citizen and resident, depends on whether he can be held personally liable under Canadian law for his alleged conduct as an officer and director of Lynx.

Ohio's federal and state courts apply the Restatement (Second) of Conflict of Laws (1969) (the "Restatement") to determine what jurisdiction's laws to apply in this type of situation. *See Bickel v. Korean Air Lines Co.,* 83 F.3d 127, 130 (6th Cir. 1996) (federal question); *Charash v. Oberlin College,* 14 F.3d 291, 296 (6th Cir. 1994) (citing *Morgan v. Biro Mfg. Co.,* 15 Ohio St.3d 339, 342 (1984)) (Ohio state law claims). For tort claims, "the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties" applies. *See* Restatement § 145(1). Determining which jurisdiction has the most significant relationship in the tort context depends on (i) where the injury occurred, (ii) where the conduct causing the injury occurred, (iii) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (iv) where the relationship, if any, between the parties is centered. *Id.* at § 145(2).

The facts of this case parallel *Banyan Licensing, L.C. v. OrthoSupport Int'l, Inc.,* in which Judge Carr held that Canadian law controls whether the allegedly-infringing conduct of an officer of a closely-held Canadian corporation could subject him to personal jurisdiction in Ohio. *Banyan,* 296 F. Supp. 2d at 890. Evaluating the Restatement § 145(2) factors, Judge Carr found that Canadian law applied because the alleged injury occurred in multiple jurisdictions, the allegedly-infringing acts occurred in Canada, the defendant's principal place of business was in Canada, and the parties' contacts occurred outside Ohio. *Id.* at 890. On that basis, the court dismissed the individual for lack of personal jurisdiction. *Id.* at 892. This Court should apply the same analysis and reach the same conclusion based on the similar facts of this case.

Because MRI alleges that it has suffered intangible injuries in multiple jurisdictions, including in the United States (*e.g.,* Count I, U.S. Copyright Infringement) and in Canada (*e.g.,* Count V, Violation of Canadian Copyright Act), the first Section 145(2) factor, the place where the injury occurred, is of "minimal importance." *Banyan,* 296 F. Supp. 2d at 890; *see* Restatement § 145 cmt. e (place where injury occurred "will not play an important role" where "injury has occurred in two or more states"). That is particularly true considering the intangible nature of MRI's alleged injuries. *See* Restatement § 145 cmt. f ("[T]he place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts."). The first factor therefore is neutral. *See Banyan,* 296 F. Supp. 2d at 890.

The second factor, where the conduct occurred, weighs heavily in favor of applying Canadian law. "When the injury occurred in two or more states …, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law." Restatement § 145 cmt. e. *See also* Restatement § 145 cmt. f ("[T]he principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values."). Don Robinson resides in Toronto, which also is where Lynx has its principal place of business. (Am. Compl. ¶¶ 8-9.) Moreover, nearly all of Lynx's, and thus Don Robinson's, allegedly-actionable conduct originated from Canada, including the alleged infringement of MRI's Canadian copyrights. (*Id.* ¶¶ 209-217.) This factor therefore weighs heavily in favor of applying Canadian law. *See Banyan,* 296 F. Supp. 2d at 890.

The third factor, the domicile, residence, nationality, place of incorporation and place of business of the parties, also weighs in favor of applying Canadian law. Because MRI seeks to hold Don Robinson personally liable, his interests are more important than MRI's. *See* Restatement § 145 cmt. e ("When the interest affected is a personal one[,] domicile, residence and nationality are of greater importance than if the interest is a business or financial one, such as in the case of unfair competition, interference with contractual relations or trade disparagement."). Don Robinson's status as a Canadian citizen therefore takes precedence over MRI's

status as a Delaware corporation that operates in both Ohio and Canada. The third factor therefore favors applying Canadian law. *See Banyan,* 296 F. Supp. 2d at 890.

Finally, the fourth factor, the place where the relationship, if any, between the parties is centered, weighs in favor of applying Canadian law. The relationship between Lynx and Don Robinson exists exclusively in Canada, and the relationship between MRI and Lynx arose out of Lynx's development of the market for the MRI Software in Canada. In contrast, Don Robinson has no personal relationship with MRI because all of their interactions were in his capacity of an officer and employee of Lynx. Thus, whether Don Robinson can be personally liable to MRI necessarily arises out of his officer/director relationship with Lynx, which is exclusively Canadian. *See* Restatement § 309 (local law of state of incorporation ordinarily controls officer' or director's liability to corporation's creditors). This factor therefore weighs strongly in favor of applying Canadian law.

