UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No. 1:12-cv-01082 |
| Plaintiff, | ) ) ) | Judge Christopher A. Boyko |
| vs. | ) ) | |
| Lynx Systems, Inc. et al., | ) ) | |
| Defendants. | ) | |

**Reply in Support of Lynx Systems, Inc.'s Motion
to Compel Production of Source Code and Brief in Opposition
to MRI's Cross-Motion to Amend the Stipulated Protective Order**

MRI asks the Court to either excuse it from producing the source code for the "Copyrighted Works" it put at issue by suing Lynx or amend the Stipulated Protective Order to impose onerous new restrictions that would materially prejudice Lynx's ability to defend itself. The Court should reject both of MRI's requests, deny MRI's cross-motion, and compel it to immediately produce its source code to Lynx under the terms of the existing Stipulated Protective Order.

Stripped of its feigned indignation and florid rhetoric, MRI's brief advances just three arguments: (i) that Lynx failed to make sincere, good faith efforts to resolve this discovery dispute; (ii) that Lynx does not need MRI's source code; and (iii) that the Stipulated Protective Order is insufficient. Each of MRI's arguments is easily disproved. First, the detailed correspondence and multiple conferences between Lynx's and MRI's counsel on this issue eliminate any question as to Lynx's sincerity and good faith. Second, discovery of MRI's source code is needed because

{4527969:}

MRI must prove ownership of valid copyrights and that Lynx original, protectable elements of that software, and Lynx's fair use defense requires analysis of the amount and substantiality of Lynx's alleged copying in relation to MRI's source code as a whole. Third, MRI has not identified any legitimate reason why the Stipulated Protective Order is insufficient.

The Court accordingly should grant Lynx's motion, deny MRI's cross-motion, and enter an order compelling MRI to immediately produce the complete source code for all versions of its software that MRI itself put at issue by filing this case.

## Law and Argument

### I. Lynx Fully Satisfied Its Local Rule 37.1 Obligations

MRI devotes nearly four pages of its opposition to arguing that Lynx's named counsel did not "show good faith." (MRI Br. at 3.) MRI's finger-pointing and recriminations are completely baseless—especially since MRI has certifies its compliance with Local Rule 37.1 in support of its cross-motion to amend the protective order based on the same exact record.

As Lynx certified under Local Rule 37.1 in advance of filing this motion (ECF # 95), it repeatedly tried to work with MRI's counsel in good faith to obtain discovery of MRI's source code over the course of several months:

| | |
|---|---|
| **April 11, 2013** | Lynx serves its Third Set of Discovery Requests. |
| **May 7, 2013** | Lynx consents to MRI's request for a two-week extension of time to respond, until May 28, 2013. |
| **May 30, 2013** | MRI objects in full to producing any source code two days after its extended response deadline. |

{4527969;} 2

| | |
|---|---|
| **June 13, 2013** | Lynx sends MRI a deficiency letter addressing its failure to produce the requested source code. |
| **June 14, 2013** | Lynx and MRI meet and confer for the <u>first</u> time; Lynx identifies four reasons why it needs MRI's source code. |
| **July 1, 2013** | Lynx and MRI meet and confer for a <u>second</u> time; Lynx agrees to consider source-code specific protections that MRI will provide in a written proposal. |
| **July 16, 2013** | Lynx follows up on MRI' promised proposal. |
| **July 24, 2013** | MRI provides its written proposal. |
| **August 23, 2013** | Lynx responds to MRI's proposal in writing. |
| **August 28, 2013** | Lynx and MRI meet and confer for a <u>third</u> time; MRI refuses to produce its source code absent Court order. |

(Rule 37.1 Declaration of David T. Movius, Esq., ECF # 95, ¶¶ 2-13.)

The third call between Lynx and MRI on August 28 eliminates any doubt as to Lynx's good faith. During that call, counsel discussed in depth Lynx's and MRI's respective positions. (*See* Decl. of David T. Movius, Esq., Exh. A, at ¶¶ 3-4.) When that did not lead to agreement, Lynx offered to consider any more reasonable proposals that MRI might have before moving the Court. (*Id.* ¶ 5.) MRI, however, refused Lynx's invitation to compromise and said that it did not intend to seek protection from the Court. (*Id.* ¶¶ 6-8.) Instead, MRI said it would not produce its source code unless (i) Lynx came up with restrictions that MRI deemed sufficient, or (ii) the Court compelled it to produce its source code under the Stipulated Protective Order. (*Id.*) With the parties at an impasse, Lynx indicated that it believed it had fulfilled its obligations under the Federal and Local Rules and intended to seek the Court's assistance. (*Id.* ¶ 9.) MRI did not disagree, so Lynx filed this motion. (*Id.*)

Lynx thus filed this motion only after MRI declined to seek protection and refused to produce its source code absent Court order. At the same time, MRI has now cross-moved the Court for protection based on that same record and after having represented that it did not intend to do so. Lynx accordingly complied with its pre-filing duties and MRI should not be heard to complain otherwise.

