UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI SOFTWARE LLC, | ) | CASE NO.:  1:12-CV-01082 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| LYNX SYSTEMS, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DONALD ROBINSON, | ) | |
| | ) | |
| Defendants. | ) | |

**MRI'S OPPOSITION TO LYNX'S MOTION FOR PARTIAL DISMISSAL OF FIRST
AMENDED COMPLAINT UNDER RULE 12(B)6)**

## <u>TABLE OF CONTENTS</u>

I.     Legal Standard On Motion to Dismiss For Failure to State a Claim ...................................... 2

II.    The Limitation of Liability Clause Does Not Preclude MRI from Bringing This
Action .................................................................................................................................. 3

III.   The Limitation of Liability Clause Does Not Apply to Post-Termination Events ............ 7

IV.    The Limitation of Liability Clause In No Way Applies to MRI's Copyright and
Trademark Claims ............................................................................................................... 9

V.     The Limitation of Liability Clause Cannot Be Relied Upon By Lynx to Shield
Itself From Liability For Violations of Law or Its Own Willful Conduct and Bad Faith ........... 11

VI. The Amended Complaint Does Not Show Notice of Events Giving Rise To MRI's
Claims More than a Year Before the Effective Filing Date .......................................................... 13

VII.   Lynx Waived the Limitation of Liability Clause By Failing to Plead It As an
Affirmative Defense ....................................................................................................................... 14

VIII.  Conclusion ........................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Airfreight Express Ltd. v. Evergreen Air Center, Inc.,* 158 P.3d 232 (Ct. App. Az. 2007) ............................................................................................................... 12

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..................................................................... 2

*Axis Surplus, Inc. v. Superior Mortg. Servs.*, No. 8:09-cv-1960-T-30AEP, 2010 WL 55553 (M.D. Fla. Jan . 4, 2010) ........................................................................ 2

*Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ...................... 2, 6, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 2

*Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516 (6th Cir. 2008) ................................... 2

*Capri v. L.A. Fitness Int'l, LLC*, 39 Cal. Rptr.3d 425 (2nd App. Dist. 2006) ...................... 11

*Davanzia, S.L. v. Laserscope, Inc.,* No. C 07-0247 JF, 2007 WL 2209323 (N.D. Cal. July 30, 2007) ............................................................................................... 4, 6

*Directv, Inc. v. Treesh,* 487 F.3d 471 (6th Cir. 2007) ..................................................... 2

*Erickson v. Pardus,* 551 U.S. 89 (2007) ........................................................................ 2

*Gilliam v. American Broadcasting Co., Inc.,* 538 F.2d 14 (2d Cir. 1976) ........................... 11

*Gunderson Amazing Fireworks, LLC v. Merrick Bank*, No. 12-cv-3869 (JS), 2013 WL 5366958 (E.D.N.Y. Sept. 24, 2013) ...................................................................... 12

*Han v. Mobil Oil Corp.*, 73 F. 3d 872 (9th Cir. 1995) ...................................................... 14

*Harbin-Bey v. Rutter,* 420 F.3d 571 (6th Cir. 2005) ....................................................... 2

*Hensler v. City of Los Angeles,* 268 P.2d 12 (2nd Dist. Cal. App. 1954) ........................... 4

*Hollins v. Methodist Healthcare, Inc.,* 474 F.3d 223 (6th Cir. 2007) ................................. 2

*Jardin v. Datallegro, Inc.*, No. 08cv1462-IEG, 2009 WL 186194 (S.D. Cal. Jan. 20, 2009) ...................................................................................................... 8, 12

*Kashani v. Tsann Kuen China Enterprise Co., Ltd.*, 13 Cal. Rptr.3d 174 (2nd App. Dist. 2004) ............................................................................................................ 12

*Marshall v. New Kids on the Block P'ship*, 780 F.Supp. 1005 (S.D.N.Y.1991) .................. 10

*Martinez v. Extra Space Storage, Inc.*, No. C 13-00319 WHA, 2013 WL 3889221 (N.D. Cal. July 26, 2013) .......................................................................................... 6

*Mehmet v. Paypal, Inc.*, No. C-08-01961 RMW, 2009 WL 815676 (N.D. Cal. 2009) .................................................................................................................. 12

*MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615 (CM), 2013 WL 150157 (S.D.N.Y. Jan. 11, 2013) ..................................................................................... 9, 10

*Queen Villas Homeowners Ass'n v. TCB Property Management*, 56 Cal. Rptr.3d 528 (4th App. Dist. 2007) ......................................................................................... 8

*Rogers v. Prudential Ins. Co.,* 218 Cal. App.3d 1132 (4th Dist. 1990) .............................. 6

