IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MRI SOFTWARE LLC, | ) CASE NO.: 1:12-cv-01082 |
| Plaintiff, | ) |
| vs. | ) JUDGE: Christopher A. Boyko |
| LYNX SYSTEMS, INC. | ) |
| and | ) |
| DONALD ROBINSON, | ) |
| Defendants. | ) |

**MRI'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Plaintiff, MRI Software LLC ("MRI"), respectfully submits this reply in support of its Motion for Protective Order.

In its Motion to Compel Production of Source Code, Lynx raised the issue of whether MRI should be compelled to produce the complete source code for all versions of its software without any protections beyond the existing Stipulated Protective Order. MRI opposed Lynx's Motion to Compel, and cross-moved for entry of its proposed Source Code Addendum (Doc. 101-1). Attaching numerous exemplary source code orders entered by courts around the country, in its Memorandum In Opposition To Defendant's Motion To Compel And Cross-Motion For Protective Order (herein "Cross-Memorandum"), MRI showed that the protections of the Source Code Addendum are fully consistent with those contained in source code protective orders uniformly entered to protect extremely valuable and sensitive source code, such as MRI's. Indeed, in the vast majority of cases, entry of such protections is not even contested, and MRI's Source Code Addendum is substantially the same as the *default* orders in many federal courts. On October 10, 2013, Lynx filed its "Reply in Support of [its] Motion to Compel Production of Source Code and Brief in Opposition to MRI's Cross-Motion to Amend the Stipulated Protective

Order" (herein "Lynx's Opposition").[1]  Lynx's Opposition does not dispute that the Source Code Addendum is fully consistent with such other orders, or that MRI's source code is a highly valuable trade secret of MRI.  Yet, in stark contrast to common practice, and without providing an expert or other technical affidavit, Lynx argues it has a need for the unrestricted ability to copy, manipulate and transmit MRI's source code, which outweighs any possible risk to MRI or its customer base.  Lynx fails to provide any substantiation for its assertion that the reasonable protections of the Source Code Addendum would hinder its defense, and Lynx mischaracterizes the Source Code Addendum as being more restrictive than it actually is.  Without citing even a single case in which a court has ordered a litigant to produce its source code subject solely to "Attorneys Eyes Only" restrictions such as those in the Stipulated Protective Order, Lynx insists MRI should be compelled to do so.  It is unreasonable for Lynx to continue to assert that, it --- unlike, apparently, every other litigant in the United States who has ever sought production of its opponent's source code  -- is entitled to such access to and use of MRI's source code.

Lynx's other argument appears to be that MRI should be penalized for not having sought entry of the Source Code Addendum at the inception of this case.  However, it is simply not the case that every software company that brings a copyright infringement case should expect to produce its source code, particularly in a case such as this one, where Lynx admitted at the outset to using the MRI Software outside the scope of any license right granted to it.  In fact, in many cases, courts have ordered production of source code *only after* receiving expert declarations describing in detail the need of the requesting party to examine source code.  Moreover, it cannot be contested that Lynx itself didn't see fit to propound a request for source code until almost a year after it was sued.  Doc. # 100, 9/23/13 Yanchar Decl. at ¶¶. 8, 9, 12.  Lynx's recent request for source code is a changed circumstance giving rise to good cause for the modification MRI

---

[1] Lynx filed this document (Doc. # 107) on October 10.  To the extent it is, as captioned, a "Reply," it is untimely. Lynx's reply brief in support of its Motion to Compel was due on October 3, 2013, one full week earlier.

{02205161.DOC;3}  2

requests. Paragraph 17 of the existing Stipulated Protective Order expressly contemplates such modification. Lynx should not be heard to complain that MRI should have foreseen a need for additional protections for its source code a year before Lynx apparently saw a need for the source code itself.

In short, the risk of irreparable harm associated with MRI's production of source code absent the Stipulated Protective Order far outweigh any real or potential burden on Lynx. For the reasons set forth in MRI's Cross-Memorandum, the September 23 Declaration of Patrick J. Ghilani, and below, Lynx's unreasonable, unsupported position should be rejected and the Source Code Addendum should be entered.

