UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MRI Software, LLC, | ) Case No. 1:12-cv-01082 |
| | ) |
| Plaintiff, | ) Judge Christopher A. Boyko |
| | ) |
| vs. | ) |
| | ) |
| Lynx Systems, Inc., | ) |
| | ) |
| Defendant. | ) |

**Supplemental Declaration of Lynx Systems, Inc.**

I, Donald Robinson, do hereby declare and testify as follows:

1. I am an adult person and am competent to make this Declaration. I am the President of Lynx Systems, Inc. ("Lynx").

2. I have discussed the subject matter of this declaration with all of Lynx's personnel, and this declaration is based on my personal knowledge and the information provided to me by Lynx's personnel. I therefore make this declaration in the capacity of a corporate representative of Lynx.

3. Contrary to what MRI states in its Response to the prior declaration I made for Lynx as its corporate designee, Lynx did not access BlueStone Property, Inc.'s copy of the MRI Software in connection with the services referenced in the email submitted by MRI as Exhibit D. On the contrary, Lynx only logged in to the Microsoft Windows software running on BlueStone's new servers and changed an incorrect setting within the client's Microsoft server software. At no point did Lynx log into or otherwise access any MRI Software running on BlueStone's computers.

4. Lynx initially sold an MRI system to the City of Toronto Economic Development Corporation (or "TEDCO"), which is owned by the City of Toronto and has been known as Toronto Port Lands Company (or "TPLC") since 2009. To Lynx's knowledge, TEDCO/TPLC has not signed MRI's so-called "Master Agreement."

5. In 2008, TEDCO underwent a reorganization where part of its portfolio and staff was split into a new entity, Build Toronto, Inc. The two entities then shared the TEDCO/TPLC MRI system until 2012, when their combined growth necessitated purchase of additional user licenses. Based on MRI's then-current pricing structure, TPLC and Build Toronto determined that it would be more economical for TEDCO/TPLC to retain the existing system and for Build Toronto to acquire a new MRI system for its own use going forward. Thus, from mid-2012 going forward, what had been administered as a single system became two separate systems, with the TPLC system not being subject to the "Master Agreement" terms and, to Lynx's understanding, the Build Toronto being subject to the "Master Agreement" terms.

6. While TPLC and Build Toronto now have separate MRI systems, they continue to be administered by the same IT support personnel. Thus, Lynx has been extremely careful and diligent in how it has provided services to Build Toronto. In addition to what I stated in my prior declaration, Lynx re-confirmed to both Build Toronto and TPLC that it could not access Build Toronto's instance of the MRI Software in April 2013. A true and accurate copy of the relevant emails are attached as Exhibit A to this declaration.

7. With respect to the emails submitted by MRI as Exhibit C, Lynx does not have the ability to access the Build Toronto database, and I have confirmed that it filed its records relating to these services under TEDCO/TPLC, not Build Toronto.

8. With respect to the emails submitted by MRI as Exhibit E, the request for those service came from Vivian Wong of Build Toronto, but the services were actually completed by Kathryn Truman of Build Toronto. Those emails thus are nothing more than its confirmation to Ms. Wong, with a copy to Ms. Truman, that the services she requested were completed according to the established practice between Lynx and Build Toronto, whereby Ms. Truman actually performed the requested services.

9. Although MRI has not provided Lynx with the required notice for Midwest Property Management to be a "Master Agreement Signatory," Lynx asked Midwest if it had executed MRI's new agreement and was informed that it had not.

10. With respect to NAI Hiffman, Lynx created a data-mapping script that interfaced directly with the client's database without causing any modification to any part of the MRI Software.

11. With respect to Edon Management, the "Customization" referenced in the emails submitted by MRI were created and implemented <u>before</u> entry of the Stipulated Injunction. All Lynx did in connection with that email was to <u>advise</u> the client on how it could move the already-existing Customization from its "Test" computing environment to its "Production" computing environment. Lynx did <u>not</u>

distribute any "Customization" at that time or otherwise access Edon Management's MRI Software.

12. Media Real Estate is a sophisticated user of the MRI Software, and it has its own in-house development team and its own copy of MRI's Report Development Tool. While Lynx has, on occasion, consulted with Media Real Estate with respect to certain Customizations, it has not itself developed or distributed such Customizations itself since entry of the Stipulated Injunction.

//

//

FURTHER DECLARANT SAYETH NAUGHT.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

November 1, 2013

Donald Robinson