UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No. 1:12-cv-01082 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| Lynx Systems, Inc. et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Reply in Support of Lynx Systems, Inc.'s Motion to Partially**
**<u>Dismiss MRI Software, LLC's Amended Complaint Under Rule 12(b)(6)</u>**

{4541308:2}

## **Table of Contents**

Table of Authorities ..................................................................................................ii

Introduction ........................................................................................................... 1

Brief Statement of the Issues and Arguments Presented........................................... 1

Law and Argument .................................................................................................. 3

   I.   The One-Year Limit in Section 10.7
           Bars MRI's Breach of Contract Claim.................................................................. 3

      A.   Section 10.7 Unambiguously Required MRI
              to Bring its Breach of Contract Claim Within One Year ............................ 3

      B.   MRI's Claim that Lynx Breached Surviving Obligations
              Under the 2002 Agreement is Subject to the One-Year Limit .................. 7

      C.   MRI's Bad Faith and Willfulness Allegations Conduct
              Do Not Excuse it From the One-Year Limit Under Section 10.7 .............. 9

      D.   Lynx and MRI Both Had Actual Knowledge
              More Than One Year Before MRI's Complaint ........................................ 11

  II.  The One-Year Limit in Section 10.7 Also
           Applies to MRI's Copyright and Trademark Claims ....................................... 13

  III. Lynx Did Not Waive The One-Year Limit in Section 10.7 ............................. 15

Conclusion............................................................................................................. 16

Track and Page Limit Certification ......................................................................... 18

Certificate of Service.............................................................................................. 18

# **Table of Authorities**

## **Cases**

*Ajida Technologies, Inc. v. Roos Instruments, Inc.,*
    87 Cal.App.4th 534 (2001) ...................................................................... 7

*Alameda County Flood Control v. Department of Water Resources,*
    152 Cal.Rptr.3d 845 (2013) .................................................................... 3

*B & H Medical, L.L.C. v. ABP Admin., Inc.,*
    526 F.3d 257 n.8 (6th Cir. 2008) .......................................................... 15

*Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Ins. Co.,*
    5 Cal.4th 854 (1993) ............................................................................... 3

*Beck v. American Health Group Internat., Inc.,*
    211 Cal.App.3d 1555 (1989) ................................................................... 4

*Capri v. L.A. Fitness Int'l, LLC,*
    39 Cal.Rptr.3d 425 (2d App. Dist. 2006) ............................................. 10

*Dore v. Arnold Worldwide, Inc.,*
    39 Cal.4th 384 (2006) ............................................................................. 5

*Han v. Mobile Oil Corp.,*
    73 F.3d 872 (9th Cir. 1995) ............................................................. 6, 16

*Hayter Trucking, Inc. v. Shell Western E & P, Inc.,*
    18 Cal.App.4th 1 (1993) ......................................................................... 4

*Jardin v. Datallgro, Inc.,*
    No. 08cv1462-IEG, 2009 WL 186194 (S.D. Cal. Jan. 20, 2009).......... 8

*Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.,*
    50 F.R.D. 415 (D. Del. 1970) ............................................................... 15

*Martinez v. Extra Space Storage, Inc.,*
    2013 WL 3889221 (N.D. Cal. July 26, 2013) ....................................... 6

*Massey v. Helman,*
    196 F.3d 727 (7th Cir. 1999) ............................................................... 15

*Mehmet v. Paypal, Inc.,*
    No. C-08-01961, 2009 WL 815676 (N.D. Cal. 2009).......................... 10

*Pacific Gas and Elec. Co. v. F.E.R.C.,*
    746 F.2d 1383 (1984) ................................................................ 3

*Queen Villas Homeowners Ass'n v. TCB Property Mgmt.,*
    56 Cal.Rptr.3d 528 (4th App. Dist. 2007) ............................ 8

*Reserve Insurance Co. v. Pisciotta,*
    30 Cal.3d 800 (1982) .............................................................. 6

*Rosen v. State Farm General Ins. Co.,*
    30 Cal.4th 1070 (2003) ......................................................... 5

*Skilstaf, Inc. v. CVS Caremark Corp.,*
    669 F.3d 1005 (9th Cir. 2012) .............................................. 4

*Thabet v. Mobil Corp.,*
    2003 WL 21711408 (Cal. App. 2 Dist. July 24, 2003) ........ 7

*Weiner v. Klais and Co., Inc.,*
    108 F.3d 86 (6th Cir. 1997) ................................................. 12

