UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI SOFTWARE LLC, | ) | CASE NO.: 1:12-CV-01082 |
| Plaintiff, | ) ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | |
| LYNX SYSTEMS, INC., | ) ) | |
| and | ) ) | |
| DONALD ROBINSON, | ) ) | |
| Defendants. | ) | |

**JOINT REPORT PURSUANT TO OCTOBER 30, 2013 ORDER**

Pursuant to the Court's October 30, 2013 Order, plaintiff MRI Software LLC ("MRI") and defendant Lynx Systems, Inc. ("Lynx"), by and through their undersigned counsel, hereby report to the Court as to their efforts to reach agreement as to the following issues: 1) language of a new certification of compliance; 2) changes Lynx may make to the representations made on its website; and 3) Plaintiff providing actual notice of signatories to Plaintiff's Master Agreements to Lynx.

I. **Language Of A New Certification Of Compliance.**

**Lynx's Proposal:** Lynx proposes to resolve any remaining issue regarding its certification of compliance with the Stipulated Injunction by re-certifying its compliance within a time to be determined by the Court, as follows:

> Under penalty of perjury, I, Donald Robinson, on behalf of Lynx Systems, Inc., hereby certify that I have conducted a reasonable investigation, and Lynx has complied with the Stipulated Injunction Order (ECF # 36) to the best of my present knowledge and belief.

**Lynx's Comments:** As set forth in its filings and at the October 29, 2013, hearing, Lynx maintains that its November 29, 2012, Confirmation of Compliance (filed as ECF # 37), fulfilled its obligations under paragraph 7 of the Stipulated Injunction. Lynx also re-certified its compliance in paragraph 22 of its April 15, 2013, declaration (filed as ECF # 69). If, however, the Court concludes that Lynx has not fully certified its compliance with the Stipulated Injunction, Lynx proposes to resolve that issue by making the above-stated recertification, which uses the same verbiage that David Post, MRI's Chief Executive Officer, used to verify MRI's responses to Lynx's interrogatories. As MRI has not identified any prejudice due to the alleged insufficiency of Lynx's prior two certifications, Lynx respectfully submits that such a re-certification would eliminate any doubt as to whether Lynx has fully certified its compliance with the Stipulated Injunction.

**MRI's Comments:** MRI takes no exception to the block quoted language as consistent with the scope of the certification required by Paragraph 7 of the Stipulated Injunction Order (herein the "Injunction Order"), but submits that Lynx cannot undo the violation of the Injunction Order that already occurred when Lynx failed to certify its compliance with the Injunction Order on November 30, 2012, as Paragraph 7 required. MRI respectfully continues to request that Lynx be held accountable for that violation. Insofar as the Court's forthcoming order on the issue of Lynx's contempt finds Lynx's certification to date deficient -- both because of its untimeliness and because of the misconstruction of the Order to which Lynx certified its compliance -- MRI agrees the language set forth above would be acceptable as to such future certification as Lynx may be required to make.

**II.     Changes Lynx May Make To The Representations Made On Its Website.**

**Lynx's Proposal:** Lynx proposes to resolve any outstanding issues regarding the content of its website modify that content as follows:

(a) modify the non-descriptive product names on the *http://www.lynxsystemsinc.com/index.php?section=products&pid=customize* page of its website, including removal of all acronyms it used prior to entry of the Stipulated Injunction;

(b) adding a statement to that page indicating that its previously-created Toolkit-based Customizations are not available for purchase or sale; and

(c) Lynx will provide its proposed revised webpage to MRI at least ten (10) days in advance of it being made publicly available, and MRI will identify in writing any reasonable objections thereto within ten (10) days.

**Lynx's Comments:** While Lynx maintains that the contents of its website has been and continues to be compliant with the Stipulated Injunction for the reasons set forth in its filings and at the October 29, 2013, hearing, it remains willing to modify that content consistent with what it proposed in paragraphs 29 and 32 of its April 13, 2013, declaration to eliminate any issue regarding its compliance. Lynx's proposal differed from MRI's in two respects. First, under item (a), Lynx proposes that it be required to modify the <u>non-descriptive</u> product names, as opposed to "all references" to those names as MRI proposes. This distinction is significant because many of those names are purely descriptive of generic but essential tasks for managing property portfolios, including by way of example "Canadian Tax Reporting," "Condominium Management," "Electronic Funds Transfer" and "Rent Control." As Section 2(k) of the Stipulated Injunction prohibits reference to the collection of those Customizations but not the actual names of those Customizations, Lynx's proposal is a reasonable compromise that will change the way those names appear while preserving Lynx's ability to generically describe the types of services it can provide without violating the Stipulated Injunction.

