UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No. 1:12-cv-01082 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| Lynx Systems, Inc. et al., | ) | |
| | ) | |
| Defendant. | ) | |

**Reply Memorandum in
<u>Support of Donald Robinson's Motion to Dismiss</u>**

# **Table of Contents**

Table of Authorities .................................................................................................iii

Brief Statement of the Issues and Arguments Presented............................................ 1

Law and Argument ................................................................................................... 2

I.  MRI's Opposition Does Not Establish That the
    Court Has Personal Jurisdiction over Don Robinson............................................ 2

    A.  Don Robinson's Actions On Behalf
        of Lynx are Not Personally Attributable ....................................................... 3

    B.  MRI Cannot Satisfy Ohio's Long-Arm Statute.............................................. 7

        1.  Section (A)(1): Transacting Business in Ohio.......................................... 7

        2.  Section (A)(6): Causing Injury in Ohio by Act
            Committed with Purpose of Injuring Persons in Ohio.......................... 10

    C.  Asserting Personal Jurisdiction Over Don
        Robinson Would Not Comport With Due Process ......................................... 13

        1.  MRI Cannot Establish General Personal Jurisdiction ......................... 13

        2.  MRI Has Not Established Specific Personal Jurisdiction ................... 14

II. MRI's Opposition Brief Does Not Establish That it
    Has Stated a Claim Upon Which Relief Can be Granted ................................... 18

    A.  Don Robinson's Corporate Acts
        Cannot Subject Him to Personal Liability.................................................... 19

    B.  MRI's Opposition Further Demonstrates that its
        Contract, Copyright and Trademark Claims are Time-Barred.................. 20

    C.  MRI Has Not Stated A Claim Against
        Don Robinson for Breach of Contract ......................................................... 21

Conclusion.............................................................................................................. 22

Track and Page Limit Certification ......................................................................... 24

Certificate of Service.............................................................................................. 24

# Table of Authorities

## Cases

*Air Products and Controls, Inc. v. Safetech Intern., Inc.,*
503 F.3d 544 (6th Cir. 2007) ...................................................................... 15

*Asahi Metal Indus. Co. v. Superior Ct. of Solano Cty., Cal.,*
480 U.S. 102 (1987) ..................................................................................... 17

*Balance Dynamics Corp. v. Schmitt Indus., Inc.,*
204 F.3d 683 (6th Cir. 2000) ........................................................... 4, 12, 13

*Banyan Licensing, L.C. v. OrthoSupport Int'l, Inc.,*
296 F. Supp. 2d 885 (N.D. Ohio 2003) ....................................... 3, 4, 5, 9, 12, 19

*Brunner v. Hampton,*
441 F.3d 457 (6th Cir. 2006) ............................................................ 7, 10, 12

*Burger King Corp. v. Rudzewciz,*
471 U.S. 462 (1985) ..................................................................................... 12

*Burr v. Stark Cty. Bd. of Commrs.,*
23 Ohio St.3d 69 (1986) ............................................................................... 11

*Calder v. Jones,*
465 U.S. 783 (1984) ............................................................................... 15, 16

*Compuserve, Inc. v. Patterson,*
89 F.3d 1257 (6th Cir. 1996) ....................................................................... 7

*Conn v. Zakharov,*
667 F.3d 705 (6th Cir. 2012) ........................................................ 7, 10, 12, 13

*Creech v. Roberts,*
908 F.2d 75 (6th Cir. 1990) ......................................................................... 7

*Goldstein v. Christiansen,*
70 Ohio St. 3d 232 (1994) ...................................................................... 7, 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
131 S.Ct. 2846 (2001) .................................................................................. 14

*Intera Corp. v. Henderson,*
428 F.3d 605 (6th Cir. 2005) ....................................................................... 14

*Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.,*
2009 WL 2591757 (S.D. Ohio Aug. 19, 2009) ........................................... 11

*Kemper v. Saline Lectronics,*
   348 F. Supp. 2d 897 (N.D. Ohio 2004) ................................................... 4

*Kerry Steel, Inc. v. Paragon Indus., Inc.,*
   106 F.3d 147 (6th Cir. 1997) ................................................................ 17

*Leapers, Inc. v. First Quality Distributors, Inc.,*
   2012 WL 1714938 (E.D. Mich. May 15, 2012) .................................... 11

*McNutt v. General Motors,*
   298 U.S. 178 (1936) .............................................................................. 3

*Mentmore Mfg. Co. v. National Merchandise Mfg. Co.,*
   89 D.L.R. (3d) 195 (Fed. C. A. 1978) ................................................... 19

*Regan Roofing Co. v. Superior Court,*
   24 Cal.App.4th 425 (1994) ................................................................... 21

*Reynolds v. International Amateur Athletic Federation,*
   23 F.3d 1110 (6th Cir. 1994) ................................................................ 15

*Schneider v. Hardesty,*
   669 F.3d 693 (6th Cir. 2012) ................................................................ 11

*ScotiaMcLeod Inc. v. Peoples Jewelers Ltd.,*
   25 O.R.3d 481 (C.A. 1995) ............................................................... 5, 19

*Scotts Co. v. Aventis S.A.,*
   145 Fed. Appx. 109 (6th Cir. 2005) ..................................................... 15

