UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MRI SOFTWARE LLC, | Case No. 1:12-cv-01082-CAB |
| Plaintiff, | Judge Christopher A. Boyko |
| v. | |
| LYNX SYSTEMS, INC. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY** |
| and | |
| DONALD ROBINSON, | |
| Defendants. | |

Plaintiff, MRI Software LLC ("MRI"), submits this Memorandum in Support of its Second Motion to Compel Discovery of Defendant, Lynx Systems, Inc. ("Lynx"). Since this case was filed in May 2012, Lynx's *modus operandi* has been to delay and ignore. Only after MRI's first Motion to Compel (Doc. # 45), did Lynx finally agree (via stipulation to this Court) to provide to MRI numerous items of highly relevant long-outstanding discovery, such as its email and professional service orders ("PSOs") with MRI's clients, the software files MRI alleges to infringe its copyrights, and the depositions of its key employees. *See* Doc. # 75, Notice of Agreement as to Certain Discovery Disputes and Joint Motion to Extend Case Deadlines (herein, the "Agreement").

Unfortunately, Lynx has not complied with its own agreements to provide discovery.[1] For example, despite stipulating to the Court to do so, Lynx has refused to make its witnesses available for deposition and failed to explain apparent deficiencies in its production of PSOs and emails.[2] Lynx has also failed to fully respond to interrogatories subsequently propounded by

---
[1] Lynx's failure to comply with its own agreements is part of a pattern. *See* Doc. # 40, MRI's Motion to Show Cause Why Lynx Should Not Be Held in Contempt of November 9, 2012 Injunction Order, and related briefs.

[2] In exchange for Lynx's promises in May, MRI agreed to allow Lynx more time to complete discovery, even though MRI did not believe Lynx had good cause for not conducting discovery sooner. *See* Doc. # 75, at p. 2; Doc. # 71 (MRI's Motion to Extend Fact Discovery of Lynx). Despite not living up to its own end of the bargain and not propounding a single discovery requests since *April 2013,* Lynx recently moved the Court for an indefinitely long

MRI, after leading MRI to believe it would do so, and then simply ignoring MRI's follow up requests.

For the reasons set forth below, MRI respectfully requests an order: 1) compelling Lynx to make its witnesses available for the depositions MRI has noticed; 2) compelling Lynx to produce any remaining documents responsive to Request Nos. 7 and 17; 3) compelling Lynx to supplement its responses to Interrogatory Nos. 4, 15, 16, 20 and 21; and 4) precluding Lynx from relying on any documents to show authorization by MRI, which should have been identified long ago in response to Interrogatory No. 19; and 5) requiring Lynx to reimburse MRI's legal fees incurred in bringing this Second Motion to Compel. Additionally, MRI respectfully requests that the deadlines for fact, expert discovery and dispositive motions set forth in the Court's September 6, 2013 Order be extended, as they apply to MRI, for a sufficient amount of time to permit MRI to complete fact discovery of Lynx.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 37 provides that a party may move for an order compelling a complete response to a discovery request where the opposing party has failed to respond. Fed. R. Civ. P. 37(a)(1); *see also Nilavar v. Mercy Health Sys.*, 210 F.R.D. 597, 610 (S.D. Ohio 2002) (granting motion to compel discovery). Rule 37(a)(3)(B) provides, in pertinent part, that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." This motion may be made if "a party fails to respond that inspection will be permitted – or fails to permit inspection" of documents.

