**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MRI SOFTWARE, LLC.,** | ) | **CASE NO.1:12CV1082** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **LYNX SYSTEMS, INC., ET AL.,** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Donald Robinson's Motion to Dismiss (ECF #'s 106 & 118).  For the following reasons, the Court denies, in part, Robinson's Motion and grants, in part, Robinson' Motion.

On August 22, 2013, Plaintiff filed its First Amended Complaint, alleging claims for Copyright Infringement pursuant to 17 U.S.C. § 501 et seq. (Count I); violation of the Computer Fraud and Abuse Act pursuant to 18 U.S.C. § 1030 (Count II); violation of the Electronic Communications Privacy Act pursuant to 18 U.S.C. § 2701 (Count III); violation of the Digital Millennium Copyright Act (DMCA) pursuant to 17 U.S.C. § 1201 *et seq.* (Count IV); violation of the Copyright Act of Canada pursuant to the Berne Convention (Count V); Misappropriation of Confidential Business Information and/or Trade Secret

pursuant to O.R.C. § 1333.61 *et seq.* (Count VI); Trespass pursuant to Ohio law (Count VII); Breach of Contract (Count VIII); Inducement of Breach of Contract (Count IX); Interference with Existing and Prospective Economic Advantage pursuant to Ohio law (Count X); Trademark Infringement pursuant to the Lanham Act, 15 U.S.C. § 1114 (Count XI); False Designation of Origin pursuant to the Lanham Act, 15 U.S.C. § 1125(A) (Count XII); Commercial Disparagement pursuant to Ohio law (Count XIII); False Advertising pursuant to 15 U.S.C. § 1125(B) (Count XIV); Deceptive Trade Practices pursuant to O.R.C. § 4165 (Count XV); Unjust Enrichment/Restitution pursuant to Ohio law (Count XVI); and an Accounting under Ohio law (Count XVII).  Plaintiff's First Amended Complaint alleges the above claims against Lynx and its President Donald Robinson in his individual capacity.

According to Plaintiff's First Amended Complaint, its claims arise from a prior license agreement between Plaintiff and Defendant Lynx that was signed in 2002 and expired in 2008.  Plaintiff developed software to enable more timely and accurate reporting to the real estate management industry.  In developing its own software, Plaintiff obtained a number of copyrights.  Plaintiff retains exclusive rights to its software but grants limited licenses to customers.

In August of 2002, Plaintiff and Defendant Lynx entered into an Agreement wherein Defendant agreed to market Plaintiff's products in exchange for a portion of the license fee paid to Plaintiff when any Lynx -generated lead agreed to purchase Plaintiff's products.  Lynx was also granted limited rights to provide limited software services to clients in Canada.  The Agreement placed certain limitations on Lynx and provided that all Lynx's obligations under Section 2 of the Agreement survived termination of the agreement.  In 2008, the Agreement

2

terminated.

Plaintiff now contends Lynx and Robinson have violated the terms of the agreement, infringed its copyrights and have engaged in a number of business practices that violate Plaintiff's contract rights, Ohio, federal and Canadian law.

Defendant Donald Robinson moves to dismiss the case for lack of personal jurisdiction and failure to state a claim. Robinson is Lynx's president and a Canadian citizen. Robinson contends that the alleged wrongful acts of Lynx cannot be attributed to him personally in order to establish personal jurisdiction over him. Plaintiff's First Amended Complaint alleges Robinson's acts were within the scope of his employment, but Robinson argues that, under Canadian law, his acts as president of Lynx do not establish personal jurisdiction in Ohio. Furthermore, even if Ohio law applies, Robinson lacks sufficient personal contacts with the state sufficient to establish jurisdiction. Lastly, Robinson claims that even if the Court has personal jurisdiction over him, Plaintiff fails to state a claim upon which relief may be granted because Plaintiff has admitted all his acts were in the scope of his authority as president of Lynx. Because Plaintiff's contract was with Lynx, only Lynx may be liable under the Agreement for any breach.

