UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MRI SOFTWARE LLC,** | ) | CASE NO.1:12CV1082 |
| | ) | |
| **Plaintiff,** | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| **LYNX SYSTEMS, INC.,** | ) | ORDER |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

On November 9, 2012, the parties agreed to a Stipulated Injunction Order. Plaintiff now contends Lynx has committed numerous violations of the Injunction Order. Having reviewed the briefs, supporting materials and having heard oral arguments, the Court finds Lynx has violated the Injunction Order.

By way of background, Plaintiff filed a fifty-five page Complaint on May 1, 2012, alleging Copyright Infringement, violation of the Computer Fraud and Abuse Act, violation of Title II of the Electronic Communications Privacy Act, violation of the Digital Millennium Copyright Act, violation of the Canadian Copyright Act, Misappropriation of Confidential Business Information and/or Trade Secret in violation of Ohio law, Trespass, Breach of Contract, Inducement of Breach, Intentional or Negligent Interference with Existing and

Prospective Economic Advantage, Trademark Infringement, Unfair Competition, Commercial Disparagement, False Advertising, Deceptive Trade Practices, Unjust Enrichment/Restitution and Action for Accounting against Defendant for its alleged improper business practices. According to Plaintiff's Complaint, Defendant holds itself out as a provider of support services for licensees of Plaintiff's proprietary software. In doing so, Plaintiff alleges Lynx improperly and unlawfully accesses, copies and creates derivative works of Plaintiff's software. Furthermore, Plaintiff contends Lynx disparages Plaintiff's product while falsely holding itself out as a partner or affiliate of Plaintiff. In August of 2013, Plaintiff amended its Complaint adding Defendant Donald Robinson.

Plaintiff alleges Lynx is unlawfully using derivations of Plaintiff's proprietary copyrighted real estate property management software. Lynx has hired a number of former employees of Plaintiff. MRI's software, for example: aids property managers manage leases, deposits and schedules lease renewals. MRI's software is designed to be customizable to fit the needs of its individual customers. Plaintiff's predecessor and Lynx entered into an agreement in 2002. The agreement permitted Lynx to service customers in a limited territory (Canada). Under the agreement, Lynx would market, promote and distribute Plaintiff's predecessor's software products. The agreement reserved all rights in the products to Plaintiff's predecessor and prohibited Lynx from soliciting for employment Plaintiff's predecessor's employees.

In 2006 and 2007 the parties attempted to negotiate a new agreement but were unsuccessful. Thus, when the agreement expired in 2008 all rights reverted back to Plaintiff. Since that time, Plaintiff contends Lynx has engaged in misappropriation of Plaintiff's

software, advertised its consulting services on Plaintiff's software, has solicited and hired employees of Plaintiff, falsely lists Plaintiff as an affiliate of Lynx and has disparaged Plaintiff in emails sent to Plaintiff's software customers.

The November 9, 2012, Stipulated Injunction Order imposed the following obligations on Lynx:

1) Destroy all MRI Software on Lynx's computers within two weeks of the Order.

2) enjoined Lynx from copying, distributing or displaying any MRI Software or derivative customization without MRI's consent.

3) enjoined Lynx from accessing, attempting to access or facilitating access to MRI's Software from any computer bound by the Master Agreement.

4) enjoined Lynx from creating, implementing, distributing any customization on behalf of a Master Agreement Signatory.

5) enjoined Lynx from implementing any enhancement on behalf of a Master Agreement Signatory.

6) enjoined Lynx from implementing or assisting in implementing of any enhancement on behalf of an MRI client not authorized to receive enhancements.

7) enjoined Lynx from creating, developing, distributing or implementing any derivative work of MRI Software on behalf of any Master Agreement Signatory.

8) enjoined Lynx from providing software hosting services not already identified

as receiving such services.

9) enjoined Lynx from copying, distributing or publicly displaying any derivative works of training materials of MRI.

10) enjoined Lynx from accessing, attempting to access or facilitating access to MRI's client portal without MRI's consent.

11) enjoined Lynx from referring to MRI Report Library, Lynx-Products MRI, Multi-Report Tool or otherwise offering or advertising for resale any customizations on any website owned or controlled by Lynx or in Lynx promotional materials.

12) enjoined Lynx from referring to MRI as an affiliate on Lynx's website or marketing materials

13) enjoined Lynx from making any false statements regarding MRI or its software or services.

