UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No. 1:12-cv-01082 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| Lynx Systems, Inc. et al., | ) | |
| | ) | |
| Defendant. | ) | |

**Donald Robinson's Motion for Summary Judgment**

Donald Robinson respectfully moves the Court pursuant to Federal Rule of Civil Procedure 56 for entry of judgment in his favor as to Counts I through XVII of MRI Software, LLC's Amended Complaint because MRI cannot come forward with evidence that, if believed, could establish a genuine issue of material fact with respect to any of those claims. A memorandum in support of this motion is attached.

Respectfully submitted,

Dated: June 24, 2016

/s/ David T. Movius

David T. Movius (0070132)
*dmovius@mcdonaldhopkins.com*
McDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474

John T. McLandrich (0021494)
*jmclandrich@mrrlaw.com*
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 | f 440.248.8861

*Attorneys for Donald Robinson*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MRI Software, LLC, | ) | Case No. 1:12-cv-01082 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| vs. | ) | |
| | ) | |
| Lynx Systems, Inc. et al., | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum in Support of Donald Robinson's Motion for Summary Judgment**

Donald Robinson submits this memorandum in support of his motion for summary judgment on MRI Software, Inc.'s claims against him in his personal capacity. The Court already has dismissed MRI's claim against Mr. Robinson for breach of the 2002 Agreement because Mr. Robinson is not a party to that agreement. (Order, ECF # 138.) The Court should grant this motion and enter summary judgment on each of MRI's remaining claims against him for three reasons. First, the Court should enter summary judgment for Mr. Robinson for each of the reasons set forth in Lynx's co-pending motion for summary judgment. Second, MRI cannot establish that Mr. Robinson himself violated any of MRI's rights. Third, MRI cannot pierce Lynx's corporate veil to hold Mr. Robinson personally responsible for any liability that Lynx may have.

**Statement of Material Facts**

Mr. Robinson, a Canadian citizen residing in Toronto, Ontario, started Lynx Systems, Inc. in 1998 as an independent software consulting firm to provide software implementation and customization services to real estate companies throughout North

American. (Declaration of Donald Robinson ("Robinson Decl."), filed herewith, ¶ 2.) Prior to forming Lynx, Mr. Robinson was a consultant for Coopers and Lybrand, where he was responsible for its Real Estate Systems consulting practice for North America. (*Id.* at ¶ 3.) During that time, Mr. Robinson performed numerous system selection engagements for his clients, and he started working closely with MRI, which was then known as Management Reports, Inc., in 1992 to implement MRI systems that his clients had licensed. (*Id.*)

Mr. Robinson formed Lynx in 1998 as an independent software consulting firm to provide software implementation and customization services to real estate companies throughout North America after Coopers and Lybrand merged with Price Waterhouse. (Robinson Decl. ¶ 4.) Soon thereafter, Lynx assumed responsibility for two of his large MRI implementation clients, W.P. Carey in New York City and First Washington Real Estate Trust in Washington, D.C. (*Id.*)

Since forming Lynx in 1998, all of Mr. Robinson's interactions with MRI have been in his capacity as an employee and officer of Lynx. For example, Mr. Robinson negotiated and signed Lynx's August 22, 2000, agreement with MRI as an officer of Lynx. (Exh. 5, the "2000 Agreement," at 18.[1]) Mr. Robinson likewise negotiated and signed Lynx's August 1, 2002, agreement with MRI as Lynx's president. (Exh. 7, the "2002 Agreement," at 20.) Indeed, MRI concedes that all of Mr. Robinson's alleged acts and omissions were exclusively "within the scope of [his] agency, service [and] employment" with Lynx. (Am. Cmplt. ECF # 89, ¶ 13.)

[1] All exhibits are attached to the Robinson Decl. and the Declaration of David Movius, as indicated.