Accordingly, all four Restatement factors weigh in favor of applying Canadian law to determine whether MRI has pled facts that are sufficient to establish personal jurisdiction over Don Robinson based on his alleged actions as an officer and director of Lynx.

### 2. Under Canadian Law, Don Robinson's Alleged Conduct Cannot Create Personal Jurisdiction

Under Canadian law, a corporate officer rarely will be liable personally for the actions of a corporation "in the absence of findings of fraud, deceit, dishonesty or want of authority." *Banyan,* 296 F. Supp. 2d at 890 (citing *ScotiaMcLeod Inc. v. Peoples Jewelers Ltd.,* 25 O.R.3d 481 at ¶ 25 (C.A. 1995)). Thus, personal liability

will not attach "unless [a] plaintiff can establish that the officer established a separate identity or interest from that of the corporation." *Id*. MRI cannot show that Don Robinson established a separate identity or interest from Lynx. His alleged conduct therefore cannot give rise to personal liability and cannot support personal jurisdiction over him.

As noted by Judge Carr in *Banyan*, the Canadian Federal Court of Appeals' decision in *Mentmore Mfr. Co. v. National Merchandise Mfr. Co.,* 89 D.L.R. (3d) 195 (Fed. C.A. 1978) (attached as Exh. A), is the leading authority on whether an officer or director of a Canadian corporation can be held personally liable for acts of infringement by the corporation. *See Banyan*, 296 F. Supp. 2d at 890-892. Under *Mentmore*, "expressly direct[ing], order[ing], authorize[ing], aid[ing] and abet[ing]" a corporation to perform infringing acts is not enough to make an officer or director personally liable. *Mentmore*, 89 D.L.R. (3d) at 202. Instead, "there must be circumstances from which it is reasonable to conclude that the purpose of the director or officer was not the direction of the manufacturing or selling activity of the company in the ordinary course of his relationship to it but the deliberate, willful and knowing pursuit of a course of conduct that was likely to constitute infringement or reflected an indifference to the risk of it." *Id*. at 204-205. Canadian law therefore differs from American law on this issue in that it affords corporate officials substantial additional protection from personal liability.

The protection afforded officers and directors under Canadian law applies equally to closely-held companies like Lynx. As the *Mentmore* court explained:

> This is a principle that should apply … not only to the large corporation but also to the small, closely held corporation as well. There is no reason why the small, one-man or two-man corporation should not have the benefit of the same approach to personal liability merely because there is generally and necessarily a greater degree of direct and personal involvement in the management on the part of its shareholders and directors. … [T]he fact [that the defendant] imparted the practical, business, financial and administrative policies and directives which ultimately resulted in the assembly of some goods [that were] infringing, was not by itself sufficient to give rise to personal liability.

*Id.* at 202-203. To hold otherwise, the court cautioned, "would render the offices of director or principal officer unduly hazardous if the degree of direction normally required in the management of a corporation's manufacturing and selling activity could by itself make the director or officer personally liable for infringement by his company." *Id.* at 202.

Applying *Mentmore,* Judge Carr held in *Banyan* that the plaintiff failed to prove that the defendant's sole officer and employee maintained an interest separate from his company because there was "nothing in the record to establish that [his] conduct ever diverted from the scope of his office as president of [the company]." *Banyan,* 296 F. Supp. 2d at 192. The same is true in this case.

MRI's amended complaint includes a smattering of unremarkable allegations regarding Don Robinson's routine performance of his duties as an officer and director of Lynx that are precisely the type of things that do not support personal liability for an officer or director of a closely-held corporation under *Mentmore.* (*See, e.g.,* Am. Comp. ¶¶ 10-12, 14.) MRI thus does not plead any facts that could support a conclusion that Don Robinson maintained an interest separate from Lynx or that he ever diverted from the scope of his duties as an officer and director. On the

contrary, MRI pleads that Don Robinson "was the agent, servant [and] employee" of Lynx, that he acted "within the scope of such agency, service [and] employment," and that he did so with the "knowledge, permission and/or consent" of Lynx. (Am. Compl. ¶ 13.) MRI thus has judicially admitted that Don Robinson did *not* maintain a separate interest from Lynx or divert from the scope of his duties to it. *See Brown v. Tennessee Gas Pipeline Co.,* 623 F.2d 450, 454 (6th Cir. 1980) ("Under federal law, … admissions in the pleadings are generally binding on the parties and the Court."). MRI therefore has not pled any conduct by Don Robinson that could support an exercise of personal jurisdiction over him.