## II. The Court Should Grant Lynx's Motion Because MRI's Source Code Is Relevant, Necessary And Not Subject To Any Applicable Privilege

While MRI conceded that its source code is discoverable, it tries to back-door new objections by arguing that source code discovery should not be allowed because, in MRI's opinion, it has the better arguments on the merits. That misses the mark. Irrespective of MRI's opinion of its own case, it cannot avoid discovery of its source code because its decision to file this case put its source code squarely at issue. *See, e.g., Dynamic Microprocessor Associates v. EKD Computer Sales*, 919 F. Supp. 101, 105-106 (E.D.N.Y. 1996) (compelling "attorneys' eyes only" production of source code to software copyright infringement defendant under existing protective order).

### A. Discovery of MRI's Source Code Is Necessary on the Issues of Ownership and Validity

MRI first argues that its source code should not be discoverable because some of its registrations are *prima facie* evidence of validity under 17 U.S.C. § 401(c) since they were registered within five years of publication. (MRI Br. at 9-10.) That, however, does not obviate Lynx's discovery need because the presumption of validity is rebuttable. *See Hi–Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.,* 58 F.3d 1093, 1095 (6th Cir. 1995). The source codes for MRI's software therefore are relevant and discoverable irrespective of when each was registered.

MRI then argues that Lynx should be denied the source code for later-registered versions because the evidentiary weight of those registrations is within the Court's discretion under 17 U.S.C. § 410(c). That argument is self-defeating. Because the Court must determine the weight those registrations should be afforded, MRI's source code is needed so Lynx can present its case on that issue.

Next, MRI dismisses the significance of its registration of all but one version of its software as derivative works by calling that issue "nonsense" and making an inapposite analogy. Neither the law nor the facts are on MRI's side. Because each version of MRI's software after Version 1.0 is a derivative work, the corresponding registrations cover only what is new to a particular version vis-à-vis the preceding versions. *See* 17 U.S.C. § 103(b); *Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002) ("By definition, a derivative work contains elements of underlying works that themselves may be subject to copyright; the copyright in the derivative work extends only to those elements original to the derivative work."). Thus, the only way to determine the scope of a registration is to compare the corresponding source code to the source code for the preceding versions, which necessarily requires discovery of that source code.

MRI's registration certificates (attached *en masse* as Exhibit 1 to its complaint) further confirm Lynx's need for MRI's source code. When MRI registered its copyrights as derivative works, it failed to identify the prior registrations upon which its derivative words are based. as a result, the version numbers and publication dates MRI did provide to the U.S. Copyright Office are the only way to

sequence MRI's registrations. However, the versions numbers and publication dates MRI provided include numerous irregularities, including:

- MRI's earliest registration is for Version 1.05, with a publication date of December 9, 1998 (Reg. No. 7-452-922). But that registration identifies Version 1.05 as a derivative of a preexisting published work, and MRI does not have an earlier registration for Version 1.0.

- MRI published Version 1.4 (Reg. No. TX 7-453-183) on September 9, 2004, almost two months *after* it published later Version 2.1.3 (Reg. No. TX 7-452-861) on July 21, 2004.

- MRI published Version 2.0 (Reg. No. TX 7-453-168) on May 10, 2005, eighteen months *after* it published Version 2.1.2 (Reg. No. TX 7-452-905) on November 7, 2003, ten months *after* it published Version 2.1.3 (Reg. No. TX 7-452-861) on July 21, 2004, and three months *after* it published Version 2.1.4 (Reg. No. TX 7-453-173) on February 5, 2005.

- MRI does not have registrations for Version 2.1 or Version 2.1.1, which by definition existed been between Version 2.0 and Version 2.1.2.

Discovery of MRI's source code therefore is needed because these irregularities call into question the scope and validity of MRI's copyrights.

MRI does not otherwise argue that its source code is privileged or otherwise immune from discovery. The Court therefore should grant Lynx's motion and compel MRI to produce its source code in native format because it is highly relevant, and indeed necessary, to the issue of MRI's ownership of valid copyrights.