*Schoettler v. Wachovia Corp.*, No. 1:08-CV-00174, 2008 WL 5101367 (E.D.Cal. Dec. 3, 2008) ...................................................................................................... 14

*Shaw v. Total Image Specialists, Inc.,*  No. 2:07-CV-717, 2010 WL 1390470 (S.D. Ohio April 1, 2010) ................................................................................................ 2

*Sheenstra v. California Dairies, Inc.*, 213 Cal. App.4th 370 (5th Dist. 2013) .................... 6

*Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441 (9th Cir. 1986) .............................. 4, 5

*Valve Corp. v. Sierra Entertainment, Inc.*, 431 F.Supp.2d 1091 (W.D.Wash. 2004) ............ 10, 12

**Statutes**

Cal. Civ. Code § 3542.................................................................................................................. 4

California Civil Code Section 1668................................................................................... 11, 12

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 1, 6, 7, 12

Plaintiff, MRI Software LLC ("MRI"), respectfully submits this Opposition to Lynx Systems, Inc.'s ("Lynx's") Motion to Partially Dismiss MRI's Amended Complaint Under Rule 12(b)(6) (herein, "Lynx's Motion").  Lynx's Motion argues MRI's breach of contract, copyright and trademark claims are untimely under Section 10.7 of the 2002 Agreement because MRI had knowledge of the events underlying its claims more than one year before the effective date of the Amended Complaint.  In so arguing, Lynx wholly ignores the language of Section 10.7, and attempts to re-write it to say what Lynx apparently wishes it said.  Section 10.7 does not preclude claims by MRI not brought within one year of MRI's knowledge.  It fact, it says no such thing. Lynx cannot obtain dismissal by alleging, without more, its own subjective understanding of Section 10.7, particularly one that conflicts with the language thereof and requires the Court to draw inferences that are adverse to MRI, the non-movant.

In addition to the foregoing, there are several more bases for denying Lynx's Motion. Section 10.7 clearly expired with the 2002 Agreement, and thus is simply inapplicable to the post-termination events giving rise to MRI's claims.  Moreover, both the language of Section 10.7, and the law, make clear that MRI's claims for copyright and trademark infringement arise out of the Copyright and Lanham Acts, not the 2002 Agreement, and thus that Section 10.7 of the 2002 Agreement cannot be relied upon by Lynx to exculpate itself of liability on those claims.  Moreover, MRI's Amended Complaint pleads not just that Lynx breached the 2002 Agreement, and infringed MRI's copyrights and trademarks in violation of state and federal law, but also that Lynx did so willfully and in bad faith.  Courts uniformly hold that a defendant may not rely upon a limitation of liability clause to exculpate itself of liability for such willful acts.

Finally, Lynx offers no excuse for its failure to raise Section 10.7 as an affirmative defense until now, over one year after Lynx had the first opportunity to do so.  Dismissing MRI's

breach of contract, copyright and trademark claims, on the basis of Lynx's very belatedly raised affirmative defense would result in grave prejudice MRI.

For all of the reasons set forth below, MRI respectfully submits that Lynx's Motion must be denied.

## I.     Legal Standard On Motion to Dismiss For Failure to State a Claim.

In ruling on a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine  whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief." *Shaw v. Total Image Specialists, Inc.*,  No. 2:07-CV-717, 2010 WL 1390470, at * 2 (S.D. Ohio April 1, 2010)(citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Bishop v. Lucent Technologies, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008); and *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)).  In reviewing such a motion, the Court must "draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 429 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007)).  To survive a motion to dismiss, a claimant need only allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  As long as a claimant states "a claim to relief that is plausible on its face," dismissal is improper.  *Id.* at 570; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).   The "existence of genuine issues of material fact warrants denial of [a] motion to dismiss." *Hollins v. Methodist Healthcare, Inc.,* 474 F.3d 223, 225 (6th Cir. 2007); *see also Axis Surplus, Inc. v. Superior Mortg. Servs.*, No. 8:09-cv-1960-T-30AEP, 2010 WL 55553 at *2 (M.D. Fla. Jan . 4, 2010).