**I.     Good Cause Exists For Entry of the Source Code Addendum.**

Lynx admits the existing Stipulated Protective Order expressly permits amendment, Oppn. Br. at p. 8, and that MRI has established that it would be harmed if its source code was revealed. *Id.* at p. 10. Yet, Lynx argues MRI has not identified any legitimate reason why the existing Stipulated Protective Order is insufficient. Lynx argues MRI has failed to "say why that could happen under the existing Stipulated Protective Order or how MRI's proposed amendments would prevent it." *Id*. Like the monkeys who hear and see no evil, Lynx simply ignores pages 8-9 of MRI's Cross-Memorandum, and the reality of the numerous risks inherently associated with digital media.

The fact is, the existing protective order drastically increases the risk of inadvertent disclosure of MRI's source code, compared to the risk if the Source Code Addendum is entered. Given the highly confidential nature and value of the MRI source code, the mere possibility of inadvertent access or copying presents a profound risk. For example, the existing protective order contains no express prohibitions on where or how the source code is stored, nor does it prohibit MRI's source code from being placed on a networked, Internet-enabled computer. Thus, the existing protective order ignores a significant risk that MRI's source code will be stored in locations that are not adequately secure -- certainly not as secure as the environment

maintained by MRI (*see* Doc. 100-10, September 23, 2013 Declaration of Patrick J. Ghilani) -- leaving it vulnerable to being hacked, attacked or otherwise accessed by unauthorized third parties. The Source Code Addendum reasonably limits this risk by enabling MRI to make its source code available for inspection on a "stand-alone" computer that is not linked to any network, intranet or the Internet. Doc. #100-1, Source Code Addendum at ¶ 20(e). The existing protective order also contains no limitations on copying MRI's source code, in part, or even in its entirety, and does not limit the types of notes or records that can be created based thereon. This creates a significant risk that copies of MRI's source code may be created, which MRI does not even know exist, or that critical portions of the MRI Software will be distilled or summarized and fall into the hands of third parties. The Source Code Addendum reasonably limits these risks by, for example, providing that the receiving party may not copy, remove, or otherwise transfer the source code onto any recordable media or recordable device, that printed excerpts are appropriately labeled and controlled, and that code may not be copied into notes. *Id*. at ¶ 20(e)(4), 20(f), 20(g).

As explained in the September 23 Declaration of Patrick Ghilani, and acknowledged in Lynx's Opposition Brief, all of foregoing specific risks expose MRI and its customers to profound and irreparable harm. Doc. # 101-10, 9/23/13 Ghilani Decl. at ¶ 5; Doc. 107, Lynx's Oppn. Br. at p. 10. Thus, MRI has made a "particular and specific demonstration of fact" as to the risk of harm, warranting entry of the Source Code Addendum. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16) (1981)).

## II.     The Terms of the Source Code Addendum Are Not Onerous.

Lynx's primary argument against entry of the Source Code Addendum appears to be that its entry will cause Lynx a burden. This argument rings hollow. Lynx fails to cite even a single case where a court found terms such as those proposed by MRI to be overly onerous. Lynx also fails to cite even one case where a court ordered a party to produce source code without the type

of protection sought by MRI. *Thus, Lynx has not shown that any court has <u>ever</u> allowed the type of unrestricted ability to access and copy its opponent's source code requested by Lynx.* Rather, courts uniformly impose reasonable restrictions just like those sought by MRI. *See* Doc. ## 101-2-101-8, Exhibits A-H to MRI's Motion for Protective Order (examples of Source Code Orders). Courts (and even most litigants) appear to uniformly agree that the risk of irreparable harm inherent in the production of source code far outweighs any potential burden arguably associated with such reasonable restrictions. Lynx has not argued, much less shown, that the protections contained in the Source Code Addendum are more restrictive than those in the foregoing orders.

*Dynamic Microprocessor Assoc. v. EKD Computer Sales,* 919 F. Supp 101 (E.D.N.Y. 1996) is the *only* case Lynx cites for the proposition that a court "compell[ed] 'attorneys eyes only' production of source code to software copyright infringement defendant under existing protective order." Oppn. Memo at p.4. However, Lynx's summary of the holding in that case is both wrong and misleading. In *Dynamic Microprocessors*, the court ordered production of source code subject not only to the "Attorneys' Eyes Only" protections of the existing protective order, but also subject to *several additional enumerated conditions*, similar to those reasonably requested by MRI. For example, in addition to the protections of the existing protective order, the court further restricted who could access the code, required a log of dates and times when anyone accessed the code, and prohibited any copying or duplication of the code, in whole or in part. *See id*. at p. 106. Contrary to Lynx's characterization, *Dynamic Microprocessors* strongly *supports* MRI's request for entry of the Source Code Addendum.