*William L. Lyon & Associates, Inc. v. Superior Court,*
    204 Cal.App.4th 1294 (Cal. App. 3 Dist. 2012) ................. 9

## **Statutes**

California Civil Code Section 1668 ................................... 9, 10, 11

## **Rules**

Fed. R. Civ. P. 12(b)(6) .................................................... 4

Local Rule 16.2 ................................................................ 18

Local Rule 7.1(f) .............................................................. 18

## Introduction

MRI lays out a veritable cornucopia of reasons why it believes that its breach of contract, copyright and trademark claims are not untimely under the one-year time limit mandated by Section 10.7 of the 2002 Agreement. Despite the multitude of MRI's arguments, none avoids the plain fact that it failed to bring its claims within the agreed-upon time limit. The Court therefore should grant Lynx's motion and dismiss MRI's breach of contract claim (Count 8), its copyright infringement claims (Counts 1 and 5) and its trademark infringement claims (Counts 11 and 12).

## Brief Statement of the Issues and Arguments Presented

Lynx's motion presents the single issue of whether MRI's contract, copyright and trademark claims are untimely and therefore subject to dismissal under the one-year limit set forth in Section 10.7, which provides:

> No action, regardless of form, arising out of the transactions under this Agreement may be brought by [Lynx] against MRI or by MRI against [Lynx] more than one (1) year after [Lynx] knew or should have known of the occurrence of the event(s) giving rise to the cause of action.

(2002 Agreement § 10.7.) As Lynx demonstrated, MRI's breach of contract, copyright and trademark claims are untimely because each "aris[es] out of the transactions under [the 2002] Agreement" and Lynx (and MRI) knew of the relevant events more than a year before MRI filed its initial complaint.

In response, MRI argues that its claims should be spared from dismissal because (i) the one-year limit in Section 10.7 is ambiguous, (ii) the one-year limit did not survive the expiration or termination of the 2002 Agreement, (iii) its allegations of willful and bad faith conduct exempt its claims from the one-year

limit, (iv) Lynx's argument regarding MRI's knowledge constitutes an improper attempt to re-write Section 10.7, (v) Lynx's alleged copyright and trademark infringement was outside the scope of the licenses granted in the 2002 Agreement, and (iv) Lynx somehow waived its right to rely on Section 10.7.

None of MRI's arguments is sufficient to save its claims from dismissal. First, Section 10.7 is not ambiguous because it is only reasonably susceptible to one interpretation, which is fatal to MRI's claims. Second, the one-year limit applies to any breach of contract claim, including claims directed to obligations that survived the expiration or termination of the 2002 Agreement. Third, MRI's willful and bad faith allegations are irrelevant because Section 10.7 limits the time for MRI to bring its claims, not Lynx's potential for liability. Fourth, while Lynx argued in the alternative that MRI also had prior knowledge of those events, Lynx indisputably had knowledge of the relevant events more than a year before MRI's complaint. Fifth, Section 10.7 applies to any "action, regardless of form" and MRI's infringement claims "aris[e] out of the transactions under [the 2002] Agreement." Sixth, MRI's decision to file an amended complaint precludes any argument that Lynx waived its right to rely on Section 10.7 (which Lynx did not do).

For these reasons, as discussed in more detail below, and for the reasons set forth by Lynx in its opening brief, the Court should grant Lynx's motion and dismiss MRI's breach of contract claim (Count 8), its copyright infringement claims (Counts 1 and 5) and its trademark infringement claims (Counts 11 and 12).

<u>**Law and Argument**</u>

**I.**    **The One-Year Limit in Section 10.7**
      <u>**Bars MRI's Breach of Contract Claim**</u>

MRI argues that the one-year time limit in Section 10.7 does not apply to its breach of contract claim because (i) Section 10.7 is ambiguous, (ii) Section 10.7 did not survive termination of the 2002 Agreement, (iii) its allegations of willful and bad faith conduct put its claims beyond the reach of Section 10.7, and (iv) its Amended Complaint does not establish notice of the relevant events more than one year before its filing date. MRI is wrong on each and every point.

**A.**    **Section 10.7 Unambiguously Required MRI to**
      <u>**Bring its Breach of Contract Claim Within One Year**</u>

MRI first argues that the Court should deny Lynx's motion because Section 10.7 of the 2002 Agreement is ambiguous. However, there is nothing ambiguous about the one-year limit in Section 10.7. It is reasonably susceptible to just one interpretation, and that interpretation is fatal to MRI's claims.