The second difference, under idem (b), relates to the scope of the additional statement that Lynx offers to make regarding its prior "Customizations" not being for sale. Because Lynx is permitted to develop and sell new interfaces, reports and the like that it develops using commercially-available third-party software, Lynx's proposed statement is accurate and fully-compliant with the Stipulated Injunction. In contrast, MRI's proposed statement would specifically refer to "Customizations" as a term of art that is defined in the Stipulated Injunction. Because the general public does not have knowledge of the specific terms of the Stipulated Injunction, mandating use of the word "Customization" would only serve to confuse third parties without accurately communicating what Lynx is and is not allowed to do.

**MRI's Comments:** MRI submits that Lynx cannot undo the violations of paragraph 2(k) that have continuously occurred since November 9, 2012.  MRI respectfully continues to request that Lynx be held accountable for the foregoing violations of the Injunction Order, including by reimbursing MRI for its fees incurred in enforcing the Injunction Order.

Prospectively, MRI proposed to Lynx that it bring itself into compliance with paragraph 2(k) by:

    a)    removing all references to the product names appearing on Exhibit A to the Injunction Order;
    b)    adding a statement that makes clear that any Customizations Lynx created in the past are not for resale; and
    c)    sending to MRI a copy of Lynx's revised website and provide MRI 10 days to raise any reasonable objections before the website goes live.

Lynx rejected MRI's proposal, in favor of its own proposal above, which attempts to re-write paragraph 2(k) instead of meeting its requirements.  For example Lynx's proposal 1) does not require Lynx to stop referencing the products on Exhibit A to the Injunction Order as stipulated and required; and 2) does not require Lynx to stop advertising or offering for resale all

Customizations, i.e. modifications as defined in paragraph 2(c) of the Injunction Order (regardless of whether they are referred to as "Customizations" or not).

### III. Plaintiff Providing Actual Notice Of Signatories To Plaintiff's Master Agreements To Lynx.

**Lynx's Proposal:** Lynx proposes resolving the issue of MRI's failure to provide actual written notice of the alleged "Master Agreement Signatories" by amending section 6(a) of the Stipulated Protective Order, as follows:

> (a) **General Protections.** Documents designated CONFIDENTIAL under this Order shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in ¶ 6(b) for any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action, including any appeal thereof<u>, and to comply with an Order of the Court</u>.

**Lynx's Comments:** As set forth in its filings and at the October 29, 2013, hearing, Lynx maintains that MRI has not provided proper notice of the names of any alleged "Master Agreement Signatory" in the manner required by Section 3(b) of the Stipulated Injunction and that, as a result, there is no basis for the Court to find any violations of Sections 2(c) through 2(g). MRI's decision to designate each of its purported notices under the Stipulated Protective Order renders them ineffective because the Stipulated Protective Order precludes Lynx from using them for "any purpose whatsoever other than to prepare for and to conduct discovery and trial in this action, including an appeal thereof."

Contrary to what MRI says, Lynx's counsel making its position on this issue known during a call with MRI's counsel before MRI filed its contempt motion,[1] Since then, MRI has not taken any steps to cure its defective notices. Instead, MRI argues that its notices were effective despite having been designated under the Stipulated Protective Order because Section 8 of that Order allows Lynx's counsel to rely "generally" on designated materials to render "advice" to

---

[1] *See* Declaration of John McLandrich, Esq., filed as ECF # 68, at ¶ 7.

Lynx. However, the remainder of Section 8, which MRI does not quote, expressly forbids Lynx's counsel from doing what MRI suggests. In full, that Section provides:

> 8. **Outside Counsel's Advice.** Nothing in this Order shall prevent or otherwise restrict outside counsel from rendering advice to their clients and, in the course thereof, relying generally on examination of documents protected under this Order; <u>provided, however, that in rendering such advice and otherwise communicating with such clients, counsel shall not make specific disclosure of any item so designated except pursuant to the provisions of this Order</u>.