*Theunissen v. Matthews,*
   935 F.3d 1454 (6th Cir. 1991) ............................................................... 3

*Tri-Continent Int'l Corp. v. Paris Savings & Loan Ass'n,*
   12 Cal.App.4th 1354 (1993) ................................................................. 22

## **Statutes**

M.C.L. § 600.705 .......................................................................................... 12

Ohio Rev. Code § 2307.382(A)(1) ................................................... 7, 8, 10, 13

Ohio Rev. Code § 2307.382(A)(6) ................................................... 11, 12, 13

Ohio Rev. Code § 2307.382(C) ....................................................................... 9

## Brief Statement of the Issues and Arguments Presented

Don Robinson has moved the Court to dismiss MRI Software, LLC's claims against him because the Court does not have personal jurisdiction over him and because MRI's claims fail to state a claim against him upon which relief can be granted.[1] In response, MRI tries to avoid dismissal by repeatedly mischaracterizes applicable precedent and controlling legal standards for establishing personal jurisdiction over a non-resident defendant. Examples include:

- Attributing Lynx's corporate contacts with Ohio to Don Robinson as an individual when personal jurisdiction must be found, if at all, based on contacts that Don Robinson himself has had with Ohio.

- Attempting to distinguish the highly-relevant *Banyan Licensing* opinion by misstating the factual record on which that case was decided and glossing over the significantly greater protection that Canadian law affords officers and directors of Canadian companies.

- Incorrectly claiming that Ohio's long-arm statute extends to the full extent of the Due Process Clause and, relatedly, that Ohio's long-arm statute allows the Court to exercise general personal jurisdiction when both the Ohio Supreme Court and the Sixth Circuit have held that it is not so.

- Attempting to stretch the "transacting business" clause of Ohio's long-arm statute beyond its actual terms to apply to business transacted <u>outside</u> of Ohio.

- Ignoring Section (C) of Ohio's long-arm statute, which limits MRI to asserting only claims that arise from the acts specifically enumerated in that section.

---

[1] In submitting this reply brief, Don Robinson and his undersigned counsel make a special appearance for the limited purpose of objecting to personal jurisdiction and supporting his motion to dismiss MRI's claims against him on that ground and on additional Rule 12(b)(6) grounds, which may be joined under Federal Rule of Civil Procedure 12(g)(1). This special appearance is not intended to be, and shall not be construed as, a general appearance or a waiver of any of Don Robinson's defenses, including, but not limited to, lack of capacity to be sued or lack of personal jurisdiction.

- Claiming that personal jurisdiction exists under a section of Ohio's long-arm statute—Section (A)(6)—that it did not identify, much less plead facts to support, in its Amended Complaint.

MRI's arguments in opposition to Don Robinson's motion to dismiss for failure to state a claim fare no better, because MRI's own allegations in its Amended Complaint preclude it from establishing personal liability under controlling Canadian law, its contract, copyright and trademark claims are time-barred based on the one-year limit in Section 10.7 of the 2002 Agreement, and MRI cannot maintain a claim for breach of contract against Don Robinson when he is not a party to the contract at issue.

For at least these reasons, as discussed below in more detail, MRI's arguments do not establish that the Court has personal jurisdiction over Don Robinson as an individual and that it has stated a claim against him upon which relief can be granted. The Court therefore should grant Don Robinson's motion and dismiss each of MRI's claims against him.

## <u>Law and Argument</u>

In addition to the reasons set forth in his opening brief, the Court should dismiss MRI's complaint against Don Robinson because MRI's opposition does not establish that the Court has person jurisdiction over Don Robinson and that it has stated a claim against Don Robinson upon which relief can be granted.

## I.    **MRI's Opposition Does Not Establish That the <u>Court Has Personal Jurisdiction over Don Robinson</u>**

As the party seeking to hail a foreign defendant into a distant forum, MRI bears the burden of pleading facts sufficient to demonstrate personal jurisdiction:

"He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing." *McNutt v. General Motors*, 298 U.S. 178, 189 (1936). To meet that burden, MRI "may not stand on its pleadings but must, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction." *Theunissen v. Matthews,* 935 F.3d 1454, 1458 (6th Cir. 1991). The Court should dismiss MRI's complaint against Don Robinson because MRI has neither pled facts nor come forward with evidence in its opposition brief sufficient to establish that the Court has personal jurisdiction over him.

### A.  Don Robinson's Actions On Behalf of Lynx are Not Personally Attributable

The key issue before the Court is whether MRI can invoke the Court's jurisdiction to compel Don Robinson, a Canadian citizen and resident of Toronto, to personally enter the United States and appear in Ohio to face potential personal liability under United States law for acts he allegedly committed outside of Ohio[2] as an employee, officer and director of a Canadian corporation when he otherwise would not be personally liability under Canadian law. Under the analysis explicated in *Banyan Licensing, L.C. v. OrthoSupport Int'l, Inc.,* 296 F. Supp. 2d 885 (N.D. Ohio 2003), the answer to that is "no."