Rule 26(b) provides that a party may obtain discovery regarding any matter that may be relevant to the subject matter involved in the pending action, without regard to whether the information will itself be admissible, provided the information sought is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); *see also Garth v. United*

---

extension of time to complete fact discovery of MRI. *See* Doc. # 112, Lynx's Motion to Extend Fact Discovery, Expert Discovery and Dispositive Motion Deadlines. MRI plans to object to Lynx's motion within the time permitted by Local Rule 7.1.
{02292384.DOC;1}

*Healthcare Corp.*, 154 F.R.D. 172, 177 (S.D. Ohio 1993) (recognizing breadth of discoverable information); *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376, 378 (S.D.N.Y. 1996) (noting that "[A]ll that must be shown is that the discovery requested possibly might be relevant"). Indeed, the phrase "relevant to the subject matter involved in the action" has been construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## II. ANALYSIS

MRI's good faith efforts to resolve the disputes raised herein are set forth in the December 2 and December 12 Certifications in Compliance with Local Rule 37.1, which have been filed as Document Numbers 126 and 129.

### A. Lynx Should be Compelled to Make Its Witnesses Available for Deposition.

On June 20, 2012, MRI noticed the depositions of Lynx and of its President, Donald Robinson. *See* Doc. #126-1, Exh. A to 12/2/13 Rule 37.1 Declaration, Deposition Notices. On December 15, 2012, MRI noticed the depositions of seven Lynx employees who regularly provide services to MRI-Lynx customers or who are otherwise involved in the relevant operations of Lynx. These witnesses include Lori Spale, Tracy White, Carol Dewhirst, Howard Mednick, Jackie Jordon, Raj Patel, and Garen Hagopian. *See id.* On February 7, 2013, MRI moved to compel Lynx to provide numerous outstanding discovery items, including its emails and Customization files, and to make at least two of its witnesses, Howard Mednick and Garen Hagopian, available for deposition two weeks following Lynx's production. *See* Doc. # 45, MRI's First Motion to Compel.

In response to MRI's First Motion to Compel, Lynx agreed to a June 15 deadline for production of many of its documents, and agreed to "make available for deposition in Cleveland, Ohio, or Toronto, Ontario, all witnesses whose deposition have been noticed by MRI who are employed by or otherwise under the control of Lynx on mutually agreed upon dates between June 15 and July 15." Doc. #75, Agreement, at pp. 2-3.

However, Lynx's June 15 production included only a fraction of the emails of the witnesses whose depositions MRI had noticed. As set out below, MRI did not receive the bulk of Lynx's emails until August 21, and MRI has repeatedly pressed Lynx for responses to MRI's additional discovery requests and completion of its document production, receipt of such information being a prerequisite to conducting depositions and completing discovery. Though still awaiting Lynx's response to several outstanding deficiencies in Lynx's document production and written discovery responses, MRI's counsel contacted Lynx's counsel many times attempting to schedule the depositions Lynx already agreed to. *See* Doc. # 126, 12/2/12 Rule 37.1 Certification of Compliance, ¶¶ 9-10. However, *Lynx simply ignored MRI's requests. Id., ¶ 11*.

MRI seeks the Court's assistance reluctantly, but cannot wait for Lynx any longer. It is now: (a) almost a year since most of these depositions were noticed, (b) six months since Lynx said they would make the deponents available, and (c) ten days past the scheduled close of fact discovery. MRI respectfully requests that the Court instruct Lynx to make the deponents available for deposition as soon as possible.[3]

> **B.     Lynx Should be Compelled to Produce Any Remaining PSOs Responsive to Request No. 7, and Supplement its Responses to Interrogatory Nos. 4 and 15 to Specify the Records that Describe the MRI-Related Services Lynx Provided to Lynx-MRI Customers.**

Request for Production No. 7, served on June 20, 2012, requests:

---

[3] MRI expressly reserves the right to continue the depositions of any of the witnesses if Lynx subsequently produces evidence or documents that would be germane to their depositions. As explained below, many of the outstanding discovery issues, once resolved, will help to make the depositions more efficient.

{02292384.DOC;1}

> All agreements between Lynx and any Lynx MRI Customer concerning Lynx's provision of MRI Related Services, including without limitation all statements of work or descriptions of MRI Related Services to be provided by Lynx.