Plaintiff contends Ohio law applies when determining personal jurisdiction and under Ohio law, the Court has jurisdiction over Robinson, even if his acts were done in the scope of his employment with Lynx. Furthermore, Robinson has numerous contacts with the State of Ohio, subjecting him to personal jurisdiction here. Finally, Plaintiff argues its First Amended Complaint alleges sufficient facts supporting claims for Robinson's individual liability apart from his role as president of Lynx.

**Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court applies a two-step inquiry when examining if it has personal jurisdiction over the parties.  "First, we must determine whether Ohio law authorizes jurisdiction.  If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota*, 545 F.3d 357, 361 (6th Cir. 2008). Where personal jurisdiction is challenged in a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that personal jurisdiction exists.  *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974).  However, the nature of plaintiff's burden changes depending on the manner in which the district court approaches the motion.  *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988).

When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, [ ... ] and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal [ ] [ ... ]."  *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D.Ohio Mar.28, 2012) (quoting *Air Prods. & Controls, Inc., v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir.2007).  Plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff.  *Id.*  The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991).  The plaintiff must set forth specific facts

4

showing that the court has jurisdiction. *Id.*  Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996).

### B.  Personal Jurisdiction

Contrary to Robinson's assertion that Canadian law applies, the Court finds Ohio law governs whether the Court may exercise personal jurisdiction over a non-United States citizen.  It is axiomatic that this Court "must apply the law of the forum state to determine whether it may exercise jurisdiction over a non-resident defendant."  *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 777 (S.D. Ohio 1999) (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988)).  See also *Conn v. Zakharov*, 667 F.3d 705 (6th Cir. 2012 (applying Ohio long-arm statute to determine if Russian citizen was subject to personal jurisdiction of Ohio court.).  If jurisdiction is proper under the Ohio long arm statute, the Court must then apply the limits of the Constitutional Due Process Clause in determining whether personal jurisdiction exists over a defendant. *Id.*

### 1.  Ohio's Long Arm Statute

Plaintiff argues that personal jurisdiction over Robinson is appropriate under Ohio's Long-Arm Statute, O.R.C. § 2307.382 (A)(1) and (6) .  The pertinent sections of the statute read:  "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state... and (6) Causing tortious injury in this state..."   Courts within the Sixth Circuit have held that " '[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.*, No. C–1–98–844, 1999 WL 33471990, at *5 (S.D. Ohio

July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc*., 954 F.Supp. 1206, 1210 (N.D. Ohio 1997)).  The Ohio Supreme Court has likewise held that transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.' "  *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 2012).  Thus, the act of contracting can qualify as transacting business under Ohio's long-arm statute.  *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999).  However, the Court must consider not only the act of contracting itself, but also:  (1) whether the contract represents "transacting business" under the Ohio Revised Code, meaning that the necessary nexus exists between Defendant's business dealings in Ohio and the matters at issue in this case;  and (2) whether the cause of action arises from the contract.  *Id.*

Robinson argues that Plaintiff's cannot establish personal jurisdiction over him due to actions he took in his capacity as President of Lynx.  This argument fails because the Sixth Circuit in *Balance Dynamics Corp. v. Schmitt Industries* 204 F.3d 683 (6th Cir. 2000) determined that district courts may exercise personal jurisdiction over corporate agents where the agent is "actively and personally involved in the conduct giving rise to the claim." *Id.* at 698.  Courts may exercise personal jurisdiction over such agents even when they are acting solely in their official and not personal capacities so long as the agent "purposely availed herself of the forum and the reasonably forseeable consequences of that availment." *Id.*  Thus, the Court must consider Robinson's individual conduct and his personal contacts with the State of Ohio, regardless of his capacity when engaging in such contacts, in order to determine whether it has personal jurisdiction over him.

Plaintiff contends that Robinson's contacts with Ohio are sufficient to confer

jurisdiction under Ohio's long arm statute because of Robinson's personal conduct and involvement in negotiating the Agreement, carrying out the obligations of Lynx under the Agreement and his conduct in attempting to engage in additional business opportunities with Plaintiff outside the 2002 Agreement. These actions by Robinson, according to Plaintiff, satisfy the transacting business standard and their causes of action against Lynx and Robinson arise from these business transactions.