On February 5, 2013, Plaintiff moved to Show Cause, alleging that Lynx has violated the Injunction Order by:

1) Failing to remove MRI products on Lynx website and advertising materials as established by the declaration of Plaintiff's counsel Georgia Yanchar and screen shots of Lynx website.

2) Continuing to offer for sale Lynx products Lynx admits violate MRI's copyrights.

3) Continuing to access MRI Software and providing prohibited services to Master Agreement Signatories. 82% of MRI's customers are signatories to

        Master Agreements including 52 customers of Lynx.  While Lynx requested an exception in the Injunction Order allowing it to perform services for Master Agreement signatories with MRI's consent, MRI declined.  Although MRI expressly refused to include such language, Lynx sent a letter on January 25, 2013, to its customers informing them "Lynx is also not allowed to load any enhancements onto your system without MRI's approval.  Lynx is also not allowed to create any new customizations or to fix any existing bugs or problems in the MRI software using your copy of the MRI Toolkit without MRI's approval."  The letter went on to say, "For clients that have signed the "new SMA" MRI can still authorize Lynx Systems to provide support to you at their discretion."  The Stipulated Injunction Order does not authorize Lynx to perform such services, rather, it expressly prohibits such services.

4)     Lynx's January 25 letter to its customers further states Lynx can still provide its customers with excellent training and hotline support services through Webex sessions and can provide comprehensive reviews or assessments of customers' MRI software including building new reports and customizations.  According to Plaintiff, WebEx allows users to share files apps etc... and troubleshoot software.  Therefore, using WebEx, Lynx can access Master Signatory clients' MRI software in violation of the Injunction.

5)     In order for Lynx to construct new reports and customizations as advertised in its January 25 letter, it would most likely have to access MRI's database since it would require access to MRI table structures within the MRI software.

        Thus, to perform these services, Lynx would violate the prohibition in section 2(c) of the Injunction prohibiting access to MRI Software.

6) Lynx has also violated the Injunction by making false statements and misrepresenting its relationship with MRI. Lynx cannot provide the above services without violating the Injunction, therefore, it is falsely advertising its ability to perform such services. Lynx also represented to its customers that customers may obtain MRI approval to have Lynx continue to provide support services when the Injunction includes no such provision.

Plaintiff also contends Lynx failed to consult its counsel prior to disseminating the January 25 letter, thus violating the Injunction by failing to take "all reasonable steps within its power to comply."

In addition, MRI contends that on December 18, 2012, Lynx posted on its blog a statement saying, it provided services including "support, training, customizations, assessments, installation of updates, integration of third party software, monitoring, hosting and conversions" and that these services continue to be a "major focus" of Lynx. According to MRI, this shows Lynx is still performing the very services it is enjoined from performing.

MRI requests the Court order full compliance with the Injunction, order Lynx pay legal fees to MRI incurred to enforce the Injunction, order Lynx to remove all communications in violation of the Injunction from its website and lastly, Lynx issue a letter to its customers correcting its earlier misrepresentations.

**Lynx Response**

According to Lynx, Plaintiff has the burden to show by clear and convincing evidence,

a violation of a court order, yet it has failed to do so. Lynx has not violated the Injunction by continuing to offer for sale the Lynx products. First, the term "Lynx Products" is not defined in the Stipulated Injunction Order. Second, there is nothing in the Order enjoining Lynx from referencing the products. The Order only enjoins reference to the "MRI Report Library", "Lynx-Products MRI" or "Multi-Report Tool." Since nothing in the Show Cause Motion proves by clear and convincing evidence that Lynx makes any reference to these particular items, Plaintiff has not met its burden.

Furthermore, while the Order enjoins Lynx from offering certain products for resale, the evidence shows Lynx did NOT offer them for sale. Instead, Lynx merely refers to them as examples of the work Lynx has provided for its customers in the past.

While Lynx admits its customization services remains a major focus, it denies providing those services to any Master Agreement Signatory ("MAS") as required for a violation of the Order. In fact, MRI has not provided the names of its customers to Lynx. Instead, it provided the list to Lynx's counsel with the designation "Attorneys' Eyes Only." Therefore, Lynx has no knowledge of who these Master Agreement Signatories are and cannot be liable for any violation. Furthermore, MRI has failed to identify one specific MAS with whom Lynx provided prohibited services. Instead, it can only speculate, therefore, MRI fails to meet its burden by showing a violation with clear and convincing evidence.