When MRI added Mr. Robinson to this case, it pled his liability "upon information and belief." (Am. Cmplt., ECF # 89, at ¶¶ 12-18.) Since then, MRI has not identified or come forward with any evidence that could, if believed, establish that Mr. Robinson has any personal liability. MRI has not, for example, identified any evidence that Mr. Robinson personally used or otherwise copied any of MRI's software at any time since the 2002 Agreement expired on August 1, 2008, or infringed any of MRI's trademarks. (Robinson Decl. ¶¶ 66, 72.) MRI also has not, and cannot, identify any instance where Mr. Robinson personally accessed any client portal or other protected computer. (*Id.* at ¶¶ 67-70.) MRI also cannot establish that Mr. Robinson knew or should have known that MRI's agreements with its customers prohibit them from using third-party service providers. (*Id.* at ¶ 71.) Finally, MRI has not come forward with any evidence that Mr. Robinson disregarded Lynx's corporate form or that it exercised control over Lynx to commit a fraud or other illegal act. (*Id.* at ¶ 73.) The Court therefore should grant Mr. Robinson's motion because MRI cannot establish that Mr. Robinson has any personal liability whatsoever.

## Law and Argument

### I. Legal Standard for Granting Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A moving party may meet that burden 'by 'showing' - that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden under Rule 56, "its opponent must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must affirmatively come forward with evidence of "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. The Court Should Grant Summary Judgment For Mr. Robinson For The Reasons Set Forth In Support Of Lynx's Motion For Summary Judgment

In addition to the reasons set forth below, Mr. Robinson joins Lynx's co-pending motion for summary judgment, and asks the Court to enter summary judgment in his favor for all of the reasons set forth by Lynx in support of its motion.

## III. The Court Should Grant Summary Judgment For Mr. Robinson Because MRI Cannot Establish That He Violated Any Of MRI's Rights

In addition to the reasons set forth in Lynx's co-pending summary judgment motion, the Court also should grant summary judgment in Mr. Robinson's favor on each of MRI's claims against him personally because MRI cannot come forward with evidence that, if believed, could independently establish his liability under any of them.

### A. Copyright Infringement (Counts I and V)

MRI has not identified any specific instance where Mr. Robinson infringed any of MRI's copyrights. (MRI Response to Robinson Interrog. No. 1.) MRI otherwise cannot prove that Mr. Robinson personally infringed any of its U.S. or Canadian copyrights because Mr. Robinson has not used or otherwise copied any of MRI's software at any time since the 2002 Agreement expired on August 1, 2008. (Robinson Decl. ¶ 66.) MRI therefore cannot establish that Mr. Robinson personally infringed any of MRI's copyrights.

### B. Trespass and Related Claims (Counts II, III, IV, V and VII)

MRI has not identified any instance where Mr. Robinson personally violated the Computer Fraud and Abuse Act, Title II of the Electronic Communications Privacy Act, or the Digital Millennium Copyright Act or that he misappropriated any of MRI's trade secrets or committed any acts of trespass. (Exh. 45, MRI Response to Robinson Interrog. Nos. 2-5, 14.) MRI otherwise cannot prove that Mr. Robinson engaged in such violations because:

- He has never accessed or attempted to access any client portal or other computer offered or otherwise made available by MRI, nor has he ever obtained or disclosed any of MRI's electronic communications stored on any of its computers. (Robinson Decl. ¶ 67.)
- He has never accessed any of MRI's password protected servers, nor has he ever circumvented any of MRI's other technological measures. (*Id.* at ¶ 68.)
- Mr. Robinson has never used or disclosed any confidential credentials issued by MRI for accessing any client portal or other computer offered or otherwise made available by MRI. (*Id.* at ¶ 69.)
- Mr. Robinson has never entered upon any client portal or other computer offered or otherwise made available by MRI without MRI's authorization or in excess of the scope of any authorization it granted. (*Id.* at ¶ 70.)

Moreover, Mr. Robinson is not aware of any instance where any Lynx personnel accessed or attempted to access MRI's client portal or other computer, he instructed all Lynx personnel to not access or attempt to access MRI's new (as of late 2010) client portal, and he is not

aware of any instance were anyone associated with Lynx did so. (*Id.* at ¶ 56.) Finally, Mr. Robinson is not aware of any instance where any Lynx personnel circumvented a technological measure that effectively controls access to any of MRI's copyrighted software, nor has he ever participated in, contributed to, instructed or otherwise authorized anyone to do so on Lynx's or his own behalf. (*Id.* at ¶ 57.) MRI therefore cannot establish that Mr. Robinson has any personal liability under MRI's trespass and related claims.