### B.    The Court Also Would Lack Jurisdiction Over Don Robinson if His Alleged Conduct Is Personally Attributable

The Court also should dismiss MRI's complaint against Don Robinson because, even if his corporate conduct could be attributed to him personally, MRI still could not establish that personal jurisdiction is proper under Ohio's long-arm statute and that exercising jurisdiction is reasonable and consistent with due process of law. *See CompuServe*, 89 F.3d at 1262.

#### 1.    MRI Cannot Satisfy Ohio's Long-Arm Statute

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a complaint must include well-pled allegations establishing the defendant's actions toward the forum state with reasonable particularity. *See Palnik v. Westlake Entertainment, Inc.,* 344 Fed. Appx. 249, 252 (6th Cir. 2009) (affirming dismissal of complaint for lack of personal jurisdiction). Dismissal therefore is warranted if the

jurisdictional allegations are "capable of multiple interpretations …, at least one of which does not support personal jurisdiction in Ohio." *Id.* at 253.

MRI alleges that personal jurisdiction over Don Robinson exists under subsections (A)(1), (A)(3), and (A)(4) of Ohio's long-arm statute, Ohio Rev. Code § 2307.382. (*See* Am. Compl. ¶ 26.) The Court should dismiss MRI's complaint against Don Robinson for lack of personal jurisdiction because, in addition to not pleading any conduct that can be attributable to him personally, MRI has not pled facts that otherwise would be sufficient to meet the requirements of any of the three subsections of Ohio's long-arm statute on which it relies with the required degree of reasonable particularity.

With respect to subsections (A)(1) and (A)(3) of Ohio's long-arm statute, MRI does not plead sufficiently that its claims against Don Robinson arise from him "[t]ransacting any business in this state" or from "[c]ausing tortious injury by an act or omission in this state." According to MRI, Don Robinson travelled to Ohio to meet with Lynx customer service representatives, to investigate space for an office that Lynx never opened, and to meet with MRI on one occasion. (Am. Compl. ¶¶ 25, 96.) But MRI does not allege that any of its claims arise from those contacts. Instead, it pleads that its claims arise because Don Robinson "directs and conducts the activities of Lynx as the President and sole officer of Lynx" and he "participated and materially contributed" to Lynx's conduct. (*See id.* ¶¶ 187, 196, 202, 208, 216, 225, 230, 238, 249, 262, 273, 282, 291, 301.) MRI therefore cannot satisfy subsections (A)(1) or (A)(3) of Ohio's long-arm statute.

With respect to subsection (A)(4) of Ohio's long-arm statute, MRI has not demonstrated that Don Robinson "regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." First, while MRI alleges that Don Robinson occasionally met with Lynx employees in Ohio, investigated potential office space before Lynx decided to *not* do business in Ohio, and met with MRI to discuss a new agreement, those alleged contacts were on behalf of Lynx and MRI does not say when or on how many occasions those alleged contacts occurred. MRI therefore has not shown that Don Robinson has "regularly" done or solicited business or otherwise engaged in a persistent course of conduct in Ohio.

MRI also attempts to satisfy subsection (A)(4) of Ohio's long-arm statute by averring that Don Robinson "has received substantial revenue from services rendered in this state." (Am. Compl. ¶ 24.) MRI's pleading, however, admits that his supposed "revenue" was actually derived by Lynx and that any monies Don Robinson may have derived were in the form of a salary. (*Id.* ¶¶ 11, 13, 15.) While MRI tries to gloss over that distinction by pleading that Don Robinson has a "financial interest in the activities" of Lynx (*id.* ¶ 11), the simple fact is that MRI has not identified *any* revenue that Don Robinson himself derived from doing business in Ohio, let alone "substantial" revenue as required by subsection (A)(4).

Finally, MRI's jurisdictional claim fails under section (C) of Ohio's long-arm statute, which limits MRI to establishing personal jurisdiction based on claims that arise out of Don Robinson's acts in Ohio. *See* Ohio Rev. Code § 2307.382(C). Here,

MRI alleges that Don Robinson had limited contacts with Ohio, namely visiting with Lynx employees who lived in the area, looking at office space that Lynx never rented, and meeting with MRI about a potential new agreement between MRI and Lynx. However, none of MRI's claims arise out of those alleged acts. MRI therefore cannot satisfy Ohio's long-arm statute because there is no "proximate cause" relationship between its claimed injury and Don Robinson's alleged conduct in Ohio. *See Brunner v. Hampson*, 441 F.3d 457, 465-66 (6th Cir. 2006) (Ohio's long-arm statute "requires a 'proximate cause' relationship between a plaintiff's personal injury claim and the defendant's conduct in Ohio"). The Court accordingly should grant Don Robinson's motion and dismiss MRI's complaint against him because MRI cannot satisfy Ohio's long-arm statute, regardless of whether Don Robinson's corporate actions are attributed to him personally.