### B. Discovery of MRI's Source Code Is Necessary on the Issues of Copying and Fair Use

The Court also should grant Lynx's motion because discovery of MRI's source code is required on the issues of copying and fair use. Like with respect to ownership and validity, MRI attempts to dismiss the copying issue by arguing that it has the better position on the merits. Once again, MRI is wrong.

"Copying" is not *per se* actionable; it only constitutes infringement if there is "copying of constituent elements of the work that are original." *Feist Pub., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). The copying analysis therefore will require isolation of the protectable "original" elements of MRI's software and comparison of those elements to Lynx's allegedly-infringing works. *See Kohus v. Mariol,* 328 F3d 848, 855-56 (6th Cir. 2003). Contrary to what MRI represents to the Court, that is true regardless of whether MRI relies on direct or circumstantial evidence of copying. *See Feist,* 499 U.S. at 361. As Professor Nimmer explains:

> In many software infringement cases, access is either conceded or easily proved, or perhaps even copying itself is conceded, so that a finding of infringement turns entirely on whether the works are substantially (*i.e.*, "actionably") similar.

4 NIMMER ON COPYRIGHT §13.03[F], at 13-124.1 (2012). Thus, it *always* is "necessary to eliminate from consideration those elements of a program that are not protected by copyright." *Id.* at 13-125. Source code analysis therefore is needed to separate the original, protectable "wheat" from the unoriginal, unprotectable "chaff."

MRI's source code also is needed to determine whether Lynx's alleged copying is protected as fair use. Codified at 17 U.S.C. § 107, fair use is "necessary to fulfill copyright's very purpose, '[t]o promote the Progress of Science and useful Arts....'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8). The Copyright Act identifies four non-exclusive factors relevant to determining fair use, including "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). That factor often turns on a quantitative analysis of what percentage of a copyrighted work has been

copied. *See, e.g., New Era Publications Intern., ApS v. Carol Pub. Group,* 904 F.2d 152, 158-59 (2d Cir. 1990) (finding fair use and reversing permanent injunction). Lynx therefore needs MRI's source code on this potentially-dispositive defense.

Finally, MRI cannot avoid producing its source code by arguing that Lynx's infringement arises out of its use of MRI's software beyond the scope of its license. Whether Lynx did so is hotly contested, and MRI's infringement claim is not just limited to that issue. But even if MRI were correct, its source code still would be relevant to ownership, validity and fair use. MRI's argument also shows that its infringement claim arises out of the 2002 Agreement so that its 1-year limit bars that claim, as set forth in Lynx's motion to dismiss (ECF # 97). The Court therefore should compel MRI to produce its source code as necessary on copying and fair use.

### III. The Court Should Deny MRI's Request To Amend The Stipulated Protective Order

Despite to Lynx during the meet-and-confer process that it would not seek a protective order, MRI has cross-moved the Court seeking to amend the Stipulated Protective Order to add a bevy of unnecessary and unreasonably harsh source code-specific restrictions. (*See* ECF # 102.) While the Stipulated Protective Order permits MRI to seek amendment, it must show that its proposed amendment is warranted under four factors: (i) the nature of the protective order; (ii) the foreseeability of the requested modification at the time the protective order was entered; (iii) the parties' reliance on the protective order; and (iv) whether good cause exists for the modification. *See Bayer AG and Miles, Inc. v. Barr Labs. Inc.,* 162 F.R.D. 456, 462-63 (S.D.N.Y. 1995); *Murata Mfg. Co. Ltd. v. Bel Fuse, Inc.,* 234 F.R.D. 175, 179-80

(N.D. Ill. 2006). The Court should deny MRI's cross-motion because each of these factors weighs against amendment.

### A. MRI Has Not Demonstrated Good Cause for Modifying the Stipulated Protective Order

A party seeking protection from discovery must show good cause. *See Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001). To carry that burden, at least one of the particular harms enumerated under Rule 26(c)(1) "must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)).

As an initial matter, MRI's conduct belies any claim that an amendment is needed. MRI did not object to producing its source code based on confidentiality, it waited nearly *four months* after serving its written response to move the Court, and it did so after representing to Lynx that it would *not* move to amend the Stipulated Protective Order. Now that it is faced with Lynx's motion to compel, MRI's pre-motion actions speak louder than its after-the-fact words: MRI does not need more protection; it just doesn't want to produce its source code. Good cause for the amendment MRI seeks simply does not exist and its cross-motion should be denied.