## II.     The Limitation of Liability Clause Does Not Preclude MRI from Bringing This Action.

Section 10.7 of the 2002 Agreement -- which is the section that forms the entire basis of

Lynx's Motion -- states, *in full,* as follows:[1]

> 10.7 NO ACTION, REGARDLESS OF FORM, ARISING OUT OF THE TRANSACTIONS UNDER THIS AGREEMENT MAY BE BROUGHT BY SUB-LICENSOR AGAINST MRI OR BY MRI AGAINST SUB-LICENSOR MORE THAN ONE (1) YEAR AFTER **SUB-LICENSOR** KNEW OR SHOULD HAVE KNOWN OF THE OCCURRENCE OF THE EVENT(S) GIVING RISE TO THE CAUSE OF ACTION.  IN NO EVENT SHALL MRI BE LIABLE TO SUB-LICENSOR FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES OF ANY NATURE WHATSOEVER, INCLUDING, WITHOUT LIMITATION, LOST BUSINESS PROFITS ARISING OUT OF THE USE OR OPERATION OF THE MRI PRODUCT, DELAYS IN DELIVERY, LOSS OF USE OF THE MRI PRODUCT OR DAMAGES TO ANY DOCUMENTS OR OTHER PROPERTY OF SUB-LICENSOR, WHETHER IN CONTRACT OR IN TORT, UNDER ANY WARRANTY THEORY, IN NEGLIGENCE OR OTHERWISE, EVEN IF MRI HAS BEEN PREVIOUSLY ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL MRI BE LIABLE TO SUB-LICENSOR FOR ANY DAMAGES, DIRECT OR OTHERWISE, IN EXCESS OF THE AMOUNT PAID BY SUB-LICENSOR TO MRI FOR THE COPY OF THE MRI PRODUCT IN ISSUE HEREUNDER. THE REMEDIES SET FORTH IN THIS PARAGRAPH SHALL BE SUB-LICENSOR'S SOLE AND EXCLUSIVE REMEDY IN ANY ACTION BROUGHT BY SUB-LICENSOR AGAINST MRI FOR ANY BREACH OF THIS AGREEMENT.

Doc. # 1-3, at p. 14-15 (emphasis added.)  The first paragraph of the 2002 Agreement defines

"Sub-licensor" to mean Lynx.  *Id.* at p. 1.

On pages 5-7 of its Memorandum, Lynx argues:  MRI's breach of contract claim is

untimely under Section 10.7 of the 2002 Agreement because "MRI had actual knowledge of the

events underlying its breach of contract claims long before the critical May 1, 2011 date."  In so

arguing, Lynx wholly ignores the language of Section 10.7, and attempts to re-write it to say

what Lynx apparently wishes it said.  The trigger for the one-year clock set forth in Section 10.7

is *not* MRI's knowledge; it is SUB-LICENSOR's (i.e., Lynx's) knowledge, and *only* SUB-

LICENSOR's knowledge.  *See* block quote, *supra*.  Interpreted literally, Section 10.7 means that

---

[1] The full language of Section 10.7 is conspicuously absent from Lynx's Memorandum.  Only the first sentence of Section 10.7 appears in Lynx's Memorandum, at the very bottom of the fifth page.  Lynx apparently does not wish for the Court to focus upon the actual contractual language.

MRI had one year from the time *Lynx* knew *Lynx* was breaching the 2002 Agreement to sue *Lynx* for breach of the 2002 Agreement.  Obviously, that could not have been either party's intent.

Indeed, Lynx's Motion to Dismiss does not even attempt to argue that the literal meaning of Section 10.7 is the correct construction.  Lynx's Motion instead *re-writes* Section 10.7 to require that MRI bring a claim within 1 year from when *MRI* had knowledge of Lynx's actions.  However, Lynx's Motion provides no evidence that such a construction is the correct construction, nor does Lynx's Motion even attempt to apply California rules of contract interpretation to reach its proposed construction.[2]  As explained below, Lynx's proposed construction is unreasonable and inconsistent with the language of Paragraph 10.7 and therefore, must be rejected.

 "In construing a contract under California law, the primary object is to ascertain and give effect to the intention of the parties.  That intention must, in the first instance, be derived from the language of the contract."  *Davanzia, S.L. v. Laserscope, Inc.,* No. C 07-0247 JF, 2007 WL 2209323 (N.D. Cal. July 30, 2007) (quoting *Hensler v. City of Los Angeles,* 268 P.2d 12,18 (2nd Dist.  Cal. App. 1954)).  The interpretation of a contract "must be reasonable," *Southland Corp. v. Emerald Oil Co*., 789 F.2d 1441, 1443 (9th Cir. 1986) (citations omitted) (citing Cal. Civ. Code § 3542), and "[c]ourts should avoid an interpretation which will make a contract 'unusual, extraordinary, harsh, unjust or inequitable.'"  *Id*. "Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Id*.

---

[2]  Section 15.2 of the 2002 Agreement states: "Disagreements shall be construed and interpreted by the law of the State of California."  Lynx appears to concede that California law governs its motion.  Doc. # 97, Memo., p. 5.