Lynx's argument as to burden is also unsupported (and unsupportable) from a technical perspective. Lynx offers no expert, or even lay, technical affidavit to support its request for the unfettered ability to copy, transport and transmit MRI's source code. Instead, Lynx offers only its attorney's arguments. This is in marked contrast to many cases like *Dynamic Microprocessors,* where the Court ordered production of source code only after receiving expert declarations describing in detail the need of the requesting party to examine source code. *See id*.

at 105; *see also Leader Techs, v. Facebook, Inc.*, Civ. No. 08-862, 2009 WL 3021168, *3 (D. Del. 2009).

Moreover, both declarations submitted by Lynx's attorney show that, prior to filing its Motion to Compel, Lynx refused to identify any particular provisions of the Source Code Addendum that were objectionable, or to negotiate ways to address any purported concerns. *See* Doc. 107-1, Movius Decl. at ¶ 7; Doc. 95, Movius Decl. at ¶ 13. On page 10 of its Opposition Brief, Lynx belatedly provides three examples of provisions of the Source Code Addendum that Lynx apparently finds "truly onerous." First, Lynx complains that only five people could inspect source code; however, Lynx fails to state why it could possibly *need* more than five people to review MRI's source code. (To date, Lynx hasn't identified even one expert retained in connection with this litigation.) Second, Lynx complains that the Addendum restricts copying of MRI's source code and restricts the types of notes that can be taken; but Lynx fails to explain why it would possibly need to copy MRI's source code, or why the types of notes permitted are not sufficient. Third, Lynx argues it could not compile the source code, but fails to explain why it would plausibly need to do so.

In further arguing that the "burden of MRI's proposed amendments on Lynx's ability to defend itself would be profound, and potentially absolute," Lynx asserts the Source Code Addendum precludes Lynx from running a redline comparison to identify changes from one version to another. This hyperbole should be rejected for several reasons: 1) first, Lynx offers no technical explanation or legal basis as to why it purportedly needs to run a redline comparison or compare one version of MRI's software to another; 2) MRI's source code management system can create a list of differences between versions of MRI Software, but Lynx has never propounded a request for such a list; and 3) (and perhaps most importantly) *nothing* in the Source Code Order precludes the parties from agreeing to install on the computer where the source code is made available such tools as would allow such a comparison. Though suggesting MRI has a secret, nefarious goal of precluding Lynx from formulating an effective defense, Lynx fails to

cite any provision of the Source Code Addendum that would so hinder Lynx. As clearly explained on p. 12 of MRI's Cross-Memorandum (Doc. # 101), there are ways to allow the sort of analysis Lynx argues it needs while mitigating the risk of irreparable harm to MRI. For example, the parties might agree to language such as that block quoted from the District of Delaware default source code order on p. 12 of MRI's Cross Memorandum, which provides for the installation of comparison tools. However, Lynx refused even to come to the negotiating table to propose such a provision.

In sum, Lynx fails to provide any substantiation for its assertion that the reasonable protections of the Source Code Addendum would hinder its defense, and Lynx mischaracterizes the Source Code Addendum as being more restrictive than it actually is. Lynx's arguments as to burden should therefore be rejected.

**III.    No Other Factors Weigh Against Entry of the Source Code Addendum.**

Lynx argues MRI must establish the Source Code Addendum is warranted under four factors: (i) the nature of the protective order; (ii) the foreseeability of the requested modification; (iii) the parties' reliance on the protective order; and (iv) whether good cause exists for the modification. Lynx's Oppn. Br. at p. 8. However, Lynx cites no binding authority (certainly no Sixth Circuit law) for its assertion of the applicable legal standard. Even so, MRI has shown good cause for entry of the Source Code Addendum, and none of the other factors weighs against its entry.

As to the "nature of the protective order," Lynx argues that because the Stipulated Protective Order is purportedly a "blanket" order, this factor weighs against modification. This argument is at best misplaced, because the parties *expressly agreed* that the order would be subject to modification. Doc. # 29, Stipulated Protective Order at ¶ 17. MRI relied upon that provision, feeling assured that if future circumstances required additional protections (such as they do now), it would have the opportunity to secure modification. Moreover, in the email exchanges Lynx attaches to its brief as Exhibit B, the issue was whether in-house counsel and/or

in-house business people (such as Donald Robinson), would be permitted access to competitive business information, such as MRI's client list. The issue of source code production was not raised or discussed. Moreover, in the case Lynx cites in support of its argument, *Murata Mfg. Col, Ltd. v. Bel Fuse, Inc*. 234 F.R.D. 175, 179-80 (N.D. Ill. 2006), the order before the court for consideration was not a stipulated blanket protective order, nor did the court make any legal conclusion as to any such order. *See id.* (concluding the type of order at issue is one that covers a specific kind of identified information).