Under California law, a "contract is not ambiguous merely because the parties disagree on its interpretation." *Pacific Gas and Elec. Co. v. F.E.R.C.*, 746 F.2d 1383, 1387 (1984). Instead, ambiguity exists only if a contractual provision is capable of two or more constructions, both of which are reasonable. *See Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 867 (1993). As the party claiming ambiguity, MRI has the burden of identifying two or more reasonable constructions for Section 10.7. *See Alameda County Flood Control v. Department of Water Resources,* 152 Cal.Rptr.3d 845, 866 (2013).

According to MRI, ambiguity exists because Section 10.7 can be construed in two ways: "literally" to mean that MRI had to bring its breach of contract claim within one year of the date on which Lynx knew or should have known of its alleged breach, and (non-literally?) so that the one-year time limit "applies solely in MRI's favor, not in Lynx's favor." (MRI Br. at 3-4, 5.) That does not establish ambiguity because MRI's non-literal construction is not reasonable.

To avoid dismissal on the basis of ambiguity at the pleadings stage, a plaintiff must "allege in the complaint the meaning which the party ascribes to that contract" to avoid dismissal on the basis. *Hayter Trucking, Inc. v. Shell Western E & P, Inc.*, 18 Cal.App.4th 1, 17-18 (1993). Otherwise, "a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach." *Id.* (citing *Beck v. American Health Group Internat., Inc.*, 211 Cal.App.3d 1555, 1561-62 (1989)). MRI did not plead ambiguity or allege the alternate meaning that it now ascribes to the one-year time limit in Section 10.7. Therefore, whether Section 10.7 is ambiguous is a question of law that the Court properly may resolve by dismissing MRI's contract claim. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017-18 (9th Cir. 2012) (affirming Rule 12(b)(6) dismissal over plaintiff's unsupported claim that contract was ambiguous).

Turning to the merits of MRI's assertion that the one-year limit under Section 10.7 is ambiguous, "the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the

case is over." *Dore v. Arnold Worldwide, Inc.,* 39 Cal.4th 384, 393 (2006). MRI admits that Section 10.7 is readily susceptible to a literal interpretation, as follows:

> Interpreted literally, Section 10.7 means that MRI had one year from the time *Lynx* knew *Lynx* was breaching the 2002 Agreement to sue *Lynx* for breach of the 2002 Agreement.

(MRI Br. at 3-4; emphasis in original.) Lynx agrees that this "literal" interpretation is reasonable. The same, however, cannot be said for MRI's proposed alternate interpretation, under which the one-year limit would apply solely in MRI's favor. Such an interpretation is not reasonable and should be rejected because it ignores the actual language of Section 10.7. Specifically, acceptance of that interpretation would require the Court to re-write that section to eliminate the words "or by MRI against SUB-LICENSOR," as follows:

> 10.7  No action, regardless of form, arising out of the transactions under this agreement may be brought by SUB-LICENSOR against MRI ~~or by MRI against SUB-LICENSOR~~ more than one (1) year after SUB-LICENSOR knew or should have known of the occurrence of the event(s) giving rise to the cause of action.

(*See* 2002 Agreement § 10.7; mark-up added.) That would constitute legal error because, under California law, courts "do not rewrite any provision of any contract ... for any purpose." *Rosen v. State Farm General Ins. Co.*, 30 Cal.4th 1070, 1073 (2003). Section 10.7 therefore is not ambiguous because it is susceptible to just one reasonable interpretation.

MRI's ambiguity argument also fails because literal enforcement of Section 10.7 is inherently reasonable under California law. Because the date of a breach is the earliest date on which Lynx could have knowledge the events giving rise to it, Section 10.7 afforded MRI *a minimum* of one year after Lynx's alleged breach to

bring its claim. MRI having at least a year to bring its claims is *per se* reasonable under California law. *See Han v. Mobile Oil Corp.* 73 F.3d 872, 877 (9th Cir. 1995) ("A contractual limitation period requiring a plaintiff to commence an action within 12 months following the event giving rise to a claim is a reasonable limitation[.]"). MRI therefore cannot avoid dismissal by arguing that a literal application of the one-year limit in Section 10.7 would be unreasonable. *See Reserve Insurance Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982) ("Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.").[1]