Telling Lynx whether MRI has designated a particular customer has been designated by MRI, as MRI suggests that Lynx's counsel could have done under the guise of providing "advice" to Lynx, would have required Lynx's counsel to make a "specific disclosure" of the identities of the customers that MRI designated under the Stipulated Protective Order. But that is expressly prohibited under Section 8 of the Stipulated Protective Order. Thus, acceptance of MRI's analysis would put Lynx and its counsel in a Catch-22, where compliance with the Stipulated Injunction would require violating the Stipulated Protective Order and compliance with the Stipulated Protective Order would require violating the Stipulated Injunction.[2] That is not what the parties intended when they negotiated and proposed those two orders to the Court.

The proposed change to Section 6(a) of the Stipulated Protective Order would resolve this heads-MRI-wins, tales-Lynx-loses situation in a fair and equitable manner. With the proposed change, Lynx would be expressly allowed to use notices marked by MRI as "Confidential" for purposes of complying with the Stipulated Injunction without risking a violation of the Stipulated Protective Order. At the same time, MRI would be protected from Lynx using MRI's notices for commercial purposes because they would be subject to the

---

[2] In addition to being inaccurate, that MRI would cite to the parties' Court-ordered discussion on this issue as "evidence" on the merits of its contempt motion (*see* MRI's footnote 4, below) is illustrative of why Lynx is legitimately concerned that MRI would not hesitate to pursue a contempt citation against both Lynx and its counsel for violation of the Stipulated Protective Order under these circumstances.

Stipulated Injunction by virtue of their "Confidential" designation. Finally, the parties' proposal would resolve the status of MRI's prior purported notices, with the notices designated as "Confidential" becoming prospectively effective upon entry of the proposed change to Section 6(a) of the Stipulated Protective Order and the notices designated as "Attorneys' Eyes Only" becoming prospectively effective upon their re-designation by MRI as "Confidential."

**MRI's Comments:** Lynx's proposal is a "solution" in search of a problem. Lynx has had actual notice of the Master Agreement Signatories.

While MRI has no objection to Lynx's suggested revision to the Protective Order, it is unnecessary; there is no conflict between the paragraph 3(b) of Injunction Order and paragraph 6(a) of the Protective Order (both of which, not incidentally, were negotiated and agreed upon after several rounds of negotiation by Lynx's attorneys). As explained in MRI's August 30, 2013 Memorandum, complying with the Court's orders in this action is manifestly subsumed within "prepar[ing] for and conduct[ing] discovery and trial in this action," and thus, there is no risk of Lynx being put in the "Catch 22" it invents. *See* Doc. #93, at p. 7. Further, the asserted "conflict" -- which Lynx never raised until *five months after* the Injunction Order was entered -- simply ignores Paragraph 8 of the Protective Order, which provides: "Nothing in this Order shall prevent or otherwise restrict outside counsel from rendering advice to their clients and, in the course thereof, relying generally on examination of documents protected under this Order . . ."

Moreover, the alleged "conflict" does not and cannot undo the fact that MRI provided notice of the Master Agreement Signatories to Lynx, and thus, that Lynx actually has had notice. Indeed, Lynx's attorney, Mr. McLandrich, has confirmed that **he did, in fact, provide to Lynx *at least* the list of Master Agreement Signatories dated October 22, 2012**[3] sometime shortly

---

[3] This list was submitted to the Court as Exhibit C to Document # 58 (Submitted Under Seal).

after receiving it (and expressed an inability to recall whether other lists were also, in fact, provided to Lynx).[4] Thus, there is simply no question that Lynx actually has had notice of *at least* the Master Agreement Signatories identified therein.[5] Additional facts of record demonstrating Lynx's actual notice (summarized on pages 5-7 of Document # 93, MRI's Response to Lynx's April 15, 2013 Declarations), include that Mr. McLandrich, accepted ***five*** lists of Master Agreement Signatories on Lynx's behalf before Lynx for the ***first*** time asserted (in opposing MRI's show cause motion) that his receipt of same did not constitute notice to his client.[6] In addition, the very definition of the term "Master Agreement Signatory" in paragraph 3(b) of the Injunction Order includes "any third party *who has been* or is hereafter identified in writing by MRI to Lynx . . .," acknowledging the fact Master Agreement Signatories had already been identified to Lynx (via its counsel) as of the date of the Injunction Order.