Not surprisingly, MRI wants the Court to assume that all of Don Robinson's conduct—both individually and on behalf of Lynx and without regard to geography—is personally attributable to him. In the Sixth Circuit, however, that cannot be assumed because "jurisdiction over the individual officers of a corporation

---

[2] As discussed below, MRI's claims arise out of Don Robinson's alleged acts as an officer and director of Lynx that occurred outside of Ohio, not his minor personal contacts with Ohio.

cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683, 689 (6th Cir. 2000). Determining whether personal jurisdiction exists therefore requires the Court to focus on Don Robinson's limited contacts with Ohio, as opposed to Lynx's contacts or his actions on Lynx's behalf outside of Ohio. *See Kemper v. Saline Lectronics,* 348 F. Supp. 2d 897, 902 (N.D. Ohio 2004) (broad, collective allegations to "Defendants" insufficient to establish personal jurisdiction over an individual defendant).

As Lynx set forth in its opening brief, the facts of this case are remarkably similar to those in *Banyan,* where the court held that it did not have personal jurisdiction over the president of the Canadian corporate defendant. *See Banyan,* 296 F. Supp. 2d at 890. MRI tries to distinguish *Banyan* to avoid a similar result in this case by arguing that the claims in *Banyan* were significantly more narrow than its claims against Don Robinson in this case. Initially, MRI offers the following highly-qualified characterization of *Banyan*:

> From the opinion, it appears the plaintiff did not assert contributory or inducement of infringement against Frydman under the United States Patent Act (35 U.S.C. § 271 (c)), and instead relied *solely on a theory of alter ego liability*.

(MRI Br. at 17; italics in original.) It then drops its "from the opinion" and "it appears" qualifiers and reiterates its characterization of the claims at issue in *Banyan* as unequivocal fact, stating:

> Moreover, in *Banyan*, the plaintiff's claims against Frydman depended *solely on a theory of alter ego liability*.

(*Id.*; italics in original.) The problem? The plaintiff's claims in *Banyan* did <u>not</u> depend solely on a theory of alter ego liability. In addition to pleading alter ego

liability, the plaintiff in *Banyan* <u>also</u> alleged that Dr. Frydman himself "committed tortious acts of patent infringement causing injury to Plaintiff Banyan by violating Banyan's exclusive patent rights" and that "Defendant Frydman's infringement of the '771 patent was willful." (Banyan's Second Amended Complaint, submitted as Exh. A, at ¶¶ 12, 57.) Thus, exactly as MRI is doing in this case, the plaintiff in *Banyan* asserted both direct infringement by the individual defendant and alter ego liability based on his actions in connection with his Canadian company. The facts in *Banyan* thus are on "all fours" with the facts of this case.[3]

The question of whether Canadian law applies on this issue is crucial because Canada affords officers and directors significantly more protection than Ohio. As Judge Carr explained in *Banyan,* an officer of a Canadian corporation will not have personal infringement liability "unless ... the officer established a separate identity or interest from that of the corporation." *Banyan,* 296 F. Supp. 2d at 890 (citing *ScotiaMcLeod Inc. v. Peoples Jewelers Ltd.,* 25 O.R.3d 481 at ¶ 25 (C.A. 1995)). Under that heightened standard, Don Robinson cannot be held personally liable because MRI admits that Don Robinson did <u>not</u> establish a separate identity or interest from Lynx. Specifically, MRI pleads as follows:

> [E]ach Defendant was the agent, servant, employee, partner and/or joint venture of each of the other Defendants; <u>the acts of each Defendant were within the scope of such agency, service, employment, partnership or joint venture</u>; in committing the acts and omissions

---

[3] MRI also implies that the Court already decided this issue in its favor, calling Don Robinson's position "essentially a rehash of the argument Lynx raised in unsuccessfully opposing MRI's Motion for Leave to File an Amended Complaint." (MRI Br. at fn. 2.) The Court, however, merely reserved this issue for later, stating: "these issues are more appropriately addressed in dispositive motions since the Court is unable to say at this juncture that Plaintiff's proposed amendments are futile." (Order, ECF # 88, at 6.)

> alleged herein, each Defendant acted with knowledge, permission and/or consent of every other Defendant; and each Defendant aided, abetted, and/or conspired with the other Defendants in the acts and omissions alleged herein.

(Am. Compl. ¶13; emphasis added.) Based on these allegations, which are binding on MRI as a judicial admissions, there can be no dispute that Don Robinson did <u>not</u> establish a separate identity or interest from that of Lynx with respect to "the acts" identified in MRI's Amended Complaint. Don Robinson's actions as an officer and director of Lynx under Canadian law therefore are not personally actionable and MRI must rely solely on his actions as an individual to establish personal jurisdiction, if at all.

Finally, MRI does not credibly dispute Lynx's demonstration in its opening brief that Canadian law governs Don Robinson's potential for personal liability as an officer and director of Lynx under the Restatement (Second) of Conflict of Laws. Instead of addressing the four Restatement factors necessary to determine which jurisdiction has the "most significant relationship to the occurrence and the parties," MRI casually dismisses that question with a reference to its reply brief in support of its motion for leave to amend. (MRI Br. at 19.) That brief, however, does not squarely address any of the four essential Restatement factors, and nearly all of MRI's argument is directed to the alleged actions of Lynx as a company. (MRI Reply, ECF # 83, at 7-8.) The Court therefore should apply Canadian law such that MRI cannot rely on Don Robinson's actions as an officer, director and employee of Lynx to establish personal jurisdiction over him.