Exh. A, MRI's First Set of Document Requests. Interrogatory No. 4, also served on June 20, 2012, asks Lynx to:

> Identify all Lynx MRI Customers and *describe the MRI Related Services provided to each such customer*, including specifically whether Lynx provided any Customizations or Enhancements to such customer, and if so, how and when such Customizations or Enhancements were provided.

Exh. B, MRI's First Set of Interrogatories (emphasis added). Lynx responded to Interrogatory No. 4 on July 20, 2012 by reference to its "Sales by Summary Spreadsheet," which was previously submitted to the Court under seal as Exhibit B to Doc. # 58, Sealed Declaration of Georgia Yanchar. As can be seen, the Sales by Summary Spreadsheet contains (by MRI's count) 2,077 entries of services provided by Lynx to MRI-Lynx Customers between October 2009 and May 2012, however, it does not actually "describe the MRI Related Services provided to each such customer," as Interrogatory No. 4 requests. Rather, many (by our count 562) of the rows refer to a "PSO Number." Mr. Robinson later explained at his September 2012 deposition that a PSO is an agreed-upon statement describing the work Lynx was hired to perform for the customer. *See* Exh. C, Robinson Dep. Tr., p. 32, 44-45.

In response to Request for Production No. 7, Lynx produced some PSOs,[4] however, not all of them are Bates Numbered. Moreover, in several instances it is difficult to determine which "PSO Number" correlates to which Bates Numbered document produced by Lynx. After much effort, MRI was able to correlate a Bates Number to only 245 of the 2,077 entries on Lynx's Sales by Summary Spreadsheet. On July 26, MRI wrote to Lynx asking whether PSOs corresponding to the remaining entries in the Sales by Summary Spreadsheet exist and if so, whether they were produced. *See* Exh. D, 7/26/13 Letter to D. Movius. During the parties' meet and confer on October 2, counsel for Lynx agreed to check as to that issue; however, Lynx's subsequent October 9 email did not confirm the answer to that question one way or the other.

---

[4] Lynx did so only after MRI moved to compel the PSO's production. *See* Doc. # 45 and 75.

{02292384.DOC;1}

*See* Doc. # 129, Rule 37.1 Certification,¶ 2; Doc. # 126-2, Exh. B to 12/2/13 Rule 37.1 Certification, 10/9/13 Email from D. Movius.

There is no dispute as to the relevance of the PSOs. Indeed, Lynx already stipulated to "search for and produce the remaining responsive documents [to Request No. 7]," *see* Doc. # 75, Agreement. Because Lynx has not lived up to its obligations or promises, MRI requests that Lynx be compelled to search for and produce any remaining PSOs in its possession.

Related to the foregoing issue, on May 21, 2013, MRI served Interrogatory No. 15 which asked Lynx to "State the Bates Number(s) range for each PSO Number identified in the Sales by Summary Spreadsheet." Lynx provided the responsive information for twelve PSOs, but objected to further responding as unduly burdensome. *See* Exh. E, Lynx's Response to MRI's Fifth Set of Interrogatories.

On July 26, 2013, MRI's counsel wrote to Lynx's counsel to explain why Lynx's objection was not well founded. *See* Exh. D, 7/26/13 Letter to D. Movius. The parties met and conferred on October 2, 2013, and on October 9, 2013, Lynx's counsel agreed to provide the requested information, writing:

> we are investigating ways that we might be able to correlate the PSO numbers on the Sales by Summary Spreadsheet. Unfortunately, the Lynx personnel who were involved in creating that spreadsheet are travelling or otherwise out of the office until next week. I will be following up with Lynx next week and will provide a further update thereafter.

Doc. # 126-2, Exh. B to 12/2/13 Rule 37.1 Certification, 10/9/13 Email from D. Movius. After two weeks passed, MRI followed up on October 24, expressing disappointment (but not surprise) that Lynx failed to follow up. *See id.*, October 24, 2013 Email to D. Movius. Lynx never responded to MRI's October 24 email, and has still not supplemented its response to Interrogatory 15. *See* Doc. # 129, 12/12/13 Rule 37.1 Certification.