Specifically, Plaintiff alleges Robinson, as president of Lynx, entered into a contractual license agreement with Plaintiff, an Ohio corporation. The Sixth Circuit has held that "if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998).

While the contract at issue was between Plaintiff and Lynx, Plaintiff offers evidence that Robinson negotiated Agreements in 2000 and the 2002 Agreement between Plaintiff and Lynx; was the sole contact person for Plaintiff throughout the course of the MRI/Lynx relationship; traveled to Ohio to oversee employees conducting services on behalf of Plaintiff and traveled to Ohio to participate in negotiations on a new Agreement with Plaintiff; sent numerous emails and engaged in numerous phone conversations with Plaintiff during the course of the MRI/Lynx relationship and initiated numerous contacts with Plaintiff in furtherance of the relationship. These establish that Robinson personally availed himself of business opportunities in Ohio and transacted business in Ohio. Given Plaintiff's "slight burden" and construing the allegations in the First Amended Complaint in Plaintiff's favor, the Court finds Robinson is properly subject to the personal jurisdiction of this Court.

Ohio's Long-Arm statute is also satisfied under O.R.C. § 2307.382A(6) because Robinson has caused tortious injury in Ohio knowing Plaintiff would be harmed in Ohio. By using Plaintiff's trademarks unlawfully outside the State of Ohio, and allegedly causing monetary losses and loss of reputation and goodwill to Plaintiff, Plaintiff has met its prima facie burden showing Robinson has caused injury in Ohio. See *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 480 (1985) (finding continued use of trademarks and confidential business information of plaintiff after termination of a contract caused foreseeable injury to plaintiff in plaintiff's home state). See also, *Leapers, Inc. v. First Quality Distributors, Inc.,* No 11-15058, 2012 WL 1714938 *6-7 (E.D. Mich., May 15, 2012). Again, given the allegations in the First Amended Complaint and Plaintiff's slight burden to show Defendant's transactions in the State of Ohio and injury caused by his allegedly tortious conduct, the Court finds Plaintiff has met its burden to show Defendant's actions subject him to jurisdiction under Ohio's Long-Arm statute.

### 2. Due Process

If jurisdiction is proper under Ohio's long arm statute, the Court must next determine whether Robinson's contacts with Ohio were sufficient under the Fourteenth Amendment Due Process Clause to allow the Court to exercise jurisdiction. In order for personal jurisdiction to comport with due process, Defendant must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.' " *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010). "Minimum contacts exist where a defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Id.* (quoting

8

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of personal jurisdiction:  1) general jurisdiction, which requires "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant," and 2) specific jurisdiction, "which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum."  *Kerry Steel, Inc. v. Paragon Indus*., 106 F.3d 147, 149 (6th Cir.1997).

The Sixth Circuit has concluded that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute."  *Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012).  See also *Ohio Edison Co. v. Frontier N. Inc.*, No. 5:14CV321, 2014 WL 6389564, at *4 (N.D. Ohio Nov. 14, 2014).

The Court finds it has specific jurisdiction over Robinson.  The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel*, 106 F.3d at 150 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir.1968)).

9

The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts." *MMK Group, LLC v. SheShells Co., LLC*, 591 F.Supp.2d 944, 956 (N.D. Ohio 2008).  "In particular, where a defendant "has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 476.

In the present case, the 2002 Agreement and long standing relationship between Plaintiff and Lynx were ongoing - spanning several years - and imposed ongoing obligations on Lynx even after the Agreement terminated.  As the Sixth Circuit has held "if, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio. *Cole v. Mileti* 133 F.3d 433, 436 (6th Cir. 1998) *citing Burger King,*  471 U.S. at 476. Robinson acknowledges he engaged in numerous communications with MRI over the years in negotiating, executing and implementing the MRI -Lynx 2002 Agreement.  That Agreement allowed Lynx to market Plaintiff's proprietary software in exchange for a portion of the license fee paid to Plaintiff when Lynx generated a lead that would result in a new licensee for Plaintiff.  By directly competing with Plaintiff using Plaintiff's trade secrets, and infringing on Plaintiff's trademarks and copyrights, Lynx and Robinson are causing a consequence in the state of Ohio, namely injury to Plaintiff.  Therefore, Robinson has availed himself of acting in the State of Ohio and causing a consequence therein.