While MRI may say no to any MAS who requests continued service by Lynx, there is nothing in the language of the Order prohibiting MRI's customers from asking. Therefore, Lynx's representations to its clients that it could only provide those services if the client obtained MRI's permission did not violate the Order.

Lynx further contends its use of WebEx to communicate with its clients does not mean such communication violates the Order.  WebEx is akin to allowing someone to look over the customer's shoulder while the client uses its computer.  Merely viewing what is on a client's screen does not violate the Order.  Plaintiff must show that Lynx accessed or attempted to access MRI software installed on Lynx's client's computers.  MRI has offered no such evidence, therefore, no violation is shown.  Merely because the WebEx system includes the capability to access MRI software does not mean Lynx did, in fact, access MRI software.  Since MRI merely speculates on this issue, it fails to meet its burden.

Lynx claims it can access its clients' data from the clients' database using commercially available third party software.  Therefore, it does not need to access and has not accessed MRI software to perform its customizations.

Finally, Lynx has not made any false statements, since MRI has offered no evidence that Lynx refers to MRI as an affiliate and none of its advertised services violate the Order.

## **ANALYSIS**

"The movant in a civil contempt proceeding bears the burden of proving by clear and convincing evidence that the respondent 'violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Liberte Capital Group, LLC v. Capwill* 462 F.3d 543, 550 -551 (C.A.6 (Ohio),2006)  *Glover v. Johnson,* 934 F.2d 703, 707 (6th Cir.1991).  "This Court requires that the prior order be "clear and unambiguous" to support a finding of contempt." *Liberte* at 551 quoting *Grace v. Ctr. for Auto Safety,* 72 F.3d 1236, 1241 (6th Cir.1996).  Ambiguities must be resolved in favor of the party charged with contempt. *Id.*

The Court will examine each alleged violation as presented by Plaintiff:

**I.** *Defendants never certified that they complied with the requirements of the Injunction within twenty-one days as required.*

According to Plaintiff, Defendant only certified the destruction requirements of paragraph 1 requiring Lynx destroy all copies of MRI software. Defendant Lynx, through its President Donald Robinson, certified on November 29, 2012, it had complied with the destruction requirements of paragraph 1 of the Stipulated Injunction Order.

The Stipulated Injunction Order at paragraph 7 states: "Within twenty-one days from the entry of this Stipulated Order, Lynx shall certify to the Court its compliance herewith." Lynx argues it did not further certify compliance with the other provisions of the Stipulated Injunction because those provisions are prospective. Thereafter, in April 2013, Robinson further certified that Lynx "has complied with the terms of that Order consistent with what I understand the Stipulated Injunction to require of Lynx..."

While the Court agrees with Plaintiff that Lynx failed to timely certify compliance with the Stipulated Injunction Order as agreed by the parties under the plain, agreed upon language in the Injunction Order, its subsequent certification fulfilled its obligation. Given the prospective nature of much of the conduct prohibited under the Injunction, certification could only be offered on Defendant's intention to comply. Thus, the Court declines to hold Defendant in contempt for this violation.

**II.** *Lynx Continues to Reference MRI Products on Lynx's Website. Lynx Merely Changed the Name of its Products but Continues to Offer for Sale MRI Related Products.*

According to MRI, the Stipulated Protective Order at Section 2 (a-m) enjoins and restrains Lynx from most conduct involving the sale, development and creating derivative works from MRI software.  It further enjoins and restrains Lynx from referencing certain MRI products on Lynx's website.  Section 2(b) prohibits Lynx from "copying or distributing any copy, in whole or in part, or publicly displaying or creating any derivative work of any of the Customizations described in Exhibit A and Exhibit B hereto."

 Section2(k)  reads:

> making any reference to the "MRI Report Library," "Lynx-Products MRI," "Multi-Report Tool" or otherwise offering or advertising for resale any Customizations on any website owned or controlled by Lynx (specifically including http://www.lynxsystemsinc.com/) or in any other marketing or promotional materials;

Plaintiff offers screen captures of Lynx's website, post-Injunction date, showing Lynx referencing its customized products for MRI users, including over a dozen of the products specifically listed in Exh. A to the Stipulated Protective Order as prohibited works that Lynx may not reference.