**C. Interference (Counts IX and X)**

MRI has not identified any instance of interference with contract or economic advantage by Mr. Robinson. (MRI Response to Robinson Interrog. Nos. 6, 7.) MRI otherwise cannot prove that Mr. Robinson personally interfered with any of its contractual relations or economic advantages because Mr. Robinson has not had personal knowledge of the terms of MRI's contractual relationships with its customers. (Robinson Decl. ¶ 71.) Nor is Mr. Robinson aware of any instance where any Lynx personnel interfered with any of MRI's existing and prospective economic advantages, nor has he ever participated in, contributed to, instructed or otherwise authorized anyone to do so on Lynx's or his behalf. (*Id.* at 58.) Finally, as MRI's president, Mr. Robinson has advised Lynx's clients and prospective clients that they must confirm whether their agreement with MRI limits their ability to work with Lynx and that they should contact MRI if they have any questions regarding that issue. (*Id.* at ¶ 71.) MRI therefore cannot establish that Mr. Robinson has any personal liability under either of MRI's interference claims.

**D. Trademark and Related Claims (Counts XI, XII and XV)**

MRI has not identified any instances of trademark infringement, unfair competition, or deceptive trade practices by Mr. Robinson. (MRI Response to Robinson Interrog. No. 8.) Moreover, since the 2002 Agreement expired, Mr. Robinson only has used MRI's claimed trademarks, including the letters "MRI," to either refer to MRI itself or to accurately and truthfully identify and describe Lynx's experience and the services it provides. (Robinson Decl. ¶ 72.) In addition, Mr. Robinson's use of MRI's claimed trademarks on behalf of Lynx has at all times been consistent with the authorization and permission MRI granted in 2009, and he is not aware of any instances where such use has resulted in any confusion, mistake or deception of any kind in the marketplace. (*Id.*) Finally, Mr. Robinson is not aware of any instance where any Lynx personnel has used any of MRI's claimed trademarks in a way that is likely to cause confusion or mistake or to deceive the relevant public, nor has he ever participated in, contributed to, instructed or otherwise authorized anyone to do so on Lynx's or his behalf. (*Id.* at ¶ 59.)

**E. False Advertising and Related Claims (Counts XII, XIV and XV)**

MRI did not identify any independent instances of commercial disparagement, false advertising, or deceptive trade practices by Mr. Robinson in response to his interrogatories on those issue. (MRI Response to Robinson Interrog. Nos. 9, 10.) Moreover, Mr. Robinson's accused communications on behalf of Lynx have been truthful. (Robinson Decl. ¶ 54.) Finally, Mr. Robinson is not aware of any instance where any Lynx personnel made any false verbal or written statements regarding MRI or its products or services or misrepresented the nature, characteristics, and qualities of Lynx's products and services,

nor has he ever participated in, contributed to, instructed or otherwise authorized anyone to do so on Lynx's or his behalf. (*Id.* at ¶¶ 60-61.)

**F. Unjust Enrichment and Accounting (Counts XVI and XVII)**

Finally, MRI has not identified any conduct by Mr. Robinson that would entitle it to recover for unjust enrichment or an accounting independent of its substantive claims. Therefore, in addition to those set forth by Lynx in support of its co-pending motion, the Court should grant summary judgment for MR. Robinson because MRI cannot establish that he personally engaged in any conduct that independently violated any of MRI's rights.

**IV. The Court Should Grant Summary Judgment For Mr. Robinson Because MRI Cannot Pierce Lynx's Corporate Veil**

The Court should enter judgment for Mr. Robinson because MRI cannot pierce Lynx's corporate veil.[2] "A cardinal principle of corporate law, and a driving rationale for corporate business operations, is the insulation from personal liability of the officers and shareholders for the general acts of the corporation." *Columbia Gas of Ohio, Inc. v. All Systems Roofing, Inc.*, 1998 WL 208861 (Ohio Ct. App. 9th Dist.1998) (citations omitted). "The concept of 'piercing the corporate veil' to hold an officer or shareholder liable for the acts and omissions of the corporation is thus an exception to the general rule of insulation from liability." *Id*.