### 2. MRI Cannot Establish that Asserting Personal Jurisdiction Over Don Robinson Individually Comports with Due Process

MRI also cannot show that exercising personal jurisdiction over Don Robinson would comport with due process. To satisfy the due process requirement, MRI must show that Don Robinson had sufficient "minimum contacts" with Ohio so that finding personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Third Nat'l Bank v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Two forms of "minimum contacts" can satisfy that requirement: (i) specific jurisdiction, where the suit arises from the non-resident defendant's contacts with the forum state, and (ii) general personal jurisdiction, where the suit does not arise

from the non-resident defendant's contacts with the forum state. *See id.* at 1089 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 & n. 15 (1985)). The Court should grant Don Robinson's motion for the additional reason that MRI cannot satisfy the due process requirements for either type of personal jurisdiction.

a. <u>MRI Cannot Establish Specific Jurisdiction Over Don Robinson</u>

To establish specific jurisdiction, MRI must show that: (i) Don Robinson purposefully availed himself of the privilege of conducting activities in Ohio; (ii) MRI's causes of action arise from Don Robinson's activities in Ohio; and (iii) the exercise of jurisdiction is reasonable. *CompuServe*, 89 F.3d at 1263. MRI cannot establish any of these three requirements.

First, Don Robinson did not purposefully avail himself of the privilege of conducting activities in Ohio. While it may be that Lynx availed itself of the privilege of conducting activities in Ohio by virtue of its ongoing relationship with MRI, *see Burger King,* 471 U.S. at 474-75 (franchisor could maintain action in Florida against Michigan franchisees where agreement contemplated on-going interactions between franchisees and franchisor's headquarters), the same is not true for Don Robinson. At most, Don Robinson only had random, fortuitous, and attenuated contacts with Ohio that are insufficient to satisfy the purposeful availment requirement. *See LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting *Burger King*, 471 U.S. at 475). Specific jurisdiction therefore does not exist because Don Robinson did not purposefully avail himself personally of the privilege of conducting activities in Ohio.

Second, MRI's claims do not arise out of Don Robinson's alleged Ohio-centric activities. As discussed above, MRI alleges only a handful of contacts by Don Robinson, where he visited Lynx employees, looked at but did not lease office space for Lynx, and met with MRI to discuss a new deal with Lynx. None of MRI's claims arise out of those alleged contacts by Don Robinson with Ohio. Specific jurisdiction therefore does not exist for the additional reason that MRI cause of action do not arise from Don Robinson's activities in Ohio.

Third, exercising jurisdiction over Don Robinson would be unreasonable under the facts of this case. Don Robinson resides in Canada, Lynx is a Canadian corporation with its principal place of business in Canada, and MRI admits that all of Don Robinson's actions were within the scope of his duties to Lynx. It therefore would be reasonable for Don Robinson to expect that he would be protected by Canadian law in the course of his actions on Lynx's behalf. Likewise, it would be unreasonable for MRI—a sophisticated, private equity-backed U.S. company with more than $100 million in assets—to haul Don Robinson into a foreign court, strip him of the protections afforded by Canadian law, and then force him to defend his and his family's modest assets in a foreign jurisdiction against claims that relate solely to his actions as an officer and director of Lynx. Finally, MRI has known all along that Lynx is a Canadian company, and its ability to bring any legitimate claims it may against Don Robinson in Canada militates against exercising personal jurisdiction over Don Robinson in this forum. *See Conn*, 667 F.3d at 720 (affirming lack of jurisdiction where plaintiff could sue individual defendant in

Russia). MRI accordingly cannot establish any of the three elements necessary for specific personal jurisdiction over Don Robinson.

> b. *MRI Cannot Establish General Jurisdiction Over Don Robinson*

As the Sixth Circuit recently affirmed, "Ohio law does not appear to recognize general jurisdiction of non-resident defendants." *Conn*, 667 F.3d at 717. Instead, personal jurisdiction in Ohio "requires that the court find specific jurisdiction under one of the bases listed in Ohio's long-arm statute." *Id.* MRI therefore cannot rely on general jurisdiction to establish personal jurisdiction over Don Robinson absent its compliance with Ohio's long-arm statute.