According to MRI, producing its source code would be unduly burdensome because the Stipulated Protective Order would not protect the commercial value of its source code. (MRI Br. at 8.) MRI, however, does not provide any "particular and specific demonstration of fact" showing how its source code could be revealed. Instead, MRI only offers a cursory declaration from Patrick Ghilani, its chief

operating officer, and attorney argument directed at Lynx's counsel that, taken together, do not show good cause.

Mr. Ghilani's declaration makes the unremarkable point that MRI could be harmed if its source code were revealed. (Ghilani Dec, ECF # 101-10, at ¶ 5.) He does not, however, say why that could happen under the existing Stipulated Protective Order or how MRI's proposed amendments would prevent it. Instead, MRI theorizes that its source code could fall into enemy hands if, for example, Lynx's attorneys sent it to an expert (who also would be under the Stipulated Protective Order) or printed working copies for their files. (MRI Br. at 9.) But, MRI never says how such routine activities could lead to an improper disclosure or ventures a guess as to who would get improper access to its source code.

Having thus failed to articulate a legitimate likelihood of harm, MRI cannot demonstrate an actual need for the truly onerous amendments it proposes. Those amendments would limit MRI's Rule 34 obligation to just making its source code "available for inspection"—but not copying—on a single un-networked computer at a location of MRI's choosing, subject to many additional restrictions, including:

- only five people (inclusive of Lynx's counsel) could inspect the source code, and their identities must be disclosed in advance;
- those inspecting the source code could not copy any portions of it, and the types of notes they could take would be restricted; and,
- MRI would not have to produce any binary code, nor could Lynx's inspectors make electronic copies of or compile any source code.

(ECF # 95-6 at § 20(e)(1)-(4).) Thereafter, Lynx could request printouts of source code "excerpts" after the inspection, but MRI could reject any request by deeming it

"unreasonably voluminous" in its discretion. (*Id.* at § 20(f).) Then, after receiving whatever printouts MRI decided to provide, Lynx's counsel could not scan or convert "any of the information contained in the printouts or copies into any electronic format," nor could Lynx use a "copy of Source Code in its entirety ... at a deposition or in or attached to any pleading, exhibit, expert report, discovery documents, deposition transcript or other Court document." (*Id.* at §§ 20(f)(3), 20(g).)

Conversely, the burden of MRI's proposed amendments on Lynx's ability to defend itself would be profound, and potentially absolute. For example, MRI's proposal would preclude Lynx from running a simple "redline" comparison to identify the changes from one version to another and presenting its full analysis to the Court. Perhaps that is MRI's goal, but that is not a proper purpose for a protective order, especially since MRI has not established that real risk exists absent amendment or that its proposed amendments would mitigate any such risk. MRI therefore has not demonstrated that the alleged burden of producing its source code outweighs the burden Lynx would suffer if its amendment were allowed. This factor accordingly weighs greatly against its cross-motion.

### B. The Remaining Three Factors All Weigh Against Amendment

The remaining three factors—the nature of the Stipulated Protective Order, foreseeability, and reliance—also weigh heavily against amendment.

#### 1. The Nature of the Protective Order

The Stipulated Protective Order is a "blanket" protective order that allows designation of discovery materials as "Confidential" or "Attorneys' Eyes Only." (ECF # 29.) Blanket protective orders "are more difficult to modify or vacate when the

parties have stipulated to them." *See Murata,* 234 F.R.D. at 179-180 (citing *Bayer*, 162 F.R.D. at 465). Here, the Stipulated Protective Order is based on the Northern District of Ohio model order, with changes negotiated by the parties. Those changes include the addition of a more restrictive "Attorneys' Eyes Only" designation, which Lynx proposed and MRI initially resisted as "overly restrictive." (*See* Exh. B, emails between Georgia Yanchar, Esq., and Matthew Cavanagh, Esq.) MRI thus can designate its source code as "Attorneys' Eyes Only" and avail itself of the heightened protections that Lynx proposed and it ultimately agreed to as sufficient. This factor accordingly weighs heavily against the amendments MRI seeks.

    2.    <u>Foreseeability</u>

The foreseeability factor asks "whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order." *Bayer*, 162 F.R.D. at 466. "Not surprisingly, a party's oversight in not negotiating a provision in a protective order considering a matter which should have been reasonably foreseeable at the time of the agreement has been held not to constitute good cause for relief from the protective order." *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 499, 502 (S.D. Iowa 1992).