Reviewing Section 10.7 in its entirety, the most reasonable interpretation of the first sentence of Section 10.7 is clearly that the one-year shortened period set forth therein applies solely in MRI's favor, not in Lynx's favor.  This is evident from the language of the first sentence of Section 10.7, which states that the sole triggering event is "SUB-LICENSOR's" (i.e., Lynx's) knowledge. If the parties had intended the first sentence to be mutual, then the triggering event would have been written with mutual language.  Instead, the first sentence was written so that the only triggering event is Lynx's knowledge.  This evidences that the parties did not intend the first sentence to run to Lynx's benefit.  The foregoing conclusion is bolstered by the next two sentences of Section 10.7, which are drafted solely in MRI's favor, and serve to limit *only* MRI's liability, not Lynx's.

Shoring up the foregoing conclusion, the final sentence of Section 10.7, refers back to the entire paragraph, and persuasively shows that the first sentence was not intended to run in Lynx's favor.  It states:  "THE REMEDIES SET FORTH IN THIS PARAGRAPH SHALL BE SUB-LICENSOR'S SOLE AND EXCLUSIVE REMEDY IN ANY ACTION BROUGHT BY SUB-LICENSOR AGAINST MRI FOR ANY BREACH OF THIS AGREEMENT."  By referring back to "THIS PARAGRAPH," the last sentence of Section 10.7 makes clear that the first sentence was only intended to limit MRI's liability to Lynx for breach of the 2002 Agreement.  Giving preference to the most reasonable interpretation of Section 10.7 derived from the language of the contract, as the California rules of contract interpretation require, *Southland*, 789 F.2d at 1443, the one-year shortened limitation period must be construed to limit only MRI's liability to Lynx, not Lynx's liability to MRI.

Alternatively, to the extent the first sentence of paragraph 10.7 is susceptible to more than one interpretation, it would be wholly improper to resolve such ambiguity against MRI at this

stage of the proceedings. On Lynx's Motion, which is brought pursuant to Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff . . . and draw all reasonable inferences in favor of the plaintiff." *Bassett,* 528 F.3d at 429. Lynx's Motion ignores the legal standards by asking the Court to dismiss MRI's contract, copyright and trademark claims on the basis of an inference that the parties intended a meaning of Section 10.7, which is simply not found in the contract language. Lynx's Motion should be denied because granting it would require the Court to improperly draw inferences *against* the non-movant, MRI.

Moreover, "[w]hen the terms of a contract are ambiguous or uncertain, 'it is the duty of the trial court to construe it *after* the parties are given a full opportunity to produce evidence of the facts, circumstances and conditions surrounding its execution as well as the conduct of the parties to the contract,' and the interpretation of the [agreement] presents *a question of fact which is inappropriate for summary judgment*." *Davanzia*, 2007 WL 2209323, at footnote 4 (emphases added) (*quoting Rogers v. Prudential Ins. Co.,* 218 Cal. App.3d 1132, 1136-37 (4th Dist. 1990); *see also Sheenstra v. California Dairies, Inc*., 213 Cal. App.4th 370, 390-91, 394-95 (5th Dist. 2013) (determining the word "uniform" in contract was ambiguous, and *then* weighing the evidence of each parties' proposed meaning, and *then* applying facts to the chosen meaning).[3] Thus, to whatever extent the first sentence of the Section 10.7 could reasonably be susceptible to Lynx's proposed interpretation (for the reasons set forth above, MRI believes it cannot), Lynx's Motion errs by asking the Court to adopt that constriction *before considering any evidence* of other reasonable constructions. For this reason also, Lynx's Motion should be denied.

---

[3] *See also Martinez v. Extra Space Storage, Inc*., No. C 13-00319 WHA, 2013 WL 3889221 (N.D. Cal. July 26, 2013) (whether shortened period set forth in contract was "reasonable" and thus enforceable, depended on whether the "triggering event" was "immediate and obvious" as opposed to being "difficult to detect" -- a factual issue inappropriate for decision on summary judgment.).

In sum, Lynx cannot obtain dismissal by alleging, without more, its own subjective understanding of Section 10.7, particularly one that conflicts with the express language thereof. Section 10.7 does not unambiguously preclude claims by MRI not brought within one year of MRI's knowledge.  It fact, it says no such thing.  Even if Lynx's proposed construction had merit, it would be improper for the Court to adopt that construction on a Rule 12(b)(6) Motion. Thus, Lynx's Motion should be denied.