Lynx's arguments as to foreseeability are equally without merit. Lynx argues that because MRI sought source code from Lynx, MRI should have anticipated Lynx's request for source code, which did not come until nearly a year after the case was filed and long after the Stipulated Protective Order was entered. These arguments lack merit. The code for Lynx's Customizations itself constitutes direct evidence that Lynx used MRI Software to create such Customizations, and contains direct evidence as to when Lynx made modifications and copies in violation of MRI's rights. *See* Exh. A, Lynx's Objections and Responses to MRI's Fifth Set of Interrogatories, Response to Interrogatory No. 19. Lynx offers no technical support for its argument that some comparison to MRI's source code is needed to draw any legal conclusions regarding Lynx's Customization files. It is simply *not* the case that every software company that sues for copyright infringement should automatically expect to have to produce its source code, particular where, as here, the defendant, Lynx, admitted at the outset of the case that it readily and repeatedly exceeded the scope of any license right it had. Indeed, as mentioned above, many courts require expert testimony before concluding a litigant needs access to source code. *See e.g., Dynamic Microprocessor Assoc. v. EKD Computer Sales,* 919 F. Supp 101 (E.D.N.Y. 1996); *see also Leader Techs, v. Facebook, Inc.*, Civ. No. 08-862, 2009 WL 3021 168, *3 (D. Del. 2009). Finally, it cannot be contested that Lynx itself didn't see fit to propound a request for source code until about a year after it was sued. Doc. # 100, 9/23/13 Yanchar Decl. at ¶ 8, 9,

12. Lynx should not be heard to complain that MRI should have foreseen a need to produce its source code a year before Lynx recognized a need to request it.

Moreover, Lynx's Opposition Brief is highly misleading in that it attempts to suggest an "apples-to-apples" equivalence between its production of Customization files and MRI's production of its source code. The Customizations Lynx produced are .izc and .mdb files. Lynx's discovery responses show Lynx routinely transmits such files to its customers via email and other means everyday. Indeed, many of these Customization files continue, to this day, to be offered for resale and distribution on Lynx's website, in violation of the Stipulated Injunction Order. *See* Doc. 40-1, Memorandum in Support of MRI's Motion to Show Cause, at p. 3-4. Lynx's interrogatory responses show that Lynx routinely sells these Customizations for modest flat fees. *See* Doc. # 58 (submitted under seal), at Exhibit B, Lynx Sales by Summary Spreadsheet, columns entitled "Lynx Report," "Lynx Custom," and "Lynx App." By contrast, many of the types of files potentially encompassed by Lynx's request are *never* distributed, and are stored and maintained pursuant to elaborate security measures. *See* Doc.101-10, 9/23/13 Ghilani Decl. at ¶¶ 6-10. These measures are necessary to ensure that MRI complies with data protocols and standards, and to protect MRI and its customers, from third parties seeking to identify and take advantage of security vulnerabilities, steal data, interfere with service, or compromise the functionality of the software. *Id*. at ¶¶ 5, 8-11. Both MRI and its customers rely upon the continued presence of such measures to conduct their business. Moreover, MRI's source code far exceeds in both commercial value and volume the files produced by Lynx. It is unreasonable for Lynx to insist that the risk created by Lynx's requests is outweighed by its supposed need for unfettered access to MRI's source code, a need which Lynx has failed even to try to substantiate from a technical perspective.

Lynx further argues that because MRI deposited "identifying portions" of its source to obtain its registration, and because MRI is a software company pursuing a copyright infringement claim, it should have anticipated Lynx's requests. However, the source code MRI

deposited with the Copyright Office in accordance with its instructions -- a 50 page print out for each version -- is a minuscule fraction of MRI's source code. Moreover, all these deposit copies *have already been produced to Lynx.* As Lynx acknowledges, these copies, together with MRI's registrations, create a *prima facie* presumption of validity. Lynx did not articulate any basis for challenging the validity of any of MRI's registrations until *after* it propounded its request for MRI's source code. Doc. # 100, 9/23/13 Yanchar Decl. at 12, 15.