MRI's arguments directed to the remainder of Section 10.7 are equally unavailing. According to MRI, only it should benefit from the one-year time limit set forth in the first sentence of Section 10.7 because the last sentence of that section states that the remedies under that section are Lynx's "sole and exclusive" remedy for any breach by MRI. That argument does not lead to the conclusion MRI urges. All the last sentence of Section 10.7 means is that bringing a <u>timely</u> claim is Lynx's "sole and exclusive" remedy for a breach by MRI. That does not mean that MRI somehow is excused from complying with its own, expressly-stated one-year time limit. To conclude otherwise would effectively re-write the first sentence of Section 10.7 to omit the words "or by MRI against SUB-LICENSOR," which is not allowed

---

[1] The only case MRI cites on this issue (in footnote 3 of its brief) does not apply because, in that case, the court held that the inherent reasonableness of one-year contractual limits under California law did not obviate the separate factual inquiry necessary to determine whether a one-way time limit that ran against a consumer in a contract of adhesion was unconscionable. *See Martinez v. Extra Space Storage, Inc.,* 2013 WL 3889221, at *3-4 (N.D. Cal. July 26, 2013). Here the 2002 Agreement is not a contract of adhesion, the time limit is mutual, and MRI does not allege unconsionability.

as a matter of law. The last sentence of Section 10.7 therefore does mean that the one-year time limit in the first sentence of that section runs only to MRI's favor or otherwise create any ambiguity with respect to Section 10.7 as a whole.

For these reasons, MRI has not demonstrated that Section 10.7 is in any way ambiguous. The Court therefore should apply that section literally and as written and dismiss MRI's breach of contract claim because it failed to bring that claim within one year of when Lynx had knowledge of the relevant events.

**B. MRI's Claim that Lynx Breached Surviving Obligations Under the 2002 Agreement is Subject to the One-Year Limit**

Next, MRI argues that the one-year limit does not apply because Section 10.7 did not survive the expiration or termination of the 2002 Agreement. The Court should reject that argument because the one-year time limit applies broadly and generally to any action "arising out of the transactions under [the 2002] Agreement," which necessarily includes actions for breach of surviving obligations.

In California, broad contractual limitations on dispute resolution procedures can apply to post-termination breaches of surviving contractual obligations even if the time limit itself is not designated for survival. *See Thabet v. Mobil Corp.*, 2003 WL 21711408 (Cal. App. 2 Dist. July 24, 2003) (claim for post-termination breach barred under one-year limit on "all claims … of any kind"). *See also Ajida Technologies, Inc. v. Roos Instruments, Inc.*, 87 Cal.App.4th 534, 543-44 (2001) (claim for post-termination breach subject to arbitration clause covering "[a]ny disputes"). That is the case here. As written, the one-year limit under Section 10.7 is not restricted to only claims arising out of events that occurred before the

expiration or termination of that agreement, as MRI suggests. On the contrary, Section 10.7 broadly states that "<u>no</u> action … arising out of the transactions under this Agreement" may be brought more than one year after the critical date. (2002 Agreement § 10.7; emphasis added.) Because MRI's breach of contract claim arises out of the transactions under the 2002 Agreement, it by definition is subject to the one-year limit under Section 10.7.

MRI does not cite any case where a court held that a contractual time limit does not apply to a breach of a surviving obligation. Instead, MRI relies on two cases on the separate issue of the enforceability of prospective "exculpatory" clauses. The first, *Queen Villas Homeowners Ass'n v. TCB Property Mgmt.,* 56 Cal.Rptr.3d 528 (4th App. Dist. 2007), addressed whether an indemnification clause barred the plaintiff from suing the defendant for breach of that agreement, and the second, *Jardin v. Datallgro, Inc.,* No. 08cv1462-IEG, 2009 WL 186194 (S.D. Cal. Jan. 20, 2009), addressed whether a settlement agreement release precluded the plaintiff from pleading pre-release conduct in support of a claim that the defendant's post-release patent infringement was willful. Those cases have nothing to do with the issue now before the Court. Unlike the indemnification clause in *Queen Villas* or the release in *Jardin*, the first sentence of Section 10.7 does not limit Lynx's potential liability under a timely claim by MRI; it merely limits the time for MRI to bring such a claim. Section 10.7 therefore is not an exculpatory clause and the cases on which MRI relies do not provide any support for its position.