Regardless of any purported conflict between the Protective Order and the Injunction Order, Lynx has had actual notice of the Master Agreement Signatories.

### IV.  Lynx's Use of Webex and Direct Access of Clients' Data

**Lynx's Proposals:** In addition to the three issues the Court directed the parties to discuss, Lynx made two proposals to MRI during the parties' call on October 31, 2013, for resolving the issues relating to Lynx's use of Webex to view the screens of its clients' computers and its use of commercially-available third-party software tools to directly interface with its clients' data. Those proposals are as follows:

---

[4] Telephone conference of October 31, 2013 among John McLandrich, David Movius, Daniel McMullen and Georgia Yanchar.
[5] Though MRI identified, *inter alia,* Realty & Mortgage Co., Bluestone Properties, Build Toronto, Inc., and Edon Management as Master Agreement Signatories in the October 22, 2012 list, Lynx nevertheless continues to assert it had no such notice, arguing to that effect as recently as in its brief of last Friday, November 1, 2013.
[6] In response to Lynx's footnote 1, supra, MRI disagrees with paragraph 7 of Mr. McLandrich's April 15, 2013 Declaration, for the reasons explained in footnote 2 on page six of Doc. # 93.

*Webex:* To clarify and resolve the issues relating to Lynx's use of Webex, Lynx proposes amending Section 2(c) of the Stipulated Injunction to clarify it as follows:

> 2(c). accessing attempting to access or knowingly facilitating any access to any instance of the MRI Software residing on any Computer owned or controlled by any Master Agreement Signatory<u>, provided that "access" does not include viewing, without the ability to control, the on-screen display of an instance of the MRI Software</u>;

As Lynx set forth in its filings and at the October 29, 2013, hearing, merely viewing what is displayed on the screen of a person who MRI has licensed to use its software, without the ability to control that software, does not constitute "access" under Section 2(c) of the Stipulated Injunction. That is true regardless of whether that screen is viewed while standing over the shoulder of the operator or whether the screen is viewed remotely by, for example, using Webex. Thus, while this proposal will not change the scope of the Stipulated Injunction, it will conclusively dispose of this issue by clarifying that remotely viewing a client's duly-licensed use of the MRI Software—which is <u>not</u> prohibited under the confidentiality provisions of MRI's so-called "Master Agreement"— does not violate the Stipulated Injunction <u>unless</u> Lynx also has the ability to actually control the operation of that software. This proposal also will protect MRI by making it clear that actually taking control of a Master Agreement Signatory's instance of the MRI Software via Webex would constitute a violation of the Stipulated Protective Order.

*Data Interfacing:* To clarify and resolve the issues relating to Lynx directly accessing a client's data using commercially-available third-party software tools, Lynx proposes amending Section 3(a) of the Stipulated Injunction as follows:

> 3(a). The term "MRI Software" means all Computer software (including all object code, source code, database schema, stored procedures and metadata, documentation and related files and materials, embodied in any medium) created and or offered by MRI, exclusive of commercially-available third-party software <u>and any data stored therein</u>;

This minor change is consistent with the existing language of Section 3(a), the express exclusion in Section 3(c) that specifically <u>allows</u> Lynx to develop interfaces that directly access a client's data if the interface is "developed solely using third party software and do[es] not result in any modification of to any part of the MRI Software," and is consistent with established legal precedent, including the Seventh Circuit's opinion in *Assessment Technologies of WI, LLC v. Wiredata*, 350 F.3d 640 (7th Cir. 2003). Therefore, while this proposal will not change the scope of the Stipulated Injunction, it will dispose of this issue by clarifying that the definition of "MRI Software" in Section 3(a) must be read consistent with exclusion for interfaces and reports set forth in the definition of "Customization" set forth in Section 3(c). Otherwise, under MRI's interpretation, Section 2(c) of the Stipulated Injunction would vitiate the express permission granted in Section 3(c), as Lynx set forth on pages 10-11 of its Response filed as ECF # 112.