**B.**  **MRI Cannot Satisfy Ohio's Long-Arm Statute**

MRI's response significantly narrows the scope of the long-arm inquiry to just Sections (A)(1) and (A)(6) of Ohio's long-arm statute. The Court should order dismissal of MRI's claims against Don Robinson because MRI misstates the applicable law, completely ignores Section (C) of the long-arm statute, and otherwise fails to demonstrate that Don Robinson's alleged personal actions satisfy Section (A)(1) or (A)(6) of Ohio's long-arm statute.

**1.**  **Section (A)(1): Transacting Business in Ohio**

MRI first asserts argues that Don Robinson's alleged actions fall within Section (A)(1) of Ohio's long-arm statute, which applies when a person transacts business in Ohio. *See* Ohio Rev. Code § 2307.382(A)(1).

Citing *Compuserve, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), MRI claims that Section (A)(6) "extends to the federal constitutional limits of due process." (MRI Br. at 9.) That is incorrect, and *Compuserve* is no longer good law on that point. As the Ohio Supreme Court made clear in *Goldstein v. Christiansen,* 70 Ohio St. 3d 232 (1994), Ohio's long-arm statute does <u>not</u> extend to the limits of the Due Process Clause. *See id.* at fn. 1. The Sixth Circuit accordingly has overruled the opinion on which *Compuserve* was based—*Creech v. Roberts*, 908 F.2d 75 (6th Cir. 1990)—as contrary to *Goldstein. See Brunner v. Hampton,* 441 F.3d 457, 465 (6th Cir. 2006). It thus is beyond dispute that "Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause." *Conn v. Zakharov,* 667 F.3d 705, 712 (6th Cir. 2012).

MRI then tries to leverage its incorrect due process contention to stretch Section (A)(1) so that it is satisfied if a person has "purposefully directed business activities at the State of Ohio." (MRI Br. at 9.) Purposeful direction, however, relates to due process, not Section (A)(1), which by its terms covers only "transacting … business in this state." Ohio Rev. Code § 2307.382(A)(1) (emphasis added). That distinction is important because MRI cites just two alleged acts by Don Robinson that actually occurred within the boundaries of Ohio:

- travelling to the Cleveland area to meet with Lynx employees, and

- travelling to Cleveland to discuss a potential new agreement between Lynx and MRI that never came into existence and therefore is not at issue in this case.

(MRI Br. at 10.) Accordingly, those are the only relevant contacts for determining whether Don Robinson himself has transacted business in Ohio.

All of the other alleged acts that MRI identifies in the bullet points on page 10 of its opposition brief occurred in or emanated from Canada, where Don Robinson was acting as an officer and director of Lynx:

| Alleged Conduct | Evidence[4] |
|---|---|
| Personally negotiating both the 2000 and 2002 Agreements between MRI and Lynx | MRI executed the agreements and then mailed them to Don Robinson in Canada. (*See* MRI Exh. B, Am. Compl. Ex. 4.) Don Robinson is not a party to those agreements, which he signed as an officer of Lynx. (MRI Br. at 2.) |
| Serving as Lynx's single point of contact with MRI throughout the course of the parties' relationship | All cited correspondence was sent to or received by Don Robinson in Canada in his capacity as an employee, officer and director of Lynx. (*See* MRI Exhs. B-D, J-L.) |

---

[4] MRI only cites generally to its Statement of Facts and its exhibits to support its bullet-point list and a number of the exhibit references in its Statement of Fact do not identify the correct documents. Lynx thus has endeavored to reference the actual exhibit at issue to the greatest extent possible.

8

| Alleged Conduct | Evidence[4] |
|---|---|
| Overseeing all aspects of Lynx's performance of its obligations to MRI | Don Robinson's oversight was on Lynx's behalf, and he did so in Canada; no evidence in record that he did so while in Ohio. (*See* Exh. C, E, J.) |
| Engaging in countless telephone conversations and emails with MRI regarding their business arrangements | All referenced written and telephonic communications were by Don Robinson in Canada in his capacity as an employee, officer and director of Lynx. (*See* MRI Exhs. E, G, J-K.) |
| Participating in joint sales opportunities with MRI | Lynx, not Don Robinson, participated in joint sales opportunities with MRI; Don Robinson's involvement was on Lynx's behalf and did not occur in Ohio. (*See* MRI Exh. J.) |
| Committing to an ongoing relationship with MRI | Lynx, not Don Robinson, had an ongoing relationship with MRI; Don Robinson's involvement was on Lynx's behalf and originated out of Canada. (*See* MRI Exh. B, Am. Compl. Ex.  4.) |
| Initiating numerous contacts with MRI in efforts to enhance Lynx's relationship with MRI | Contacts were between Lynx and MRI, not Don Robinson and MRI; Don Robinson's involvement was on Lynx's behalf and originated out of Canada. (*See* MRI Exhs. D, G, K-L.) |
| Overseeing Lynx's provision of support, Customizations and other services to clients who are located in Ohio | Don Robinson oversaw Lynx's services as an employee, officer and director, and his oversight originated out of Canada. (*See* MRI Exh. G.) No evidence that any Lynx employee in Ohio committed any injurious act. |

Because all of these alleged acts by Don Robinson occurred in or emanated from Canada while he was acting as an officer and director of Lynx, they are not personally attributable to him and do not otherwise qualify as evidence that he personally has transacted business in Ohio. *See Banyan,* 296 F. Supp. 2d at 890-92.