There is no dispute that the information responsive to Interrogatory 15 is relevant. Nor does Interrogatory No. 15 impose an undue burden. Lynx could respond to Interrogatory No. 15 simply by serving an updated version of its Sales by Summary Spreadsheet with an additional

{02292384.DOC;1}

6

column containing the Bates Numbers for the documents that describe the services Lynx provided in each row. Indeed, Lynx is required to do so by Rule 33(d)(1), which permits a party to respond to an interrogatory by referring to documents, but *only* if it "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). As it now stands, however, Lynx has responded to MRI's interrogatory No. 4 by referring to documents (PSOs) that describe the services Lynx provided, but Lynx has not specified the records in sufficient detail to enable MRI to locate and identify them as readily as Lynx could. As such, Lynx's responses to Interrogatories 4 and 15 are insufficient, and Lynx should be compelled to cure its deficiency.

In sum, Lynx should be compelled to complete its production of PSOs, and supplement its responses to Interrogatories Nos. 4 and 15 to identify with specificity the PSOs that relate to the services summarized in Lynx's Sales by Summary Spreadsheet. The requested information is not only relevant, but also will avoid wasting potentially numerous hours of deposition time sorting out which documents pertain to which Lynx services. Lynx, not MRI's attorneys, should do this work now.[5]

   **C. Lynx Should be Compelled to Respond to Interrogatory No. 16 and Supplement its Response to Interrogatory No. 4 to Identify the Customizations and Enhancements Referenced on Its Sales by Summary Spreadsheet.**

Lynx has admitted that where it has identified that it provided services under the categories of "Lynx Custom," "Lynx Reports" and "Lynx Apps" on the Sales by Summary Spreadsheet, Lynx used either its own copy or its client's copy of the MRI Toolkit, which is a part of the MRI Software. *See* Exh. F, Lynx's Response to Interrogatory No. 14. By definition, in each of these instances, a Customization of the MRI Software was created. *See* Exh. B, MRI's

---

[5] Further obfuscating discovery, Lynx mis-designated all of its PSOs and Professional Services Agreements (PSAs) as Attorneys Eyes Only. In May, Lynx agreed to cure this problem (see Doc. # 75, a p. 3), but Lynx has *still* not done so. MRI should not have to pay its attorneys to do what Lynx's employees, who are familiar with Lynx's record keeping procedures, could do with far less burden.

{02292384.DOC;1}

7

First Set of Interrogatory, at Definitions. In March and April 2013, Lynx produced approximately 1,500 Customization files it created. On May 21, 2013, MRI served Interrogatory No. 16 which asked Lynx to:

> As to each Customization or Enhancement referenced in the Sales By Summary Spreadsheet, identify (by Bates Number or file name) the corresponding file(s) produced by Lynx in response to MRI's Document Request No. 10.

Exh. E, Lynx's Response to MRI's Fifth Set of Interrogatories. Lynx objected that responding would be overly burdensome, arguing the information requested was equally available to MRI as it is to Lynx. *Id.* However, Lynx has not provided any explanation for why responding to Interrogatory No. 16 is unduly burdensome. To the contrary, on October 9, Lynx agreed to follow up as to whether it is possible to make the correlation Interrogatory 16 requests. *See* Doc. 126-2, Exh. B to 12/2/13 Rule 37.1 Certification, 10/9/13 Email from D. Movius. Thereafter, Lynx failed to provide any further update whatsoever. *See id.,* 10/24/13 Email to D. Movius; Doc. 129, 12/12/13 Rule 37.1 Certification. Thus, Lynx's burden objection is wholly unfounded.

Moreover, contrary to Lynx's assertion, the requested information is not equally available to MRI as it is to Lynx. Lynx named its Customization files, and its file naming system is information exclusively in Lynx's possession.[6] Thus, it is infinitely easier for Lynx to make this correlation than for MRI.