10

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, the  action will be deemed to have arisen from those contacts."  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). Robinson's contacts with the State of Ohio, i.e. his long term business relationship with Plaintiff, relates directly to the alleged operative facts, i.e- the misappropriation of trade secrets, copyright and trademark infringement, breach of contract, etc...  Robinson obtained Plaintiff's proprietary software, was authorized to use Plaintiff's trademarks and obtained compensation from Plaintiff through his long term business relationship with Plaintiff.  Also. Plaintiff's claims arise out of Lynx and Robinson's alleged wrongdoing from their business contract relationship.  Therefore, Robinson's contacts with Ohio arise out of his business dealings with Plaintiff in the State of Ohio.

Finally, Plaintiff  must demonstrate that Robinson's actions or the consequences of his alleged actions, "must have a substantial enough connection with [Ohio] to make the exercise of jurisdiction over the defendant reasonable."  *Kerry Steel*, 106 F.3d at 150. According to Sixth Circuit precedent, "where the first two prongs are satisfied, only the unusual case will not meet this third criterion."  *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998).  To determine reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief."  *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 223 (6th Cir. 2006) (internal citations omitted).

All these requirements are met because Robinson had ongoing business contacts with Plaintiff in Ohio over a protracted period of time; traveled to Ohio on numerous

11

occasions, supervised employees in Ohio and reached out to Plaintiff in Ohio to explore future business opportunities.  It will not be burdensome on Robinson to defend this action in Ohio given his substantial connection to Ohio.  Furthermore, Ohio has a vested interest in enforcing contracts and trademarks and Plaintiff is entitled to seek relief for any such abuses.

Therefore, the Court finds it has personal jurisdiction over Robinson.

**Robinson's Motion to Dismiss for Failure to State a Claim**

Robinson moves to dismiss all claims alleging individual liability because all acts taken by Robinson were in his capacity as President of Lynx.  Robinson also contends the 2002 Agreement contains a one year limitation clause, barring a number of Plaintiff's claims.  Furthermore, Robinson claims the Court must apply Canadian law on alter ego liability, which bars individual liability on Plaintiff's claims.  Lastly, Robinson contends Plaintiff's breach of contract claim fails because Robinson was not a party to the Agreement.

In deciding a motion to dismiss under Fed.R.Civ.P.12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation.  *Id.* at 555... A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)).  That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542.  A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Court, in its Order denying Defendant Lynx's Motion to Partially Dismiss (ECF # 137), has already found the one-year limitation clause in the 2002 Agreement results in an absurdity and, without further evidence, cannot be the basis for dismissing Plaintiff's causes of action on a Motion to Dismiss.  Therefore, the Court denies Robinson's Motion based on the contractual limitation period.

Next, Robinson argues the Court must apply Canadian law when determining whether he may be held individually liable for his actions as President of Lynx.

13

According to Robinson, applicable Canadian law proscribes personal liability of officers of companies "unless...the officer established a separate identity or interest from that of the company." *ScotiaMcLeod, Inc. v. Peoples Jewelers Ltd.,* 26 O.R.3d 481 at ¶ 25 (Fed C.A. 1995).  Robinson further relies on *Banyan Licensing v. Orthosupport Int'l Inc.,* 296 F. Supp.2d 885 (N.D. Ohio 2003) for his argument that Canadian law applies.

Plaintiff argues Robinson's Motion to Dismiss for Failure to State a Claim devotes only three sentences to his fiduciary shield argument and merely cites to his arguments on the Court's lack of personal jurisdiction over him.  Plaintiff argues Ohio law applies because Plaintiff alleges Robinson is individually liable not only under an alter ego theory but also due to his own unlawful acts and conduct.  Ohio law applies to Plaintiff's claims, according to Plaintiff, because courts apply the law of the forum state. Plaintiff also contends that, should the Court apply Canadian law, the result would still be denial of Defendant's Motion.