Lynx counters that it does provide the list of products as examples of work it performed previously, however, it removed any reference on its site to "MRI Report Library" "Lynx-Products MRI" and "Multi-Report Tool" as proscribed by the Stipulated Injunction.  Lynx attests it has not offered any Customization for sale post-Injunction order.

Having reviewed the language of the Stipulated Injunction and the evidence presented both for and against the alleged violations of 2(b) and 2(k), the Court finds no violation.  The plain language of the Stipulated Injunction prohibits public displays or creating any derivative work of any of the customizations listed in Exh. A to the Injunction Order.  "Customization"

is defined under the Injunction Order as "any modification to the MRI Software, or any reports or interfaces within the MRI Software."  Lynx's post-Injunction website under "Customize" now states, " Below are some of the customizations that we have previously developed for MRI users."  It then lists the names and descriptors of those customizations, including the names of several of the products listed in Exh. A. to the Injunction.  However, these are not the customizations themselves but are instead the names and descriptions of the customizations.  The customizations as defined by the Injunction Order are the MRI software modifications, reports or interfaces within the MRI software.  These are not displayed.

Furthermore, there is an ambiguity in section 2(k).  Plaintiff contends the prohibition concerning any references to "MRI Report Library" "Lynx-Products MRI" and "Multi-Report Tool" applies not only to the names themselves but encompasses the products, reports and library.  Lynx argues it has complied by removing any reference to the above terms on its website, nevertheless, the Stipulated Injunction does not prohibit any reference to the products themselves.

The Court agrees and holds 2(k) is susceptible to both interpretations and therefore, finds no violation.  However, as Defendants have agreed to remove the list of former MRI customizations from its website, the Court so Orders.

### III.  *Defendants are in violation of the Stipulated Injunction by offering and advertising customizations for resale.*

Plaintiff contends the plain language of 2(k) prohibits Defendants from offering or advertising for resale any customizations on any website owned or controlled by Lynx.  Plaintiff offers screen captures from Lynx website post-Injunction wherein under "Products"

"Customize" it reads:

> The Lynx team has been developing customizations for MRI users for over a decade. To better serve our clients we now also offer SSRS and SharePoint development for customization requests. Below are some of the customizations that we have previously developed for MRI users.

According to Plaintiff, this language demonstrates the prohibited customizations are still being offered for sale.

Defendants argue that the above language clearly discusses MRI customizations in the past tense. Defendants further attest they have not offered for sale any MRI customization.

The Court finds the above language does appear to presently advertise MRI customizations. Lynx website relates that Lynx has developed customizations for MRI users for over a decade. It then reads "we now **_ALSO_** offer...." (Emphasis added). Such language clearly indicates Lynx is still advertising these products and violates Section 2(k).

### *IV & V. Lynx is attempting to access and has actually accessed MRI Software installed on the computers of Master Agreement Signatories via Webex.*

According to MRI, one-half of Lynx customers are signatories to MRI's Master Agreement. Under the terms of the Stipulated Injunction Lynx is prohibited from:

> accessing , attempting to access or knowingly facilitating any access to any instance of the MRI Software residing on any Computer owned or controlled by any Master Agreement Signatory.
>
> creating, developing, distributing or implementing any Customization on behalf of any Master Agreement Signatory;

Lynx is also prohibited under the Stipulated Injunction Order from implementing or assisting the implementation of any Enhancements on behalf of a MAS or any MRI client not authorized by MRI to receive Enhancements. Lastly, Lynx is prohibited from creating,

12

developing, distributing or implementing any derivative work of MRI Software on behalf of any MAS.

MRI offers blog entries from Lynx discussing that Lynx, post-Injunction, could still provide customizations, updates and assessments via non-MRI related software such as Microsoft Sharepoint Solutions. MRI also points to a letter by Lynx to its clients telling them that if they were an MRI MAS, Lynx could still provide support services if they (the client) obtain permission from MRI and, without MRI approval, can still provide training and hotline support along with comprehensive reviews or assessments of the clients usage of the MRI software. MRI also points to emails from Lynx clients contacting MRI to request Lynx be allowed to continue servicing MRI software on the clients' computers. It further shows attempts by Lynx to use WebEx to access clients' computers to help resolve their software issues.