In *Belvedere*, the Ohio Supreme Court set forth the stringent three-part test to be applied by courts in ascertaining whether an individual shareholder may be held liable based on a piercing the corporate veil theory:

---

[2] Although Mr. Robinson believes that his personal liability, or lack thereof, is governed by Canadian law, this motion is limited to addressing this issue under Ohio law.

> [T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Companies., Inc.*, 67 Ohio St. 3d 274, 289 (1993). The Court should grant summary judgment for Mr. Robinson because MRI cannot establish any of the three required elements for piercing Lynx's corporate veil.

Under the first *Belvedere* prong, courts may consider a number of factors, including: (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere façade for the operations of the dominant shareholder(s). *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005); *see also Carter–Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 749 (6th Cir. 2001). MRI cannot satisfy any of these factors because Mr. Robinson has at all times respected Lynx's corporate form, following good business and accounting procedures. (Robinson Decl. ¶ 73.) The record thus does not include any evidence of grossly inadequate capitalization or diversion of funds or property of the company for personal use, Mr. Robinson has never held himself out as personally liable for Lynx's obligations, and he has not used Lynx as a mere façade for his personal operations. The

Court should grant summary judgment for Mr. Robinson because MRI cannot come forward with evidence that, if believed, could establish the first prong under *Belvedere*.

MRI also cannot establish the second *Belvedere* prong, that Mr. Robinson exercised control over Lynx to commit fraud or an illegal act against MRI. *See Belvedere*, 67 Ohio St.3d at 289. The Ohio Supreme Court has cautioned that this prong only should be found "in instances of extreme shareholder misconduct." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 513 (2008). While Mr. Robinson exercises a degree of control over Lynx, there is no evidence in the record that he exercised it to commit fraud or an illegal or unlawful act against MRI, let alone engaged in "extreme shareholder misconduct." On the contrary, Mr. Robinson exercised his degree of control consistent with MRI's promises and representations that Lynx could continue providing services to users of MRI's software after the 2002 Agreement expired. (Robinson Decl. ¶¶ 18, 36-53 and exhibits attached thereto.) Moreover, MRI has not alleged that Mr. Robinson or Lynx engaged in fraud. The Court therefore should enter summary judgment for Lynx because MRI also cannot satisfy the second prong of the *Belvedere* test.

Finally, MRI cannot satisfy the third *Belvedere* prong, that it suffered injury or unjust loss due to Mr. Robinson's control and wrongdoing. *See Belvedere*, 67 Ohio St.3d at 289. While MRI claims to have suffered injury as a result of Lynx's and Mr. Robinson's alleged conduct, it has not alleged, and cannot prove, that it suffered any injury as a result of Mr. Robinson using his degree of control over MRI to engage in any wrongdoing. MRI therefore cannot establish any of the three *Belvedere* factors and the Court should enter summary judgment in Mr. Robinson's favor on each of MRI's claims against him.

**Conclusion**

For the foregoing reasons, Lynx Systems, Inc. respectfully requests that the Court enter summary judgment in its favor with respect to each of MRI Software, LLC's claims asserted in its Amended Complaint.

Respectfully submitted,

Dated: June 24, 2016

/s/ David T. Movius

David T. Movius (0070132)
*dmovius@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474

John T. McLandrich (0021494)
*jmclandrich@mrrlaw.com*
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
t 440.248.7906 | f 440.248.8861

*Attorneys for Donald Robinson*

**Certificate of Service**

I hereby certify that, on June 24, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

/s/ David T. Movius
*Attorney for Donald Robinson*

**Certificate of Compliance**

I hereby certify that this case has not been assigned to a track, the Court has set a 40-page limit for summary judgment motion and response briefing, with a 20-page limit for reply briefing, and this memorandum complies therewith.

/s/ David T. Movius
*Attorney for Donald Robinson*