But if MRI could satisfy Ohio's long-arm statute, it cannot satisfy the requirements for general personal jurisdiction because Don Robinson's activities in Ohio are so continuous and systematic that he is "essentially at home" in Ohio. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2001). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile...." *Id.* at 2853. As MRI pleads, Don Robinson resides in Toronto, Ontario, and he only has visited Ohio on limited occasions—and only then, on Lynx's behalf. Based on those facts, there is no basis to conclude that Don Robinson is "essentially at home" in Ohio. *See Goodyear*, 131 S.Ct. at 2851; *see also Conn*, 667 F.3d at 718 (ruling that individual's numerous Ohio contacts were not "pervasive" enough to establish general jurisdiction). MRI accordingly cannot establish specific or general personal jurisdiction over Don Robinson. The Court therefore should grant Don Robinson's motion for the additional reason that exercising personal jurisdiction over him would not comport with due process.

### III.  The Court Also Should Dismiss MRI's Claims Against Don Robinson Under Rule 12(b)(6)

The Court also should dismiss all of MRI's claims against Don Robinson under Federal Rule of Civil Procedure 12(b)(6) because his alleged acts on behalf of Lynx cannot give rise to personal liability under applicable Canadian law, many of MRI's derivative liability claims against Don Robinson are barred by the one-year limit in the 2002 Agreement between MRI and Lynx, and MRI cannot sue Don Robinson for breach of contract because he is not a party to the 2002 Agreement.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Under Federal Rule of Civil Procedure 10, "[a] copy of a written instrument that is attached to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto ... so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

## A.     The Court Should Dismiss Don Robinson Because His Corporate Acts Cannot Subject Him to Personal Liability

As shown above with respect to personal jurisdiction, Canadian law controls whether Lynx's actions can be attributed to Don Robinson personally, and that law dictates they cannot. Because all of MRI's claims against Don Robinson are based on conduct alleged committed as an officer of Lynx. (*See* Am. Compl. ¶ 13), Don Robinson has no plausible personal liability for that alleged conduct under the applicable Canadian law. The Court therefore should dismiss MRI's claims against him for failure to state a claim upon which relief can be granted.

## B.     The Court Should Dismiss MRI's Contract, Trademark, and Copyright Claims as Time-Barred

As more fully explained in Lynx's co-pending motion to dismiss (ECF # 97), which Don Robinson incorporates herein by reference, the 2002 Agreement contractually bars MRI from bringing *any* cause of action "regardless of form, arising out of the transactions under this Agreement" more than one year after the occurrence of the events giving rise to the cause of actions were known or should have been known. As Lynx's motion shows, MRI's contract, trademark and copyright claims are barred because MRI knew or should have known of the events underlying those claims much more than one year before it sued Lynx. MRI's derivative claims against Don Robinson therefore fail for the same reason, especially since MRI waited for more than a year longer to assert its claims against Mr. Robinson personally than it waited to sue Lynx. The Court therefore should dismiss MRI's contract, trademark and copyright claims against Don Robinson for this additional, independently-sufficient reason.

### C.     The Court Should Dismiss MRI's Contract Claim Because Don Robinson Is Not A Party To That Contract

Finally, the Court should dismiss MRI's breach of contract claim against Don Robinson because he cannot be liable for any alleged breach the 2002 Agreement between Lynx and MRI. *See BMMSoft, Inc. v. White Oaks Tech., Inc.*, No. C-09-4562 MMC, 2010 WL 3340555, at * (N.D. Cal. Aug. 25, 2010) ("As a general matter, under California law, a person who enters into a contract as an agent for a disclosed principal is not considered a party to the contract."). As the 2002 Agreement admits, Don Robinson signed that agreement as Lynx's President and he is not a party to its terms. (*See generally,* 2002 Agreement & ECF PageID # 124.) MRI therefore cannot maintain a claim against Don Robinson for a breach of the 2002 Agreement and the Court should dismiss MRI's breach of contract claim with respect to him for this additional, independently-sufficient reason.

### <u>Conclusion</u>

For the foregoing reasons, the Court should grant Don Robinson's motion and dismiss MRI's claims against him under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) because MRI has failed to state a plausible claim against him.

Respectfully submitted,

Dated: October 8, 2013

/s/ David T. Movius
David T. Movius (0070132)
 dmovius@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

John T. McLandrich (0021494)
 jmclandrich@mrrlaw.com
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 │ f 440.248.8861

*Attorneys for Donald*
*Robinson, by Special Appearance*

## <u>Certificate of Service</u>

I hereby certify that, on October 8, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

 /s/ David T. Movius
*Attorney for Donald*
*Robinson, by Special Appearance.*