According to MRI, it had no reason to include sufficient protections for its source code in the Stipulated Protective Order because Lynx did not request MRI's source code until well after it agreed to the Stipulated Protective Order and it was entered by the Court. MRI conflates the relevant analysis. The question is not when Lynx requested MRI's source code; the question is whether it was foreseeable that

Lynx would request MRI's source at some point during this case at the time the parties negotiated the Stipulated Protective Order. *See Bayer*, 162 F.R.D. at 466. The answer to that question is an unqualified "yes."

MRI had to deposit the "identifying portions" of the source code for each version of its software to obtain its registrations. *See* 37 C.F.R. § 202.20(c)(vii)(A)(1); U.S. Copyright Office Circular 61, Copyright Registrations for Computer Programs, at 2-3. Then, by suing Lynx on those copyrights, MRI assumed the burden of proving "the content of the copyrighted work it contends was infringed." *Airframe Systems, Inc. v. L-3 Communications Corp.*, 658 F.3d 100, 106 (1st Cir. 2011). MRI also assumed the burden of proving that the protectable elements of its source code and the source code for Lynx's accused infringements are "substantially similar." *See id.* at 106-08 (affirming judgment of noninfringement because plaintiff did not present evidence of substantial similarity between copyrighted and accused source codes). It thus was no mystery to MRI that it would have these burdens of proof when it filed this case, so MRI cannot complain that it was unforeseeable that Lynx would require discovery of the source that MRI itself put at issue.

That is not all. Almost three weeks *before* it agreed to the Stipulated Protective Order—MRI requested source code discovery from Lynx. MRI's first set of interrogatories included the following source code-specific definitions:

> 10. **MRI Software.** The term "MRI Software" means the computer software (including all … source code …) created and/or offered by MRI, and all authorized modifications thereof.
>
> 13. **Customization.** The term "Customization" means any modification to the MRI Software, or any reports or interfaces within the MRI Software, which are not effected through source code changes,

> including without limitation, any modifications made using the MRI Application Tool Kit.
>
> **14. Enhancement.** The term "Enhancement" means new releases, upgrades, updates, patches, hot fixes and other modifications to the MRI Software, <u>which are effected through source code changes</u>.

(MRI's First Set of Interrogatories, Exh. C, at 3; emphasis added.) In turn, MRI requested production of source code-related materials from Lynx, including "electronic files." (*See id.* at Interrogatory Nos. 3, 4; MRI's First Set of Requests for Production, Exh. D, at Request No. 10.) Thus, despite claiming that source code discovery was unforeseeable when it agreed to the Stipulated Protective Order, MRI itself had already contemplated *and pursued* source code discovery from Lynx at that time. The foreseeability factor therefore weighs heavily against modification.

### 3. Reliance

"[A] party which in good faith negotiates a stipulated protective order and then proceeds to produce documents pursuant to that protective order is entitled to the benefit of its bargain; namely, to rely upon the terms of the stipulated protective order." *Jochims,* 145 F.R.D. at 502. Lynx relied on the Stipulated Protective Order in producing its own source code to MRI, and it is confident MRI's counsel will respect their obligations under the Stipulated Protective Order. MRI can be confident that Lynx's counsel will do the same. This factor, like the other three, thus weighs heavily against amendment and MRI's cross-motion should be denied.

## Conclusion

For these reasons and those Lynx previously stated in support of its motion, the Court should grant Lynx's motion, deny MRI's cross-motion, and enter an order

compelling MRI to produce its source code as requested by Lynx in Document Request No. 2 in its native format.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: October 10, 2013 | /s/ David T. Movius<br>David T. Movius (OH 0070132)<br> *dmovius@mcdonaldhopkins.com*<br>MCDONALD HOPKINS LLC<br>600 Superior Avenue, East, Ste. 2100<br>Cleveland, Ohio 44114<br>t 216.348.5400 │ f 216.348.5474<br><br>John T. McLandrich (OH 0021494)<br> *jmclandrich@mrrlaw.com*<br>MAZANEC, RASKIN & RYDER CO., L.P.A.<br>100 Franklin's Row<br>34305 Solon Road<br>Cleveland, Ohio 44139<br>t 440.248.7906 │ f 440.248.8861<br><br>*Attorneys for Lynx Systems, Inc.* |

## Certificate of Service

I hereby certify that, on October 10, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

/s/ David T. Movius
*Attorney for Lynx Systems, Inc.*