### III.    The Limitation of Liability Clause Does Not Apply to Post-Termination Events.

Even if Section 10.7 was (wrongly) construed to apply in Lynx's favor, it clearly does not apply to events occurring after the termination of the 2002 Agreement.  Throughout the 2002 Agreement, there are several express statements as to which provisions survive:  paragraph 2.3 states that the provisions of Section 2 shall survive the expiration or termination of the agreement;  paragraph 8.5 states that the provisions of Section 8 shall survive the expiration or termination of the agreement; paragraph 13.5 states that the provisions of Section 13 survive the expiration or termination of the agreement; and the last sentence of paragraph 10.5 states that that paragraph shall survive the expiration or termination of the agreement.  *However, nothing in the 2002 Agreement even suggests that Paragraph 10.7, survives the expiration or termination of the agreement.*  Thus, it clearly was *not* the parties' intention that a shortened one-year period would apply to claims arising from events that occurred *after* the termination or expiration of the 2002 Agreement.  If that had been the parties' intention, the 2002 Agreement would have stated so.

As Lynx's Memo acknowledges, the Amended Complaint alleges the 2002 Agreement terminated or expired effective August 1, 2008, and that Lynx breached the 2002 Agreement and infringed MRI's rights by continuing to service customers and use the MRI Software and MRI trademark thereafter.  Doc. #97, Memo at p. 2-3.  Because MRI's claims arise from events that

occurred after the 2002 Agreement expired or terminated, and Section 10.7 expired with the 2002 Agreement, the limitations set forth in Section 10.7 are simply inapplicable.  For this reason as well, Lynx's Motion to Dismiss should be denied.

Moreover, it is well-settled in California that exculpatory clauses are construed *against* the released party.  *See e.g., Queen Villas Homeowners Ass'n v. TCB Property Management*, 56 Cal. Rptr.3d 528, 531 (4th App. Dist. 2007) (citing several cases).  "As a general rule, contractual limitations of liability for future conduct must be clearly set forth."  *Jardin v. Datallegro, Inc.*, No. 08cv1462-IEG, 2009 WL 186194, *6 (S.D. Cal. Jan. 20, 2009).  "An attempted exemption from liability for a future intentional tort or crime is generally held void."  *Id.*  In *Jardin,* the defendant argued a contractual release applied to insulate it from plaintiff's claims of willful patent infringement.  The court rejected the defendant's interpretation, concluding that exculpatory language for future misconduct was not set forth, and that it was more probable that the parties intended the contract to apply only to claims based on preexisting conduct.  The court reasoned "no reasonable businessman would enter a release that would be tantamount to a license to commit patent infringement."  *Id*.  As in *Jardin*, herein, the 2002 Agreement lacks any clear exemption for liability for Lynx's future wrongdoing.  Moreover, it would unreasonable to interpret the 2002 Agreement to permit Lynx to trample on MRI's rights after termination of 2002 Agreement.[4]  Thus, applying California law, which strongly disfavors unclear exculpatory clauses, Lynx's Motion to Dismiss must be denied.

---

[4] Construing the 2002 Agreement as Lynx advances would also be in direct conflict with Section 2, which contains continuing, surviving restrictions on Lynx's use of MRI's proprietary rights.  See Doc. # 1-3, 2002 Agreement at Section 2, and ¶ 2.3.

**IV.    The Limitation of Liability Clause In No Way Applies to MRI's Copyright and Trademark Claims.**

Lynx's further argument that Section 10.7 precludes not just MRI's breach of contract claim, but also MRI's copyright and trademark claims, should also be rejected.  *See* Memo, pp. 8-10.  Lynx's argument is squarely at odds with both the language of Section 10.7 and the law.

Lynx's argument conflicts with Paragraph 10.7, because the last sentence of Section 10.7 evidences the parties' intent that the limitations set forth in the paragraph apply only to claims for breach of contract, stating:   "THE REMEDIES SET FORTH IN THIS PARAGRAPH SHALL BE SUB-LICENSOR'S SOLE AND EXCLUSIVE REMEDY IN ANY ACTION BROUGHT BY SUB-LICENSOR AGAINST MRI FOR ANY BREACH OF THIS AGREEMENT."  If the parties had intended the limitations in Paragraph 10.7 to apply to claims other than claims for "BREACH OF THIS AGREEMENT," they would have said so.

In addition to conflicting with the language of the 2002 Agreement, Lynx's argument is also wrong as a matter of law.  Numerous courts have addressed the question of whether a limitation of liability clause in a copyright or trademark license insulates a defendant from liability for *infringement* arising from the defendant's use *outside* the scope of the license.  These courts have consistently held such clauses do *not* exculpate the defendant, and found in favor of the plaintiff (rights holder).  Most recently, in *MyPlayCity, Inc. v. Conduit Ltd*., No. 10 Civ. 1615 (CM), 2013 WL 150157 (S.D.N.Y. Jan. 11, 2013), the court addressed whether the limitation of liability clause in the parties' license agreement applied to the defendant's use of plaintiff's copyrights and trademarks after termination of the license.  In that case, the limitation of liability clause expressly survived termination of the agreement, and applied to damages "under any theory of liability," and to any claim "arising out of or related to the Agreement."  *Id*. at * 1-2. Even though (unlike here) the clause survived termination, the court found that infringement that

occurred after the agreement terminated does not "arise out of" the agreement, "because it occurred during a period when there was no agreement in existence."  The court reasoned:

> The Agreement authorized [defendant's] use of [plaintiffs] Toolbars until the Agreement terminated, but no longer.. . . When it elected to terminate the [] Agreement, [defendant] effectively cancelled the contractual rights and licenses it had theretofore enjoyed to use (and profit from) [Plaintiff's] Toolbar product.  As a result, there was no contractual arrangement in place when [defendant] violated [plaintiff's] intellectual property rights for any such violation to 'arise out of.'"

*Id*. at *2.

The same conclusion was reached in *Valve Corp. v. Sierra Entertainment, Inc*., 431 F.Supp.2d 1091, 1102 (W.D.Wash. 2004).  In that case, the court held that a limitation of liability clause in a Publisher Agreement for computer games did not apply to claims for copyright infringement that fell outside the scope of the agreement.  The Publisher Agreement at issue in *Valve* limited one party's liability "under or in connection with this agreement."  The court concluded that infringing activities which exceeded the scope of the license in the Publisher Agreement did not arise "under or in connection with" the Publisher Agreement. The court reasoned the defendants had "made themselves a 'stranger' to the provisions and protections of the ... Agreement by exceeding the scope of their license." *Id.* (citing *Marshall v. New Kids on the Block P'ship*, 780 F.Supp. 1005, 1009 (S.D.N.Y.1991) ("if the licensee acts in such a way as to effectively make himself a 'stranger' to the copyright owner, then the action arises under the copyright laws just as if the claim were against any other infringer who is a stranger to the plaintiff").

So too here.  MRI's Amended Complaint pleads both that Lynx continued using MRI's copyrights and trademarks *after* the termination or expiration of the 2002 Agreement and that Lynx's misuses of MRI's trademarks and copyrighted software were *outside* the scope of the licenses granted under the 2002 Agreement.  *See* Doc. # 89, Amended Complaint, *at pp. 21-32*.

In so doing, Lynx made itself a stranger to the 2002 Agreement.  As such, MRI's claims for copyright and trademark infringement arise out of copyright and trademark law; they do not "aris[e] out of the transactions under th[e 2002] agreement."[5]   Accordingly, Section 10.7 provides no basis for dismissing any of Counts 1, 5, 11 or 12.[6]

## V.     The Limitation of Liability Clause Cannot Be Relied Upon By Lynx to Shield Itself From Liability For Violations of Law or Its Own Willful Conduct and Bad Faith.

At least at the present stage of proceedings, Section 10.7 is of also no avail to Lynx for the further reason that the Amended Complaint pleads that Lynx willfully violated the 2002 Agreement and the Copyright and Lanham Acts.  California Civil Code Section 1668 states:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

A violation of a federal or state statute is a violation of law for purposes of determining whether a contract is unenforceable under the foregoing California statute.  *See Capri v. L.A. Fitness Int'l, LLC,* 39 Cal. Rptr.3d 425, 430 (2nd App. Dist. 2006) (plaintiff alleged defendant violated statutes setting forth safety regulations for pool areas, and that this violation of law was the cause of his slip and fall.  As such, limitation of liability clause in membership agreement fell squarely within the explicit prohibition of Section 1668 against contractual exculpation for a "violation of

---

[5] Specifically, Count 1 arises out of the Copyright Act, 17 U.S.C § 501, et. seq., Count 5 arises out of the Canadian Copyright under the Berne Convention; Count 11 arises out of the Lanham Act, 15 U.S.C. § 1114, and Count 12 also arises out of the Lanham Act 15 U.S.C. § 1125(A).  Moreover, the limitation of liability clause in Section 10.7 is actually even narrower than that construed against the defendant  in the cases discussed above.  In addition, as noted above, Section 10.7 did not survive termination of  the 2002 Agreement, making the facts here militate even more strongly against applying the limitation of liability clause to bar any claims.

[6] Lynx's arguments in favor of dismissing MRI's copyright and trademark claims, which appear on p. 9 of Lynx's Memorandum, are both false and tautological.  Contrary to Lynx's argument, there clearly *could* be copyright and trademark infringement if the 2002 Agreement were still in force and effect:  any use outside of the scope of the licenses granted therein is an infringement.  *See e.g., Gilliam v. American Broadcasting Co., Inc.*, 538 F.2d 14, 21 (2d Cir. 1976).  Thus, MRI's copyright and trademark claims do *not* "by definition arise out of transactions under the 2002 Agreement," and such are *not* subject to Section 10.7

the law" and is invalid); *see also Kashani v. Tsann Kuen China Enterprise Co., Ltd.*, 13 Cal. Rptr.3d 174, 180 (2nd App. Dist. 2004).

Moreover, courts uniformly hold that a limitation of liability clause does not apply where the party relying on the clause acted in "bad faith." *Mehmet v. Paypal, Inc.*, No. C-08-01961 RMW, 2009 WL 815676 (N.D. Cal. 2009) (denying motion to dismiss, because it could not be determined at pleading stage whether defendant acted in bad faith or engaged in fraud, thus rendering the limitation of liability clause unenforceable); *Jardin*, 2009 WL 186194, * 6 (contract could not exempt defendants from liability for their future intentional acts); *Valve*, 431 F. Supp. 2d at 1101 (genuine issues of fact precluded summary judgment on the issue of bad faith, and thus whether the limitation of liability clause was applicable); *Airfreight Express Ltd. v. Evergreen Air Center, Inc.,* 158 P.3d 232, 239 (Ct. App. Az. 2007) ("As a matter of public policy, a party should not benefit from a bargain it performed in bad faith"); *Gunderson Amazing Fireworks, LLC v. Merrick Bank*, No. 12-cv-3869 (JS), 2013 WL 5366958, *4 (E.D.N.Y. Sept. 24, 2013) (denying motion to dismiss because plaintiff alleged that defendants acted in a manner beyond mere negligence, thus potentially invalidating limitation of liability clauses).  These holdings are consistent with the plain language of California Civil Code Section 1668, which states that a contract which exempts anyone from responsibility for his own fraud, willful injury or violation of law, is against California public policy.  Cal. Civ. Code. 1668.

Here, MRI's Amended Complaint pleads not just that Lynx breached the 2002 Agreement, and infringed MRI's copyrights and trademarks in violation of state and federal law, but also that Lynx did so willfully and in bad faith.  *See* Doc. # 89, Amended Complaint at ¶¶ 2, 6, 100, 124, 126, 128-141, 183, 213, 214, 224, 235, 255, 272, and 278.  Accepting MRI's allegations as true, as the Court must on a Rule 12(b)(6) Motion, Lynx may not rely upon

Section 10.7 to exculpate itself of liability for such acts.  For this reason also, Lynx's Motion to Dismiss must be denied.

**VI.     The Amended Complaint Does Not Show Notice of Events Giving Rise To MRI's Claims More than a Year Before the Effective Filing Date.**

Because the one-year shortened limitation period set forth in Section 10.7 is not triggered by MRI's knowledge, but rather only Lynx's knowledge, the date when MRI knew or should have known of the events giving rise to its claims *may* be relevant to *statutes* of limitations, but it is *not* relevant to the contractual provision set forth in Paragraph 10.7.  Lynx's Motion does not assert any of MRI's claims are barred by any statute of limitations.  Thus, in deciding Lynx's Motion, the Court need not determine when MRI knew or should have known of any of the events giving rise to any of its claims.

Even so, it should be noted that, in addition to attempting to re-write Section 10.7, Lynx's Motion misleads the Court by misconstruing the factual allegations of MRI's Amended Complaint.  Lynx's Motion asserts that by including attachments 6 and 7, MRI's Amended complaint "admits that MRI had actual knowledge of the events giving rise to its breach of contract claim by November 17, 2010."  Memo, at p. 7-8.  In fact, MRI's Amended Complaint "admits" no such thing.  Exhibit 7 to MRI's Amended Complaint includes emails *sent by Lynx to third parties* on November 17, 2010 and December 29, 2010; *however, the Amended Complaint is utterly silent as to when MRI first knew* (or even *should* have known) *of those emails.  See* Doc. #1-7; Doc. #89, Amended Complaint at ¶ 121.  Likewise, Exhibit 6 to MRI's Amended Complaint is a print out of Lynx's website.  According to paragraph 104 of the Amended Complaint, Exhibit 6 was printed in April 2012, and bears a 2012 copyright notice.  Doc. # 89, at p. 22.  Lynx's Memo admits the Amended Complaint is entitled to an effective filing date of

May 1, 2012.  Doc. # 97, Memo, at p. 6.  Drawing all inferences in MRI's (the non-movant's) favor, the Amended Complaint may be read to show MRI learned of Lynx's website *one day* prior to the effective filing date of MRI's Amended Complaint.  The adverse inference Lynx asks the Court to draw -- that MRI learned of the relevant events *more than one year* before the effective filing date -- finds no support in the record and is improper.  *A fortiori*, Lynx should not be telling the Court that MRI '*admitted*' any such thing.

In short, Exhibit 6 and 7 do not themselves show MRI knew or should have known of its claims before May 1, 2012 as Lynx asserts, nor does any other paragraph of the Amended Complaint state when MRI had actual or constructive knowledge of any of the events giving rise to its claims.  Construing the Amended Complaint in the light most favorable to MRI, and drawing all inferences in MRI's favor, as the Court must on Lynx's Motion, *Bassett*, 528 F.3d at 429, there is no basis for concluding MRI had knowledge of any of its claims more than one year before the effective filing date of the Amended Complaint.  On this basis also, Lynx's Motion should be denied.

### VII.   Lynx Waived the Limitation of Liability Clause By Failing to Plead It As an Affirmative Defense.

Lynx's argument that MRI's claim is time-barred by the contractual limitations period is an affirmative defense that Lynx bears the burden of establishing.  *Han v. Mobil Oil Corp.*, 73 F. 3d 872, 877-78 (9th Cir. 1995); *Schoettler v. Wachovia Corp.*, No. 1:08-CV-00174, 2008 WL 5101367 (E.D.Cal. Dec. 3, 2008).  An affirmative defense based on the lapse of a limitation period may be waived where it is not timely raised, and there has been prejudice to the plaintiff as a result.  *Han*, 73 F.3d at 877-78.  Lynx's Memorandum admits that the allegations MRI's Amended Complaint giving rise to Lynx's Motion to Dismiss are the same as those found in

MRI's original Complaint filed on May 1, 2012.  *See* Memo, at p. 6.[7]  Lynx answered MRI's original Complaint on June 15, 2012.  Therein, Lynx failed to raise the limitation period of Section 10.7 as an affirmative defense.  *See* Doc. # 25, Lynx's Answer & Counterclaim at pp. 20-22.  Nor did Lynx bring a motion to dismiss MRI original Complaint based on Section 10.7.  Lynx's instant Motion*, filed more than a year after MRI's original Complaint,* is the *first time* Lynx has argued any of MRI's claims should be dismissed in view of Section 10.7 of the 2002 Agreement.

As Lynx is well aware, in the sixteen months between the filing of MRI's original Complaint and the filing of Lynx's Motion to Dismiss, MRI has invested significant resources pursuing its claims against Lynx, including not just discovery and motion practice, but also enforcement of the Stipulated Injunction Order to which Lynx agreed to be bound, but has repeatedly violated.  Lynx has been aware of the terms of the 2002 Agreement since 2002.  If Lynx truly believed MRI had no cognizable contract, copyright or trademark claims against it in view of Section 10.7 of the 2002 Agreement, Lynx had a duty to raise that affirmative defense when it answered MRI's original Complaint.  Dismissing MRI's claims nearly a year and a half later, on the basis of Lynx's very belatedly raised affirmative defense, would result in grave prejudice MRI.  For this reason also, Lynx's Motion to Dismiss should be denied.

**VIII.    Conclusion.**

For all of the foregoing reasons, MRI respectfully requests that the Court deny Lynx's Motion.

---

[7] Other than adding Donald Robinson as a Defendant, the factual allegations of the Amended Complaint are little changed from the original Complaint.  *See* Doc. # 78-2 (Redlined comparison of Amended Complaint to original Complaint).

October 15, 2013                            Respectfully submitted,

                                           By: */s/ Georgia Yanchar*
                                           Daniel McMullen (Ohio Bar No. 0034380)
                                           Georgia Yanchar (Ohio Bar No. 0071458)
                                           Mark W. McDougall (Ohio Bar No. 0080698)
                                           CALFEE, HALTER & GRISWOLD LLP
                                           The Calfee Building
                                           1405 East Sixth Street
                                           Cleveland, Ohio  44114-1607
                                           Telephone:  (216) 622-8200
                                           Facsimile:  (216) 241-0816
                                           E-mail:dmcmullen@calfee.com
                                           gyanchar@calfee.com

                                           Attorneys for Plaintiff MRI Software LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2013,  a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system.  Notice of this filing will be sent via email to opposing counsel.

_/s/ Georgia E. Yanchar_
One of the Attorneys for Plaintiff