Lynx's final argument -- that it relied upon the *absence* of the Source Code Addendum in producing its own source code -- is specious, at best. In each of the cases Lynx cites where reliance was found to be a factor weighing against modification of a protective order, the movant sought to *loosen*, not tighten, the controls on access to documents or information. After a party has produced information relying on the presence of certain controls, courts are, not surprisingly, reluctant to *remove* those controls. For example, in *Bayer A.G. v. Barr Labs, Inc.*, 162 F.R.D. 456, 467 (S.D.N.Y. 1995), cited by Lynx, the movant sought to allow its in-house counsel to attend depositions and access documents, after the parties had already agreed that in-house counsel would not have access thereto, and the non-movant had produced millions of pages of confidential documents in reliance upon that expectation. Similarly, in *Murata*, the movant sought to vacate a limited protective order prohibiting it from contacting the non-movant's customers. Likewise, in *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, the plaintiff, a driver injured in a car manufactured by defendant, sought to loosen the existing protective order to allow the plaintiff to share the defendant's documents with other plaintiffs suing the car manufacturer. These cases seeking to loosen protection for previously-produced documents are inapposite to the present Motion, whereby MRI seeks *additional* protections for a specific and limited category of documents which have not yet been produced. They do not support Lynx's Opposition to entry of the Source Code Addendum.

In sum, it is doubtful that this Court needs to apply the four factor test cited by Lynx, both because Lynx cites to no controlling authority prescribing that standard, and because the

existing Stipulated Protective Order expressly provides for modification. Even so, none of these factors weigh against affording MRI the reasonable protections it seeks to mitigate the grave risks associated with producing its source code.

**IV.     Lynx Did Not Make a Good Faith Effort to Resolve the Instant Dispute.**

In an effort to expedite this case and avoid further burdening the Court, MRI tried to compromise and negotiate with Lynx. Lynx refused to do the same. Lynx's attorney has submitted two declarations, both of which establish that Lynx squarely refused to accept or offer *any* proposal as to protections for MRI's source code beyond those set forth in the existing Stipulated Protective Order. *See* Doc. # 95, 9/6/13 Movius Decl. at ¶ 13; Doc. 107-1, 10/10/13 Movius Decl. at ¶ 7. Moreover, contrary to Lynx's Opposition, MRI did not file its Motion for Protective Order on the same procedural record as Lynx filed its Motion to Compel. The difference is that Lynx filed its Motion to Compel without making any effort to compromise, whereas MRI filed its Motion for Protective Order only after receiving Lynx's Motion to Compel and realizing that Lynx truly had no intention to ever come to the negotiation table. Doc. #100, 9/23/13 Yanchar Decl. at ¶¶ 22-25. As set out above and in MRI's Cross-Memorandum, Lynx's insistence that MRI must produce its source code without any protections beyond the existing Stipulated Protective Order presents a striking departure from universal practice, finds no support in case law, and has been justified by no technical need. The position taken in Lynx's Motion to compel and in its Opposition Brief is unreasonable, and a waste of the Court's and MRI's resources.

**V.     Conclusion**

Good cause for entry of the Source Code Addendum has been shown. The Source Code Addendum is fully consistent with the protections routinely afforded by courts for source code. Lynx does not argue otherwise. Just as the protections of such orders have not impeded other litigants in preparing their cases, the Source Code Addendum will not impede Lynx's ability to prepare its defense. Lynx's arguments to the contrary mischaracterize the Source Code

Addendum, and are wholly unsubstantiated, both technically and legally.  Conversely, MRI's production of its source code *without* the Source Code Addendum presents particularized risks of grave and irreparable harm to both MRI and its customers, as explained in Mr. Ghilani's declaration, in MRI's Cross Memorandum, and above.  Entry of the Source Code Addendum will properly and reasonably mitigate these risks, at no identifiable harm to Lynx.  MRI therefore respectfully requests that the Source Code Addendum be entered.

October 21, 2013                                    Respectfully submitted,

By: */s/ Georgia Yanchar*
Daniel McMullen (Ohio Bar No. 0034380)
Georgia Yanchar (Ohio Bar No. 0071458)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio  44114-1607
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
E-mail: dmcmullen@calfee.com
gyanchar@calfee.com

Attorneys for Plaintiff MRI Software LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2013 a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and parties may access this filing through the Court's System. The actual document being filed under seal has been served via email on opposing counsel.

<em>/s/ Georgia E. Yanchar</em><br>
One of the Attorneys for Plaintiff