MRI concludes its argument by making the hyperbolic statement that "it would be unreasonable to interpret the 2002 Agreement to permit Lynx to trample on MRI's rights after termination of the 2002 Agreement." (MRI Br. at 8.) Giving effect to the one-year limit under Section 10.7 would do nothing of the sort. Section 10.7 afforded MRI at least one full year to sue Lynx for any alleged breach of the surviving provisions of the 2002 Agreement. Had MRI done that, Section 10.7 would not limit Lynx's potential liability. That MRI now regrets its failure to do so does not make it unreasonable to hold MRI to what it agreed when it executed the 2002 Agreement. It would, however, be unreasonable to deprive Lynx of the benefit of its bargain with MRI under Section 10.7 by allowing MRI to maintain its untimely breach of contract claim. The Court therefore should hold MRI to what it agreed, apply the one-year time limit in Section 10.7 as written, and dismiss MRI's untimely breach of contract claim.

### C. MRI's Bad Faith and Willfulness Allegations Conduct Do Not Excuse it From the One-Year Limit Under Section 10.7

MRI also tries to avoid dismissal by arguing that its allegations of willful and bad faith conduct render Section 10.7 unenforceable. As support, MRI invokes California Civil Code Section 1668, under which "contracts which … exempt anyone from responsibility for his own fraud … are against the policy of the law." Cal. Civ. Code § 1668. MRI's citation to that statute cannot save its claims because California courts have rejected application of Section 1668 to contractual time limits for bringing claims for breach. *See William L. Lyon & Associates, Inc. v. Superior Court,* 204 Cal.App.4th 1294, 1307 (Cal. App. 3 Dist. 2012) (explaining that, although

Section 1668 prohibits contractual provisions excusing future wrongful conduct, "parties to an agreement may shorten the period within which some legal claims must be brought"). MRI therefore cannot rely on Section 1668 to save its claims from dismissal under the plain language of Section 10.7.

Like it did to "support" its incorrect argument regarding the post-termination applicability of Section 10.7, MRI fails to cite a single case applying Section 1668 to a contractually-shortened limitation period. Instead, MRI offers a scatter-shot assortment of cases addressing the enforceability of limitation of liability clauses in various non-analogous contexts, including slip-and-fall premises liability (*Capri v. L.A. Fitness Int'l, LLC*, 39 Cal.Rptr.3d 425 (2d App. Dist. 2006)) and consumer online payments (*Mehmet v. Paypal, Inc.*, No. C-08-01961, 2009 WL 815676 (N.D. Cal. 2009)). Those cases and the others that MRI cites are wholly inapposite because the one-year limit under Section 10.7 is not a limitation on liability that is subject to Section 1668; it is a limitation on when MRI had to bring its claim.

The distinction between a liability limit and a time limit is clear when the analysis is reversed. Had MRI brought its breach of contract claim in a timely manner—which it did not—the one-year limit would not limit Lynx's potential liability. It therefore cannot be read as a limitation of liability now that MRI failed to bring a claim in a timely manner. The one-year limit in Section 10.7 thus is not a limitation of liability clause that could be read as being is subject to Section 1668, so MRI cannot rely on that statute to avoid having to honor its promise to bring any claim for breach within one year as a means for saving its claims from dismissal.

### D.     Lynx and MRI Both Had Actual Knowledge More Than One Year Before MRI's Complaint

Despite its attempts to avoid application of the one-year limit under Section 10.7, MRI ultimately concedes that, "in deciding Lynx's Motion, the Court need not determine when MRI knew or should have known any of the events giving rise to any of its claims." (MRI Br. at 13.) Lynx indisputably had actual knowledge of the events giving rise to MRI's breach of contract claim more than one year before MRI filed its complaint against Lynx. The Court therefore should grant Lynx's motion and dismiss MRI's breach of contract claim on that basis.

While Lynx's knowledge disposes of MRI's breach of contract claim, a brief response is warranted to MRI's argument that it did not know the relevant facts more than one year before it filed its complaint. Contrary to what MRI suggests, Lynx's argument—which it made in the alternative—that MRI *also* had actual knowledge of those facts more than one year before MRI filed its complaint does not mean that Lynx wants the Court to re-write Section 10.7 contrary to its literal meaning. All it means is that Lynx correctly anticipated that MRI would take issue with the knowledge qualifier in Section 10.7 with the hope of avoiding dismissal. Since Lynx and MRI agree that Lynx had knowledge of the relevant events more than one year before MRI's complaint, there is no reason for Lynx to ask the Court to interpret Section 10.7 different from its plain, literal meaning.

Beyond that, MRI's suggestion that it did not have knowledge of the relevant events more than a year before it filed its initial complaint is notable because that claim is demonstrably and knowingly false. In opposing Lynx's Motion, MRI argues

that the November 17 and December 29, 2010, emails attached as Exhibit 7 to its Amended Complaint do not establish when it knew of the relevant events because Lynx sent those emails to third parties and "the Amended Complaint is utterly silent as to when MRI first knew (or even should have known) of those emails." (MRI Br. at 13; emphasis omitted.) MRI's claim is as  incredible as it is misleading. The *only* reason MRI's Amended Complaint does not literally admit when MRI received those emails is because *MRI specifically redacted that very information from the copies of the emails that it filed with the Court.*

Belying MRI's feigned lack of contemporaneous knowledge, the *un-redacted* (or, more correctly, *less-redacted*) copies of those same emails that MRI subsequently produced to Lynx in discovery show that MRI received them on the same day they were sent by Lynx. The less-redacted emails are filed herewith under seal as Exhibits A and B, and the Court may consider them in full because MRI's Amended Complaint put them at issue. *See Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (court may rely on pertinent documents submitted in support of a motion to dismiss; "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied."). As such, it its irrefutable that *both* Lynx *and* MRI had actual knowledge of the events giving rise to MRI's breach of contract claim more than one year before MRI filed its initial complaint. It therefore does not matter whether Lynx's or MRI's knowledge triggers the one-year time limit. MRI's claim is untimely either way and should be dismissed for failure to state a claim.

## II.     The One-Year Limit in Section 10.7 Also <u>Applies to MRI's Copyright and Trademark Claims</u>

Faced with dismissal of its breach of contract claim, MRI argues that its copyright and trademark claims should not suffer a similar fate because, "[i]f the parties had intended the limitations in Paragraph 10.7 to apply to claims other than claims for 'BREACH OF THIS AGREEMENT,' they would have said so." (*Id.*) MRI's argument is self-defeating, because *that is exactly what MRI and Lynx did!* By its express terms, the one-year time limit in Section 10.7 applies broadly to any claim, "<u>regardless of form</u>, arising out of the transactions under this Agreement[.]" (2002 Agreement § 10.7; emphasis added.) Section 10.7 therefore makes manifest the parties' clear intention that the one-year time limit applies to any and all such claims, "<u>regardless of form</u>."

Hoping to avoid dismissal of its copyright and trademark claims, MRI attempts to redefine Section 10.7 to apply only to claims arising under the "licenses granted under the 2002 Agreement." (MRI Br. at 10.) But that is not what Section 10.7 says.[2] On the contrary, Section 10.7 applies broadly to all claims "arising out of <u>the transactions under</u> [the 2002] Agreement." (2002 Agreement § 10.7; emphasis added.) That distinction is dispositive because, in addition to licensing Lynx to use its software and trademarks, the transactions under that agreement also included MRI providing Lynx with the software and trademark materials at issue in its copyright and trademark infringement claims. (*See, e.g., id.* at §§ 3.1, 3.2). Thus,

---

[2] Even if Section 10.7 were so limited, MRI's trademark and copyright claims would fall within its scope and be subject to the one-year time limit for the reasons set forth on pages 6 and 8-9 of Lynx's opening brief.

MRI's copyright and trademark claims "aris[e] out of" those transactions and are subject to the one-year limit under Section 10.7 of the 2002 Agreement.

MRI's argument also conflicts with its allegations in the Amended Complaint. As Lynx pointed out in its opening brief, MRI's copyright and trademark infringement claims are based on the exact same conduct that MRI alleges in support of its breach of contract claim. (*See, e.g.,* Am. Compl. ¶¶ 110, 133-34, 147, 152.) In response, MRI does not identify a single allegation in its Amended Complaint where it pled an act or omission by Lynx constitutes infringement but not constitute a breach of the 2002 Agreement, or vice-versa. That, too, is dispositive. Because the "event(s) giving rise to" MRI's breach of contract are the same "event(s) giving rise to" MRI's trademark and copyright infringement claims, its infringement claims necessarily "aris[e] out of the transactions under [the 2002] Agreement" for purposes of Section 10.7. MRI's copyright and trademark infringement claims therefore are subject to the one-year limit under Section 10.7.

The cases that MRI cites with respect to this issue do not change the analysis or the conclusion. In each, the court was called on to address whether a limitation of liability clause in a license agreement covered infringement that occurred outside the scope of the license. That scenario is completely different from the present case because the one-year limit in Section 10.7 limits only when MRI must bring a claim, not Lynx's potential liability in the event of a timely claim by MRI. Moreover, Section 10.7 applies equally to claims arising out of the licenses that MRI granted to Lynx in the 2002 Agreement and to all other claims, "regardless of form, arising out

of the transactions under [the 2002] Agreement." Therefore, the unremarkable proposition for which MRI cites those cases—that a contractual limitation of liability does not limit a party's liability for acts of infringement outside the scope of the relevant contract—has no application to the issue actually before the Court.

Accordingly, MRI's copyright and trademark infringement claims should be dismissed as untimely because they "aris[e] out of the transactions under [the 2002] Agreement" and MRI failed to bring them within the time limit prescribed by Section 10.7 of the 2002 Agreement.

## III.  Lynx Did Not Waive The One-Year Limit in Section 10.7

MRI's final argument, that Lynx waived the one-year limit under Section 10.7, badly misses the mark. By filing its Amended Complaint, MRI rendered its initial complaint a "nullity." *B & H Medical, L.L.C. v. ABP Admin., Inc.,* 526 F.3d 257, 268 n.8 (6th Cir. 2008).  Thus, MRI "open[ed] the door for [Lynx] to raise new and previously unmentioned affirmative defenses." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). *See Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D. Del. 1970) ("Since the amending pleader chooses to redo his original work, and receives the benefit of this *nunc pro tunc* treatment, he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading"). MRI's decision to file its Amended Complaint thus precludes any argument that Lynx waived its right to move for dismissal based on Section 10.7 of the 2002 Agreement.

Beyond that procedural infirmity, MRI's waiver argument also fails because Lynx pled that MRI's initial complaint failed to state a claim upon which relief can

be granted as an affirmative defense to MRI's initial complaint. (Answer, ECF # 25, at ¶ 115.) That preserved Lynx's defense (to the extent it needed preservation) because it is the same basis on which Lynx now moves for dismissal of MRI's breach of contract, copyright and trademark claims. Lynx's affirmative defense of waiver (*id.* at ¶ 116) also defeats MRI's argument because Section 10.7 of the 2002 Agreement effectively waives any claim arising out of the transactions under the 2002 Agreement that is not brought within the agreed-upon time. MRI's argument therefore would fail even if the filing of its Amended Complaint did not "open the door" for Lynx's motion.

Finally, MRI's argument fails for the independent reason that a defendant can raise an un-pled contractual limitation defense at any time "if no prejudice is caused to the nonmoving party." *Han,* 73 F.3d at 878. Such prejudice will not exist where, for example, a defendant raises "an affirmative defense regarding the applicable statute of limitation, and the contractual limitations period itself is set forth in the very contract [a plaintiff] seeks to enforce." *Id.* Here, Lynx pled a statute of limitations affirmative defense (Answer ¶ 128), and the time limit at issue is in the 2002 Agreement that MRI is seeking to enforce. Therefore, just as in *Han*, MRI's vague allegations of "grave prejudice" do not demonstrate any cognizable prejudice that would warrant denial of Lynx's motion.

## Conclusion

For these reasons and those Lynx previously stated in support of its motion, the Court should grant Lynx's motion and dismiss MRI's breach of contract claim

(Count 8), its copyright infringement claims (Counts 1 and 5) and its trademark infringement claims (Counts 11 and 12).

Respectfully submitted,

Dated: November 1, 2013

/s/ David T. Movius
David T. Movius (OH 0070132)
 *dmovius@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

John T. McLandrich (OH 0021494)
 *jmclandrich@mrrlaw.com*
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 │ f 440.248.8861

*Attorneys for Lynx Systems, Inc.*

**<u>Track and Page Limit Certification</u>**

The undersigned certifies under Local Rule 7.1(f) that this case has not been assigned to a track under Local Rule 16.2, and that this memorandum adheres to both the 30-page limit for "complex" track cases and the 20-page limit for "standard" track cases.

 /s/ David T. Movius
*Attorney for Lynx Systems, Inc.*

**<u>Certificate of Service</u>**

I hereby certify that, on November 1, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

 /s/ David T. Movius
Attorney for Lynx Systems, Inc.