**MRI's Response:**

Webex

Lynx's proposed revision to paragraph 2(c) is no more than a thinly veiled attempt to re-write the Injunction Order (more narrowly) to accommodate Lynx's conduct over the course of the past year. Paragraph 2(c) prohibits "accessing, attempting to access or knowingly facilitating any access . . ." This language was carefully chosen, because attempting to access is a first step in accessing, and accessing is a first step in copying, as the law recognizes. MRI's agreements with over 1,000 Master Agreement Signatories prohibit unauthorized parties from accessing the MRI Software. Lynx's proposal is a boot-strap attempt to put itself in a better position than any other third party. Moreover, Lynx's proposal -- to rewrite the order to prohibit only "control" -- would put MRI's software at risk. Given the great ease with which control of a computer is

transferred during Webex sessions (a mere click of a mouse)[7], there is no way for MRI to monitor whether Lynx is controlling the user's on-screen display of an instance of the MRI Software during any given Webex session and thus, no practical way to protect MRI's rights. This is **_precisely_** why the Injunction Order was written to prohibit "access."

The undisputed evidence shows Lynx routinely accesses instances of the MRI Software installed on the Computers of Master Agreement Signatories using Webex, *inter alia,* and that by doing so, Lynx has enabled itself to carry on providing services to Master Agreement Signatories it could not provide without such access. This clearly violates both the letter and spirit of the Injunction Order. MRI respectfully continues to request Lynx be held accountable for its violations over the past year, and that prospectively, the Injunction Order be enforced as written, agreed upon and entered by the Court.

Data Interfacing

MRI likewise rejects Lynx's proposed revision to paragraph 3(a) as just another thinly veiled attempt to re-write the Injunction Order (more narrowly) to accommodate Lynx's conduct over the course of the past year. Contrary to Lynx's comments above, the revision Lynx proposes is *not* consistent with the existing language of Paragraph 3(a), and *would* change the scope of the Injunction Order. The exclusion from the definition of "Customization" in paragraph 3(c) does not "expressly allow" Lynx's conduct, as Lynx argues. Indeed, the word "Customization" does not appear in paragraph 2(c), which prohibits "accessing, attempting to access or knowingly facilitating any access to any instance of the MRI Software residing on any Computer owned or controlled by any Master Agreement Signatory. . ." Lynx's attempt to have the exception of paragraph 3(c) (as to the definition of "Customizations") swallow the rule of

---

[7] *See* Doc. 40-8 (pages from Webex Website); and 40-9, 2/5/13 Ghilani Declaration.

paragraph 2(c) (which prohibits "access") should be rejected. When MRI negotiated the Injunction Order, it purposefully included the word "database schema" in the definition of "MRI Software," because it did not want Lynx accessing (and thus capitalizing on) this important feature of its software. Yet, that is exactly what Lynx has done over the past year. The evidence that Lynx accesses at least the database schema of the MRI Software, as a first step in building the interfaces it advertises, is uncontested. MRI respectfully continues to request Lynx be held accountable for its violations over the past year, and that, prospectively, the Injunction Order be enforced as written, agreed upon and entered by the Court.

*s/Georgia K.E. Yanchar*
Daniel J. McMullen (0034380)
Georgia K.E. Yanchar (0071458)
Mark W. McDougall (Ohio Bar No. 0080698)
Calfee, Halter & Griswold LLP
1405 East Sixth Street
Cleveland, OH 44114
(216) 622-8233
(216) 241-0816 – Fax
Email: dmcmullen@calfee.com
 gyanchar@calfee.com

Counsel for Plaintiff

*s/John T. McLandrich*
JOHN T. MCLANDRICH (0021494)
TAMI Z. HANNON (0079812)
Mazanec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
(440) 248-7906
(440) 248-8861 – Fax
Email: jmclandrich@mrrlaw.com
 thannon@mrrlaw.com

*s/David T. Movius*
David T. Movius (0070132)
McDonald Hopkins, LLC
600 Superior Avenue, East, Ste 2100
Cleveland, OH 44114
(216) 348-5400
(216) 348-5474 – Fax
Email: dmovius@mcdonaldhopkins.com

Counsel for Defendant Lynx Systems, Inc.

## CERTIFICATE OF SERVICE

  I hereby certify that on November 5, 2013,  a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system.  Notice of this filing will be sent via email to opposing counsel.


                   */s/ Georgia E. Yanchar*
                   One of the Attorneys for Plaintiff