Finally, the two alleged acts by Don Robinson in Ohio are neither significant nor sufficient because MRI's claims do not arise from those acts. Under Section (C) of Ohio's long-arm statute, "only a cause of action arising from acts enumerated in this section may be asserted against" the person who committed those acts. Ohio Rev. Code § 2307.382(C). While Lynx raised this requirement in its opening brief,

MRI did not cite to or address it in its opposition. Instead, MRI only tangentially references this concept in connection with its due process analysis, arguing that Don Robinson "would not have had access to the MRI Software, or MRI's clients, and thus had the capability to commit his tortious acts, but for his 14 year relationship with MRI." (MRI Br. at 16; emphasis added.) However, because Ohio's long-arm statute does not extend to the limits of due process, a "but for" relationship is not enough. *See Brunner,* 441 F.3d at 465-66. Instead, Ohio's long-arm statute "requires a 'proximate cause' relationship" between a claimed injury and a defendant's conduct in Ohio. *Id.* at 466. MRI therefore cannot satisfy Section (A)(1) because it has not established a "proximate cause" relationship between Don Robinson's alleged Ohio contacts at its claims against him. *See id.* at 467-468 (affirming dismissal where "but for" relationship between conduct and cause of action); *Conn,* 667 F.3d at 713 (no personal jurisdiction where claims not related to contacts with Ohio).

## 2. Section (A)(6): Causing Injury in Ohio by Act Committed with Purpose of Injuring Persons in Ohio

MRI also assets that personal jurisdiction is proper under Section (A)(6) of Ohio's long-arm statute. MRI, however, did not plead personal jurisdiction under that section (*see* Am. Compl. ¶ 26), so it cannot avoid dismissal by raising it for the first time in its opposition brief. *See* Fed. R. Civ P. 8(a)(1) (compliant must state grounds for court's jurisdiction). But even if it had, it still could not satisfy Section (A)(6) of Ohio's long-arm statute.

Unlike Section (A)(1), Section (A)(6) of Ohio's long-arm statute allows personal jurisdiction based on conduct occurring outside of Ohio, but only if the defendant acted "with the intent of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6). While MRI argues that Don Robinson engaged in certain out-of-state conduct "knowing such acts would cause MRI injury in Ohio," it has not pled or presented evidence that he did so "with the intent" of causing such injury. Instead, MRI tries to slip a solitary and unsupported "intent" allegation into the second bullet point on page 11 of its brief. That single, unsupported snippet of attorney argument is not sufficient to avoid to satisfy the intent element of Section (A)(6). MRI therefore cannot establish, and it has not established, that Don Robinson committed any jurisdictional act "with the purpose of injuring persons."

None of the cases MRI cites in support of its Section (A)(6) arguments change the analysis or the conclusion. In both *Schneider v. Hardesty,* 669 F.3d 693 (6th Cir. 2012), and *Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.,* 2009 WL 2591757 (S.D. Ohio Aug. 19, 2009), intent to injure was not at issue because the plaintiffs in both cases alleged fraud, which requires a particularized pleading of intent. *See Burr v. Stark Cty. Bd. of Commrs.,* 23 Ohio St.3d 69 at syl. ¶ 2 (1986) (fraud requires knowingly false statements made "with the intent of misleading another into relying upon it"). MRI has not alleged that Don Robinson engaged in any fraudulent activity, so those cases do not apply. The un-published opinion in *Leapers, Inc. v. First Quality Distributors, Inc.,* 2012 WL 1714938 (E.D. Mich. May

15, 2012), likewise does not apply because it addressed Michigan's long-arm statute, which does not require intent. *See Leapers,* 2012 WL 1714938, at *4 (citing M.C.L. § 600.705). Finally, the Supreme Court's opinion in *Burger King Corp. v. Rudzewciz,* 471 U.S. 462 (1985), addressed whether the exercise of personal jurisdiction by a Florida district court comported with the Due Process Clause, not Ohio's long-arm statute, which (again) does not extend to the limits of due process. *See Goldstein,* 70 Ohio St. at 238 fn.1; *Brunner,* 441 F.3d at 465; *Conn,* 667 F.3d at 712.

Finally, MRI cannot satisfy Section (A)(6) because Don Robinson's allegedly-actionable conduct occurred in Canada and was within the scope of his role as an employee, officer and director of Lynx. MRI only claims that Don Robinson "actively participated" in the alleged acts identified on page 11 and 12 of its brief, not that he himself actually engaged in that conduct. That is not sufficient for the Court to find personal jurisdiction because MRI must show that Don Robinson both "actively <u>and personally</u>" engaged in actual conduct that gives rise to personal jurisdiction over him. *Balance Dynamics,* 204 F.3d at 698 (emphasis added). Moreover, because his allegedly-actionable conduct occurred in Canada, it is not personally attributable to Don Robinson since he was acting within the scope of his duties as an officer and director of Lynx.[5] *See Banyan,* 296 F. Supp. 2d at 890-92. Dismissal therefore is warranted because MRI has not shown that personal jurisdiction exists under Section (A)(6) of Ohio's long-arm statute.

---

[5] While MRI claim that Don Robinson personally trespassed and stole confidential information at the 2011 MRI International Users Group Conference in Las Vegas, Nevada, that does not support personal jurisdiction because MRI's misappropriation and trespass claims do not arise out of those alleged acts. *See* Ohio Rev. Code § 2307.382(C).

*                   *                   *

For the foregoing reasons, MRI has failed to plead facts or come forward with evidence that satisfies either Section (A)(1) or Section (A)(6) of Ohio's long-arm statute—the only two sections at issue—and the Court should dismiss MRI's claims against Don Robinson due to the absence of personal jurisdiction over him.

## C. Asserting Personal Jurisdiction Over Don Robinson Would Not Comport With Due Process

The Court also should grant Don Robinson's motion and dismiss MRI's claims against him for the independently-sufficient reason that MRI has failed to plead facts and come forward with evidence demonstrating that exercising personal jurisdiction over Don Robinson would comport with the Due Process Clause.

### 1. MRI Cannot Establish General Personal Jurisdiction

MRI first argues that general personal jurisdiction exists over Don Robinson. In so arguing, however, MRI ignores the Sixth Circuit's statement that "it is clear that under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Conn,* 667 F.3d at 718 (emphasis added). But even if Ohio recognized general personal jurisdiction, MRI's argument that general jurisdiction exists over Don Robinson because Lynx generated business that it would not otherwise have had by virtue of its relationship with MRI would.[6] Again, MRI cannot rely on Lynx's contacts with Ohio to establish personal jurisdiction over

---

[6] Don Robinson's use of the singular pronoun in the testimony MRI cites is of no moment because the quotations cited by MRI are from his deposition testimony as a Rule 30(b)(6) designee of Lynx, not as an individual

Don Robinson personally. *See Balance Dynamics,* 204 F.3d at 689. MRI therefore could not establish that Don Robinson <u>himself</u> was "essentially at home" in Ohio. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2001). MRI therefore could not establish general jurisdiction over Don Robinson if Ohio's long-arm statute allowed the exercise of general personal jurisdiction.

2.    <u>MRI Has Not Established Specific Personal Jurisdiction</u>

MRI also has not pled or come forward with facts establishing each of the three factors necessary for specific personal jurisdiction.

*The "Purposeful Availment" Prong*

With respect to the purposeful availment factor, MRI continues its improper conflation of Don Robinson and Lynx. For example, MRI asserts that Don Robinson has had a "20 year relationship with MRI." (MRI Br. at 13.) That "relationship," however, was between MRI and <u>Lynx</u>, not MRI and Don Robinson, so it does not qualify as a "contact" for establishing personal jurisdiction over Don Robinson. MRI also claims that Don Robinson negotiated and executed contracts in Ohio, but Don Robinson is <u>not</u> a party to any agreement with MRI, and there is no evidence that Don Robinson was in Ohio when he negotiated the 2002 Agreement on Lynx's behalf. *See Intera Corp. v. Henderson,* 428 F.3d 605, 617 (6th Cir. 2005) (license agreement not evidence of purposeful availment by person who signed but is not a party to agreement). Finally, when Don Robinson reached out to David Post, MRI's CEO, he did so from Canada as an officer and director of Lynx. MRI's arguments therefore address <u>only</u> Lynx's contacts with Ohio, not Don Robinson's.

MRI nonetheless asserts that Don Robinson personally availed himself of the privilege of conducting activities under the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). As the Sixth Circuit has held, however, the *Calder* "effects test" has been narrowed "such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Products and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 544, 552 (6th Cir. 2007). Establishing purposeful availment under *Calder* thus requires something more, like "expressly aim[ing]" tortious conduct at the forum state. *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 113 n. 1 (6th Cir. 2005). Purposeful availment therefore will not exist where the allegedly-tortious conduct was aimed at another jurisdiction merely because it ultimately causes an effect in Ohio. *See Reynolds v. International Amateur Athletic Federation,* 23 F.3d 1110, 1119-20 (6th Cir. 1994) (no purposeful availment where foreign tortious conduct cause harm in Ohio but was not directed at Ohio).

While MRI alleges that Don Robinson engaged in tortious conduct knowing that MRI is based in Ohio and that his alleged conduct could cause harm in Ohio, there is nothing in the record that could support a conclusion that Don Robinson expressly aimed his own personal conduct at an Ohio target. On the contrary, MRI alleges that Don Robinson engaged in tortious conduct by providing services to clients across many and varied jurisdictions, both inside and outside of the United States. Nor has MRI alleged that Don Robinson engaged in tortious conduct while he personally was in Ohio. Thus, unlike in *Calder*, where the Supreme Court found

purposeful availment because the defendants expressly aimed their libelous articles at a California resident, Don Robinson's alleged conduct is akin to "mere untargeted negligence" that the Supreme Court explained does not constitute purposeful availment. *See Calder,* 465 U.S. at 789.

<u>*The "Arises From" Prong*</u>

MRI's arguments that its causes of action arise from Don Robinson's activities in Ohio also conflate the actions of Lynx as a Canadian corporation and Don Robinson as an individual. MRI does not allege that its claims arise directly out of Don Robinson visiting employees in Ohio or meeting with MRI regarding an agreement that was never came into existence. Instead, a distant "but for" proposition is the best MRI can muster to relate Don Robinson's alleged actions to Ohio. The actual "but for" chain, however, is much more tenuous than MRI suggests, because Lynx is the only common link in that chain between Don Robinson and MRI's presence in this state. To wit:

1. Don Robinson could not have caused tortious injury in Ohio <u>but for</u> having access to the MRI Software, <u>and</u>

2. Don Robinson would have had access to that software <u>but for</u> his relationship with Lynx, <u>and</u>

3. Lynx itself would not have access to the MRI Software <u>but for</u> the contractual arrangement between MRI and Lynx.

Moreover, the relationship between MRI and Lynx was "centered" equally in both Toronto and Ohio. That is simply too attenuated to conclude that MRI's causes of action against Don Robinson "arise from" his out-of-state actions due to his many-times-removed relationship with Ohio-based MRI. *See Kerry Steel, Inc. v. Paragon*

*Indus., Inc.,* 106 F.3d 147, 151 (6th Cir. 1997) ("arising from" requirement not met where breach occurred outside of forum state).

<u>*The "Reasonableness" Prong*</u>

Finally, MRI's arguments that it would be reasonable to exercise personal jurisdiction over Don Robinson miss the mark. It would appear that MRI knows this, as it primarily argues that the Court should infer reasonableness based on the first two prongs. While no such inference exists because MRI has not satisfied the first two prongs, this case is one where the particular circumstances overcome any inference of reasonableness.

The reasonableness of exercising personal jurisdiction over a non-resident defendant depends on "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Ct. of Solano Cty., Cal.,* 480 U.S. 102, 113 (1987). All three factors weigh against exercising personal jurisdiction over Don Robinson.

The Supreme Court has held that the burden of mounting a defense in a foreign legal system is "unique" and should be afforded "significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 480 U.S. at 114. That is particularly true here, as MRI is trying to haul Don Robinson from Canada into Ohio, strip him of the protections afforded by Canadian law, and force him to defend his and his family's modest assets against liability that would not exist under Canadian law. On the other hand, Ohio does not have a compelling interest in having the Court exercise

jurisdiction over Don Robinson. While MRI is located in Ohio, the most recent MRI-Lynx agreement is governed by California law and the initial purpose of that agreement was for Lynx to develop the Canadian market. Moreover, MRI already has invoked the Court's personal jurisdiction against Lynx, which will protect any interest that Ohio might have, and MRI has not identified any legitimate reason why it could not obtain a complete judgment against Lynx. That MRI could pursue its claims in a Canadian court further weighs against exercising jurisdiction, especially since MRI would need to do so to execute on any judgment in Canada that it might get if the Court were to exercise personal jurisdiction over Don Robinson. Exercising personal jurisdiction over Don Robinson as an individual therefore would not be reasonable.

*      *      *

For these reasons, MRI has failed to establish that exercising personal jurisdiction over Don Robinson would comport with the Due Process Clause and the Court should dismiss MRI's claims against Don Robinson.

## II.    MRI's Opposition Brief Does Not Establish That it has Stated a Claim Upon Which Relief Can be Granted

In addition to not establishing that the Court has personal jurisdiction over Don Robinson, MRI's opposition brief also fails to demonstrate that it has stated a claim against Don Robinson upon which relief can be granted. MRI's complaint against Don Robinson therefore should be dismissed for this additional, independently-sufficient reason.

### A.    Don Robinson's Corporate Acts
### Cannot Subject Him to Personal Liability

Besides taking issue with the length of Don Robinson's argument on this issue and repeating its erroneous characterization of *Banyan* as being based solely on alter ego liability, MRI argues that personal liability can attach to Don Robinson because his opening brief "plainly mischaracterizes" the decision in *Mentmore Mfg. Co. v. National Merchandise Mfg. Co.,* 89 D.L.R. (3d) 195 (Fed. C. A. 1978). That argument is nothing more than a straw-man born of MRI's own mischaracterizations of the controlling law and its failure to acknowledge the *ScotiaMcLeod* opinion cited in *Banyan* and Don Robinson's opening brief.

As Don Robinson accurately quoted and characterized in his opening brief, the court *Mentmore* held that a claim that a corporate officer "expressly directed, ordered, authorized, aided and abetted" the company's infringement and "participated therein and was a party thereto" was not enough to give rise to personal liability for that infringement. *Mentmore*, 89 D.L.R. (3d) at 199, 202. Instead, the *Mentmore* court distinguished Canadian law from U.S. law on this issue and explained that, under Canadian law:

> there must be circumstances from which it is reasonable to conclude that the purpose of the director or officer was not the direction of the manufacturing and selling activity of the company in the ordinary course of his relationship to it but the deliberate, wilful and knowing pursuit of a course of conduct that was likely to constitute infringement or reflected an indifference to the risk of it.

*Id.* at 204-05. Thus, under Canadian law, personal liability will not attach to a corporate officer "unless … the officer established a separate identity or interest

from that of the company." *ScotiaMcLeod Inc. v. Peoples Jewelers Ltd.,* 25 O.R.3d 481 at ¶ 25 (Fed. C.A. 1995) (cited in *Banyan,* 296 F. Supp. 2d at 890).

While MRI's Amended Complaint pleads generally that Don Robinson participated in and contributed to Lynx's alleged acts of infringement, it does not plead that he "established a separate identity or interest from that of" Lynx. On the contrary, MRI pleads—and therefore has judicially admitted for all purposes in this case—that Don Robinson's actions were, at all times relevant to its Amended Complaint, within the scope of his duties to Lynx. (Am. Compl. ¶ 13.) Therefore, the only reasonable conclusion based on MRI's own pleading is that Don Robinson's purpose was directing the activities of Lynx in the ordinary course of his relationship with it. Personal liability accordingly cannot attach to Don Robinson and MRI has failed to state a claim upon which relief can be granted.

**B.     MRI's Opposition Further Demonstrates that its
        <u>Contract, Copyright and Trademark Claims are Time-Barred</u>**

As MRI's contract copyright and trademark claims against Don Robinson are derivative of its parallel claims against Lynx, its derivative claims against him are time barred for the same reasons that Lynx set forth in its briefing in support of its motion to dismiss on that basis. (*See* ECF # 97, 114, 123.)

Additionally, Don Robinson notes that the copy of the 2000 Agreement between Lynx and MRI that MRI attached as Exhibit B to its opposition brief contradicts MRI's argument that Section 10.7 of the 2002 Agreement is ambiguous. Section 15.10 of the 2000 Agreement includes a one-year time limit for the parties to assert claims arising out of the transactions under that agreement, as follows:

> 15.10 No action, regardless of form, arising out of the transactions under this Agreement may be brought by Service Provider against MRI or by MRI against Service Provider more than one (1) year after Service Provider or MRI knew or should have known of the occurrence of the event(s) giving rise to the cause of action.

(2000 Agreement, ECF # 125 Exh. B, at § 15.10 (all capitals in original).) The language of this Section 15.10 is nearly identical to the language of Section 10.7 of the 2002 Agreement, the lone exception being the addition of the words "or MRI" in the "knew or should have known" clause. That single difference is not significant because, as was written, the disjunctive "or" in Section 15.10 means that, like under Section 10.7 of the 2002 Agreement, MRI had to bring any claim under the 2000 Agreement within one year of when "Service Provider" (*i.e.,* Lynx) "knew or should have known of the occurrence of the event(s) giving rise to the cause of action."

The 2000 Agreement between MRI and Lynx thus is evidence that MRI and Lynx knew exactly what they were doing when they included a similar provision in the 2002 Agreement. MRI's ambiguity argument accordingly fails for this additional reason and MRI's contract, copyright and trademark claims against Don Robinson (and Lynx) should be dismissed as being time-barred.

### C. MRI Has Not Stated A Claim Against Don Robinson for Breach of Contract

Finally, MRI's allegation that Don Robinson directs and conducts the activities of Lynx is not sufficient to state a claim against him for breach of that contract. Under controlling California law, a claim for breach of contract requires (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. *See Regan Roofing Co. v.*

*Superior Court*, 24 Cal.App.4th 425, 434–435 (1994). Here, Don Robinson is not a party to the 2002 Agreement because, as MRI readily admits, Don Robinson "signed the agreement in his capacity as "President."" (MRI Br. at 2.) MRI therefore has not plead the existence of a contract between MRI and Don Robinson or that Don Robinson breached any such contract. MRI's breach of contract claim therefore does not state a claim against Don Robinson upon which relief can be granted and that claim should be dismissed. *See Tri-Continent Int'l Corp. v. Paris Savings & Loan Ass'n,* 12 Cal.App.4th 1354, 1359 (1993) (plaintiff cannot assert claim for breach of contract against someone who is not a party to that contract).

## <u>Conclusion</u>

For the foregoing reasons and those previously stated, the Court should grant Don Robinson's motion and dismiss MRI's claims against him under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) because MRI has failed to state a plausible claim for relief against him.

Respectfully submitted,

Dated: December 6, 2013

/s/ David T. Movius
David T. Movius (0070132)
 dmovius@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

John T. McLandrich (0021494)
 jmclandrich@mrrlaw.com
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 │ f 440.248.8861

*Attorneys for Donald
Robinson, by Special Appearance*

## **Track and Page Limit Certification**

The undersigned certifies under Local Rule 7.1(f) that this case has not been assigned to a track under Local Rule 16.2, and that this memorandum adheres to the 30-page limit for "complex" track cases.

 /s/ David T. Movius
*Attorney for Donald*
*Robinson, by Special Appearance.*

## **Certificate of Service**

I hereby certify that, on December 6, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

 /s/ David T. Movius
*Attorney for Donald*
*Robinson, by Special Appearance.*