Finally, there is no dispute the requested information is highly relevant. Lynx has argued that its creation and distribution of Customizations was authorized. However, Lynx admits:

> where it has identified that it provided services under the categories of "Lynx Custom", "Lynx Reports" and "Lynx Apps" on the [Sales by Summary Spreadsheet], it used the customer's version of Toolkit where the customer had Toolkit in its possession. MRI's records should reflect which customers had Toolkit. Further, where the customer did not have its own copy of Toolkit, Lynx used its copy of Toolkit to perform the services identified under the categories of "Lynx Custom," "Lynx Reports" and "Lynx Apps" on the [Sales by Summary Spreadsheet].

---

[6] Again, because Lynx mis-designated all its Customization files Attorneys Eyes Only (even though they were all created with MRI's software), MRI must rely on its outside attorneys to do what Lynx's employees, who are familiar with Lynx's file naming procedures, could do with far less burden.

{02292384.DOC;1}

*See* Exh. F, Lynx's Response to Interrogatory No. 14. Lynx is not authorized to use the copy the MRI Toolkit of any customer whose license from MRI prohibits access by third parties such as Lynx. Moreover, Lynx's authorization to use any copies of the MRI Toolkit in its possession expired with the 2002 Agreement, which was no later than October 2009. The information requested in Interrogatory No. 16 will tell MRI which Customization files produced by Lynx were created for which MRI-Lynx Customers. With that information, MRI can determine if that customer had a license to the MRI Toolkit at the time the Customization was created, and if so, whether the client's agreement with MRI prohibited Lynx from using its copy of the MRI Toolkit. That information will show that Lynx's use of either the customer's copy or Lynx's own copy of the MRI Toolkit was not authorized, and thus constitutes an infringement of MRI's copyrights in the MRI Software. Allowing Lynx to continue withholding the requested information obfuscates and frustrates the discovery process, and is not justified. Accordingly, MRI respectfully requests that Lynx be compelled to fully respond to Interrogatory No. 16 by a date certain.

    **D.    Lynx Should be Compelled to Respond to Interrogatory No. 20 By Identifying the Documents It Used In Training of Lynx-MRI Customers.**

Interrogatory No. 20 was served on May 21, 2013, and asks Lynx to:

> Identify (including, for documents previously produced by Lynx, by Bates Number) all written materials copied, distributed, used, referred to or shared by Lynx in performing each instance of "training" referenced in the Sales by Summary Spreadsheet.

Exh. E, Lynx's Responses and Objections to MRI's Fifth Set of Interrogatories. Lynx objected to this interrogatory as overly burdensome, arguing the information requested was equally available to MRI as it is to Lynx. *Id.* However, Lynx has not supported its burden objection. To the contrary, on October 9, Lynx agreed to follow up as to whether it is possible to make the correlation Interrogatory No. 20 requests, but thereafter failed to provide any further update whatsoever. *See* Doc. 126-2, Exh. B to 12/2/13 Rule 37.1 Certification, 10/9/13 Email from D.

Movius; Doc. 129, 12/12/13 Rule 37.1 Certification. Thus, Lynx's burden objection remains wholly unfounded.

Nor is the requested information equally available to MRI as it is to Lynx. Only Lynx knows which documents it used or shared in performing training. Moreover, Lynx's mere reference to "training" in the Sales by Summary Spreadsheet, does not "describe the MRI Related Services provided," as requested in MRI's Interrogatory No. 4. Identifying the training materials with specificity as requested in Interrogatory No. 20 should cure this deficiency. With this information, MRI can determine whether Lynx's copying and distribution of training materials violated MRI's proprietary rights.[7] Accordingly, MRI respectfully requests that Lynx be compelled to fully respond to Interrogatory No. 21 by a date certain.

### E. Lynx Should be Compelled to Respond to Interrogatory No. 21 By Describing the Circumstances of Judith Gross's Termination.

Interrogatory No. 21 was served on May 21, 2013, and asks Lynx to:

> Describe the circumstances of the termination of Judith Gross by Lynx, and provide her last known contact information.

Exh. E, Lynx's Responses and Objections to MRI's Fifth Set of Interrogatories. Lynx initially objected to this interrogatory as irrelevant. *See id.* In response, MRI reminded Lynx that its response to MRI's Interrogatory No. 5 stated that Ms. Gross was employed as a Client Manager during the relevant period of this case, that the team, of which Ms. Gross was a part, provided hotline support, training services, system assessments and general problem solving assistance to MRI-Lynx clients, and that, as such, Ms. Gross is highly likely to possess relevant information. Exh. D, July 26, 2012 Letter from G. Yanchar to D. Movius. Thereafter, Lynx agreed to provide the information requested in Interrogatory No. 21. *See* Doc. 126-2, Exh. B to 12/2/13 Rule 37.1 Certification, 10/9/13 Email from D. Movius. However, Lynx once again failed to do what it promised. *See id.,* 10/24/13 Email to D. Movius; Doc. 129, 12/12/13 Rule 37.1

---

[7] Notably, many of Lynx's PSOs state that when Lynx provides "training," it distributes to the client training or session materials in electronic format, for the client to print, collate and distribute to attendees. MRI believes that these training or session materials are copies, in whole or in part, of MRI's own manuals and training materials.
{02292384.DOC;1}

10

Certification. Accordingly, MRI respectfully requests that Lynx be compelled to supplement its response to Interrogatory No. 21 with the requested information.

### F. Lynx Should Be Compelled to Complete its Production of Email.

On December 13, 2012, MRI served Requests for Production No. 17, seeking:

> All communications, including without limitation, emails, with any Lynx-MRI Customer that refer to or describe MRI Related Services provided by Lynx.

After Lynx objected to producing *any email whatsoever*, numerous items of correspondence between the parties followed. *See* Doc. # 67, Notice of Outstanding Discovery Requested From Lynx (summarizing dispute as to Lynx's email). On May 15, 2013, Lynx stipulated to producing some of its emails by June 15, and the remaining responsive emails and communications as expeditiously as possible thereafter. *See* Doc. # 75, Agreement. Lynx produced its first emails in June 2013, however that production (which lacked any metadata) was re-produced in August 2 (with metadata), and the bulk of Lynx's email was not produced until August 21. On September 26, MRI wrote to Lynx asking numerous questions about Lynx's production, such as why most of the files have no "date sent" or "date received," and how to interpret the information in the garbled text strings contained in the "Custodian" fields of the load files. *See* Exh. G, 9/26/13 Letter to D. Movius. MRI additionally served a 30(b)(6) deposition notice with topics directed to document collection and retention. See Doc. # 126-1, Exh. A to 12/2/13 Rule 37.1 Certification, Deposition Notices. Lynx objected to conducting separate depositions on the foregoing topics and the merits. *See* Doc. 126-2, Exh. B to 12/2/13 Rule 37.1 Certification, 10/9/13 Email from D. Movius. Moreover, Lynx has failed to answer MRI's questions regarding Lynx's email production set forth in MRI's September 26 letter. Doc. 129, 12/12/13 Rule 37.1 Certification. As such, MRI has no way to determine whether Lynx has done a reasonable search, collection and production of its emails.[8] Accordingly, MRI respectfully requests that Lynx be compelled to respond to MRI's questions as to Lynx's email production, provide a

---

[8] MRI presently believes Lynx has not done so, based on the information in the "Custodian" fields, the fact that no emails postdating April 2013 have been produced, the disproportionately small number of emails post-dating the November 9, 2012 Injunction Order, and the disproportionately small number of emails from Donald Robinson.
{02292384.DOC;1}

witness on the topics set forth in MRI's Second 30(b)(6) Notice, and produce all documents responsive to Request No. 17.

### G. Lynx Should be Precluded from Relying On Any Documents To Show Authorization by MRI.

Interrogatory No. 19 was served on May 21, 2013, and asks Lynx to:

> As to each Customization file produced by Lynx in response to MRI's document requests, state whether Lynx contends it was authorized to create the Customization file, and identify by Bates Number all documents that support or refute Lynx's contention.

Exh. E, Lynx's Responses and Objections to MRI's Fifth Set of Interrogatories. In response, Lynx stated "its creation of the Customization files at issue in this case was 'authorized' to the extent the 'authorization' of MRI or any other party was required for it do so," but Lynx objected to identifying any documents supporting or refuting Lynx's contention on the basis of attorney client work product or privilege, and burden. *See id.* Lynx stands by its work product objection. *See* Doc. 126-2, Exh. B to 12/2/13 Rule 37.1 Certification, 10/9/13 Email from D. Movius. On October 24, 2013, MRI informed Lynx that if it failed to identify the documents it purports to show authorization by the close of fact discovery, MRI would seek to preclude Lynx from relying on any such documents during summary judgment or trial. *Id.*, 10/24/13 Email to D. Movius. Five weeks later, the scheduled close of discovery came and passed, without Lynx identifying a single additional document. Doc. 129, 12/12/13 Rule 37.1 Certification.

Lynx has provided no legal support for its work product objection; nor could it. Discovery has been ongoing for approximately one-and-a-half years. MRI was long ago entitled to know which documents, if any, support Lynx's defense that it was authorized to create the Customizations in issue. As a sanction for Lynx's unjustified refusal to respond to Interrogatory No. 19, MRI respectfully requests that Lynx be precluded from relying on any documents it may hereafter identify to show authorization to create any of the Customizations in issue. *See* Fed. R. Civ. P. 37(c)(1) ("[i]f a party fails to provide information or identify a witness as required by

Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless.")

### III. CONCLUSION

For the reasons above and in MRI's December 2 and December 12 Rule 37.1 Certifications, MRI respectfully requests that the Court enter an order:

1. compelling Lynx to make its witnesses available for all depositions noticed by MRI;

2. compelling Lynx to produce any remaining PSOs responsive to Request No. 7, and supplement its responses to Interrogatory Nos. 4 and 15 to specify the records that describe the MRI-Related Services Lynx provided to Lynx MRI Customers;

3. compelling Lynx to respond to Interrogatory No. 16 and supplement its response to Interrogatory No. 4 to identify the Customizations and Enhancements referenced on its Sales by Summary Spreadsheet;

4. compelling Lynx to respond to Interrogatory No. 20 by identifying the documents it used in training of Lynx-MRI Customers;

5. compelling Lynx to respond to Interrogatory No. 21 by describing the circumstances of Judith Gross's termination;

6. precluding Lynx from relying on any documents to show authorization by MRI, which should have been identified in response to Interrogatory No. 19; and

7. requiring Lynx to reimburse MRI's legal fees incurred in bringing this Second Motion to Compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).

Additionally, MRI respectfully requests that the deadlines for fact, expert discovery and dispositive motions set forth in the Court's September 6, 2013 Order be extended, as they apply to MRI, for a sufficient amount of time to permit MRI to complete fact discovery of Lynx.

Respectfully submitted,

DATED:  December 12, 2013

        Signature */s/* Georgia Yanchar
Daniel McMullen (0034380)
Georgia Yanchar (0071458)
Mark McDougall (Ohio Bar No. 0080698)
CALFEE, HALTER & GRISWOLD, LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH  44114-1607
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
dmcmullen@calfee.com
gyanchar@calfee.com
mmcdougall@calfee.com

Counsel for MRI Software, LLC

## CERTIFICATE OF SERVICE

     I hereby certify that on December 12, 2013, a true and correct copy of the foregoing was filed electronically with the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and parties may access this filing through the Court's System.

                                                */s/* Georgia E. Yanchar
                                                One of the Attorneys for Plaintiff