The Court holds that Ohio law governs the determination whether Robinson may be held personally liable under Plaintiff's remaining claims because the presumption is the law of the forum controls.  See *Barents Navigation Ltd. v. Western Overseas, Inc.* No.3:98CV 7606 1999 WL 1490855 (N.D. Ohio Dec. 13, 1999).  A party challenging the presumption must demonstrate an actual conflict of law exists between the law of the forum state and the law of another jurisdiction. *Id* at *3.  Robinson argues Canadian law applies a much stricter standard than Ohio law when seeking to impose individual liability on a corporate officer for acts committed in the officer's official capacity. Robinson's argument fails for the following reasons.

14

First, Defendant relies wholly on *Banyan Licensing,* a patent infringement case, and its reference to a single Canadian patent infringement case that, on its face, is inapplicable to the claims before the Court.  Robinson has not provided the Court with any binding authority applicable to the claims in this case.  Therefore, Robinson has failed to demonstrate an actual conflict of laws between Ohio and Canadian law and on this basis alone the Court may apply Ohio law.

Second, even if the Court were to find a conflict of law exists, an analysis of the relevant factors would still favor the application of Ohio law.  Where, as here, the parties dispute the applicable substantive law to be applied to Robinson's defense of a corporate shield, and where there is an absence of an established body of federal choice of law rules, Ohio courts apply the Restatement (Second) of Conflict of Laws (1969) as a source.  See *Banyan* at 888, *Bickel v. Korean Air Lines Co.* 83 F.3d 127, 130 (6th Cir. 1996) reversed on other grounds, see also *Morgan v. Biro Mfg. Co.,* 15 Ohio St.3d 339 (1984).

Restatement (Second) Conflict of Laws  § 6 reads:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

15

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) Conflict of Laws (1971) § 145 states:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

In considering these factors, the Court finds they weigh in favor of Ohio law.

Under the § 6 factors, Ohio law would be the easiest to determine.  The 2002 Agreement, from which all these disputes arise or are related to, also supports applying U.S. and Ohio law.   The 2002 Agreement acknowledged Plaintiff retains all rights to its U.S. copyrights and trademarks and that they are protected by U.S. law.  The 2002 Agreement required all payments be made in U.S. currency.  The 2002 Agreement further indicates it was the desire of Defendant Lynx to use Plaintiff's products that prompted the Agreement. Because many of Plaintiff's claims involve infringement of U.S. copyrights and

trademarks, Plaintiff's justified expectations are best protected under U.S. law. Also, because the First Amended Complaint alleges Robinson was the main actor in negotiating these terms, carrying out the contractual obligations and in violating Plaintiff's rights, the Court finds these factors all weigh in favor of Ohio and U.S. law.

Under § 145, an analysis of these factors also warrants applying Ohio law. Plaintiff's alleged injuries include: lost revenue, lost trade secrets, loss of reputation and good will. These injuries damaged Plaintiff in its domicile of Ohio. The conduct causing the injuries occurred primarily in Canada but the copyright infringement occurred on Lynx's website, which is accessible all over the world, including Ohio. The residence, domicile , nationality, place of incorporation and place of business are balanced between Robinson's residence of Canada and Plaintiff's residence of Ohio. The place where the relationship is centered is a wash because the parties mutually benefitted in their respective domiciles. Plaintiff benefitted from having its product and services in the Canadian market while Defendant benefitted from selling a reputable Ohio product. Therefore, this factor does not tip the scale in either direction.

The Court finds that Ohio has the greater interest, since Plaintiff was allegedly injured in name, reputation and revenue as a result of Defendant's alleged misdeeds arising from a long term business relationship between the parties.

Lastly, while Robinson alleges his actions as President of Lynx cannot subject him to liability, the Court notes that Plaintiff has alleged Robinson is individually liable for his own misdeeds. While the parties have not addressed liability on a claim by claim basis, the Court notes that at least with respect to trademark infringement claims, an

officer may be individually liable for infringement if he takes part in the infringing activity or directs others to do so, regardless of whether he was acting in his official capacity at the time. *Coach Inc. v. The Uniform Place,* No. 5:11CV2191 2012 WL 1598095 (N.D. Ohio April 4, 2012). Thus, regardless of whether he was acting in his official capacity as President of Lynx, the law may impose liability on Robinson for his acts. Therefore, Defendant's Motion to Dismiss for failure to state a claim fails as a matter of law.

Plaintiff alleges Robinson may be held liable for breach of the 2002 Agreement. The parties agree the Agreement contains a choice of law provision requiring disputes be determined under California law. However, where as here, Defendant Robinson signed the 2002 Agreement only in his official capacity as president, the only way the contract can be enforced against Robinson is to find he is the alter ego of Lynx. Whether under California or Ohio law, Plaintiff's First Amended Complaint fails to allege sufficient facts supporting a claims for alter ego liability on a contract. "The general rule in California is that 'only a signatory to a contract may be liable for any breach.'" *St. Vincent Medical Center v. Mega Life and Health Ins. Co.* No. 12–56678, 2014 WL 5088884, 1 (9th Cir. 2014) quoting *Clemens v. Am. Warranty Corp.,* 193 Cal.App.3d 444, 452 (1987). "The alter ego doctrine applies to pierce a corporate veil if two requirements are met: (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) an inequitable result will follow if the corporate veil is not pierced." *Smith v. Simmons* 409 Fed.Appx. 88, 90, 2010 WL 4561368, 2 (9th Cir. 2010).

Under Ohio law, "an individual officer or shareholder will not be held liable for the acts or debts of a corporation." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287.  In *Belvedere*, the Ohio Supreme Court held the corporate form may be discarded and individual officers or shareholders may be liable if:  "1) control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own, 2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and 3) injury or unjust loss resulted to the plaintiff from such control and wrong. Id.

Having reviewed the First Amended Complaint, the Court finds it fails to allege facts sufficient to hold Robinson liable on the contract under an alter ego theory of liability.  The Amended Complaint alleges in pertinent part:

> 10. Defendant, Robinson, has the ability to supervise and exercise control over Defendant, Lynx, and is responsible for its actions.
>
> 13. Upon information and belief, each Defendant was the agent, servant, employee, partner and/or joint venturer of each of the other Defendants; the acts of each Defendant were within the scope of such agency, service, employment, partnership or joint venture; in committing the acts and omissions alleged herein, each Defendant acted with knowledge, permission and/or consent of every other Defendant; and each Defendant aided, abetted, and/or conspired with the other Defendants in the acts and omissions alleged herein.
>
> 238. Robinson directs and conducts the activities of Lynx as the President and sole officer of Lynx and has actively participated and materially contributed to the foregoing activities, and is therefore directly, contributorily and vicariously liable for the actions of Lynx.  Defendants are jointly and severally liable to MRI for the damages incurred.

As the allegations in Plaintiff's First Amended Complaint make clear, Robinson acted within the scope of his employment as President under the contract. There is no allegation that Robinson's interests and Lynx's interests were so unified as to make Robinson liable under an alter ego theory. While the First Amended Complaint alleges Robinson exerts sole control over Lynx, such an allegation is insufficient to support alter ego liability under California or Ohio law. " '[T]he corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require,'(internal citation omitted) " and the 'mere fact of sole ownership and control' will not suffice." *Internet Direct Response, Inc. v. Buckley* 2011 WL 835607, 2 (C.D.Cal.,2011) citing *Katzir's Floor & Home Design, Inc. v. M–MLS.com,* 394 F.3d 1143, 1149 (9th Cir.2004) . See also *Belvedere,* 67 Ohio St.3d at 289 (holding that "mere control over a corporation is not in itself a sufficient basis" for alter ego liability.) In the absence of such allegations, Robinson cannot be held liable for breach of a contract in which he is not a party other than in his role as President.

The Court holds that under Ohio law, Plaintiff's First Amended Complaint alleges sufficient facts to support its claims that Robinson is personally liable under its tort claims, infringement and copyright claims and claims for violation of Ohio and Canadian law. Defendant has not moved to dismiss any particular claim based on any defense unique to these specific claims.

For the foregoing reasons, the Court denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, grants, in part, Defendant's Motion and Dismisses Plaintiff's Breach of Contract claim against Robinson, and denies Defendant's Motion to

Dismiss on all the remaining claims.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  February 1, 2016