WebEx is a computer program wherein a user may authorize access to his or her computer remotely by another computer user. According to MRI, it allows Lynx to "look over the shoulder" of a MAS to access MRI software on the MSA users computer. For any customization of MRI software a party would need access to the MRI Toolkit and/or MRI Software.

Defendants attest they have accessed MRI clients' computers using WebEx but have not accessed the MRI Software. The parties strongly disagree whether access to data on a client's computer that was input using MRI Software necessarily requires access to MRI Software when extracting the data, even if the extraction is done without using MRI Software. Plaintiff contends MRI Software categorizes and compartmentalizes the data and to extract

the data in any meaningful way necessarily requires accessing MRI's database schema.  Lynx attests the data is independent of the format in which it is stored.  Lynx contends it uses data maps to extract client data without accessing MRI Software.

The Court finds that determinating the issue whether access through WebEx and access to the data involves necessarily accessing or attempting to access MRI software are fact questions requiring expert testimony.  Therefore, the Court finds Plaintiff has not shown by clear and convincing evidence a violation.  Furthermore such a determination goes directly to claims in Plaintiff's Complaint. (Computer Fraud, Inducement to Breach, for example).  This issue is more appropriately determined at trial or on summary judgment.

Concerning MRI's allegations that Lynx's sending letters to clients telling them to contact MRI to allow Lynx to continue servicing its MRI clients constitutes facilitating access to MRI software on MAS's computers, the Court finds the mere sending of a letter to clients, including MAS clients, informing MRI MAS's clients that Lynx cannot continue to service them without permission of MRI is not accessing, attempting to access or knowingly facilitating any access to any instance of the MRI software.  By the plain language of the letter, Lynx is prohibited from loading enhancements, providing customizations, or accessing MRI programs, menus or screens.   Thus, in the absence of MRI's permission, Lynx acknowledges it cannot access MRI Software of MSA computers.  Simply suggesting clients get permission does not constitute an attempt to access or facilitating access and the Court does not find Lynx in contempt of the Order for such conduct.

There is an additional problem in that the Stipulated Injunction Order defines MAS "as any third party who has been or is hereafter identified in writing by MRI to Lynx as

having entered into an agreement with MRI..."  The plain language of the Injunction requires MRI provide the names of the MAS parties to Lynx.  According to Lynx, MRI provided the list with the designation "attorneys eyes only."   By producing the list attorneys eyes only, Lynx contends MRI has failed to identify MAS users to Lynx.

MRI acknowledges it sent a list of Master Agreement Signatories to Lynx as "attorneys eyes only" however, it argues it had previously identified the signatories in prior disclosures to Lynx without the attorneys eyes only designation.

It is *res ipsa loquitur* that producing documents under an attorneys eyes only designation is not identifying in writing to the party the information in the documents.  Thus, MRI's production of the MAS list as "attorneys eyes only" does not comply with the requirements under the Stipulated Injunction that MRI identify in writing "***to Lynx***."  However, MRI has provided evidence that it did in fact identify in writing MAS customers to Lynx designated "confidential."  Therefore, with respect to those customers so identified, Lynx was expressly prohibited from accessing, attempting to access or knowingly facilitating any access to any instance of MRI Software on the computers of Master Agreement Signatories.  However, the ultimate determination of this issue as described above is reserved for the trier of fact as there are genuine issues of material fact whether using WebEx to access MAS computers involves accessing MRI software.  Therefore, the Court finds MRI has failed to demonstrate, by clear and convincing evidence, a violation.

**VI.    Lynx has made false representations concerning the work it may still perform for clients after the Injunction and further misrepresented the nature of the Injunction to clients in its January 25th letter.**

The Court finds the January 25th letter from Lynx to clients does not make a false representation on the nature of the Injunction Order.  The letter clearly says " by mutual agreement between MRI and Lynx Systems, Lynx agreed to certain restrictions in a temporary injunction."  Furthermore, it is an issue of fact whether Lynx's offering full data conversions into and out of the MRI database requires accessing,  is an attempt to access, or facilitating access, to MRI software on the computer of an MAS.

Therefore, for the foregoing reasons, the Court finds Lynx has violated the Injunction Order only by continuing to offer for sale MRI related products or services.  The Court will withhold a determination of sanctions until after the settlement conference.

IT IS SO ORDERED.


 S;/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge